## THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re Volkswagen and Audi Warranty Extension Litigation | : | MDL Docket No. 1:07-md-01790 |
| | : | |
| | : | |
| | : | |
| _____ | : | |
| | : | |
| This Document Relates to All Cases | : | |
| _____ | : | |

| | | |
|---|---|---|
| _____ | : | |
| JAMES CRAIG; KENNETH NAGER; LAURA COLE; WILLIAM COHEN; SCOTT RYDER; ERIC EMANUELSON; MARGARET MOREAU; MATTHEW LEONETTI; STACY LEONETTI; DAVID MARKS; CARRIE MARKS; MARIE MONTAG and CAROL CARTER, in their own right and on behalf of all others similarly situated, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Transferor Court Civil Action |
| | : | No. 2:06cv3513-JCL-MF |
| | : | District of MA No. 1:06-cv- |
| | : | 11875-JLT |
| v. | : | |
| | : | |
| | : | PLAINTIFFS' SECOND AMENDED |
| VOLKSWAGEN OF AMERICA, INC.; | : | CLASS ACTION COMPLAINT |
| VOLKSWAGEN OF AMERICA, INC. d/b/a | : | |
| AUDI OF AMERICA, INC. ; | : | |
| VOLKSWAGEN AG and AUDI AG | : | |
| Defendants. | : | JURY TRIAL DEMANDED |
| _____ | : | |

Plaintiffs James Craig; Kenneth Nager; Laura Cole (n/k/a Laura Breit); Scott Ryder; Eric Emanuelson and Margaret Moreau; Matthew and Stacy Leonetti; David and Carrie Marks; Marie Montag; William Cohen and Carol Carter ("Plaintiffs"), bring this action individually and on behalf of all others similarly situated against Defendant Volkswagen of America, Inc.; Defendant Volkswagen of America, Inc. d/b/a Audi of America, Inc.; Defendant Volkswagen AG; and Defendant AUDI AG ("Defendants"). Plaintiffs assert the claims alleged herein upon knowledge as to their own acts and otherwise upon information and belief as follows:

## I.  SUMMARY OF THE ACTION

1.      This action seeks damages and injunctive relief for Defendants' violation of the New Jersey Consumer Fraud Act (N.J.S.A. § 56.8-1, *et seq*.), and other consumer fraud statutes substantially similar to the New Jersey Consumer Fraud Act as to which common issues of law predominate, including California's Unfair Competition Law (Business and Professions Code § 17200, *et seq.*) and the California Consumers Legal Remedies Act, (Cal. Civ. Code. § 1750, *et seq.*), together with claims for unjust enrichment, breach of implied warranty, breach of contract, and declaratory judgment.

2.      Plaintiffs' claims arise from Defendants' defective design of the 1.8 litre turbo-charged engines (the "Engines") found in model year 1997 through 2004 Audi Vehicles, and model year 1998 through 2004 Volkswagen Passat Vehicles (collectively, the "Class Vehicles").

3.      Each of the Class Vehicles are equipped with the same Engine. The Engine is defectively designed (the "Design Defect" or "Defective Design"). The Design Defect is common to all Class Vehicles.

4.      The Design Defect in the Engines in Class Vehicles causes the accelerated

degradation of motor oil and formation of Oil Sludge in all Class Vehicles (the "Oil Sludge Malfunction").  The Oil Sludge Malfunction causes damage to the Engines from the date of first use through the life of the Class Vehicles.

5.      The Oil Sludge Malfunction causes ascertainable, identifiable and actual damage to the Engines in Class Vehicles. The Design Defect has caused Engine problems and failures which result in Class members incurring expenses to repair the Vehicles.

6.      Engine failure can occur during the operation of a Class Vehicle, which poses a serious safety concern and unreasonable risk of harm to vehicle occupants and/or the public.

7.      As more fully described throughout this Complaint, the Defendants have made material misrepresentations and concealed material information regarding the Design Defect. The Defendants intentionally misled the public so they could continue to sell the Class Vehicles and avoid the expense of feasible preventative maintenance and repairs. Substantial verification of this concealment is in the hands of the Defendants and will be obtained through the discovery process.

8.      Plaintiffs allege that the Defendants are liable for the cost of inspection of the Engines, for preventative maintenance, including cost of proper engine oil, and repair or replacement of the Engines.  Defendants are also liable for the diminished value of the Class Vehicles, payment of reasonable attorneys' fees and treble damages.

## II.  PLAINTIFFS

9.      Plaintiff James Craig is an adult individual and a resident of the state of New Jersey, residing at 403 Fox Run Drive, in the city of Plainsboro.

10.      On or about December 7, 2004, Plaintiff Craig purchased a 2001 Audi A4 Vehicle

for personal, family or household uses.   That Vehicle was designed, manufactured, sold, distributed, marketed, advertised and/or warranted by Defendants and bears the Vehicle Identification Number WAUDC68D61A148777. Plaintiff Craig currently owns said Vehicle, which is a Class Vehicle with an Engine having a Design Defect.

11.     Plaintiff Craig has suffered an ascertainable loss as a result of Defendants' wrongful conduct and the Oil Sludge Malfunction, including but not limited to, out of pocket losses associated with repairs for Engine damage suffered by his Class Vehicle.

12.     Plaintiff Kenneth Nager is an adult individual and a citizen of the state of Colorado, residing at 111 Condor Drive, in the city of Eagle.

13.     On or about August 12, 2003, Plaintiff Nager purchased a 1999 Audi A4 Vehicle for personal, family or household uses. That Vehicle was designed, manufactured, sold, distributed, marketed, advertised and/or warranted by Defendants, and bears the Vehicle Identification Number WAUCB28D5XA305571.

14.     Plaintiff Nager has suffered an ascertainable loss as a result of Defendants' wrongful conduct and the Oil Sludge Malfunction, including but not limited to, out of pocket losses associated with repairs for Engine damage suffered by his Class Vehicle.

15.     Plaintiff Laura Cole (n/k/a/ Laura Breit) is an adult individual and a citizen of the state of Oregon, presently residing at 19679 Hollygrape Street, in the city of Bend. Plaintiff Cole is a former resident of the state of California, who purchased a Class Vehicle in California, which experienced the Oil Sludge Malfunction and related Engine damage in California, and whose claim for reimbursement of her repair costs was denied by the Defendants in California.

16.     On or about November 24, 2001, Plaintiff Cole purchased a 2002 Volkswagen

3

Passat Vehicle for personal, family or household uses.  That Vehicle was designed, manufactured, sold, distributed, marketed, advertised and/or warranted by Defendants, and bears the Vehicle Identification Number WVWPD63B22P184774.  Plaintiff Cole currently owns said Vehicle, which is a Class Vehicle with an Engine having a Design Defect.

17.     Plaintiff Cole has suffered an ascertainable loss as a result of Defendants' wrongful conduct and the Oil Sludge Malfunction, including but not limited to out of pocket losses associated with repairs for Engine damage suffered by her Class Vehicle.

18.     Scott Ryder is an adult individual and a citizen of the Commonwealth of Massachusetts, residing at 16 Walker Road, in the city of Beverly.

19.     On or about February 13, 2002, Plaintiff Ryder leased a 2002 Volkswagen Passat Vehicle for personal, family or household uses**.**  That Vehicle was designed, manufactured, sold, distributed, marketed, advertised and/or warranted by Defendants, and bears the Vehicle Identification Number WVWVD63B12E263016.  Plaintiff Ryder currently owns said Vehicle which is a Class Vehicle with an Engine having a Design Defect.

20.     Plaintiff Ryder has suffered an ascertainable loss as a result of Defendants' wrongful conduct and the Oil Sludge Malfunction, including but not limited to, out of pocket losses associated with repairs for Engine damage suffered by his Class Vehicle.

