UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re*<br><br>VOLKSWAGEN AND AUDI EXTENDED WARRANTY LITIGATION | Master File No. 1:07-md-01790<br><br>CLASS ACTION |
| This document relates to:<br><br>**All Cases** | |

**MEMORANDUM OF POINTS AND AUTHORITIES
OF VOLKSWAGEN AG AND AUDI AG
IN SUPPORT OF MOTION TO QUASH PURPORTED
NOTICE OF DEPOSITIONS OF NON-PARTY EMPLOYEES
AND FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION  AND SUMMARY ................................................................................. 1

FACTS ................................................................................................................................. 2

ARGUMENT ...................................................................................................................... 5

   I.     IN THE WORDS OF THIS COURT, DEPOSITION TESTIMONY OF NON-
         PARTY WITNESSES LOCATED ABROAD "MUST BE PROCURED
         THROUGH LETTERS OF REQUEST" UNDER THE HAGUE EVIDENCE
         CONVENTION. ......................................................................................................... 5

  II.    THE EMPLOYEES OF VWAG AND AUDI WHOM PLAINTIFFS WOULD
         DEPOSE ARE NOT OFFICERS, DIRECTORS OR MANAGING AGENTS OF
         EITHER AUDI AG OR VOLKSWAGEN AG. ........................................................ 7

        *a.*  *None of the employees of Audi and VWAG is "invested by the corporation*
           *with general powers to exercise his judgment and discretion in dealing*
           *with corporate matters." ................................................................................* 8

        *b.*  *Given their absolute right to refuse a directive from their employer to*
           *testify, as well as the refusal of the Works Council of consent necessary to*
           *such activity on their part under governing German law, none of the*
           *employees "could be depended upon to carry out his employer's direction*
           *to give testimony at the demand of a party engaged in litigation with the*
           *employer." .....................................................................................................* 10

 III.   THE HAGUE EVIDENCE CONVENTION IS NOT IN TENSION WITH U.S.
         LAW.  IT IS U.S. LAW. ........................................................................................ 11

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

*Cases*

*Cleveland v. Palmby,*
  75 F.R.D. 654 (W.D. Okla. 1977).......................................................................... 6

*Glasgow v. Mich. City Police Dep't,*
  2005 U.S. Dist. LEXIS 6025 (N.D. Ind. Apr. 8, 2005) ........................................... 7

*Hudson v. Hermann Pfauter GMBH & Co.,*
  117 F.R.D. 33 (N.D.N.Y. 1987)............................................................................. 15

*In re Byrd, Inc.,*
  927 F.2d 1135 (10th Cir. 1991) .............................................................................. 6

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,*
  220 F.R.D. 235 (S.D.N.Y. 2004.............................................................................. 5

*Murphy, Jr. v. Reifenhauser KGMashinenfabrik,*
  101 F.R.D. 360 (D.Vt. 1984) ................................................................................ 12

*Orlich v. Helm Brothers, Inc.,*
  160 A.D.2d 135, 560 N.Y.S.2d 10 (N.Y.A.D. 1990)................................................ 7

*Phila. Indem. Ins. Co. v. Fed. Ins. Co.,*
  215 F.R.D. 492 (E.D. Pa. 2003).............................................................................. 5

*Reed Paper Co. v. Procter & Gamble Distrib. Co.,*
  144 F.R.D. 2 (D. Me. 1992).................................................................................... 8

*Rubin v. General Tire and Rubber Co.,*
  18 F.R.D. 51 (S.D.N.Y. 1955) ................................................................................ 8

*Smith v. Shoe Show of Rocky Mt., Inc.,*
  2001 U.S. Dist. LEXIS 8618 (D. Mass. Apr. 26, 2001) .......................................... 8

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court.,*
  482 U.S. 522 (1987).......................................................................... 12, 13, 14, 15

*Thomson Information Svcs v. British Telecommunications,*
  940 F.Supp. 20(D. Mass. 1996) .......................................................................... 2, 6

*Tulip Int'l Computers, B.V. v. Dell Computer Corp.*,
　254 F. Supp. 2d 469 (D. Del. 2003) ............................................................................ 6

*Rules*

Fed.R.Civ.P 44.1 .............................................................................................................. 1

