UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE VOLKSWAGEN AND AUDI
WARRANTY EXTENSION LITIGATION

MDL DOCKET NO. 1:07-md-01790-JLT

THIS DOCUMENT RELATES TO:

ALL CASES

### MEMORANDUM IN SUPPORT OF THE MOTION FOR ENTRY OF THE ATTACHED PROCEDURAL ORDER GOVERNING FEE ALLOWANCES AMONG CLASS COUNSEL INTER SE[1]

Mark Schlachet, Brian Ruschel and Thomas P. Sobran, attorneys of record on behalf of class representatives Megan Shero, Eugenia Diveroli and Ken Winokur, request that the Court enter the attached proposed Order. This Order: (1) bifurcates (without removing) from Special Master van Gestel's duties the matter of allocating among all class counsel any aggregate class counsel fee award (hereinafter "Fee Allocation Process"); and, (2) applies the Federal Rules of Civil Procedure to all aspects of the Fee Allocation Process. In support of this motion, Schlachet, Ruschel and Sobran state as follows:

1. This Court entered Pretrial Order No. 1 on February 7, 2007. Pretrial Order No. 1 consolidated five (5) separate cases with similar allegations concerning the propensity of certain model Volkswagen and Audi passenger vehicles to accumulate engine oil sludge incident to ordinary operation. The Court appointed Lead Counsel who was expressly authorized to bind "all plaintiffs."[2] *Pretrial Order No. 1* at

---

[1] Mark Schlachet unsuccessfully attempted to resolve this procedural matter with Lead Counsel. The substance of the relevant communications are summarized, along with other pertinent communications in the Declaration of Mark Schlachet, annexed hereto.

[2] Lead counsel Russell D. Henkin in consultation with the Plaintiffs' Executive Committee is charged with plenary authority in this matter. Peter J. McNulty (Co-Chair of Plaintiffs' Executive Committee) has been delegated considerable powers to conduct activities in this case that bind all plaintiffs' counsel. Russell D. Henkin, Peter J. McNulty and Kirk D. Tresemer hereinafter are collectively

1

VII. 2.  Subsequently filed cases were consolidated with the lead proceeding as tag-along cases and were also governed by Pretrial Order No. 1.

2.  This Court's September 22, 2010 Order (Docket Document 165) at ¶¶11-12 anticipates Lead Counsel's governance of proceedings relating to the aggregate fee to be awarded (hereinafter "Aggregate Fee Award") all class counsel as between all classes and defendants Volkswagenwerk Aktiengesellschaft, Audi Aktiengesellschaft, Volkswagen of America, Inc. and Audi of America, Inc. However, this Order does not address an appropriate mechanism for determining the fair and just allocations from the Aggregate Fee Award among class counsel from the several consolidated actions constituting this MDL proceeding.

3.  On December 22, 2010, Special Master Allen van Gestel, perceiving the need for order in the Fee Allocation Process, entered Memorandum and Order Regarding Procedure on Fees and Costs Application (Docket No. 178).  This Order set out a schedule of events for resolution of individual attorney's compensation entitlements.  Schlachet, Ruschel and Sobran concur with Judge van Gestel's Order, which calls for an Aggregate Fee Award to be recommended by the Special Master, ultimately allowed by the District Court, followed by Lead Counsel's initial recommendations of individual fee allowances to plaintiffs' attorneys, followed by an opportunity to be heard by those who may disagree with Lead Counsel's recommendation.

4.  The instant Motion seeks to follow the succession of events as mandated by Judge van Gestel but, at the same time, establish objective procedures whereby all plaintiffs' attorneys will have notice and an opportunity to be heard in the Fee Allocation Process.  See *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ("when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." has not yet considered such procedures.  The purpose of this Motion is to

---

referred to "Lead Counsel."  Lead counsel and the Plaintiffs' Executive Committee are comprised of five attorneys from three law firms.

request that Judge Tauro or, upon reference, Special Master van Gestel enter an order that the Federal Rules of Civil Procedure, as applied in the United States Courts, should govern the Fee Allocation Process. A proposed Order accompanies these papers.

