UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE VOLKSWAGEN and AUDI | ) | |
| WARRANTY EXTENSION | ) | |
| LITIGATION | ) | MDL DKT. NO. 07-md-01790-JLT |

ALL CASES

### DECLARATION OF MARK SCHLACHET, ESQ. IN SUPPORT OF (1) OBJECTION TO PLAINTIFFS'/CLASS COUNSEL'S PETITION FOR FEES AND COSTS (DOCKET NO. 174), AND (2) MOTION OF OHIO COUNSEL TO BE DESIGNATED AS ADDITIONAL SETTLEMENT COUNSEL UNDER DEFINITION 3 OF THE SETTLEMENT AGREEMENT (DOCKET NO. 160)

Mark Schlachet, being of full age, hereby certifies as follows:

1. Brian Ruschel and I (at times "Ohio Counsel") are the attorneys who filed a case in the Cuyahoga County (State of Ohio) Common Pleas Court entitled Megan Shero v. Volkswagen of America, CV-06-610948 (Cuy. Cty., Ohio filed 12/26/06) ("Ohio Litigation").

2. This Certification is based on my personal knowledge of the events that transpired in the course of the Ohio Litigation before and after consolidation in this Court; and it is submitted in support of Ohio Counsel's Objection to Motion for Attorney Fees, aka Plaintiff's/Class Counsel's Petition for Fees and Costs "Objection"), which was filed on December 20, 2010 as Docket No. 174.

3. As further stated in the Objection and Memorandum in Support, Declarant has serious, non-pre-textual concerns with Lead Counsel's handling of this matter on behalf of the Ohio Class.

4. The Docket sheet for the Ohio Litigation is available at file:///Users/markschlachet/Documents/Lock%20Case/JPML/Case%20Docket and its contents

should be in the file transferred by the Northern District of Ohio to the District of Massachusetts in response to this Clerk's letter to the Transferor Court on September 22, 2007. Counsel requests that this Court take judicial notice of the docket sheet of the Ohio Litigation. Copy annexed as Exhibit 1.

5. Ohio Counsel completed the following tasks in the Ohio Litigation before its removal to Federal Court: prepared and filed the complaint and amended complaint; defeated VW's motion to dismiss; filed and briefed a motion for and brief in support of class certification (including attachments); filed a motion for complex litigation designation; attended case management conferences; negotiated pretrial process; defeated VW's motion to stay proceedings; defeated VW's motion to dismiss; prepared and handled subpoenas duces tecum issued to third-party automotive dealers (including a long meeting and information-gathering from one dealer); filed a motion to show cause under Rule 37; conducted other lengthy, productive discovery under subpoena; lengthy negotiations, meet and confer regarding outstanding discovery to VW; and obtained access to what was reported by VW to be over two million documents.

6. I am a former United States Bankruptcy Judge and Clerk of Court for the Northern District of Ohio (1974-1982). I believe I filed the first Federal consumer class action in the Northern District of Ohio, some three years after publishing a note in the Case Western Reserve Law Review in 1968, relating to the then-recently-adopted class action rule in Rule 23 of the Federal Rules of Civil Procedure. I have initiated and prosecuted MDL litigation starting in 1973 with *In re Refrigerant Gas Litigation*, MDL NO. 76 (N.D. Ohio 1973). I have served on the Executive Committee or been Lead Counsel in MDL litigation including at the present time in *In re Whirlpool Front Loader Products Litigation,* MDL NO. 2001 (N.D. Ohio 2008)

(an Ohio Class which was certified under Ohio tort law theories). I have personally drafted complaint allegations under Ohio Tort Theories applicable to defective consumer products for which damage recovery for "Economic Loss" has been sought via such litigation, as well as material in opposition to Motions to Dismiss the operative allegations.

7. I have had to educate lead counsel in other MDL about Ohio's peculiar exceptions to the Economic Loss Rule, which guidance they have readily accepted and thanked me for in writing. In so doing, I have had to vigorously debate other counsel's predisposition to attempt to include theories of action under Ohio law that are not viable, and in fact are risky to pursue in in Ohio because of the interplay of Ohio's class certification principles, Ohio's Consumer Sales Practices Act, Ohio's Uniform Commercial Code, and Ohio's exception to the Economic Loss Rule.

