# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE VOLKSWAGEN AND AUDI WARRANTY EXTENSION LITIGATION | ) MDL DOCKET NO. 1:07-md-01790-JLT<br>)<br>)<br>)<br>)<br>) |
| THIS DOCUMENT RELATES TO: | )<br>) |
| ALL CASES | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF (1) MEGAN SHERO'S OBJECTION TO THE MOTION FOR FEES OF CLASS COUNSEL (DOCKET NO. 174) AND (2) MOTION OF OHIO COUNSEL TO BE DESIGNATED AS SETTLEMENT COUNSEL UNDER DEFINITION 3 OF THE SETTLEMENT AGREEMENT (DOCKET NO. 160)

Ohio counsel  Mark Schlachet and Brian Ruschel ("Ohio Counsel") filed an Ohio state court class case on behalf of Megan Shero in December 2006, against defendants Volkswagen pf America, Inc. and Audi of America, Inc. (Hereinafter "VW" or "VW defendants"). Counsel for VW defendants inadvertently failed to timely remove the case to Federal Court.  In the litigation before the Ohio state court, the undersigned Ohio Counsel were "Lead Counsel," and litigated vigorously and successfully.  They defeated VW's motion to dismiss, conducted extensive discovery, pursued Rule 37 relief, filed a motion for class certification, and had millions of documents poised for turnover by the defendants.[1]  Commencing in December 2006 or early January 2007, Lead Counsel from Berger & Montague (reasonably thought to have binding

---

[1] Although Lead Counsel in this proceeding provide lengthy and detailed accounts of their own efforts at discovery and contentious litigation, they do not mention that the Ohio Class encountered the same contentiousness in Cleveland, Ohio, that Shero's Counsel prevailed on VW's motion to dismiss long before the instant case was at the dispositive motion stage, and that Ohio Counsel fought for and successfully secured access to approximately two million documents from the VW defendants in July 2007.

authority on other Lead Counsel) encouraged Ohio counsel to join the MDL as early as February 2007 and assured Ohio counsel that they would be fairly treated—defined in oral conversations (and recently confirmed in writings quoted *infra.*) as "getting our fair share of work."

Counsel for the VW defendants made an extensive oral presentation during a meet-and-confer session in Cleveland, Ohio on July 11, 2007, urging Ohio counsel to accede to amending the complaint so as to allow removal to the Northern District of Ohio, and subsequent transfer to this Court as a tag-a-long case. Upon reliance of Lead Counsel's "fair share" assurances, Ohio Counsel agreed to this consolidation in July 2007.  Lead Counsel herein, as will be quoted *infra.*, have recently confirmed both (1) their promise in 2007 to include Ohio counsel for their "fair share" of work following consolidation in the District of Massachusetts (the "Promise"), as well as (2) Ohio Counsel's material contribution to this overall effort.

Upon removal and thereafter, Lead Counsel Peter McNulty and Kirk Tresemer[2] refused to assign work to Ohio counsel and, with the exception of allowing Ohio counsel Brian Ruschel to attend one deposition held in Cleveland. In the three and one-half years since the Shero tag-a-long case was transferred to Boston, Ohio Counsel were assigned no other work.  Lead Counsel Mr. Henkin stated on numerous occasions his disagreement with his co-Lead Counsel in their exclusion of Ohio counsel.[3]  Ohio counsel thus spent substantially all of their pre-December 2010 hours in the Ohio phase of the litigation, where *they* were Lead Ohio Counsel.  Mark Schlachet, for example, booked only 13 hours between removal from Ohio and December

---

[2] Mr. Henkin was appointed Lead Counsel and Peter McNulty and Kirk Tresemer were appointed members of the Plaintiffs' Steering Committee.  Nevertheless, the three functioned as co-Lead Counsel and will be referred to in all of the filings concurrently filed herewith, as "Lead Counsel."

[3] In fairness to Mr. Henkin and his firm, we do not fault him for his co-Lead Counsel's refusal to provide Ohio Counsel their "fair share."  Of participation, Mr. Henkin represented that in such matters he was "voted down" by Mr. Tresemer and Mr. McNulty.  We have no reason to doubt this representation.

2010—most of which was for reading the MDL record and dealing with Lead Counsel's indifference to Ohio Counsel's concerns.