21.     Eric Emanuelson and Margaret Moreau are adult individuals and citizens of the state of Connecticut, residing at 30 Bayberry Lane, in the city of Gilford.

22.      On or about June 1, 2002, Plaintiffs Emanuelson and Moreau purchased a 2002 Volkswagen Passat Vehicle for personal, family or household uses.  That Vehicle was designed, manufactured, sold, distributed, marketed, advertised and/or warranted by Defendants, and bears

the Vehicle Identification Number WVWPD63B52P438574.  Plaintiffs Emanuelson and Moreau

currently own said Vehicle which is a Class Vehicle with an Engine having a Design Defect.

23.     Plaintiffs Emanuelson and Moreau have suffered an ascertainable loss as a result

of Defendants' wrongful conduct and the Oil Sludge Malfunction, including but not limited to,

out of pocket losses associated with repairs for Engine damage suffered by their Class Vehicle.

24.     Matthew and Stacy Leonetti are adult individuals and citizens of the state of

Minnesota, residing at 11102 Hillsboro Ave. North, in the city of Champlain (collectively,

"Plaintiffs Leonetti").

25.     On or about April 28, 2004, Plaintiffs Leonetti purchased a 2002 Volkswagen

Passat Vehicle for personal, family or household uses.  That Vehicle was designed,

manufactured, sold, distributed, marketed, advertised and/or warranted by Defendants, and bears

the Vehicle Identification Number WVWPD63B32P125670. Plaintiffs Leonetti currently own

said Vehicle which is a Class Vehicle with an Engine having a Design Defect.

26.     Plaintiffs Leonetti have suffered an ascertainable loss as a result of Defendants'

wrongful conduct and the Oil Sludge Malfunction, including but not limited to out of pocket

losses associated with Engine damage suffered by their Class Vehicle.

27.     David and Carrie Marks are adult individuals and citizens of the state of New

York, residing at No. 5 Deveau Road, in the city of North Salem (collectively, "Plaintiffs

Marks").

28.     On or about December 5, 2001, Plaintiffs Marks purchased a 2002 Volkswagen

Passat Vehicle for personal, family or household uses.  That Vehicle was designed,

manufactured, sold, distributed, marketed, advertised and/or warranted by Defendants, and bears

the Vehicle Identification Number WVWPD63B82P224257.  That Vehicle is a Class Vehicle with an Engine having a Design Defect.

29.     Plaintiffs Marks have suffered an ascertainable loss as a result of Defendants' wrongful conduct and the Oil Sludge Malfunction, including but not limited to out of pocket losses associated with Engine damage sustained by their Class Vehicle.

30.     Marie Montag is an adult individual and citizen of the state of Rhode Island, residing at 84 John St. #1, in the city of Newport.

31.     On or about November 22, 2004, Plaintiff Montag purchased a 2001 Audi A4 Vehicle for personal, family or household uses. That Vehicle was designed, manufactured, distributed, marketed, advertised and/or warranted by Defendants, and bears the Vehicle Identification Number WAUDC68DX1A090706.

32.      Plaintiff Montag has suffered an ascertainable loss as a result of Defendants' wrongful conduct and the Oil Sludge Malfunction, including but not limited to out of pocket losses associated with Engine damage suffered by her Class Vehicle.

33.     Plaintiff William Cohen is an adult individual and a citizen of the Commonwealth of Pennsylvania, residing at 1316 Marlborough Street, in the city of Philadelphia.

34.     On or around January 25, 1999, Plaintiff Cohen purchased a model year 1999 Volkswagen Passat Vehicle for personal, family or household uses.  That Vehicle was designed, manufactured, sold, distributed, marketed, advertised and/or warranted by Defendants, and bears the Vehicle Identification Number WVWMA63BXXE229149. That Vehicle is a Class Vehicle with an Engine having a Design Defect.

35.      Plaintiff Cohen has suffered an ascertainable loss as a result of Defendants'

wrongful conduct and the Oil Sludge Malfunction, including but not limited to a diminished useful life and diminished value of his Class Vehicle.

36.     Plaintiff Carol Carter is an adult individual and a citizen of the state of California, residing at 4680 Gate Way, in the city of Santa Barbara.

37.     On or about May 26, 2000, Plaintiff Carter purchased a model year 2000 Audi A4 Vehicle for personal, family or household uses.  That Vehicle was designed, manufactured, sold, distributed, marketed, advertised and/or warranted by Defendants, and bears the Vehicle Identification Number WAUDC68D3YA147547. Plaintiff Carter currently owns said Vehicle which is a Class Vehicle with an Engine having a Design Defect.

38.     Plaintiff Carter has suffered an ascertainable loss as a result of Defendants' wrongful conduct and the Oil Sludge Malfunction, including but not limited to a diminished useful life and diminished value of her Vehicle.

### III.  DEFENDANTS

39.     Defendant Volkswagen of America, Inc. is a corporation duly organized and existing under the laws of the State of New Jersey, having a principal place of business at 3800 Hamlin Road, Auburn Hills, Michigan, and, for purposes of 28 U.S.C. § 1441(b), is a citizen of the State of New Jersey.

40.     Defendant Volkswagen of America, Inc. d/b/a Audi of America Inc. ("Audi") is a corporation duly organized and existing under the laws of the State of New Jersey, having a principal place of business at 3800 Hamlin Road, Auburn Hills, Michigan, and, for purposes of 28 U.S.C. § 1441(b), is a citizen of the State of New Jersey.   Defendants Volkswagen of America, Inc. and Volkswagen of America, Inc., d/b/a Audi of America, Inc., are sometimes

collectively referred to hereafter as ("VW") or ("VW Defendants").

41.     Defendant Volkswagen AG ("VWAG") is a publicly traded German corporation headquartered in Wolfsburg, Germany.

42.     Defendant AUDI AG ("Audi AG") is a German corporation headquartered in Ingolstadt, Germany.

43.     Defendant AUDI AG's stock is 99.14 % owned by Defendant VWAG.

44.     Defendant VW is a subsidiary of Defendant VWAG, and Defendant Audi is a division within Defendant VW.

45.     Defendant VW communicates and coordinates with Defendant VWAG, and is subject to the direction and control of VWAG concerning all material aspects of VW's distribution of VW products in the United States.

46.     Defendant Audi communicates and coordinates with Audi AG and is subject to the direction and control of Audi AG, concerning all material aspects of Audi's distribution of Audi products in the United States.

47.     The Engines in the Class Vehicles were designed and/or manufactured by Defendant(s) VWAG and/or AUDI AG (sometimes collectively referred to hereafter as "AG" or "the AG Defendants").

48.     Defendant VW markets, advertises, warrants, distributes and/or sells automobiles under the "Volkswagen" name and the "Passat" model; Defendant Audi markets, advertises, warrants, distributes and/or sells automobiles under the "Audi" name and the "A4" model.

49.     Defendants AUDI AG and/or VWAG develop the Owner's Manuals, warranty booklets, inserts and vehicle maintenance information furnished at the time of the sale of the

Class Vehicles and thereafter (collectively "Maintenance Recommendations").

50.     Defendants AUDI AG and/or VWAG are responsible for revisions and/or changes to the Maintenance Recommendations for Class Vehicles.

51.     Defendants Audi and VW are qualified to engage in - and Defendants Audi, VW, AUDI AG and VWAG directly and/or through their agents, do engage in - continuous and substantial business in New Jersey, the state in which this action was initially filed.

## IV.  JURISDICTION AND VENUE

52.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because one or more members of the Classes (and each of them), as defined herein, are citizens of a state different from one or more Defendants, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs.