Fed.R.Civ.P. 30(a)(2) ............................................................................................... 7, 8, 10

Fed.R.Civ.P. 30(b)(6) .................................................................................................... 1, 5

Fed.R.Civ.P. 45(a)(2)(B) ................................................................................................. 6

Fed.R.Civ.P. 45(c)(3)(A)(ii) ............................................................................................ 6

*Constitutional Provisions*

U.S. Constitution, Art. VI, cl. 2 ..................................................................................... 12

*Treaties*

Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters,
　March 18, 1970, 23 U.S.T. 2555 ( "Hague Evidence Convention") ................................ passim

*Other Authorities*

Streeter, *Co-Determination in West Germany – Through The Best (And Worst) of Times*,
　58 Chi.-Kent. L. Rev. 981 (1982) ............................................................................... 3

## INTRODUCTION  AND SUMMARY

Defendants Volkswagen AG ("VWAG") and AUDI AG ("Audi") move to quash the Notice of Deposition to them issued by plaintiffs on August 20, 2008. (Motion, Exh. A)

In support, Defendants submit this Memorandum of Points and Authorities, and the declarations, attached as Exhibits to the Motion, of a) Prof. Dr. Klaus Neef (in original and certified translation) regarding generally applicable provisions of German law which affect the rights of all employees of VWAG and Audi named in the notice which is the subject of the motion (Exh. B), b) Dr. Frank Fabian of the VWAG legal department, regarding Dr. Sven-Oliver Kossmehl  (Exh. C)), and c) Dietmar Will of the legal department at Audi, covering present and former Audi employees Dr. Sabine Graf (Exh. D), Harald Kornprobst (Exh.E), Moritz von Manz (Exh. F),  Josef Ruhland  (Exh. G), Peter Kremer (Exh. H) and Michael Jung (Exh. I),

The facts set forth in these declarations and the provisions of German corporate, labor and constitutional law thereby proved under Fed.R.Civ.P 44.1., establish beyond doubt that none of the listed deponents can be a "managing agent" of either Defendant within the meaning of Fed.R.Civ.P. 30(b)(6).  One is no longer even an employee of either corporate Defendant.  The remaining six are all employed in categories which make up the vast bulk of the work force in each corporation, and in which their interests are represented under German corporate and labor law and collectively bargained agreements, by the union-governed "Works Council."  None has decisional authority over any corporate matter, including but not limited to product design, maintenance recommendations, oil releases, and other matters involved in this lawsuit.  Each is tasked only with providing evaluations, assessments and recommendations concerning such matters, which are ultimately acted upon by others.

In addition, under the terms of their employment contracts and under governing German law, neither VWAG nor Audi can legally enforce a directive to any of them to provide testimony in a U.S. court proceeding at the behest of an adversary of their employer without their and their Works Council's explicit consent.  With respect to each current employee, the responsive member of the Works Council has specifically backed his or her refusal to volunteer themselves as corporate spokespersons at depositions in the United States.

Under the test set forth in leading cases decided in this Circuit, none can be deemed a managing agent of either corporate defendant.  Accordingly, the only effective compulsory process for these foreign non-parties must come from a German court acting pursuant to Letters of Request from this Court to the appropriate judicial authorities in Germany, pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555 ("Hague Evidence Convention") – exactly as this Court noted in *Thomson Information Svcs v. British Telecommunications,* 940 F.Supp. 20, 25 n.4 (D. Mass. 1996) (Tauro, J.)   The Hague Evidence Convention is not a defense tactic or a German procedural rule.  By the literal words of the U.S. Constitution, it is the "supreme law of the Land."  Even were it not mandatory, resort to the procedures of the Hague Evidence Convention would be appropriate, as it would secure Plaintiffs their desired evidence while respecting the aspects of the German corporate and labor law regime under established principles of international comity.