5. As the litigation approaches final resolution, Lead Counsel's actions, in addition to binding "all plaintiffs" vis-à-vis defendants, are exerting undue and prejudicial binding control over non-lead counsel's opportunity to receive fair compensation. These unanticipated circumstances, discussed below, were not addressed in Pretrial Order No. 1, Order of September 22, 2010 or the Order of December 22, 2010. If these circumstances are not addressed *now*, non-lead counsel will be placed in an untenable and prejudicial position.

6. Per the Special Master's Order of December 22, 2010, Lead Counsel is expected to conduct preliminary determinations of allocations, by fee applicant, from a common fund to be established by this Court pursuant to Fed. R. Civ. P. 23(e). In determining these allocations, Lead Counsel will have both a structural conflict of interest and an actual conflict of interest. The procedure set out in the proposed Order (annexed hereto) is an attempt "to insulate the decision-making process [of Lead Counsel] against the potentially pernicious effects of structural conflicts." *Jon N. v. Blue Cross Blue Shield of Massachusetts*, 684 F. Supp. 2d 190, 200 (D. Mass. 2010) (Tauro, J.).

7. Two principles of conflicts administration serve as a platform for analysis: (1) the gravity of conflicting interests grows in direct proportion to the conflicted actor's history of bias in administration. *McGahey v. Harvard Univ. Flexible Benefits Plan,* 685 F. Supp. 2d 168, 177 (D. Mass. 2009); and (2) injustice is too often the result of a lack of transparency in ADR proceedings. *Cf. Awuah v. Coverall N. Am., Inc.* 563 F. Supp. 2d 312, 316 (D. Mass. 2008).

8. Lead Counsel in this case serves as the sole liaison for all plaintiffs' counsel with the Office of Special Master van Gestel and has been responsible (as discussed below) for implementing procedures that do not evince the qualities of fairness, certainty or timeliness.

9. As recently as December 18, 2010, Lead Counsel communicated that MDL non-lead counsel should not file any papers with the Special Master absent Lead Counsel's express permission. This directive, while facially defensible, directly contradicts Judge Tauro's Order of October 23, 2008, appointing Judge van Gestel as Special Master and mandating that all District Court filings should also be sent to the Special Master.

10. The Court's orders cited *supra* did not address the subject of potentially contentious fee allocations from a common fund. Had the subject been addressed, the notion of Lead Counsel acting as the exclusive clearinghouse for potentially adverse claimants to a common fund, all without the governance of objective procedural safeguards, would have been unthinkable.

11. Several months ago (and until as recently as December 11th), Lead Counsel requested non-lead counsel's hours and advised that they were filing a joint fee application on behalf of all plaintiffs' counsel that would request a percentage of fund allowance. Commencing December 11th Lead Counsel sought to persuade a number of non-lead counsel to fix their ultimate entitlements, and waive any objection to Lead Counsel's fee requests, *prior to non-lead counsel having sufficient information or knowledge to make an informed decision.*[3] These discussions have caused a number of non-lead counsel to ponder the attorneys' fee allowance process that should be implemented in this matter. One pressure tactic was to inform non-lead counsel (a few days before the fee applications were due) that if they did not come to an agreement with Lead Counsel, non-lead counsel would have to file their own fee application. This pressure was ratcheted-up when non-lead counsel were informed that their fee

---

[3] Lead Counsel's efforts to lock-in individual non-lead counsel's fee entitlements prior to the December 20, 2010 submission deadline of the fee application demonstrates the arbitrariness of Lead Counsel's fee-related conduct. This is particularly evident when contrasted with Lead Counsel's concurrent refusal to discuss an appropriate Fee Allocation Process (with movants) on grounds that doing so is "premature." We can only conclude that addressing and disposing of non-lead counsel fees is ripe for discussion, but what is not ripe in Lead Counsel's view is a discussion establishing a *fair and orderly* process for determining the fee allocation.

4

application would likely draw objections or encounter other unspecified "peril."[4] Conducting a Fee Allocation Process without objective procedural safeguards would likely be a Halloween nightmare for a number of non-lead counsel.