8. In this case, Lead Counsel have rejected any and all efforts by Brian Ruschel and me to assist in drafting complaint allegations and provide effective arguments defending Megan Shero's primary right to recover under Ohio Tort Theories in this case; and Lead Counsel were unable or unwilling to advance such primary right arguments. In particular, Lead Counsel failed and refused to advance a theory of Tortious Breach of Warranty, which Lead Counsel knew was the primary theory pled on Ms. Shero's behalf in Ohio, and which theory prevailed over an Ohio Civil Rule 12(B)(6) Motion filed byVolkswagen. Lead Counsel have rejected our efforts to properly defend Ms. Shero's rights in opposition to the federal Rule 12(b)(6) Motion to Dismiss filed January 30, 2008, with additional briefing through June 2, 2008.

9. Lead Counsel's technical legal ability vis-à-vis the Ohio Class in this matter was sub-standard and unacceptable. Although Lead Counsel were free to accept an engagement

without the requisite competence in Ohio class tort practice to handle all facets of the engagement, it is a breach of professional responsibility to proceed without acquiring such competence or the staffing to bring such competence to bear.. It is a standard of professional responsibility in every jurisdiction I know of that counsel must make appropriate inquiry into and analysis of the factual and legal elements of the material elements of the engagement, and use methods and procedures meeting the standards of competent practitioners in the areas of endeavor that counsel has elected to undertake as his or her fiduciary charge. Lead Counsel in this case did not satisfy the forgoing standard of professional responsibility.

10. In an effort to adduce an explanation for Counsel's apparent lack of professional standards as relates to the Ohio Class, I sent an email to all Lead Counsel on January 12, 2011 asking five basic questions and requesting their explanations, if any, e.g., "Please state your reasons for not naming Megan Shero on the Second Amended Complaint, both (1) initially, and (2) your reasons for not naming her once VW sought a Rule 41(a)(1) dismissal as a result her absence form the complaint." None of the three Lead Counsel provided any explanation.

11. In an effort to determine whether Lead Counsel had attempted to familiarize themselves with applicable Ohio Law, I briefly reviewed their time sheets submitted as exhibits to the Motion for Attorneys' Fees. I reviewed Mr. McNulty's and Mr. Tresemer's time sheets in particular, as they were the most active of the three Lead Counsel. I noted that at the beginning of the McNulty firm's involvement in this matter that Mssrs. McNulty and Rosenthal spent numerous hours studying California law, which is the law of their home state. But as to Ohio, I was unable to find any entry indicating that they had attempted to familiarize themselves with the common law tort claims upon which the Ohio Class depended in this litigation. As to Mr. Tresemer, whose firm's time is much greater than all the others, the brief study I did revealed the

same as the McNulty finding. Upon review of Mssrs. Tresemer and Kelly's time I was unable to identify a single entry indicating that they attempted to familiarize themselves with the common law tort claims upon the Ohio Class depended in this litigation. While my study was not scientific, I am confident, given the detailed nature of the subject time records, that it would have turned up any material effort by these two firms to satisfy their professional responsibility. In fact, Mr. Kelly shows that from January 7, 2007, when Mr. Henkin's predecessor Lead Counsel (Ted Millstein) tried to convince Ohio counsel to consolidate, Lead Counsel were already viewing Ohio as having only a "new breach of contract action." (I have asked Lead Counsel to state the nature and authority for such an Ohio action, but they have not responded.) Finally, whatever was done or not done by Lead Counsel as to Ohio, it was done with deliberation. See Randall Kelley timesheet for July 13, 2007: "Attend conference call re: Ohio state court action and strategy related thereto."

12. I am prepared to appear at the hearing in this Court set for February 14, 2011 before the Special Master and to present evidence and argument as to every representation contained in today's Objection.

7. I have email correspondence, in large part from Lead Counsel, to support and document the most important representations made in the (1) Memorandum of Points and Authorities in Support of Megan Shero's Objection to the Motion for Attorney Fees (Docket No. 174) and (2) Motion of Ohio Counsel to be Designated as Settlement Counsel under Definition 3 of the Settlement Agreement (Docket No 160). Among those emails are the following:

7/19/07: Lead counsel Russell D. Henkin (hereinafter "Henkin") sends a substantial "to do" list, upon prior express representation that there would be "assignments" to Ohio counsel.

5

7/19/07: Henkin provides complaint allegations to be used in an amended filing in Ohio slated for JPML 7/20/07: Berger & Montague states: "we look forward to working with you"
7/20/07 - present: No assignments to Schlachet; and the only assignment to Brian Ruschel (hereinafter "Ruschel") one local deposition appearance, sitting third chair who is also representing Ohio class plaintiffs.

8/03/07: Russ Henkin writes: "As I said, Brian and Mark, I'll get you involved in drafting."