Before filing the instant Objection, Ohio counsel tried to resolve their concerns with Lead Counsel, including a letter to meet and confer, and a request for explanations going to the heart of the instant Objection; but Lead Counsel did not bother to respond to Ohio Counsel or in any way attempt to communicate with Ohio Counsel.   Accordingly, Ohio Counsel issues notice of their intent to present to the Special Master on February 14, 2011 a showing of their contribution, as compared with Lead Counsel's contribution, to the Ohio case in particular.[4] **Ohio Counsel do not seek to have their compensation fixed—nor will Ohio Counsel attempt to do so—at the hearing of February 14, 2011 before the Special Master—provided no other counsel attempt to use that hearing for a fixing of their compensation.**

---

[4] On December 20, 2010, the undersigned requested of Peter McNulty, that Lead Counsel stipulate that "there is no possibility of [the undersigned] being prejudiced in any way by the [February 14th] hearing or any procedure, finding or order to issue therefrom." If Mr. McNulty had said "okay," then all of Ohio Counsel's further time and effort, and that of the Court, would have been unnecessary.   Mr. McNulty never responded to that request, nor to any other suggestion of an economical and non-prejudicial standstill on issues potentially impacting individual fee entitlements. The Special Master has done an admirable job in attempting to allay our concerns, for which we are appreciative.   But so long as Lead Counsel  refuses to engage in dialog, particularly while the case is at a sensitive posture, we are fearful that any argument not made, or any step not undertaken, carries an undue risk of prejudice, e.g. through the doctrines of *res judicata* or waiver.   For example, it is unclear how Lead Counsel's own individual fee entitlements will be set and, if necessary, challenged.   It is beginning to look as though Lead Counsel's fees are expected to be set with finality first, while all other counsel remain outside the pale of fee entitlement and will have to negotiate to be qualified, first as "additional counsel to the Settlement Class (under Definition 3 of the Settle Agreement), and second, as entitled to be compensated. Second, the notion of an aggregate fee award to all class counsel that, to the extent not disbursed in Lead Counsel's discretion becomes the award to Lead Counsel by default, is unacceptable.    Third and also unacceptable is the notion that Lead Counsel may enjoy compensation being paid before any other non-Lead Counsel being paid (whose compensation must be fixed in part by Lead Counsel).   The promptness of payment could also be an unfair leverage factor in favor of Lead Counsel.   These three notions are examples of important issues not covered in the process as yet explicated by the Special Master.

The showing that Ohio Counsel intend to provide on February 14, 2011 is authorized by

*In re Hotel Fire Litigation*:

> In other words, when a judge constructs a process for setting fees, the process must contain at least the procedural minima that the Due Process Clause requires; and, moreover, those procedures must apply in a fair and evenhanded manner to the parties in interest, without preferring one group of disputants over another.  In this instance, we cannot see how the court could fairly adjudicate this dispute unless it afforded the IRPAs a viable means (comparable to the means afforded the PSC) of describing their contribution to the litigation, contrasting their contribution with the PSC's contribution, and questioning the PSC members regarding their work.

*In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation,* 982 F.2d 603, 614-615 (1st Cir. 1991).

In addition, we would remind the Court that Lead Counsel has stated in writing that all individual fee applicants are, by virtue of their filing individually, in a *perilous* situation.[5]  Accordingly there should be no issue as to whether it is necessary and appropriate for undersigned counsel to appear, be heard, testify, and question Lead and other counsel as to their work in the case.  Indeed, we respectfully submit, it would be a prejudicial abuse of discretion to hold otherwise.

## LEAD COUNSEL'S FAILURE
## TO ADVOCATE FOR THE OHIO CLASS

**Lead Counsel never included Plaintiff Shero in the caption of the Complaint and did**

**not, though instructed, defend Plaintiff Shero's rights under Ohio law in opposition to the**

---

[5] On December 17, 2010, Peter McNulty (Co-Chair of Plaintiffs' Executive Committee) sent an email to all of the plaintiffs' counsel with the warning that "[s]ome counsel have apparently, at great disservice to the class, chosen to 'go their own way at their own peril.'"  When asked by other non-lead counsel to explain the meaning of "disservice to the class" and "peril," Mr. McNulty never responded.  Those who have dealt with Mr. McNulty closely for four years believe that there is no mistaking this warning as anything other than a thinly veiled threat of financial retribution for failure to accede to the demands of Lead Counsel. See Docket No. 180, at p.5 n.4 and accompanying text.