53.     Personal jurisdiction exists over Defendants AUDI AG and VWAG under applicable long arm statutes.  Defendants AUDI AG and VWAG are "persons" within the context of those statutes, who directly and through their agents conduct continuous and systematic economic activities in the district of New Jersey in which one of these consolidated actions initially was filed, as well as in the district of Massachusetts, in which this action was transferred pursuant to the September 21, 2006 Order by the Judicial Panel on Multidistrict Litigation, and throughout the United States.  Defendants AUDI AG and VWAG intentionally and purposefully placed Class Vehicles into the stream of commerce in the districts of New Jersey and Massachusetts, and throughout the United States.

54.     Venue is proper in the district of New Jersey in which one of the consolidated

actions initially was filed pursuant to 28 U.S.C. §1391 because Defendants transact business in

that district, are subject to personal jurisdiction in that district, and therefore are deemed to reside

in that district.  Indeed, the VW Defendants are and have always been corporate citizens of New

Jersey. These Defendants have advertised in that district and have received substantial revenue

and profits from their sales and/or leasing of Class Vehicles in that district; therefore, a

substantial part of the events and/or omissions giving rise to the claims occurred, in part, within

that district.

55.     Venue also lies in the judicial district of Massachusetts under 28 U.S.C. § 1407,

regarding multi-district litigation, and the Order of Transfer, dated September 21, 2006, by the

Judicial Panel on Multidistrict Litigation. [1]

## V.  THE NATURE OF THE DEFECT

56.     The Engines in the Class Vehicles are gasoline internal combustion engines.

These Engines produce heat and require properly designed and properly functioning cooling and

lubrication systems.  Engine oil performs the dual purpose of cooling and lubricating an internal

combustion engine.  A turbocharger increases engine heat or "thermal stress".

57.     If an engine is defectively designed, the oil will prematurely degrade and fail to

adequately dissipate engine heat. The failure to adequately manage this thermal stress will result

in premature oil degradation and the formation of Oil Sludge and deposits.

58.     Proper engine design includes an adequate oil supply, an adequate oil quality and

an adequate crank case ventilation system.

59.     The Engines in the Class Vehicles are defectively designed and the result is the

---

[1] Plaintiffs hereby expressly preserve applicable rights under *Lexicon v. Milberg Weiss Bershad Hynes and Lerach*, 523 U.S. 26 (1998).

Oil Sludge Malfunction. The Design Defect includes, but is not limited to:

    a.    an inadequate oil supply; and

    b.    an inadequate or malfunctioning crank case ventilation system.

60.    The Defendants' authorized Maintenance Recommendations (oil quality and oil change intervals) are improper and exacerbate and accelerate the Oil Sludge Malfunction. The formation of Oil Sludge will occur even if the owner follows these authorized Maintenance Recommendations.

61.    The Oil Sludge Malfunction causes actual damage to the Engines in Class Vehicles and results in a diminished value and diminished useful life of the Class Vehicles.

62.    Damage to the Engines can be determined by objective, reasonably inexpensive visual inspection and analysis.

## VI.  DEFENDANTS' CONCEALMENT OF THE OIL SLUDGE MALFUNCTION

63.    The Design Defect of the Engines in Class Vehicles is not a matter that is known to the general public. The information is technical in nature and an Oil Sludge Malfunction, and its causal relationship to engine failure, is not apparent to the ordinary consumer.  The dissemination of such information, which is proprietary, is exclusively within the control of the Defendants.

64.    Defendants, because of their longstanding involvement in the design and manufacture of internal combustion engines, were aware of feasible means and technology to design and manufacture Engines for Class Vehicles without the Design Defect. Defendants were aware that the Design Defect would result in the Oil Sludge Malfunction and the associated damage to Engines and safety hazards to Plaintiffs, other Class members, and the public.

11

65.     The prevention of an Oil Sludge Malfunction is a longstanding industry design objective. Before a particular engine is mass produced to the public, a proto-type of the engine is, or should be, operated under "engine sequence" conditions in which the oil is monitored to determine whether premature degradation will occur. Such testing also provides the basis for correcting an Oil Sludge Malfunction through design modification.

66.     Another test method utilized to determine whether an engine malfunctions and produces Oil Sludge is through "field testing". This testing involves the monitoring of vehicles that have been placed into use in the stream of commerce.

67.     Defendants knew or should have known that the Engines in Class Vehicles would malfunction and produce Oil Sludge by virtue of their design experience and accepted industry standards and practices. Defendants had actual knowledge of the Design Defect and the Oil Sludge Malfunction soon after they placed the Class Vehicles into the stream of commerce.

68.     Defendants knew the Engines in Class Vehicles were "hot-running" and that the heat produced by this turbocharged Engine was accelerating the degradation of the engine oil and resulting in the Oil Sludge Malfunction. Defendants knew the engine oil supply was inadequate to cool the Engines. Defendants knew the crank case ventilation system for the Engine was not functioning properly, which further contributed to accelerated oil degradation. Defendants knew that the Design Defect existed and would cause the Oil Sludge Malfunction and related Engine damage and failure.

69.     Defendants knew from their study of the Class Vehicles that feasible preventative measures would ameliorate the harm caused by the Oil Sludge Malfunction. These measures included the use of a high quality synthetic engine oil, more frequent oil change intervals, and

12

preventative inspection and cleaning of the Engines in Class Vehicles.

70.     As opposed to issuing recall notices to users of Class Vehicles or to otherwise advise consumers of the Design Defect, and the preventative measures that could be taken to ameliorate the harm, the Defendants continued to manufacture and distribute the Class Vehicles with actual knowledge that the Engines in these Vehicles were malfunctioning and not fit for their intended purpose. The Defendants continued to place the Class Vehicles into the stream of commerce with actual knowledge that their oil Maintenance Recommendations exacerbated the Oil Sludge Malfunction and compounded the Engine damage caused by the Design Defect.

71.     Defendants have sought to conceal the Design Defect *because* the information is material to the decision whether to purchase one of their Vehicles. This deceptive practice has occurred in spite of the legal and equitable duties imposed on the Defendants to inform Vehicle owners and prospective purchasers of the Oil Sludge Malfunction. Defendants knowingly and intentionally concealed material information about the Design Defect with the intent that Plaintiffs and the Class members would rely on the concealment and purchase the Class Vehicles.

72.     The Defendants sought to conceal the Oil Sludge Malfunction through various means, including keeping their definitive testing information secret, even from their own dealerships, and falsely attributing Oil Sludge related Engine damage to poor vehicle maintenance by consumers.

## VII.  DEFENDANTS' AFFIRMATIVE DUTY OF DISCLOSURE

73.     The Defendants had an affirmative duty to disclose the true facts relating to the Design Defect, the Oil Sludge Malfunction, and associated safety risks to purchasers and users

of Class Vehicles and to the general public.

74.     The information the Defendants wrongfully suppressed and concealed was material to actions by Class members including the decision to purchase Class Vehicles and the maintenance and repair of Class Vehicles.

75.     In light of the facts and circumstances, including but not limited to the safety risk resulting from the Design Defect in the Engine of Class Vehicles and the damage to the Engines as a result of the Oil Sludge Malfunction, the Defendants had an affirmative duty to disclose the material facts relating to the Design Defect.

76.     Plaintiffs and Class members had a reasonable expectation that the Defendants would design, manufacture, market and distribute the Class Vehicles without the Engine Design Defect and without serious and significant safety risks and hazards.  Plaintiffs and the Class members also had a reasonable expectation that Defendants would design, manufacture, market, and distribute Class Vehicles with a reasonable useful life and reasonable value undiminished by the Design Defect and Oil Sludge Malfunction.