### FACTS

VWAG and Audi are German corporate entities which between them employ nearly 130,000 individuals.  (E.g., Exhs. C, D, ¶ 6.)  A total of 81,600 of VWAG's 84,000 employees

occupy this "bottom rung" category of employment.  At Audi, 44,000 employees out of a total of 45,500 fall into this category.  (Exh. B ¶¶ 6, 8, 9; Exhs. D, E, F, G, ¶¶ 6, 8, 9.)  The compensation, hours and working conditions of such employees are governed by contracts, including collectively bargained agreements, with respect to which the employees' interests are espoused by union representatives who participate in the affairs of the company through the "Works Council."[1] (*Ibid.*)  Employees in this category have no managerial functions or responsibilities, receive their work assignments exclusively from their superiors and, absent express authority, have no power to act on behalf of or bind the corporation.  (Exhs. C, D. E. F. G., ¶ 13.)

Five of the seven noticed putative deponents – Kossmehl (VWAG), Graf (Audi), Kornprobst (Audi), von Manz (Audi) and Ruhland (Audi) – fall into this category.  (Exhs. C, D, E, F, G., ¶¶ 6, 8, 9.)  The only current employee of either defendant occupying a higher rung on the corporate ladder, Mr. Jung, is employed by Audi at one level above the others.  There are approximately 1,000 Audi employees in Mr. Jung's employment category.  Such employees are also represented, *inter alia*, by the Works Council. Above Mr. Jung's category there are 500 Audi personnel which include those responsible for corporate decision-making in all subject matter areas in which Mr. Jung functions.  (Exh. I, ¶¶ 8-11.)  Mr. Kremer does not work for either corporate defendant, but for the VW importer and distributor in the Czech Republic, and therefore will not be further discussed.  (Exh. H, ¶ 4.)

None of the listed current employees has authority to direct or establish corporate policy or actions with respect to the subject matter of their employment.  (Exhs. C, D, E, F, G, ¶ 12;

---

[1] This legally mandated participation of employees acting through labor union representatives, in corporate affairs is a hallmark of the specifically German "co-determination" corporate governance regime which affects publicly traded stock corporations such as VWAG and Audi.  See generally, Streeter, *Co-Determination in West Germany – Through The Best (And Worst) of Times*, 58 Chi.-Kent. L. Rev. 981 (1982)

Exh. I, ¶ 11.)  With the exception of Mr. Jung, who has some latitude in this regard, none of the listed current employees even has the power to determine his or her own work assignments. (Exhs., C, D, E, F, G, Exh. I, ¶ 10)  Again, with the exception of Mr. Jung, none has any supervisory or disciplinary authority whatever with respect to any other employee.  (*Ibid*.)

However, by virtue of their employment status, each has the right to refuse to obey a directive from their employer, VWAG or Audi, to travel to New York, or for that matter elsewhere in the U.S. and submit themselves to deposition at the demand of Plaintiffs in this lawsuit. (Exhs. C, D, E, F, G,, ¶¶ 14-19)  Such a departure from their employment duties, which include nothing of the sort, would require not only the consent of the individual employee, but also the agreement of the Works Council.   (Exh. B, ¶¶ 12-21) In the case of each witness involved in the present motion, both such consents have been refused. Under German law, neither VWAG nor Audi could impose or enforce any adverse employment consequences on any employee in the categories of those listed in Plaintiffs' Notice for refusing such a directive.  Prof. Dr. Klaus Neef, a formidably qualified expert on German labor law regulations and corporate labor relationships, distills his extensive analysis of the applicable statutes, constitutional principles and experience in this area with respect to Dr. Kossmehl, in the following terms:

> For the reasons stated . . ., it is my legal opinion that no obligation exists in the context of the employment relationship existing between Dr. Kossmehl and VWAG to give a deposition under oath for a third party in the United States, including one that is video taped.  VWAG has no power or right to direct Dr. Kossmehl to give such a deposition and is not able to enforce any such directive that may be given, through termination or other means.  For this, the consent of the Works Counsel would be required in addition and in my experience would be denied.  The withholding of such consent would not be overturned by a German Labor Court.

Exh. B, ¶ 9,  and *passim.*  Prof. Dr. Neef's opinion has been adopted by Dr. Fabian for VWAG and Mr. Will for Audi.  (E.g., Exh. C, D, ¶ 21)

By contrast, it is not disputed that all of the noticed employees are fully subject to the jurisdiction of the German court system, which has power to enforce their attendance and testimony in acting to execute Letters of Request pursuant to the Hague Evidence Convention. (Exh. B, ¶ 10)[2]

## ARGUMENT

### I.  IN THE WORDS OF THIS COURT, DEPOSITION TESTIMONY OF NON-PARTY WITNESSES LOCATED ABROAD "MUST BE PROCURED THROUGH LETTERS OF REQUEST" UNDER THE HAGUE EVIDENCE CONVENTION.