12. On December 17, 2010, Lead Counsel did an "about face," instructing non-lead counsel to file their own unspecified fee application materials separately - not through ECF for all to see- but serving only Lead Counsel and defense counsel. Hours later, Lead Counsel reversed course again, stating that non-lead counsel did not have to file their separate fee requests, but could do so at some unspecified later date. Eleven (11) minutes later, in another about face, Lead Counsel advised that Special Master van Gestel had *directed* as follows:

> You are to forward any submissions regarding Attorneys' Fees and Costs to my attention and, my office will then send them in hard form to Judge van Gestel and to defense counsel. You can send them to us electronically and/or in hard form. If you so choose, you can also file them on PACER, however, that does not relieve you from your obligation to submit them to my office for transmittal to the Special Master.

All of this activity occurred during Lead Counsel's machinations to negotiate cheap resolutions of non-lead counsels' attorneys' fees in exchange for a commitment of non-lead counsel not to object to Lead Counsel's attorney fees.

13. Incredibly, at 1:55 PM on December 19, 2010 (the day prior to this Court's established deadline for fee application submissions), Lead Counsel again changed course. This latest communication contradicted what Lead Counsel had earlier stated was the Special Master's directive. Instead of directing all plaintiffs' counsel to submit individual fee applications, Lead Counsel announced that such applications are not appropriate and that Lead Counsel will file a joint application and "will carefully review and assess your time and costs and determine the appropriate compensation."

---

[4] On December 17, 2010, Peter McNulty (Co-Chair of Plaintiffs' Executive Committee) sent an email to all plaintiffs' counsel with the ominous warning that "Some counsel have apparently, at great disservice to the class, chosen to 'go their own way at their own peril.'" When asked to elaborate on his statements as to the meaning of "disservice to the class" and "peril," Mr. McNulty declined comment. There is no mistaking this warning as anything other than a thinly veiled threat of financial retribution for failure to accede to the demands of Lead Counsel. Any other interpretation of this statement is simply nonsensical.

14. As authority for their change in fee filing instructions, Lead Counsel cited *In re Indigo Sec. Litig.*, 995 F.Supp 233 (D. Mass. 1998) where that court declined to entertain "bickering" among class counsel prior to the determination of individual fee allocations. Judge Young ruled that Milberg Weiss Bershad Specthrie & Lerach, as Lead Counsel, should preliminarily determine each attorney's appropriate compensation, subject to objection and hearing in the event of a disagreement. The procedural history in *Indigo,* unlike this case, was not replete with multiple documented instances of abuse by Lead Counsel throughout the proceeding, including conduct intentionally designed to preclude non-lead counsels' meaningful participation as demonstrated here. Fifteen of the nineteen individual plaintiffs' counsel in *Indigo* were satisfied with Lead Counsel's leadership. The remaining four (4) counsel demanded more than half the aggregate award, but did not allege extreme prejudicial bias and Lead Counsel's self-favoring conduct as is apparent in this case.

15. This proceeding has a long and tortured history evidencing abuse of non-lead counsel that requires the imposition of additional judicial control and a defined set of procedures designed to protect the interests of non-lead counsel. Lead Counsel has and continues to manipulate this proceeding in a manner unduly prejudicial and unnecessarily adverse to the interests of non-lead counsel. Lead Counsels' latest proclamation, i.e. that their reading of *Indigo* warrants a reversal of what they said (less than 24 hours earlier) was the Special Master's directive, speaks for itself. It would take a "babe in the woods" to believe – or even entertain reasonable assurance – that the process of attorneys' fee allocation does not require the institution of objective procedures, such as the Federal Rules of Civil Procedure, which apply day in and day out to substantially all contested proceedings in the Federal jurisdiction.

16. Moreover, in *Indigo* there was no history of alleged misconduct by Lead Counsel *prior to resolution of the underlying case* and prior to consideration of the individual attorneys' fee applications. Here, Attorneys Schlachet and Ruschel filed a fee application (Docket Document No. 168) recounting their deliberate exclusion from all assignments in this case, despite having litigated

6

successfully in Ohio and having conducted discovery of note in Ohio against defendant Volkswagen of America, Inc. Attorney Sobran filed a declaration (Docket Document No. 171) in support of his compensation that described his near total exclusion from assigned work despite extensive experience as a former professional factory trained automobile mechanic. Attorney Sobran could have assisted on the technical aspects of this case and afforded considerable insight based on his personal tear-down and inspection of oil "sludged" exemplar class engines and knowledge of alternative engine and crankcase ventilation systems.[5]