6/02/08: Schlachet to Henkin: " I have been following the motion practice . . . Megan Shero actually prevailed on a Rule 12(b)(6) motion in State court before we got shifted to Federal court."

1/10/10: Russ Henkin (copies to McNulty and Tresemer); "Your work with Brian is acknowledged and appreciated. Your contributions were helpful."

11/2/10: Peter J. McNulty, Esq. (hereinafter "McNulty") writes "it is for the court to evaluate applications and awards, but if possible we would like to make a joint proposal on behalf of all counsel;" requests all counsel's time by November 5, 2010.

12/11/10: Henkin to Schlachet and Ruschel: "please call me over the weekend or on Monday, so we can (hopefully) formalize an agreement on how and how much your Firm(s) would be paid in the case."

12/12/10: Henkin to Schlachet: confirms that he, with backing of McNulty / Kirk D. Tresemer (hereinafter "Tresemer") urged Schlachet and Ruschel to voluntarily move their "active" case through the JPML to Boston; Henkin intends to propose a "guaranteed figure" for Schlachet's and Ruschel's attorneys' fees; if there is no agreement, then Schlachet and Ruschel will have to submit their own fee application.

12/14/10: Henkin to Tresemer: confirms that an agreement with Schlachet and Ruschel is particularly significant because Schlachet and Ruschel "did a separate case, went through several stages of it; and did no 'follow and review' work [in Boston] . . . successfully started and were prosecuting an Ohio case; they survived a motion to dismiss; fought the Rule 37 battles, met and conferred and got VW to the point of documents production, and had a motion for class certification pending for some time . . . they allowed the Cleveland case to fold into ours, at our encouragement . . . on the premise and promise that they would receive assignments . . . they have no 'monitoring' or 'read and review work' [in Boston] . . .They note, and I certainly don't deny, that I personally, with your knowledge, represented and acknowledged in writing to Brian and Mark some time ago that they did materially contribute to the effort . . . they will nevertheless not object to our (the Lead Firms') award, nor will they appeal."

12/16/10: McNulty to All case Attorneys: "As required, please submit a suitable affidavit and/or brief verifying your time, hourly rate, expenses and justification for any claimed multiplier to Judge van Gestel at JAMS."

12/17/10: McNulty to All Case Attorneys, Defense Counsel, Special Master and Paul Gelinas:

6

"It is our intent, as contemplated by Judge Tauro's Order and Judge van Gestel's Findings and Recommendations, that Lead Counsel will submit a joint application for fees and costs . . . We're fine with you and other counsel not submitting a multiplier request or justification at this juncture and, if a disagreement later arises, affording you a fair opportunity to be heard. **Some counsel have apparently, at great disservice to the class, chosen to "go their own way at their own peril."** (Emphasis added).

12/18/10: McNulty to All Case Attorneys: "Please review the 1998 decision from the United States District Court for the District of Massachusetts, authored by Judge Young (*In re Indigo Sec. Litig.*, 995 F. Supp. 233) which holds that a single petition for attorneys' fees and costs is to be prepared and authored by lead counsel. After an award is made, it will be 'distributed among the participating counsel based on their respective contributions to the litigation, according to the discretion of lead counsel.' Thereafter, any counsel who is dissatisfied with the allocation made by lead counsel may apply to the court for relief.

      8. Lead Counsel at all times (before being forced to engage in a modicum of transparency) failed to advise other counsel that the "joint motion" they committed to file would essentially seek an award for the benefit of Lead Counsel only—and that other counsel would not only have to come to terms with Lead Counsel but, additionally, would have to be designated by the Court as additional "counsel to the Settlement Class" as a qualification for any entitlement to compensation whatsoever. Lead Counsel have never alluded to the procedure whereby an involved attorney can later become an additional "counsel to the Settlement Class," although I queried Lead Counsel on this but there was no response.

      I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

      Respectfully submitted,

      /s/ Mark Schlachet
      _____
      MARK SCHLACHET (Ohio Bar No. 0009881)
      3637 South Green Road – 2nd Floor
      Beachwood, Ohio 44122
      Telephone: 216/896-0714
      Facsimile: 216/514-6406
      Email: mschlachet@gmail.com

8

**One of the Counsel for Megan Shero**

**CERTIFICATE OF SERVICE**

I certify that a copy of the above document was docketed through the Electronic Case Filing system on January 14, 2011 to all identified participants on the Notice of Electronic Filing. Electronic copies were sent via e-mail to all entities indicated as non-registered participants.

*/s/ Mark Schlachet*
Mark Schlachet