**VW defendants' Rule 12(b)(6) motion.**   In essence, substantially all services provided specifically for the benefit of the Ohio Class were performed by Ohio counsel, exclusively in Ohio.  There is no question, and Ohio counsel readily concede, that Lead Counsel benefitted the Ohio class vis-à-vis Ohio's tag along status in the consolidation.  Notwithstanding that benefit, this Court must determine the **relative** contributions of Ohio Counsel and Lead Counsel vis-à-vis the Ohio Class, giving due weight to Lead Counsel's breach of (1) the Promise, and (2) fidelity as fiduciaries.[6]

   A.   **Failure to File Ohio Class' Claim**.[7]   Lead Counsel failed and refused to include

---

[6]*In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000) (noting that "lead counsel owes a generalized duty to unnamed class members [prior to certification]"). See generally, *Berman v. Coakley*, 243 Mass. 348, 355 (1923).  *Tarr* v. *Vivian*, 272 Mass. 150, 153 (1930).  *Allen v. Moushegian*, 320 Mass. 746, 757 (1947).  *Hendrickson v. Sears*, 365 Mass. 83, 90 (1974).  "Unflinching fidelity to their genuine interests is the duty of every attorney to his clients.  Public policy hardly can touch matters of more general concern than the maintenance of an untarnished standard of conduct by the attorney at law toward his client."  *Berman v. Coakley, supra.*, at 354.

[7] Lead Counsel have utilized the same sharp practice in the filing of their instant Motion for Fees.  Although the motion purports to be brought on behalf of all Class Counsel in accordance with Lead Counsel's earlier emails stating (and conditioning interested counsel to think) that they were filing a joint motion on behalf of all, such is not the case.  The Motion for Attorney Fees was brought on behalf of "Class Counsel" only.  "Class Counsel" is defined in the Motion **via the Settlement Agreement,** as Lead Counsel subject to some non-descript further order of the Court designating additional "Class Counsel," known as additional "counsel for the Settlement Class."  See Definition No. 3 of Settlement Agreement, Docket No. 160 at p. 5.  Lead Counsel have used the term "Plaintiffs' Counsel" at various times to convey the notion that all counsel are before the Court when, in fact, Definition No. 17 defines "Plaintiffs' Counsel" as "Class Counsel" (which is Lead Counsel).  The disjunctive use of the term "Plaintiffs/Lead Counsel" in paragraph 2 in Lead Counsel's Certification (Docket No. 175-2) was materially misleading as to interested counsel who believed, based upon other misleading statements of Lead Counsel, that all counsel in the case would be before the court, through Lead Counsel's representation, in the instant fee application. Lead Counsel's varying terminologies to reference their Motion for Fees and its beneficiaries are precisely the opposite of the consistency that most lawyers and Judges in the Federal Courts have come to expect, namely, terms that remain the same and have the same meaning throughout related motion papers.

Plaintiff Megan Shero in the caption of the complaint.[8]  Essentially, without being named in the Second Amended Complaint, Ms. Shero and the Ohio class were needlessly subjected to attack on many fronts.  Indeed, in the Motion to Dismiss context, VW defendants argued that Shero, among others, was subject to immediate Rule 41(a)(1) dismissal due to this non-inclusion.  Lead Counsel were undeterred and, rather than correct the case caption, never added Shero to the Complaint.  The issue remains a cloud on the Ohio Class' right of action.

More importantly, Shero was the only Ohio class representative in the case.  If Ohio had had multiple class representatives, then Lead Counsel could argue that multiple class representatives were unnecessary.  But in the absence of Shero, Ohio had **no class representative** named in the Consolidated Second Amended Complaint.  Moreover, Shero was the first class representative in the U.S. to defeat the VW defendants on a Rule 12(b)(6) Motion.  One would think that Lead Counsel would name a class representative whose law of the case would encourage the federal Court to allow the matter to proceed.

**2. Failure to Defend the Ohio Class.**  During the briefing in opposition to the Motion to Dismiss, when Ohio counsel were completely excluded from participation until the point of filing the opposition brief, Lead Counsel made significant errors in judgment.  Specifically, the VW defendants made the following argument in its Motion to Dismiss the Second Amended Class Action Complaint filed January 30, 2008 (Docket No. 71):

> Under the law of each Plaintiff's state of purchase, each named plaintiff's claims must be dismissed on numerous grounds.