## VIII.  DEFENDANTS' DECEPTIVE WARRANTY EXTENSION SCHEME

77.     Defendants continued to suppress, conceal and/or misrepresent the Oil Sludge Malfunction and its cause, in August 2004, in public announcements and uniform, written materials, under the guise of a warranty extension, (hereinafter the "Warranty Extension Scheme").  The Defendants affirmatively misrepresented the nature and cause of the Oil Sludge Malfunction in the Class Vehicles. Defendants identified the issue as "Oil Sludge" and stated that this "condition . . . occurs primarily when the Engine is operated at oil change intervals beyond those prescribed . . . or when oil with lower quality than Volkswagen recommended

standard is used." Defendants knowingly and intentionally concealed from Plaintiffs and the

Class members that the Class Vehicles suffer from the Engine Design Defect and/or incorrect oil

Maintenance Recommendations, which is the true cause of the Oil Sludge Malfunction in the

Class Vehicles.

78.     When the Defendants published their Warranty Extension Scheme, they did so

with actual knowledge that the Oil Sludge Malfunction was occurring even when their oil

Maintenance Recommendations were followed.

79.     The Defendants concocted the Warranty Extension Scheme for the express

purpose of falsely attributing the damage caused by their Design Defect to consumer misuse and

as a means to deter thousands of claims for Engine damage caused by the Oil Sludge

Malfunction.

80.     The Defendants also concocted the Warranty Extension Scheme with knowledge

that the Oil Sludge Malfunction could only be eliminated by design modifications to the Engine

and that without such modifications all Engines suffered a diminished useful life.

81.     Defendants improperly and/or fraudulently failed to administer the Warranty

Extension Scheme and/or perform repairs caused by the Design Defect.

## IX.  DEFENDANTS' MODIFICATION OF THE MAINTENANCE RECOMMENDATIONS

82.     When the Defendants published their Warranty Extension Scheme, they also

published modified oil Maintenance Recommendations that only "Engine oils with Volkswagen

Oil Standard VW 502.00" be used.  This standard could only be met by use of quality synthetic

engine oil.

83.     In fact, and in practice, the modified engine oil Maintenance Recommendations constituted a burden wrongfully imposed upon Plaintiffs and the Class members.

84.     Synthetic engine oil costs significantly more than petroleum oil.

85.     In addition to recommending more expensive synthetic engine oil, the Defendants also recommended that technicians use a larger oil filter.

86.     As a result of Defendants' modification of the Maintenance Recommendations of the Class Vehicles, the cost of routine oil changes more than doubled.

## X.  AGENCY, DIRECTION, CONTROL AND RATIFICATION BY THE AG DEFENDANTS

87.     Plaintiffs allege, on information and belief, that both the foreign AG Defendants and domestic VW Defendants acted together, jointly and in concert, with respect to:

   a.      the Defective Design;

   b.      the misrepresentations and omissions related to the Defective Design and Oil Sludge Malfunction of the Engines in the Class Vehicles;

   c.      the preparation and distribution of the original oil and related Maintenance Recommendations;

   d.      the August 2004 promulgation of the considerably more expensive modified oil Maintenance Recommendations, and

   e.      the concoction and implementation of the fraudulent Warranty Extension Scheme and related concealment and suppression of the Oil Sludge Malfunction.

88.     Plaintiffs further allege that the foreign AG Defendants have affirmatively directed and controlled the wrongful actions of the domestic VW Defendants and/or have ratified

the wrongful actions of the domestic VW Defendants.  Accordingly, the foreign AG Defendants are liable, jointly and severally, for all of the wrongful actions of the domestic VW Defendants.

89.     The foreign AG Defendants' unfair and deceptive conduct had the foreseeable, proximate, and actual effect of injuring Plaintiffs and Class members.

90.     In the alternative, as a result of the domination, direction, and control of the domestic VW Defendants by the foreign AG Defendants, said AG Defendants are liable for the wrongful actions of the VW Defendants based upon principles of agency.

## XI.  DAMAGES

91.     As a consequence of Defendants' wrongful conduct, as alleged herein, Plaintiffs and Class members have incurred ascertainable economic damages including, but not limited to, the following:

a.     substantially diminished value of Class Vehicles;

b.     substantially diminished useful life of the Class Vehicles;

c.     substantially increased costs for maintenance;

d.     Engine repair costs; and/or

e.     Engine replacement costs.

92.     Such damages have had the effect of injuring Plaintiffs and the Class by, *inter alia,* requiring an increase in the amount of out-of-pocket expenses required for maintenance and repair of the Class Vehicles, decreasing the intrinsic (and re-sale) value of the Class Vehicles, and substantially altering the basis of the bargain obtained by Plaintiffs and the Class when they purchased one of the Class Vehicles.

93.     Defendants have also wrongfully failed to offer diagnostic evaluation and repair

of the Engines in Class Vehicles, notwithstanding the unreasonable safety risks created by the Oil Sludge Malfunction.

## XII.  ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATION

94.     As a result of Defendants' misrepresentations, suppression and concealment of material facts, the Defendants are barred and estopped from relying upon any applicable statutes of limitation.  Defendants' fraudulent conduct, as alleged herein, gives rise to a tolling of applicable statutes of limitation. Defendants' misrepresentation, suppression and concealment relate to the Defective Design of the Engine, the illusory warranties and improper Maintenance Recommendations provided when the Class Vehicles were placed into the stream of commerce, and Defendants' affirmative misrepresentation, suppression and concealment of material facts relating to the Oil Sludge Malfunction at all material times and, specifically, but not exclusively, the misleading, false, and incomplete information provided by Defendants in August 2004.

## XIII.  CLASS ACTION ALLEGATIONS

95.     Plaintiffs bring this action on their own behalf and on behalf of all persons or entities in the United States who are current or former owners and/or lessees of Class Vehicles who have suffered or will suffer out of pocket loss and/or other ascertainable loss of monies and/or property and/or value as a result of Defendants' wrongful acts, misrepresentations suppression, concealment, and/or omissions, excluding Defendants, their parents, subsidiaries, affiliates and agents, and also excluding claims for personal injury by Class members (the "Damage Class").

96.     Plaintiffs (except Plaintiffs Nager, Marks, Cohen and Montag) also bring this

action on behalf of all persons or entities in the United States who are current owners and/or

lessees of Class Vehicles, excluding Defendants, their parents, subsidiaries, affiliates and agents,

and also excluding claims for personal injury by Class members (the "Injunctive Relief Class").

97.     In addition, Plaintiffs Cole and Carter bring an action on behalf of a subclass of

all residents of the state of California who are current or former owners and/or lessees of Class

Vehicles who have suffered or will suffer out of pocket loss and/or other ascertainable loss of

monies and/or property and/or value as a result of Defendants' wrongful acts, misrepresentations,

suppression, concealment, and/or omissions, excluding Defendants, their parents, subsidiaries,

affiliates and agents, and also excluding claims for personal injury by Class members (the

"California Damage and Injunctive Relief  Subclass"). The Damage Class, the Injunctive Relief

Class, and the California Subclass are sometimes collectively referred to as the "Classes".

98.     Upon information and belief, each of the Classes are so numerous that joinder of

all members is impracticable. While the exact number and identities of individual members of

the Classes and affected Vehicles are unknown at this time, such information being in the sole

possession of Defendants and obtainable by Plaintiffs only through the discovery process,

Plaintiffs believe that hundreds of thousands of Class Vehicles have been sold and leased in the

United States of America.

99.     The issues of Design Defect and the cause of the Oil Sludge Malfunction to the

Engine in every Class Vehicle, are subject to generalized proof in a single trial (and thus

outweigh any issues in the proposed class action which might be subject to individualized proof).

100.     Determination of the actual cause of the Oil Sludge Malfunction may be

accomplished by objective, relatively inexpensive and standardized testing and does not require

any individualized or subjective fact-finding.