The basic principles which underlie the instant motion are beyond debate.   Under Fed.R.Civ.P. 30(b)(6), only an officer, director or managing agent of a party can be compelled to testify via a notice of deposition directed to the corporation. *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* 220 F.R.D. 235, 237 (S.D.N.Y. 2004); *Phila. Indem. Ins. Co. v. Fed. Ins. Co.,* 215 F.R.D. 492, 494 (E.D. Pa. 2003).   Corporate employees who are not officers, directors, or managing agents can be compelled to attend a deposition only through process directed to them in their personal capacities. It is "not permissible . . . to notice the deposition of a corporation by a particular person who is not an officer, director or managing agent." *GTE Products Corp. v. Gee*, 115 F.R.D. 67, 69 (D. Mass. 1987).  Accord, *United States v. Afram Lines (USA), Ltd.,* 159 F.R.D. 408, 413 (S.D.N.Y. 1994); *Cleveland v. Palmby,* 75 F.R.D. 654, 656 (W.D. Okla. 1977).

Non-party witnesses who are neither citizens nor residents of the U.S. are immune from compulsory process in the form of a deposition subpoena under Fed.R.Civ.P. 45.   At least three

---

[2] The Czech Republic, where Mr. Kremer is presently employed, is also a party to the Hague Evidence Convention. http://www.hcch.net/index_en.php?act=conventions.publications&dtid=36&cid=82, with link to list of treaty accessions, visited August 2, 2008.  Therefore, judicial assistance under the Hague Evidence Convention is available as to every person listed in Plaintiffs' Notice.

criteria set forth in Rule 45 for a valid subpoena cannot under any conditions be fulfilled where a non-party witness resides and is employed abroad.  First, no "overseas" subpoena could be issued in the name of the federal district where the deposition is to go forward, as required by Fed.R.Civ.P. 45(a)(2)(B).  Second, no such subpoena could be served within the district in which the deposition is to take place, or no more than 100 miles from that place.  Any attempt to serve such process within Germany to meet the radius rule would of course be a direct intrusion on German sovereignty.  Finally, no subpoena of a non-party witness located overseas could validly prescribe a location more than 100 miles from that person's residence or place of employment, while meeting the first two criteria.  Fed.R.Civ.P. 45(c)(3)(A)(ii). Such an invalid subpoena "must be quashed or modified." *Ibid*.  These requirements cannot be waived, even by a prior voluntary appearance or other compliance with the requirements of a facially invalid subpoena. *In re Byrd, Inc.,* 927 F.2d 1135, 1136 (10th Cir. 1991) (Motion to compel compliance with facially invalid subpoena held sanctionable.)

The conclusion which follows is inescapable.  In the words of this Court, "***deposition testimony of [non-U.S.] nonparty witnesses . . .  must be procured through letters of request*** [under the Hague Evidence Convention].")   *Thomson Information Svcs v. British Telecommunications,* 940 F.Supp. 20, 25 n.4 (D. Mass. 1996) (Tauro, J.) (emphasis added); *Tulip Int'l Computers, B.V. v. Dell Computer Corp*., 254 F. Supp. 2d 469, 474 (D. Del. 2003); *Orlich v. Helm Brothers, Inc*., 160 A.D.2d 135, 143, 560 N.Y.S.2d 10 (N.Y.A.D. 1990).  For the reasons discussed below, Plaintiffs cannot approach the requisite showing with respect to any of the noticed individuals.

II.      **THE EMPLOYEES OF VWAG AND AUDI WHOM PLAINTIFFS WOULD DEPOSE ARE NOT OFFICERS, DIRECTORS OR MANAGING AGENTS OF EITHER AUDI AG OR VOLKSWAGEN AG.**

The text "officer, director or managing agent" appears both in Fed.R.Civ.P. 30(b)(6) and in Fed.R.Civ.P. 30(a)(2).   Rule 32(a)(2) specifically references the language in Rule 30(b)(6), thus confirming that the intended meaning is identical in both provisions.   Accordingly, cases decided under both provisions are equally authoritative and are discussed interchangeably below.