17. Attorney Sobran's declaration also describes the filing of a breach of contract action in the state of Alabama by three other law firms involved in this proceeding alleging the same genre of harm (breach of a written agreement to share the work and compensation) as alleged by Schlachet, Ruschel and Sobran. Jackson & Tucker, P.C., the Vaughan Law Group and Sacks & Weston (all plaintiffs' counsel of record in this proceeding) commenced a breach of contract action in Birmingham, Alabama against Peter J. McNulty (Co-Chair of Plaintiffs' Executive Committee in this proceeding) and Jonathan H. Waller in February 24, 2010. Mr. Waller has a long-established record of association with Mr.

---

[5] In his declaration, Sobran alleged that he:

> stopped conducting litigation related activities in this proceeding in November 2008 since Lead Counsel and Co-Chairs of Plaintiffs' Executive Committee (hereinafter "leadership team") failed to assign him any additional work or provide even the most rudimentary discovery despite more than seventeen written requests and dozens of verbal requests over the course of this litigation. For example, the leadership team failed to produce to Sobran any of the interrogatory answers of either the plaintiffs or defendants. There are numerous other examples of this type of conduct that contravenes the fiduciary duty owed by the leadership team to other individual attorneys of record. The leadership team also indicated that any further activities conducted by Sobran would not be compensated because the leadership team made the decisions as to work assignments. Apparently, the leadership team decided to assign the vast majority of the work to themselves despite earlier written and verbal assurances to Sobran that his extensive automotive litigation and automotive technical experience would be fully utilized including participation in Rule 30(b)(6) depositions, discovery document drafting and other meaningful activities. This conduct has prevented Sobran from performing work in technical areas of automotive design in which he is uniquely qualified.

Declaration of Thomas P. Sobran in Support of His Application For Attorney's Fees and Reimbursement of Expenses at fn. 1. (Docket Document No. 171).

McNulty in other litigation. That case is captioned *Jackson & Tucker, P.C., et al. v. Jonathon H. Waller, et al.* and has been assigned docket CV 10-900613-MGG in the Circuit Court of Jefferson County, Civil Division / Birmingham. A copy of the Amended Complaint for Breach of Contract and Declaratory Judgment together with the Order on Pending Motions to Dismiss, are attached as "Exhibit A" and "Exhibit B," respectively.

18. Lead Counsel have already attempted to strong-arm pre-settlement attorney fee agreements with non-lead counsel by threatening to contest work performed as "unnecessary," "duplicative" or "unauthorized." This type of behavior, particularly in a case with excellent results, is intolerable and mandates that a uniform procedure needs to be instituted to ensure that all counsel who participated in this proceeding receive fair and non-discriminatory treatment.

19. Notwithstanding the foregoing, Schlachet, Ruschel and Sobran do not object to Lead Counsel initially evaluating the contribution of all plaintiffs' attorneys, including themselves, and recommending compensation and expense reimbursement.[6] That appears to be the only procedure that can efficiently address the issue of allowance in the first instance. However, this procedure must be done in a transparent and orderly manner. The attached Procedural Order Governing Fee Allowances Among Counsel Inter Se sets out a procedure for filing on ECF a schedule of proposed allowances for all counsel (Lead and non-lead) in the case. The proposed Order, reflecting procedures utilized in major Chapter 11 cases in the Bankruptcy Court, also provides for objections and hearing before Judge van Gestel, whose findings and conclusions shall be final unless objected to within 10 days, at which point this court will rule on the objection at its convenience. If a timely objection to a proposed allowance is not filed, the allowance should be deemed approved in accordance with Lead Counsel's determination (and promptly paid). In order to ensure the utmost transparency and fairness, the timing

---

[6] This concession should not be construed by Lead Counsel as a waiver for breach of contract claims or any other cause of action in any subsequent proceedings, *vel non*.

of the ECF filing, objection, hearing and allowance procedure must be identical for all counsel (at least through the first hearing on allowances), absent written waiver to the contrary.