Lead Counsel defended by name the sufficiency of the claims of class representatives from Colorado, Connecticut, Massachusetts, Pennsylvania, Minnesota, and California, but they did not

---

[8] A conditional order of transfer was entered by the JPML on August 24, 2007 and the Second Amended Complaint was filed on October 15, 2007, effective January 1, 2008.  Briefing concluded on June 2, 2008, with Plaintiffs' Sur-Reply.

argue the sufficiency of Ms. Shero's complaint.   Despite Ohio counsel's instructions,[9] Lead Counsel never told the Court—nor did it otherwise make a record—that Ms. Shero had already survived a Rule 12(b)(6) challenge under the law of Ohio.

More significant still, Ohio is the only transferor-state where economic loss—i.e., insufficiency of product value, is freely recoverable in tort under the state's mainstream and mature jurisprudence.[10]   Within a tiny minority of jurisdictions, Ohio is the leader in permitting recovery of economic loss alone, without damage to person or other property, from a remote manufacturer of a defective product.   The only other states that freely embrace economic loss against a remote manufacturer are Michigan and Wisconsin.   Ohio Judges are accustomed to apply this theory and not be influenced by the hundreds of non-Ohio cases that do not, **in the**

---

[9] See Plaintiff's Reply to VW's Motion to Dismiss, Docket No. 85, pp. 20-32.   Ohio Counsel advised Lead Counsel on at least two occasions to include in the opposition brief the fact that Ms. Shero had prevailed on a Rule 12(b)(6) motion before her case was transferred to and consolidated in Massachusetts. One email that the undersigned has located, dated on the same date that the opposition was filed, i.e. June 2, 2008, reminded Mr. Henkin that "Megan Shero actually prevailed on a Rule 12(b)(6) Motion in State court before we got shifted to Federal Court." (Ohio Counsel also questioned Lead Counsel's "handling of the case" by phone on June 2, 2008.)   Lead Counsel never mentioned the Ohio 12(b)(6) ruling in any document filed in response to VW's Motion to Dismiss.   In attempting an optimum showing of entitlement, can it be gainsaid that a prudent lawyer seeking a $37.5 million allowance would mention Ohio Counsel's success before the Ohio Court?   Is this not a clear instance of Lead Counsel potentially, and with recklessness, harming Ohio Counsel?

[10] See *State Farm Mutual Automobile Insurance Co. v. Kia Motors America, Inc.*, 160 Ohio App.3d 727, 735, 828 N.E.2d 701 (Ohio Ct. App. 2005): "The counts essentially allege common law negligent design and failure to warn claims. As the Ohio Supreme Court explicitly held in *Beretta*, both types of claims survive enactment of the Product Liability Act."   See also **In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 684 F. Supp. 2d 942, 950-951 (N.D. Ohio 2009)**: "The Ohio Plaintiffs in this case assert precisely the same common-law claims. *Chemtrol*, *LaPuma*, *Beretta*, and *Kia Motors* indicate that in Ohio, 'ordinary consumers' who lack privity with a product's manufacturer may bring a claim for negligent design and failure to warn even though they plead only economic losses."

7

**strongest terms**, apply Ohio's exception to the Economic Loss Rule.[11]   Lead Counsel eschewed

the benefit of arguing a definitive Ohio ruling favorable to the Ohio class.[12]

Lead Counsel went so far as to predicate all state claims, including Ohio's, on the VW

Defendants' sales warranty when, in fact, **such an approach is disdained by Ohio lawyers in**

**product defect class actions.[13]**

<u>ARGUMENT</u>: LEAD COUNSEL'S OVERALL RESULT NOTWITHSTANDING, THEIR
FAILURES TO SATISFY THE BARE REQUIREMENTS OF PROFESSIONAL

---

[11] See, e.g. **In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 684 F. Supp.
2d 942, 950-951 (N.D. Ohio 2009)**; *Marcia Nessle v. Whirlpool Corporation*, 2008 U.S. Dist.
LEXIS 56940 (N.D. Ohio).
[12] Courts frequently acknowledge the benefit of having the input of local Judges as to matters of
State substantive law.  E.g., *Seltzer v. Omni Hotels*, 2010 U.S. Dist. LEXIS 103495 (S.D.N.Y.
2010).  *Fellner v. Cameron*, 2010 U.S. DIST. LEXIS 16208 (W.D.N.Y. 2010).  Lead Counsel
consciously risked a waiver of the favorable ruling by not mentioning it.