101.    The above testing is identical for all models which comprise the Class Vehicles.

102.    There are questions of law and fact common to each of the Classes.

Representative questions of law and fact include, but are not limited to:

a.   whether the Engines in Class Vehicles suffer from the Oil Sludge
Malfunction;

b.   whether the Engines in Class Vehicles were defectively designed;

c.   whether the Engine Design Defect and Oil Sludge Malfunction are common
to all Class Vehicles;

d.   whether the original oil Maintenance Recommendations supplied by the
Defendants exacerbated the Oil Sludge Malfunction and accelerated Engine
failure caused by the Design Defect;

e.   whether the Design Defect and Oil Sludge Malfunction create an
unreasonable safety risk;

f.   whether the Class Vehicles have a substantially diminished useful life;

g.   whether the Class Vehicles have a substantially diminished value;

h.   whether Defendants knowingly failed to disclose the Design Defect and Oil
Sludge Malfunction with the intent that others rely upon such concealment,
suppression or omission;

i.   whether Defendants used or employed unconscionable commercial
practices in connection with the sale or lease of Class Vehicles;

j.   whether Defendants engaged in deceptive and unconscionable trade

practices in connection with the Warranty Extension Scheme;

k.  whether, as a result of Defendants' conduct, Plaintiffs and members of the Classes have suffered ascertainable loss of monies and/or property and/or value;

l.  whether Defendants' omissions and/or misrepresentations of material facts related to the Oil Sludge Malfunction, Engine Design Defect and/or altered oil Maintenance Recommendations constitute a breach of contract by Defendants;

m.  whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the Oil Sludge Malfunction, Engine Design Defect and/or altered oil Maintenance Recommendations, Plaintiffs and members of the Classes have conferred monetary benefits on Defendants which, if retained, would unjustly enrich Defendants;

n.  whether Plaintiffs and members of the Damage Class are entitled to actual damages representing the ascertainable loss of monies and/or property and/or value that have been and/or will be suffered by Plaintiffs and members of the Damage Class as a result of Defendants' misrepresentations and/or omissions related to the Oil Sludge Malfunction, Engine Design Defect and/or altered oil Maintenance Recommendations;

o.  whether Plaintiffs and members of the Injunctive Relief Class are entitled to entry of final injunctive relief compelling Defendants to recall, inspect and, as necessary, effectively repair and/or replace the Engines and/or Engine

components in Class Vehicles; and

p.   whether Plaintiffs and members of the  Injunctive Relief Class are entitled
to entry of final injunctive relief compelling Defendants to fully and
adequately inform consumers of the Oil Sludge Malfunction, and Engine
Design Defect.

103.    The claims of the representative Plaintiffs are typical of the claims of the Classes
(and each of them) because:

a.   as with all members of the Classes, Plaintiffs bought and/or leased Class
Vehicles;

b.   Plaintiffs' Vehicles, like all Class Vehicles, are subject to the same Oil
Sludge Malfunction arising from an identical Design Defect;

c.   the Oil Sludge Malfunction in Plaintiffs' Vehicles, like all Class Vehicles,
emanates from the Engine Design Defect, which is common to all Class
Vehicles, and not merely the manufacture of a few or some of the Class
Vehicles;

d.   Defendants knowingly concealed, suppressed, and/or fraudulently
misrepresented the Oil Sludge Malfunction and Engine Design Defect with
the intent that Plaintiffs, as with all members of the Classes, rely thereon;

e.   as with all members of the Classes, Plaintiffs have suffered or will suffer
ascertainable loss of monies and/or property and/or value as a result of
Defendants' omissions and/or misrepresentations related to the Oil Sludge
Malfunction; and

f.   Plaintiffs (except Plaintiffs Nager, Marks, Cohen, and Montag), like all members of the Injunctive Relief Class, as current owners and/or lessees of Class Vehicles, are entitled to full and adequate disclosure concerning the Engine Design Defect and Oil Sludge Malfunction, and are entitled to have the Engines and/or Engine components in their Class Vehicles inspected and repaired and/or replaced, as necessary.

104.   Plaintiffs will fairly and adequately assert and protect the interests of the Classes (and each of them), because:

a.   Plaintiffs have retained counsel experienced in the prosecution of class action litigation and consumer fraud litigation, and counsel will adequately represent the interests of the Classes;

b.   Plaintiffs and their counsel are aware of no conflicts of interest between Plaintiffs and absent members of the Classes or otherwise; and

c.   Plaintiffs are knowledgeable concerning the subject matter of this action and intend vigorously to prosecute this litigation.

105.   A class action provides a fair, efficient, and superior method for adjudicating this controversy, because:

a.   common questions of law or fact predominate over any questions affecting only individual members. No significant questions of law or fact exist that might affect only individual members or subclasses of individual members that cannot be managed through effective subclass definitions, jury interrogatory modifications, or otherwise, consistent with sound and

creative judicial management, due process of law, and fundamental fairness to Defendants and the Classes;

b.  Plaintiffs are aware of no difficulties likely to be encountered in the management of this action as a class action. Indeed, given the common engine design present in all Class Vehicles, and given the uniform written misrepresentations provided, and uniform omissions not disclosed to members of the Classes, Plaintiffs believe that this action properly invokes the class action procedural device;

c.  the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual Class members which would present Defendants with incompatible standards of conduct. This is so because the common questions of law and fact recited above could conceivably be answered by different courts and different fact finders in different ways, presenting Defendants with an inability to predict or manage their business affairs so that they do not run afoul of the law;

d.  the prosecution of separate actions by individual members of the Classes would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other members not parties to such separate adjudications and which would substantially impair or impede the ability of such other members to protect their interests. This is so because separate actions by individual members of the Classes would effectively result in

24

findings of fact in the first individual action tried being accorded collateral estoppel effect in later actions;

e.   this Court also is appropriate for the litigation of the claims of all members of the Classes pursuant to the Order of Transfer, dated September 21, 2006, by the Judicial Panel on Multidistrict Litigation;

f.   in view of the complexities of the issues and the expenses of litigation, the separate claims of individual Class members are insufficient in amount to support separate actions, and therefore members of the Classes lack the interest individually to control the prosecution of separate actions. The amount in controversy in any such individual action would not justify the intensity of effort and devotion of resources required to maximize the chances of an optimal result. The aggregation of claims in a class action ensures that there is a sufficient amount at stake so as to economically justify the best and most aggressive efforts in discovery, motions practice, and trial against Defendants, whereas individualized claims may not justify such expenditures;

g.   it is unlikely that the amount which may be recovered by individual Class members in this action would be small in relation to the expense and effort of administering this action so as not to justify a class action. This is so because of the economies of scale presented by a class action in a case such as this. If handled as a class action, the claims in this action would be subject to a single discovery period, rather than a multiplicity of repetitive

25

and redundant discovery periods in a multiplicity of individualized actions. Such Class treatment makes the recovery of any given Class member large in relation to the expense and effort of discovery and other litigation procedures, since discovery and litigation efforts and costs can be spread amongst the claims of each Classes member, resulting in lesser per-Class-member expenditures in attorneys' fees and costs, which would otherwise, absent Class treatment, threaten to overtake any recovery which any Classes member could expect to obtain in an individual action. Thus, the trial of a multiplicity of individual actions would cause a wasteful depletion of the limited resources of the Courts and litigants, and concentrating the litigation of many identical claims in one forum is desirable and in the interests of judicial economy and efficiency. Indeed, the uniformity of the theories of liability against Defendants are such as to make Class treatment especially efficient in this action, given that members of the Classes share the same liability theories, requiring the same discovery and proofs; and

h. Defendants have acted or refused to act on grounds generally applicable to the Injunctive Relief Class, thereby making final injunctive, equitable or declaratory relief appropriate with respect to the Injunctive Relief Class.

## XIV. COUNT I - CONSUMER FRAUD UNDER THE NEW JERSEY CONSUMER FRAUD ACT (ALL DEFENDANTS)

106.     Plaintiffs and the Classes incorporate by reference each preceeding and succeeding paragraph as though fully set forth herein.