The Rule text itself – "officer, director or managing agent" – directly equates "managing agent" to "officer or director."  This is of critical significance.  See *Glasgow v. Mich. City Police Dep't*, 2005 U.S. Dist. LEXIS 6025 at *5-6 (N.D. Ind. Apr. 8, 2005) (functionally equating "officer," "director" and "managing agent" under principle of *noscitur a sociis*.)   Clearly, something beyond mere employment is required, lest every individual on the payroll constitute a managing agent equivalent to an officer or director.  "[T]he test is not 'control,' but whether the [individuals] are officers, directors, or managing agents of [the adverse party]. Only such ***high-ranking employees*** can be compelled to appear pursuant to a mere Rule 30 deposition notice." *Avago Techs. Gen. IP PTE Ltd. v. Elan Microelectronics Corp*., 2007 U.S. Dist. LEXIS 31357 at *5  (N.D. Cal. Apr. 17, 2007) (emphasis added) citing, 8A Wright, Miller & Marcus, *Federal Practice And Procedure* § 2103 (2d ed. 1994).   Conversely, a person who "is merely an underling" cannot be reached by a Rule 30 notice to his or her corporate employer.  *Surles v. Air France*, 2004 U.S. Dist. LEXIS 3710, 9-10 (S.D.N.Y. Feb. 23, 2004), The *Surles* court specifically looked to *Reed Paper Co. v. Procter & Gamble Distrib. Co.,* 144 F.R.D. 2, 6 (D. Me. 1992),  the leading decision within this Circuit, for the proposition that "an employee who 'simply provides assessments and recommendations' to [a] supervisor is not a managing agent." *Surles*, 2004 U.S. Dist. LEXIS 3710 at *10, citing *Reed Paper*, 144 F.R.D. at 6.

*Reed Paper* articulates the "commonly accepted and definitive test for determining an employee's status as a 'managing agent' under Rule 32(a)(2) and various provisions of Rules 30 and 37," as follows:

> First, the employee should be 'a person invested by the corporation with general powers to exercise his judgment and discretion in dealing with corporate matters.' Second, the employee should be a person who 'could be depended upon to carry out his employer's direction to give testimony at the demand of a party engaged in litigation with the employer.' Third, the employee should be a person who can be expected to identify himself with the interests of the corporation rather than with those of the other parties.

*Reed Paper,* 44 F.R.D. at 6, citing *Rubin v. General Tire and Rubber Co.,* 18 F.R.D. 51, 56 (S.D.N.Y. 1955) (Weinfeld, J.) and other authorities.  Accord, *Smith v. Shoe Show of Rocky Mt., Inc*., 2001 U.S. Dist. LEXIS 8618 at *3-4 (D. Mass. Apr. 26, 2001)  All three elements must be present for managing agent status to attach.  *Ibid*.  On the record before the Court, two of the three required elements are conspicuous by their absence.

> a.  *None of the employees of Audi and VWAG is "invested by the corporation with general powers to exercise his judgment and discretion in dealing with corporate matters."*

The *Reed Paper* court's application of this test is particularly in point on the present motion.   In the context of a lawsuit claiming that plaintiff's distributorship agreement had been wrongfully terminated, *Reed Paper* considered the situation of an employee who was both knowledgeable and closely involved in the performance evaluation of the terminated distributor, who had provided assessments and recommendations concerning the ultimate termination of the distributorship which was the gravamen of the lawsuit and who had participated and concurred in the termination decision jointly with her superior.   Nevertheless, the court properly declined to conflate participation and knowledge with authority and therefore found that she was not a "managing agent" whose testimony could bind the corporation on these facts. 144 F.R.D. at 8-9.