20. Schlachet, Ruschel and Sobran are not concerned, primarily, with the amount of the individual attorneys' fee allowance initially recommended by Lead Counsel. This motion does not reflect "bickering." The concern is that a transparent process needs to be instituted by which the Fee Allocation Process operates. The four-year track record of Lead Counsel in this proceeding demonstrates that they have employed unfair processes in assigning work activities and in communication with non-lead counsel. Absent procedural safeguards, the Fee Allocation Process is an attractive candidate for potential or actual abuse. Lead Counsel may not adequately and fairly represent and address the interests of their co-counsel. Instead, they may pursue their own conflicting financial interest, while maintaining ex-parte access to the Special Master van Gestel, and thereby influencing procedures and events at will. *Cf.* 28 U.S. C. § 455.[7]

21. Schlachet, Ruschel and Sobran have also lost confidence in the ability of Lead Counsel to accurately portray events concerning allocation of attorneys' fees to Special Master van Gestel. It may be, for example, that the Special Master has been informed that non-lead counsel sought to prematurely address their fee entitlements with the consequence of creating disorder when, in fact, it was solely Lead Counsel's initiative to seek fee settlement agreements with non-lead counsel. That process, in turn, educated non-lead counsel as to the need for transparency and objective procedures. *See Declaration of Mark Schlachet in Support of the Motion for Entry of the*

---

[7] Section 455 of 28 U.S.C. requires disqualification of even a United States Judge when their impartiality might reasonably be questioned or where "he . . . individually . . . has a financial interest in the matter in controversy." Here, there is a direct conflict of interest and the decisional authority rests with Lead Counsel, who have abused their colleagues over a long period of time. *See also* Fed. R. Bankr. P. 5004(b) specifically dealing with the issue of fee applications by persons connected with a bankruptcy judge. The Bankruptcy Code, though presided over by experienced bankruptcy judges, does not permit the appointment of fiduciaries absent "disinterestedness." 11 U.S.C. § 327(a).

*Attached Procedural Order Governing Fee Allowances Among Class Counsel Inter Se* at ¶5, email dated 12/11/10.

22. While the law will sometimes tolerate formal (sometimes called "structural") conflicts of interest, the law does not tolerate conflicts with reckless abandon. The bankruptcy case of *In re BH &P, Inc.,* 949 F.2d 1300 (3d Cir. 1991) is instructive of this principle. There, a single trustee sought to represent multiple estates with potentially conflicting interests. The circuit court held there was no *per se* rule of disqualification merely because a trustee was not "disinterested" as defined in the Bankruptcy Code. It was explained, however, that when the trustee had a *personal interest* as opposed to merely a "structural" conflict by reason of "formal relationships," the conflict of interest could well require removal, particularly if there had been a history of harm caused to the trustee's beneficiary. "A majority of courts evaluating an alleged conflict of interest has adhered to the principle that before a trustee may be removed, some actual injury must be shown." *Id.* at 1311. In the instant case, Lead Counsel have harmed Schlachet, Ruschel, Sobran and others by excluding them from their "fair share" of work; and Lead Counsel are vitally interested, on a personal level, with the allocation of the Aggregate Fee Award. Sound equitable administration of the Fee Allocation Process demands that competing claimants to the Aggregate Fee Award proceed under objective procedural safeguards.

23. Lead Counsel (a) should not be afforded broader discretion than necessary to "represent" other counsel in this proceeding in those instances where Lead Counsel has an actual conflict of interest; (b) Lead Counsel must not be permitted to take any action which could potentially prejudice any non-lead counsel's position unless Lead Counsel specifically notifies that attorney in advance that his individual interests may be directly at issue; (c) Lead Counsel must be subject the same application-objection-allowance procedure as all other counsel; and, (d) Lead Counsel must not be permitted upon their own accord, and without notice and an opportunity for objection, to distribute to themselves compensation without oversight any differently than non-lead counsel. As with all other non-lead attorneys in the case, Lead Counsel should be paid if and when objections to their allowances are resolved with

finality.[8]  If the Court is inclined to allow partial or interim allowances pending final allowance, identical procedures should be allowed across the board.  Finally, the Federal Rules of Civil Procedure should govern all future aspects of the Fee Allocation Process.  The attached proposed Order accomplishes all the above goals without any resulting prejudice to any attorney or his fee application.