Moreover, those class action experts in positions of leadership nationally have listened to
undersigned counsel, i.e. and recognized the need to take special note of Ohio's Exception to the
Economic Loss Rule, both in the pleading and Rule 12(b)(6) contexts, in a number of MDL's.
See, e.g. In re Whirlpool Front-Loader Washing Machine Products Litigation, Case Nos. 1:08-
wp-65000 and 1:09-wp-65001, MDL 2001 (N.D. Ohio) (Docket No. 40 . . . Ohio Cass bell
weather case certified on Ohio Tort Theories).  In *Whirlpool* and other MDL's under Ohio law,
undersigned counsel has educated Leadership in those cases with their subsequent thanks in
writing.  Here . . . Lead Counsel refuse to so much as take a phone call; rather, they eschew the
benefits of expertise.

[13] Instead of arguing the Ohio Class's strength in tort, Lead Counsel repeatedly suggested that
the Ohio class had valid breach of contract claims.  See, e.g. Plaintiffs' Combined Surreply, p. 6,
where the following statement is made:  "Plaintiffs' Allegations Regarding Defendants'
Extended Warranty Scheme Demonstrate Defendants' Ongoing Misconduct and Fully Support
Plaintiffs' Breach of Contract Claims."  However, such embrace of a contractual relationship is
something Ohio's plaintiffs' lawyers resist and Ohio defense lawyers urge.  The reason for this is
that the seminal case of *Chemtrol v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 49, 537 N.E.2d
624 (1989), as construed and developed (see n. 8 supra), arguably permits a tort action *only*
where there is *no privity* between the consumer and manufacturer.  By embracing privity, Lead
Counsel endangered the Ohio class's strongest theory of case, i.e. tortuous breach of warranty.
Ohio Federal Judges have overruled Motions to Dismiss, expressly cautioning that they intended
to fully explore the issue of privity, the existence of which was understood to be fatal to various
plaintiffs' success.  See *Nessle et al v. Whirlpool Corp.*, 2008 U.S. Dist. LEXIS 56940*14 (N.D.
OH): ("It is premature at this stage to determine whether any contractual arrangement Plaintiff
may have had with Whirlpool will serve to bar Plaintiff's claim for implied warranty in tort.")

**RESPONSIBILITY INDICATE THAT THEIR CONTRIBUTION TO THE OHIO CLASS WAS NO GREATER THAN THAT OF OHIO COUNSEL . . . IF THAT**

By not filing suit for or timely defending their Ohio client Megan Shero, Lead Counsel appears to have raised genuine concerns under a number of provisions of the Massachusetts Rules of Professional Conduct.[14]

Lead Counsel was demonstrably *not* competent in Ohio's law regarding defective products, and did not timely become so.  By their sworn reckoning in these proceedings, Ohio's interest in this litigation is in the many millions of dollars, i.e. roughly 4% of $414 million.  Lead Counsel had a duty, which it breached, to treat its extraordinary appointment/engagement with fiduciary care.[15]

Why, one must ask, did Lead Counsel refuse to advise the Court **and the record** that the VW defendants were taking "a second bite at the apple" in filing a second motion to dismiss as to the Ohio case?[16]  To quote Judge Tauro's concerns: "the potentially pernicious effects of structural conflicts." *Jon N. v. Blue Cross Blue Shield of Massachusetts*, 684 F. Supp. 2d 190, 200 (D. Mass. 2010) (Tauro, J.).  No other explanation can be posited for this intentional lapse of

---

[14] Rule 1:1 requires as follows:

**A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.**

[15] Comment 5 to Rule 1:1 reads ads follows: [5] Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more elaborate treatment than matters of lesser consequence.

[16] Rule 1:3 requires as follows:

**A lawyer shall act with reasonable diligence and promptness in representing a client. The lawyer should represent a client zealously within the bounds of the law**

diligence and loyalty.[17]   No case in Ohio has ever been thus handled; and, although in the end Ms. Shero was not harmed, she was prejudiced at the time.[18]

A failure to file one's client's claim in a timely manner is, at minimum, the rawest form non-zealous, non-professional conduct.   *Id.*   In addition to the risk attendant to the VW defendants effort to obtain a Rule 41(a)(1) dismissal of Ms. Shero's complaint, Lead Counsel made a procedural misstep under Rule 10, F.R.Civ.P (governing all proceedings in the Federal Courts):

> **The title of the complaint must name all the parties**; the title of other pleadings, after naming the first party on each side, may refer generally to other parties. (emphasis added).