107.     Plaintiffs and members of the Classes are consumers who purchased and/or leased Class Vehicles for personal, family or household uses.

108.     New Jersey has enacted its Consumer Fraud Act, N.J.S.A. § 56.8-1, (hereinafter the "Act") to protect consumers against unfair, deceptive or fraudulent business practices, unfair competition and false advertising.

109.     The VW Defendants are and always have been corporate citizens of the state of New Jersey and conduct significant business in the state of New Jersey. The AG Defendants likewise conduct significant business in New Jersey.

110.     The Class representatives in this action include citizens of Colorado, Connecticut, Massachusetts, Minnesota, New York and Rhode Island (as well as New Jersey and California), among other states.  The consumer fraud statutes enacted by these states are the same or substantially similar to the New Jersey Consumer Fraud Act. [2]  To the extent that the Court does not apply the New Jersey Consumer Fraud Act to the claims of Plaintiffs and the

---

[2] Colorado (CRS § 6-1-105); Connecticut (Conn. Gen. Statute § 42-110b); Illinois (815 ILCS 505/2, 510/2(12)); Mass (Mass. G.L.A. ch. 93A, §2(a)); Minnesota (Minn. Stat. §§ 325 F.67, 325 F.69, 325D.13); New York (N.Y. G.B.L. § 349(a); Rhode Island (RI Stat. § 6-13.1-1).  Class certification issues, including whether questions of law or fact predominate, are premature at a motion to dismiss stage (as are choice of law issues).  At the time of class certification, Plaintiffs will demonstrate that common questions of law or fact predominate with respect to Plaintiffs' statutory fraud clams as required by FED.R.CIV.P. 23.  Plaintiffs specifically allege that there is no actual or real conflict in the substantive provisions of said statutes.  However, as stated, any determination regarding conflict of law issues as to Count I (or the other Counts of the Complaint) is inappropriate at this stage of the proceedings and should be considered by the Court after appropriate discovery at the class certification stage of this case. Any notice requirements under these statutes have been satisfied or are excused.

Class members, the Class representatives assert claims under the substantially similar consumer

fraud statutes of their respective states.

111.     In violation of the New Jersey Act, Defendants have affirmatively

misrepresented and knowingly concealed, suppressed and failed to disclose material facts

concerning the Engines with the intent that others rely upon such concealment and deception in

connection with the distribution, sale, lease and/or advertising of Class Vehicles.

112.     The conduct of Defendants, as set forth above, constitutes unfair, fraudulent

and/or deceptive trade practices prohibited under the New Jersey Act and other applicable

consumer fraud statutes.

113.     Defendants have deliberately sought to keep consumers from knowing that the

Design Defect and related Oil Sludge Malfunction is present in the Class Vehicles for the

express purpose of deceiving consumers concerning information that is fundamentally material

to the decision whether to purchase one of these Vehicles. When confronted with the Engine

failures caused by the Defect, Defendants then sought to suppress knowledge of the Design

Defect by falsely attributing the damage caused by the Oil Sludge Malfunction to poor vehicle

maintenance.

114.     The conduct of the Defendants, as set forth above, constitutes an unconscionable

commercial practice, and/or deceptive trade practice, and/or the knowing concealment of a

material fact to consumers, and is otherwise unfair and fraudulent conduct prohibited by the Act.

115.     The unfair and deceptive trade practices committed by Defendants were

conducted in a manner giving rise to substantial aggravating circumstances. The Defendants

have deliberately placed hundreds of thousands of Class Vehicles into the stream of commerce

with knowledge that the Engines in these Vehicles were defectively designed and not fit for their ordinary and intended purpose. The Defendants then concocted a Warranty Extension Scheme for the express purpose of falsely attributing the Oil Sludge Malfunction to consumer misuse and as a means to deter thousands of claims for Engine damage caused by the Design Defect.

116.     As a result of Defendants' unfair, fraudulent and/or deceptive trade practices, and/or the knowing concealment of material facts to consumers, Plaintiffs and the Classes have suffered an ascertainable loss of monies and/or property and/or value, including repair costs, diminished useful vehicle life, and diminished resale value based upon current awareness of the Design Defect.

## XV. COUNT II - BREACH OF CONTRACT
## (VW DEFENDANTS)

117.     Plaintiffs and the Classes incorporate by reference each preceeding and succeeding paragraph as though fully set forth herein.

118.     At the time of the distribution of Class Vehicles, Plaintiffs and the Class members entered into contracts of sale or lease with selling dealers (the "Contracts").  The Contracts incorporated Defendants' original oil Maintenance Recommendations.  These requirements were a part of the basis of the bargain included in the Contracts.

119.     The VW Defendants wrongfully and unilaterally modified the terms of the Contracts in August of 2004 when they recommended that Plaintiffs and the Class members use more expensive synthetic engine oil and otherwise purported to modify the Maintenance Recommendations at substantial additional increased cost to consumers.  By this conduct, Defendants wrongfully changed the basis of the bargain.

120.     The VW Defendants were obligated to honor the material provisions of the

29

Contracts including the original Maintenance Recommendations or, alternatively, bear the increased cost of such requirements. The Defendants had no right or legal basis to shift or attempt to shift the increased cost of synthetic engine oil and other maintenance requirements to Plaintiffs and the Class members.

121.     By their refusal to honor the original Contracts and bear the increased cost of more expensive synthetic engine oil and the other maintenance requirements the VW Defendants have breached material terms of the original Contracts.

122.     As a consequence of Defendants' wrongful and unconscionable conduct in concealing the Design Defect, any purported exclusion of incidental or consequential damages or other limitation of remedies are unenforceable.  Any such purported remedy limitations are further unenforceable as being without consideration or mutual assent.

123.     The VW Defendants have received timely notice from Plaintiffs and/or members of the Classes of the breach of contract alleged herein or Plaintiffs and/or members of the Classes are excused from providing such notice based upon the fact that, among other things, the VW Defendants knowingly and intentionally breached material provisions of the Contracts relating to maintenance requirements by their wrongful actions in connection with the Warranty Extension Scheme.

124.     As a direct result of the material breach alleged herein, Plaintiffs and Class members are entitled to, among other things, recovery of the increased maintenance costs unilaterally imposed by the VW Defendants.

## XVI. COUNT III - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (ALL DEFENDANTS)

125.     Plaintiffs and the Classes incorporate by reference each preceeding and

succeeding paragraph as though fully set forth herein.

126.     As manufacturers and/or distributors of the Class Vehicles, Defendants are "merchants," within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

127.     The Class Vehicles are "goods," as defined by the various states' commercial codes governing the implied warranty of merchantability.

128.     Implied in the sale and/or lease of the Class Vehicles is a warranty of merchantability that requires, among other things, that the Class Vehicles pass without objection in the trade and are fit for the ordinary purposes for which the Class Vehicles are used.

129.     The Defendants impliedly represented and warranted that the Engines in the Class Vehicles were fit for the ordinary purposes for which such goods are used, and were otherwise merchantable.

130.     The Defendants breached this implied warranty because the Engines in the Class Vehicles malfunctioned causing the accumulation of harmful Oil Sludge, which damaged the Engines and substantially reduced the useful life and value of the Class Vehicles.

131.     All Class Vehicles were manufactured and distributed with the same Design Defect and related Oil Sludge Malfunction and the Class Vehicles were therefore not of merchantable quality at the time they were distributed into the stream of commerce by the Defendants.

132.     As a result of the Engine Design Defect and related Oil Sludge Malfunction Plaintiffs and Class members have suffered economic damages in an amount to be ascertained at trial.

133.     Because Defendants knew of, but failed to disclose, the Design Defect and related Oil Sludge Malfunction in the Engines, any durational limitation on, or disclaimer of, implied warranties by the Defendants constitutes illicit overreaching, thereby rendering the terms unconscionable and ineffective.