In pertinent part, the court noted that the employee "simply provides assessments and recommendations to Mr. Baker [her superior] . . .  she had no general power to make a decision herself with respect to that particular corporate matter . . . . While she indicates that she informed Mr. Baker that she agreed with the termination decision, there is nothing in the record to indicate that she had any authority, or that she would have undertaken on her own initiative to exercise any authority, to terminate the Plaintiff as [a] distributor." *Ibid.*[3]

The VWAG and Audi employees noticed for deposition here are all in substantially lesser positions of decision-making and discretionary authority in corporate matters even than the employee who failed to rise to the level of a managing agent in *Reed Paper*. Their assignments and functions are entirely consultative and advisory.  Plaintiffs' prior submissions as to their "knowledge" and "involvement" point to nothing which indicates that any of them made any corporate decision concerning what countermeasures, design changes, revised specifications or warranty programs were or might be adopted to address oil sludge issues or possessed any authority whatever in general corporate matters.  (Exhs. C, D, E, F, G, ¶¶ 11-13, Exh. I, ¶¶ 10-11.)   In fact, all current employees except for Mr. Jung are in the lowest and most numerous category of employees – comprising at Audi, 44,000 out of 45,500, or 96.7% (Exhs. D, E, F, G, ¶¶ 6, 8, 10) and at VWAG 81,600 out of 84,000 or 97.1%  (Exh. C, ¶¶ 6, 8, 10) of the corporate workforce.  Though Mr. Jung is one category higher, the fact remains that there are 1,000 individuals in his employment category alone, leaving 500 individuals above him in managerial rank at Audi.  (Exh I, ¶¶ 6, 8, 9.)

To hold that persons in such positions are "managing agents" would effectively hold, against all reason, that virtually anyone on a payroll can be deemed a "managing agent" merely

---

[3] *Reed Paper* also found that no managing  agent issue arose with respect to a former employee who was no longer active with the company.  This is the situation with Mr. Kremer, who is not currently employed by either Defendant.

because an adversary is interested in taking his testimony.  Even in the case of Mr. Jung, it defies

common sense to find that Audi has more than 1,500 "managing agents," i.e., the 1,000

individuals in his employment category plus an additional 500 above it, who are functionally

equated by the same language in Rules 30(b)6) and 32(a)(2) to its "officers" and "directors."

> b.  *Given their absolute right to refuse a directive from their employer to testify, as well as the refusal of the Works Council of consent necessary to such activity on their part under governing German law, none of the employees "could be depended upon to carry out his employer's direction to give testimony at the demand of a party engaged in litigation with the employer."*

The second prong of the *Reed Paper* test is whether the employee can be "depended upon

to carry out his employer's directive to give testimony at the demand of a party engaged in

litigation with the employer. "  This criterion might appear at first blush to be easily satisfied on

the theory that "as a present employees, [the employer] can compel his appearance."  See *In re*

*Honda Am. Motor Co*, 168 F.R.D. 535, 541 (D. Md. 1996);  *Boston Diagnostics Dev. Corp., Inc.*

*v. Kollsman Mfs. Co*., 123 F.R.D. 415, 416 (D. Mass. 1988)  In the German legal and corporate

environment, however, that is not the case with corporate employees at the level of those listed in

Plaintiffs' purported Notice.

It bears repeating that the individuals Plaintiffs seek to reach simply by a Rule 30 notice

ostensibly to their employers are German nationals, resident in Germany and employed there by

German corporations.   They are accordingly subject to German law with respect to their

employment relationship and activities.   Prof. Dr. Neef has explained the position of Dr.

Kossmehl and his employer VWAG under applicable German law in terms which apply to all

individuals mentioned in Plaintiffs' Notice, as the VWAG and Audi declarations affirm in their

concluding paragraphs, which adopt Prof.  Dr. Neef's opinions as their own:

> VWAG has no power or right to direct Dr. Kossmehl to give such a
> deposition and is not able to enforce any such directive that may be

> given, through termination or other means.  For this, the consent of the
> Works Council would be required in addition . . .

Exh. B, ¶ 9.  See also *id*., ¶ 19 ("an obligation to give deposition testimony in the above captioned matter would have to be expressly agreed to in the employment contract for a directive to give such testimony to be enforceable.")