## RELIEF REQUESTED

Schlachet, Ruschel and Sobran request that the Court enter the attached Order since it will adequately and fairly establish procedures to protect all counsels' interests and assist in limiting future litigation concerning the allocation and distribution of attorneys' fees.  Although this proceeding has not been resolved, it has already spawned additional related litigation in Alabama.  Entering the attached Order will hopefully prevent additional protracted litigation by promoting a transparent and fair Fee Allocation Process.

Megan Shero and the Ohio Class,
By their attorneys,


/s/ Mark Schlachet
Mark Schlachet (Ohio Bar. No. 0009881)
3637 South Green Road
Beachwood OH 44122
Telephone: (216) 896-0714
Facsimile: (216) 514-6406
E-mail: mschlachet@gmail.com

/s/ Brian Ruschel
Brian Ruschel (Ohio Bar No. 0046631)
925 Euclid Ave., Suite 660
Cleveland OH 44115-1405
Telephone: (216) 621-3370
Facsimile:  (216) 621-3371
E-mail: bruschel@aol.com


Eugenia Diveroli and Ken Winokur,
By their attorney, on behalf of
themselves and class members,


/s/*Thomas P. Sobran*
Thomas P. Sobran, P.C.
7 Evergreen Lane
Hingham, MA 02043
(781) 741-6075
BBO #471810
tsobran@sobranlaw.com

---

[8] As in *Indigo* interest can be paid upon the allowance from the date the Aggregate Fee Award is deposited until the date of payment, at the rate of interest earned on the deposit.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE VOLKSWAGEN AND AUDI
WARRANTY EXTENSION LITIGATION

MDL DOCKET NO. 1:07-md-01790-JLT

THIS DOCUMENT RELATES TO:

ALL CASES

**DECLARATION OF MARK SCHLACHET IN SUPPORT OF THE MOTION
FOR ENTRY OF THE ATTACHED PROCEDURAL ORDER GOVERNING
FEE ALLOWANCES AMONG CLASS COUNSEL INTER SE**

Mark Schlachet declares pursuant to 28 U.S.C. §1746 as follows:

1. I am licensed to practice law in the State of Ohio and appear as counsel *pro hac vice* for Megan Shero and the State of Ohio plaintiffs in this proceeding. I have personal knowledge of the factual statements contained within this declaration and am competent to testify concerning these facts.

2. Local Rule 7.1 (b)(1) of this Court requires the filing, upon the submission of a motion, affidavits and other documents setting forth or evidencing facts on which the motion is based.

3. I have a number of communications to and from Lead Counsel in this proceeding that bear directly upon this matter and attest to the facts upon which I predicate my request for the relief sought in the Motion for Entry of the Attached Procedural Order Governing Fee Allowances Among Class Counsel Inter Se ("Motion").

4. Many of the communications may contain privileged matter or contain statements which could prove needlessly embarrassing to certain others, if set forth on the public record.

5. Nevertheless, consistent with the intent of the Local Rules, i.e. to provide the Court with a qualified factual record upon which to decide the Motion, I will summarize below certain written communications which would be introduced were this Court to deem their production desirable, to wit:

7/6/07: Martin Galvin, Esq., VW/Audi counsel re: meet and confer at his offices in Cleveland ("we are expecting to transmit for your review a large number of documents")

7/12/07: Confidentiality Order proposed by VW/Audi

7/19/07: Lead counsel Russell D. Henkin (hereinafter "Henkin") sends substantial "to do" list, upon prior express representation that there would be "assignments"

7/19/07: Henkin provides complaint allegations to be used in amended filing in Ohio slated for JPML

7/20/07: Berger & Montague states: "we look forward to working with you"

7/20/07 - present:  No assignments to Schlachet; one local deposition appearance, sitting third chair, to Brian Ruschel (hereinafter "Ruschel") who is also representing Ohio class plaintiffs

11/2/10:   Peter J. McNulty, Esq. (hereinafter "McNulty") writes "it is for the court to evaluate applications and awards, but if possible we would like to make a joint proposal on behalf of all counsel;" requests all counsel's time by November 5, 2010

12/11/10:  Henkin to Schlachet and Ruschel: "please call me over the weekend or on Monday, so we can (hopefully) formalize an agreement on how and how much your Firm(s) would be paid in the case."