Again, Ohio had only one class representative, i.e. Megan Shero.   According to the VW defendants' Motion to Dismiss, the failure to file Ms. Shero's representative suit (by naming her) left Ohio with no class representative in the case.   And given Ohio's peculiar products defects law governing the recovery of economic loss from a remote manufacturer, the lapse is astonishing because no other state's law could as readily, if at all, justify Ms. Shero's right to survive a Rule 12(b)(6) motion.[19]   Indeed, no other class representative had standing to represent the Ohio Class' right to recover economic loss from the VW defendants.[20]

---

[17] Comment 1A to Rule 1.3: "It is implicit in the second sentence of the rule that a lawyer may not intentionally prejudice or damage his client during the course of the professional relationship."

[18] Comment 2 to Rule 1:1 reads as follows: [2] Perhaps no professional shortcoming is more widely resented than procrastination.  A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed.  Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness.

[19] See *In re Palmer,* 413 Mass. 33, 37 (1992)(the panel, in reversing, concluded that attorney's failure to sue BCBS for the total amount of the client's claim, as well as his failure to pursue the claim diligently, constituted a violation of DR 6-101(A) (2) and (3).

[20] See *Sosna v. Iowa*, 419 U.S. 393, 411 (1975): "In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a prop*er party to request an adjudication of a particular issue* and not whether the issue itself is justiciable."

Notwithstanding the good result reached in this litigation, the Court should address Lead Counsel's failure to meet the professional standards demanded of every attorney—let alone the high standard applicable to the Court's appointed Lead Counsel in a matter involving hundreds of millions of dollars in alleged settlement benefits.  "An ethical violation may exist even where there is no evidence that the client has been harmed."  *In re Shaughnessy*, 442 Mass. 1012, 1013 (Mass. 2004).   See also *In re Moran*, 231 B.R. 290, 294 (Bankr. N.D Ill. 1998)(expense reimbursement denied: "While the Court was impressed with the lengths to which the Coghlan Firm went to obtain a good result for its clients, its failure to comply with the RPC is a serious breach of its ethical obligations.")

As the First Circuit did in *In re Hotel Fire Litigation supra,* this Court should evaluate the issues that have been raised, and provide needed guidance by determining those issues in written findings of fact and conclusions of law.  When (as here) multiple experienced counsel have filed a State Court action in Alabama alleging Lead Counsel's fraud practiced under the leverage afforded by this Court's Pretrial Order No. 1, and Ohio and non-favored Massachusetts Counsel deem it necessary to forcefully bring Lead Counsel's abuse to this Court's attention, it is incumbent upon the Special Master to consider such issues in the instant context and allow a record to be made thereon.[21]  No Order of this Court reserves or could non-prejudicially preserve

---

(emphasis ours); see also *Harris v. Victor Mktg. Corp.*, 2010 U.S.  Dist. LEXIS 104996 (N.D. CA 2010): "There is clear authority stating that a plaintiff who lacks standing to pursue a claim [e.g. in tort under Ohio law] cannot be a class representative for that claim.  See *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

[21] At the fee-setting stage when fees are to come out of the settlement fund, the district court has a fiduciary role for the class.  See *Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994)  It may be that the record is insufficient for the court to make a reasoned judgment; if so, an opportunity should be afforded for the parties to develop the record. Accordingly, we remand for the district court to consider in the first instance the effect, if any, of the conflict arising out of the incentive agreements on the request by class counsel for an attorney's fee award.

such compelling issues for a later context in this proceeding.  This is not a squabble about the amount of any counsel's compensation, but rather, it is a call to arms concerning the integrity of this MDL proceeding and the process of this Court.