134.     Moreover, Defendants had actual knowledge of the Design Defect and Oil Sludge Malfunction and any further or additional notice is excused in these circumstances and by Defendants' fraudulent and unconscionable conduct.

## XVII. COUNT IV - UNJUST ENRICHMENT
## (ALL DEFENDANTS)

135.     Plaintiffs and the Classes incorporate by reference each preceeding and succeeding paragraph as though fully set forth herein.

136.     The Defendants caused the Class Vehicles to be distributed into the stream of commerce with knowledge that the Vehicles would be purchased and/or leased by consumers based upon a reasonable expectation that the Engines were free of defect.

137.     The Defendants caused the distribution of the Class Vehicles with the knowledge that the Design Defect present in the Engines made these Vehicles worth less than the defect-free price being paid for the Vehicles.

138.     The Defendants thus received an economic benefit at the expense of the consumers of the Class Vehicles.

139.     Subsequent to the time of purchase and/or lease, the Defendants have also benefitted, directly and indirectly, from the payments by Class members for repairs necessitated by the Oil Sludge Malfunction.

140.     The Defendants have further benefitted, directly and/or indirectly, by avoiding

costs of correcting the Engine Design Defect, making repairs, and recalling the Class Vehicles

for appropriate diagnostic inspection.

141.    Defendants have received a benefit, directly and/or indirectly, as a result of the

payment by Plaintiffs and Class members of significantly increased costs of routine oil

maintenance for the Class Vehicles.

142.    The acts and omissions of the Defendants, as alleged herein, have been at the

direct expense of Plaintiffs and Class members.  Plaintiffs would not have purchased the Class

Vehicles had they known the true facts relating to the Engine Design Defect.

143.    Defendants knew and had actual knowledge of the benefit they would receive as

a result of their wrongful acts and omissions, and the Defendants also had actual knowledge of

the expense and damage to Plaintiffs and Class members as a result of their misconduct.

144.    Principles of equity and good conscience make it unjust for Defendants to retain

the benefit conferred on them by consumers of the Class Vehicles, and Defendants should be

required to pay for this benefit.

## XVIII. COUNT V - VIOLATION OF THE CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ. FOR UNFAIR BUSINESS PRACTICES (ALL DEFENDANTS)

145.    The California Plaintiffs and the California subclass incorporate by reference

each preceeding and succeeding paragraph as though fully set forth herein.

146.    These Plaintiffs bring this action pursuant to California's Unfair Competition

Law ("UCL") Business & Professions Code section 17200, *et seq*. The UCL defines unfair

competition to include any "unfair," "unlawful," or "fraudulent" business act or practice and

further provides for injunctive relief and restitution for such violations. By this action, Plaintiffs

33

seek to enjoin unfair, unlawful, and fraudulent business practices and to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices.

147.    Defendants have committed acts of unfair competition, as defined by the Business and Professions Code section 17200, *et seq*. by engaging in the following practices:

     a.     knowingly and intentionally concealing from Plaintiffs and the Class members the existence of the Engine Design Defect and the costs, risks and loss of value associated with the Oil Sludge Malfunction;

     b.     making false, fraudulent and deceptive representations regarding the cause of the Design Defect and Oil Sludge Malfunction;

     c.     improperly requiring Plaintiffs and the Class members to incur significantly increased vehicle maintenance costs; and

     d.     Defendants' unconscionable practices and unfair conduct resulted in the detriment and injury to Plaintiffs and Class members. The harm to Plaintiffs and Class members outweighs the utility of Defendants' actions. Defendants' practice of concealing the Engine Design Defect and related Oil Sludge Malfunction from Plaintiffs and Class members constitutes an unfair business act or practice within the meaning of Business and Professions Code section 17200.

148.    Defendants' business practices, and specifically, the suppression and concealment of material facts, and the misrepresentations alleged herein were and are likely to deceive the public.

149.    The unlawful business practices of Defendants as described above, present a continuing threat to members of the public.

150.    Defendants were under a duty to disclose to Plaintiffs and the Class the true facts relating to the Engine Design Defect because:

      a.  Defendants were in a superior position to know the true state of facts about the Engine and related Oil Sludge Malfunction in Class Vehicles;

      b.  Plaintiffs and the Class members could not reasonably have been expected to learn or discover the true facts relating to the Oil Sludge Malfunction or the truth concerning the Defendants' Warranty Extension Scheme; and

      c.  Defendants knew that Plaintiffs and Class members could not reasonably have been expected to learn or to discover the true facts concerning the Engine Design Defect, and Defendants sought through the auspices of its Warranty Extension Scheme to deceive Plaintiffs and Class members concerning the existence of the Oil Sludge Malfunction in Class Vehicles.

151.    In failing to disclose and suppressing material facts in the Warranty Extension Scheme, Defendants have knowingly, intentionally, and wrongfully concealed and misrepresented material facts and have breached their duties to Plaintiffs and Class members to present true facts and to avoid suppression and concealment of material facts relating to Class Vehicles.

152.    The facts which the Defendants have misrepresented and have suppressed and concealed, as alleged herein, were and are material to Plaintiffs and Class members, particularly

given the safety and other serious and substantial consequences of the Engine Design Defect and Oil Sludge Malfunction in Class Vehicles.

153.    As a direct and proximate cause of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and the Class have suffered actual damages in that they own Class Vehicles that have a substantially diminished useful life and which have or will require Plaintiffs and the Class to incur costs to repair and/or replace Engines, and which have a substantially diminished value.

154.    Plaintiffs and the Class seek preliminary and permanent injunctive relief against these unfair business practices pursuant to Sections 17203 and 17204 of the Business & Professions Code.

155.    In addition, Defendants' wrongful acts and omissions, as alleged herein, constitute a violation of the California Consumer's Legal Remedies Act, California Code § 1750, *et. seq.*

## XIX. COUNT VI - VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, ET SEQ.

156.    The California Plaintiffs and the California subclass incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

157.    These Plaintiffs bring this action pursuant to California's Consumer Legal Remedies Act ("CLRA") California Civil Code § 1750, et seq.  The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

158.    By this action, Plaintiffs seek to enjoin the unfair, unlawful, and deceptive acts and conduct of the Defendants.

159.    The Class Vehicles are "goods" as defined by the CLRA in California Civil Code § 1761(a).

160.    The maintenance, or other work, labor and services performed on the Class Vehicles related to the Engine Design Defect and Oil Sludge Malfunction are "services" as defined by the CLRA in California Civil Code § 1761(b).

161.    Defendants are "persons" as defined by the CLRA in California Civil Code § 1761(c).

162.    Plaintiffs and other Class members are "consumers" as defined by the CLRA in California Civil Code § 1761(d).

163.    Defendants engaged in unfair and deceptive acts in violation of the CLRA by:

a.    knowingly and intentionally concealing the costs and risks associated with the Design Defect, Oil Sludge Malfunction, and related Engine damage from Plaintiffs and the Class members;

b.    making false, fraudulent and deceptive representations regarding the cause of Oil Sludge Malfunction in connection with the Warranty Extension Scheme; and

c.    improperly requiring significantly increased maintenance costs to be born by Plaintiffs and the Class members.

164.    This unfair and deceptive conduct is a violation of California Civil Code section 1770(a)(5) which prohibits "Representing that goods or services have sponsorship, approval,

characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person

has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

165.    This unfair and deceptive conduct is also a violation of California Civil Code

section 1770(a)(7) which prohibits "Representing that goods or services are of a particular

standard, quality, or grade, or that goods are of a particular style or model, if they are of

another."

166.    The Defendants' unfair and deceptive acts and conduct have violated, and

continue to violate, California's Consumer Legal Remedies Act, because they extend to

transactions that are intended to result, or have resulted, in the sale or lease of goods or services

to consumers.