The specific refusal of each respective employee to provide such testimony, backed up in each instance by the Works Council in this case, effectively ends the matter.  (Exhs, C, D, E, F, G, ¶ 20, Exh. I, ¶ 19.)  Persons with the absolute right to refuse a directive to testify at Plaintiffs' demand in this case and whose testimony can be and has been barred by the unions which represent them in their relations with their employers self-evidently cannot "be depended upon" to give such testimony. Cf. *Reed Paper*, 144 F.R.D. at 6; *Smith v. Shoe Show of Rocky Mt., Inc*., 2001 U.S. Dist. LEXIS 8618 at *3-4.   Without two of the three indispensable requisites, a finding of managing agent status cannot be  sustained.

## III.    THE HAGUE EVIDENCE CONVENTION IS NOT IN TENSION WITH U.S. LAW.  IT IS U.S. LAW.

The fact that the depositions which Plaintiffs seek are nonparty depositions renders irrelevant any argument regarding the District Court's jurisdiction over VWAG as somehow permitting depositions of employees by notice.  Nevertheless, based on past interchanges, we may expect Plaintiffs to assert that the Hague Convention is somehow at odds with U.S. law or federal jurisprudence.  With all due respect, as already communicated to Plaintiffs' counsel (Docket No. 106, Exh. 6),  this is nonsense.  First of all, the Hague Evidence Convention, as a treaty signed and ratified (and indeed largely promoted and sponsored) by the United States, is U.S. law under the Supremacy Clause of the U.S. Constitution, Art. VI, cl. 2, which expressly provides that "all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."   See also *Societe Nationale Industrielle*

*Aerospatiale v. United States Dist. Court.,* 482 U.S. 522, 533 (1987)("*Aerospatiale*") ("both the discovery rules set forth in the Federal Rules of Civil Procedure and the Hague Convention are the law of the United States."); *Murphy, Jr. v. Reifenhauser KGMashinenfabrik,* 101 F.R.D. 360, 363 (D.Vt. 1984) ("the federal rules and a federal treaty [are] on essentially equal footing").

The Hague Evidence Convention was intended "to establish a system for obtaining evidence located abroad that would be 'tolerable' to the state executing the request and would produce evidence 'utilizable' in the requesting state." *Aerospatiale*, 482 U.S. at 530. Its application is particularly appropriate here, where the Convention provides the only avenue by which the desired evidence can be obtained. As demonstrated above, on the facts of this case, the Hague Evidence Convention is not only supreme U.S. law, but the only applicable U.S. law.

In fact, as applied to non-party witnesses and particularly German company employees, the Convention's procedures are closely analogous to inter-district practice under the Federal Rules, under which a party litigant who wishes to depose a non-party witness or employee outside the subpoena mileage range of the litigation's home district must seek "judicial assistance" through a subpoena issued in the name of and enforced by the federal district court in which the deposition is to be taken. In an exact parallel to the domestic procedure under Rule 45, Fed.R.Civ.P., the Hague Evidence Convention contemplates judicial assistance from the competent judicial authority in the jurisdiction in which the witness is located. The fact that under the Federal Rules the contemplated procedure implicates "judicial assistance" from another U.S. District Court and, under the Convention, the judicial assistance is sought from the courts of another signatory country does not stem from attempted obstructions or opportunistic catering to foreign law but from the simple reality that, when the non-party witness is located abroad, judicial assistance plainly has to be provided by the court where the witness is located.

As indicated by Prof. Neef, the subject employees, like any person subject to German judicial jurisdiction, would have to comply with an order to appear emating from a German court.

A litigant's distaste for the provisions and procedures of the Hague Evidence Convention is irrelevant.  The Convention is U.S. law, indeed the supreme Law of the Land.  The Treaty was sought by the U.S. authorities because in many situations the Convention benefits U.S. citizens and U.S. litigants or U.S. parties and witnesses haled into courts abroad.  In a global economy, a particular litigant's personal or tactical preferences cannot override the overall interests of the United States which undergird the Convention.  In this context, the paramount Federal interest here is the policy of respect and deference to U.S. treaty law specifically designed and intended to apply in cases such as this.

Based on its thorough review of these and other salient factors, the Supreme Court in *Aerospatiale* held that even in cases where, unlike this case, the Federal Rules supplied an applicable alternative and the discovery provisions of the Hague Convention were not mandatory, the Convention's procedures and requirements could not be brushed aside:

> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses.  For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration.

482 U.S. at 546.  The Supreme Court's forcefully stated concern that "the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger

that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence," *ibid.*, looms particularly large in the present circumstances.