12/12/10:   Henkin to Schlachet: confirms that he, with backing of McNulty / Kirk D. Tresemer (hereinafter "Tresemer") urged Schlachet and Ruschel to voluntarily move their "active" case through the JPML; Henkin intends to propose a "guaranteed figure" for Schlachet and Ruschel attorneys' fees; if there is no agreement, Schlachet and Ruschel will have to submit their own fee application

12/14/10:  Henkin to Tresemer: confirms that an agreement with Schlachet and Ruschel is particularly significant because Schlachet and Ruschel "did a separate case, went through several stages of it; and did no 'follow and review' work . . . successfully started and were prosecuting an Ohio case; they survived a motion to dismiss; fought the Rule 37 battles, met and conferred and got VW to the point of documents production, and had a motion for class certification pending for some time . . . they allowed the Cleveland case to fold into ours, at our encouragement . . . on the premise and promise that they would receive assignments . . . they have no 'monitoring or 'read and review work.' . . .They note, and I certainly don't deny, that I personally, with your knowledge, represented and acknowledged in writing to Brian and Mark some time ago that they did materially contribute to the effort . . . they will nevertheless not object to our (the Lead Firms') award, nor will they appeal."

12/16/10:  McNulty to All case Attorneys: "As required, please submit a suitable affidavit and/or brief verifying your time, hourly rate, expenses and justification for any claimed multiplier to Judge van Gestel at JAMS"

12/17/10 (4:10 PM):  McNulty to All Case Attorneys, Defense Counsel, Special Master and Paul Gelinas:

"It is our intent, as contemplated by Judge Tauro's Order and Judge van Gestel's Findings and Recommendations, that Lead Counsel will submit a joint application for fees and costs . . .  We're fine with you and other counsel not submitting a multiplier request or justification at this juncture and, if a disagreement later arises, affording you a fair opportunity to be heard.  **Some counsel have apparently, at great disservice to the class, chosen to "go their own way at their own peril."** (emphasis added).

12/17/10 (4:21 PM): McNulty to All Case Attorneys, Defense Counsel, Special Master and Paul Gelinas:

"Per direction of the Special Master, you are advised of the following:

1. The hearing on Attorneys Fees and Costs is moved to February 14, 2011; commencing at 10:00 a.m. at the United States District Courthouse, 1 Courthouse Way, Boston, MA 02210;

2

      courtroom TBD;
2. You are to forward any submissions regarding Attorneys' Fees and Costs to my attention and, my office will then send them in hard form to Judge van Gestel and to defense counsel. You can send them to us electronically and/or in hard form. If you so choose, you can also file them on PACER, however, that does not relieve you from your obligation to submit them to my office for transmittal to the Special Master."

12/18/10: McNulty to All Case Attorneys:

"Please review the 1998 decision from the United States District Court for the District of Massachusetts, authored by Judge Young (*In re Indigo Sec. Litig.*, 995 F.Supp 233) which holds that a single petition for attorneys' fees and costs is to be prepared and authored by lead counsel. After an award is made, it will be "distributed among the participating counsel based on their respective contributions to the litigation, according to the discretion of lead counsel." Thereafter, any counsel who is dissatisfied with the allocation made by lead counsel may apply to the court for relief.

Co-lead counsel, myself and Messrs. Tresemer and Henkin, will be filing a Motion for Final Approval and a Motion for Class Counsel Attorney Fees and Costs tomorrow."

12/21/10: Schlachet to McNulty:

"I invite Lead Counsel-and the participation of any counsel receiving the attached--to join with us in presenting the attached or other order guarantying procedure soundness in the process to allocate what be many millions of dollars in compensation. Under the circumstances I would expect to hear from you or other Lead Counsel (authorized to bind) by tomorrow at noon, failing which we will finalize and file our motion to court, requesting the entry of the order."

12/21/10: McNulty to Schlachet relative to Schlachet's earlier written request to confer:

"Mark; we will consider your request when a settlement is awarded and a fee and cost award is confirmed. Please stop distracting us from those tasks by threatening to file premature/unnecessary papers to which we will have to respond."

12/21/10: Schlachet to McNulty: "[t]hat is not acceptable."

      Signed under the penalties of perjury this 22nd day of December, 2010.

                                          /s/ *Mark Schlachet*
                                          Mark Schlachet