## OHIO COUNSEL'S CONTRIBUTION TO THE OHIO CLASS

On December 14, 2010, Lead Counsel Russ Henkin wrote to Lead Counsel Peter McNulty and Kirk Tresemer concerning Ohio Counsel's contribution to the Ohio Class and this MDL generally.  Mr. Henkin stated in relevant part as follows:

> Dear Folks:  I had a long and detailed conversation with Mark Schlachet. . . .  Let me start with the BOTTOM LINE of where we are currently:  I believe I can bring Mark and Brian into the fold, with their being treated as 'Russ's People,' with a caveat:  Mark and Brian successfully started and were prosecuting an Ohio case; they survived a motion to dismiss, fought the Rule 37 battles, met and conferred and got VW to the point of documents production, and had a motion for class certification pending for some time.  Dan Gsovski et al certainly know of their efforts and activities.  They then allowed the Cleveland case to fold into ours, at our encouragement and apparently at Dan Gsovski's request, *on the premise and promise that they would receive assignments in ours*.  The work they were assigned in the MDL did not meet their expectations.  Nevertheless, they have claimed no 'monitoring' or 'read and review' work . . .  They note, and I certainly don't deny, that *I personally, with your knowledge, represented and acknowledged in writing to Brian and Mark some time ago that they did materially contribute to the effort.* (emphasis added)

In light of the admitted and undisputed benefit conferred by Ohio Counsel on the Ohio Class,[22] and assuming the Special Master addresses Lead Counsel's contribution to the overall case or otherwise rules on the Motion for Attorneys Fees, Ohio Counsel are entitled to a finding of fact substantially as follows:

By comparison with Lead Counsel, Ohio Counsel's faithful and successful discharge of their litigational responsibilities to the Ohio Class, particularly prior to consolidation of the Ohio litigation in August 2008, is a contribution of equal or greater value and consequence.

## RELIEF REQUESTED

---

**Rodriguez v. West Publ'g Corp., 563 F.3d 948, 968 (9th Cir. Cal. 2009)**.
[22] We also have email correspondence from Mr. Henkin in January 2010 acknowledging Ohio Counsel's "contribution," which was "helpful."

Based upon the foregoing, Ohio Counsel respectfully request, in accordance with *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation,* 982 F.2d 603, 614-615 (1st Cir. 1991), as follows:

1.  that no hearing occur on February 14, 2011 unless and until the Court has ruled upon undersigned counsel's concurrent Motion of Ohio Counsel to be Designated as Settlemt Counsel Under Definition 3 of the Settlement Agreement (Docket No. 160).

2.  that if at the hearing noticed for February 14, 2011, as scheduled by Order or continued, the Court addresses any counsel's contribution to the case, it also address Ohio Counsel's contribution and finds in the following language:[23]

By comparison with Lead Counsel, Ohio Counsel's faithful and successful discharge of their litigational responsibilities to the Ohio Class, particularly prior to consolidation of the Ohio litigation in August 2008, is a contribution of equal or greater value and consequence.

3.  that the Court permit Ohio Counsel to be heard at the hearing of February 14, 2011;

4.  that the Court afford Ohio Counsel comparable means (to that afforded Lead Counsel) in describing their contribution to the litigation, contrasting their contribution with the Lead Counsel's contribution, and questioning the Lead Counsel or other presenters regarding their work;

5.  that the Court make findings and conclusions as to the respective contributions of Lead Counsel and Ohio Counsel to the Ohio Class and to the overall effort of this MDL;

6.  that any order to be signed by the Special Master, if prepared or submitted by or with input from any party or parties, be provided to Ohio Counsel for comment, upon three days notice.

---

[23] Ohio is the only instance we know of where initiating counsel actually litigated extensively prior to MDL transfer and consolidation in the District of Massachusetts.

7. and that any funds paid by the VW defendants as an for fee allowance be held subject to disbursement only upon an order of the Special Master, following notice to all counsel and an opportunity to be heard.

Respectfully submitted on behalf of
Megan Shero and the Ohio Class

/s/ Mark Schlachet                       /s/ Brian Ruschel
Mark Schlachet (Ohio Bar No. 0009881)    Brian Ruschel (Ohio Bar No. 0046631)
3637 South Green Road                    925 Euclid Ave., Suite 660
Beachwood OH 44122                       Cleveland OH 44115-1405
Telephone: (216) 896-0714                Telephone: (216) 621-3370
Facsimile: (216) 514-6406                Facsimile:  (216) 621-3370
E-mail: mschlachet@gmail.com             E-mail: bruschel@aol.com

## CERTIFICATE OF SERVICE

I certify that a copy of the above document was docketed through the Electronic Case Filing system on January 13, 2011 to all identified participants on the Notice of Electronic Filing. Electronic copies were sent via e-mail to all entities indicated as non-registered participants.

/s/ Mark Schlachet
Mark Schlachet