167.    As a direct and proximate cause of Defendants' unfair and deceptive acts or

practices, Plaintiffs and the Class have suffered actual damages in that they have purchased Class

Vehicles containing Engines with the Design Defect as alleged herein.

168.    The Defendants' unfair or deceptive acts or practices have occurred repeatedly

in Defendants' trade or business, were capable of deceiving a substantial portion of the

purchasing public and imposed an unreasonable safety risk on the public.

169.    The Defendants were under a duty to Plaintiffs and the Class members to

disclose the true facts concerning the Class Vehicles as more fully set forth herein.

170.    In failing to disclose the Engine Design Defect and Oil Sludge Malfunction,

Defendants have knowingly and intentionally concealed material facts and breached their duty

not to do so.

171.     The facts concealed or not disclosed by Defendants to Plaintiffs and the Class members are material in that a reasonable consumer would have considered them important in deciding whether to purchase or lease a Class Vehicle.

172.     Plaintiffs and the Class members reasonably expected the Engines in the Class Vehicles to function properly for the useful life of the Vehicles without having to incur the damages caused by the Design Defect.

173.     Plaintiffs and the Class members are entitled to and eligible for injunctive relief.

174.     Plaintiffs and the Class members seek preliminary and permanent injunctive relief against the Defendants' unfair and deceptive acts and conduct.

175.     On October 15, 2007, Plaintiffs served the Defendants with notice and demand to correct, repair, replace or otherwise rectify the unlawful, unfair, false and deceptive practices complained of herein, as required by the CLRA in California Civil Code § 1782.  If Defendants fail to do so within thirty (30) days of that demand, Plaintiffs will amend this Complaint to seek damages and the other additional relief as allowed under California Civil Code § 1780.

## XX. COUNT VII - DECLARATORY JUDGMENT  - 28 U.S.C. § 2201-2202 AND FEDERAL RULE OF CIVIL PROCEDURE 57

176.     Plaintiffs and the Classes incorporate by reference each preceeding and succeeding paragraph as though fully set forth herein.

177.     An actual controversy exists between the Plaintiffs and the Defendants as set forth in this Complaint.

178.     Specifically, as alleged in Count II, the Defendants have committed a breach of contract by substantially increasing the cost of oil and related maintenance, as of August of 2004, for the Engines in Class Vehicles. Defendants have wrongfully attempted to transfer such costs

to Plaintiffs and the Class members.

179.    The specific controversy between Plaintiffs, the Class members and the Defendants relates to the matter whether Defendants have unilaterally and wrongfully altered the basis of the bargain entered into with Plaintiffs and the Class members related to Engine oil and related maintenance requirements, as alleged in Count II.

180.     In this count for declaratory judgment, Plaintiffs ask that this Court declare the rights of the parties with respect to issue.

181.    Specifically, pursuant to 28 U.S.C. §§ 2201 – 2202 and F. R. Civ. P. 57, Plaintiffs and the Class request that the Court declare and adjudge that Plaintiffs and the Class are entitled to recover the increased costs of engine oil and related maintenance which Defendants have sought to impose on Plaintiffs and the Class members.

WHEREFORE, Plaintiffs and the Classes respectfully request that the Court:

     a.    certify the Classes as defined above or with such qualifications, descriptions, limitations, or enlargements as may later be determined through motions practice or otherwise to be in the best interest of a fair and efficient adjudication of the claims brought on behalf of the Classes;

     b.    enter judgment in favor of Plaintiffs and the Classes and against Defendants;

     c.    afford Plaintiffs and the Injunctive Relief Class final injunctive relief compelling Defendants to recall, inspect and, as necessary, repair and/or replace Engines and/or component parts in their Class Vehicles and adequately inform members of the  Injunctive Relief Class of the Oil

Sludge Malfunction, Engine Design Defect and/or altered oil Maintenance Recommendations;

d.      award Plaintiffs and the Damage Class actual damages representing, with interest, the ascertainable loss of monies and/or property and/or value incurred as a result of Defendants' omissions and/or misrepresentations related to the Oil Sludge Malfunction, Engine Design Defect and/or altered oil Maintenance Recommendations and/or otherwise;

e.      award Plaintiffs and the Damage Class damages incurred as a result of Defendants' breach of contract;

f.      award Plaintiffs and the Classes restitution for the unjust enrichment conferred on Defendants;

g.      award Plaintiffs and the Damage Class treble damages;

h.      award Plaintiffs and the Classes the costs, filing fees, and expenses associated with the prosecution of this action, including but not limited to reasonable attorneys' fees; and

i.      award Plaintiffs and the Classes such additional relief as deemed necessary or proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated: October 15, 2007       By:  _/s/_Sheryl S. Levy_____
                                   Merrill G. Davidoff
                                   Sheryl S. Levy
                                   Russell D. Henkin
                                   **BERGER & MONTAGUE, P.C.**
                                   1622 Locust Street
                                   Philadelphia, PA  19103
                                   Ph. (215) 875-3000
                                   Fax (215) 875-5707
                                   PLAINTIFFS' LEAD COUNSEL

                                   Kirk D. Tresemer
                                   Randal R. Kelly
                                   Brad R. Irwin
                                   **IRWIN & BOESEN, P.C.**
                                   501 S. Cherry St., Ste. 500
                                   Denver, CO  80246
                                   Ph. (303) 320-1911
                                   Fax (303) 320-1915
                                   CO-CHAIR PLAINTIFFS' EXECUTIVE
                                   COMMITTEE

                                   Peter J. McNulty
                                   **MCNULTY LAW FIRM**
                                   827 Moraga Drive
                                   Los Angeles, CA  90049-1677
                                   Ph. (310) 471-2707
                                   Fax (310) 472-7014
                                   CO-CHAIR PLAINTIFFS' EXECUTIVE
                                   COMMITTEE

                                   Thomas G. Shapiro
                                   Edward F. Haber
                                   Adam M. Stewart
                                   **SHAPIRO HABER & URMY LLP**
                                   53 State Street, 37th Floor
                                   Boston, MA  02109
                                   Ph. (617) 439-3939
                                   Fax (617) 439-0134
                                   PLAINTIFFS' LIASON COUNSEL

Jonathan H. Waller.
**WALLER LAW OFFICE**
2140 11th Ave., S.
Suite 222, The Park Building
Birmingham, AL 35205

K. Stephen Jackson
Joseph L. Tucker
**JACKSON & TUCKER, PC**
2229 1st Ave. North
Birmingham, AL 35203

John K. Weston
Charles A. Mangan
**SACKS & WESTON**
114 Old York Road
Jenkintown, PA 19046

Kevin Maxwell
Thomas Vaughan
**VAUGHAN & MAXWELL, PA**
205 E. Central Blvd.
City Centre Building, Suite 500
Orlando, FL 32801

Jack Gorny
Joseph G. Antinori
**FOX ROTHSCHILD, LLP**
Midtown Building
1301 Atlantic Ave., Suite 400
Atlantic City, NJ 08401

Joseph G. Sauder
Benjamin F. Johns
**CHIMICLES & TIKELLIS LLP**
361 W. Lancaster Ave.
Haverford, PA 19041

Attorneys for Plaintiffs and the Classes

**<u>CERTIFICATE OF SERVICE</u>**

I, Sheryl S. Levy, hereby certify that Plaintiffs' Second Amended Class Action

Complaint, serving as Master Complaint in MDL No. 1790, 1:06-md-1790, was filed on October

15, 2007 through the ECF system in the United States District Court in the District of

Massachusetts, and will be sent electronically to the registered participants as identified on the

Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-

registered participants on October 15, 2007.

_/s/_Sheryl S. Levy_____
Sheryl S. Levy