Any suggestion, such as previously advanced by Plaintiffs, that VWAG or Audi has waived its position on this motion by its full participation in discovery pursuant to the Federal Rules of Civil Procedure (Docket No. 106, Exhibit 5) is pointless in the context of this case. There is plainly no way that either Defendant could waive the rights of nonparties, including but not limited to the employees at issue here.

Nevertheless, in the wake of *Aerospatiale,* a determination of whether to apply the Federal Rules of Civil Procedure or the Hague Convention even to a party-litigant discovery dispute turns on three factors: 1) the facts of the case in conjunction with the discovery sought; 2) the sovereign interests at issue; and 3) the likelihood that discovery under the Hague Convention will prove effective.  Application of this test here would strongly favor the use of the Hague Convention even were it not mandatory, as demonstrated in Points I and II, above.

First, Plaintiffs have already deposed VWAG and Audi in this matter pursuant to Rule 30(b)(6) and obtained extensive materials.  Indeed, Plaintiffs have freely elected not to question the Rule 30(b)(6) witness on many of the topics Plaintiffs now say they need to explore with non-party witnesses.   What is more, there is no overwhelming Federal interest here which mandates application of the Federal Rules of Civil Procedure to the instant discovery dispute rather than the Hague Convention, which is, in any event, federal law.  Finally, the procedure authorized by the Hague Evidence Convention is effective in providing discovery, as it seeks judicial assistance just as one would under the Federal Rules.  For a "foreign" out-of district non-

party witness, it is not only effective in providing discovery, it is the only means available for Plaintiffs to obtain the testimony of non-party corporate employees.

The Hague Convention must be honored here for the further reason that the discovery which Plaintiffs seek, i.e., the appearance of private German citizens in New York for depositions based solely on their employment status with VWAG or Audi, is not allowed under German labor law without the consent of these individuals and the unions which represent them on the Works Council, both of which have been refused.  As the Supreme Court noted in *Aerospatiale,* 482 U.S. at 546:

> In addition, we have long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation.  American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of the nationality or the location of its operation.

Any attempt to compel the appearance of these individual foreign citizen non-party witnesses other than through the Hague Evidence Convention would violate not only the Treaty itself but the principles of comity recognized in *Aerospatiale.*  It was these very principles which led the Court in *Hudson v. Hermann Pfauter GMBH & Co.,* 117 F.R.D. 33 (N.D.N.Y. 1987) to issue a protective order striking plaintiffs' interrogatories and directing that discovery proceed under the Hague Evidence Convention.  The Court noted in particular:

> . . . [t]he diplomatic problems created by the use of the discovery provisions of the Federal Rules within the border of West Germany – which constitute nothing less than a violation of West Germany's internal laws by outsiders with the approval and support of American courts . . .

117 F.R.D. at 38.

The same is true here.  The deposition notices Plaintiffs have purported to serve are unauthorized by the Federal Rules, unauthorized by the Convention, which is U.S. law, and

would contravene Germany's internal laws and raise the specter of disrespect verging on contempt for binding foreign law directly applicable to the affected individual employees. Both U.S. law and principles of comity require that further proceedings to secure the testimony of these witness go forward in accordance with U.S law, namely the Hague Evidence Convention.


**CONCLUSION**

For the reasons set forth above, the motion to should be granted, the subject Notice of Depositions should be quashed and a protective order entered prohibiting discovery attempts directed at the listed witnesses except in accordance with the Hague Evidence Convention.

Respectfully Submitted,

VOLKSWAGEN AG and AUDI AG
by their Attorneys


*/s/ David A. Barry*
David A. Barry, BBO No. 031520
Andrew R. Levin, BBO No. 631338
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02114-4737
(617) 227-3030
barry@srbc.com

Daniel V. Gsovski, Esquire (pro hac vice)
Keith A. Frederick, Esquire (pro hac vice)
Herzfeld & Rubin, P.C.
40 Wall Street
New York, NY 10005-2349
(212) 471-8500

Dated:  September 3, 2007

## CERTIFICATE OF SERVICE

     I, David A. Barry, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 3, 2007.

*/s/ David A. Barry*          

David A. Barry

barry@srbc.com

407556