UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLASS ACTION MASTER
FILE NO. 1:07-md-1790-JLT
(Relating to All Cases)

IN RE VOLKSWAGEN and AUDI
WARRANTY EXTENSION LITIGATION

SUPPLEMENTAL MEMORANDUM ON PROCESS FOR
ATTORNEYS' FEES AND COSTS HEARING

Introduction

On December 22, 2010, the Special Master issued a Memorandum and Order Regarding Procedure On Fees and Costs Applications, Doc. No. 178. It now still appears that not all counsel fully understand what was meant to be set forth and intended by that Memorandum. Because all involved, especially those with standing to participate, are entitled to be fully aware of what to expect and what to prepare for in the February 14, 2011, hearing, the Special Master issues this Supplemental Memorandum.

Case Status

The hearing scheduled for February 14, 2011, while important, is but a small part of a much larger process for the Court[1] in connection with assessing and considering the approval of a multi-district class action settlement. That process is dictated by Fed. R. Civ. P. Rule 23 and the many cases that apply thereto. See, e.g., *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620-622 (1997). As is the case here, see Agreement of Settlement, § VI. A. 2, in the absence of an express choice of law clause, where a fee award is "a result of the parties' private agreement . . .

---

[1] In this Supplemental Memorandum the "Court" refers to U.S. District Judge Joseph L. Tauro, and the "Special Master" refers to Hon. Allan van Gestel, (Ret.), duly appointed by the Court.

federal law . . . governs the decision. . . ." *Dewey* v. *Volkswagen of Am.*, 2:07 – CV – 2249, 2010 WL 3018305, at *26-27 (D. N.J. July 30, 2010).[2]

At the Final Fairness Hearing, scheduled for March 11, 2011, the Court must undertake a detailed assessment of the terms of the proposed settlement, the interests of the Settlement Class members as well as any third parties that might be affected by the settlement, and the circumstances of the litigation and the proposed settlement. *Duhaime* v. *John Hancock Mut. Life Ins. Co.*, 183 F. 3d 1, 2, 7 (1st Cir. 1999).

In aid of the Court, the Special Master made a preliminary, but detailed, review of the Agreement of Settlement. Additionally, by the time of that review, the Special Master was, and for a long time had been, deeply immersed in the discovery and other aspects of the case and had participated with lead counsel on each side in many aspects that led to the Agreement of Settlement. All of this resulted in the filing, on September 22, 2010, of Findings of Fact, Conclusions of Law and Recommendations of the Special Master Relating to the Conditional Approval of Class Settlement, Direct Notice to the Settlement Class and to Schedule a Final Fairness Hearing. Doc. No. 164. Shortly thereafter, the Court issued its Order, Doc. No. 165, conditionally approving the settlement, certifying a class for settlement purposes only, appointing the Representatives of the Settlement Class, appointing Class Counsel, approving the form and manner of notice to the Settlement Class, and scheduling further events in the settlement approval process, all leading to the up-coming Final Fairness Hearing scheduled for March 11, 2011. Notably, no attorney or Settlement Class member objected to any aspect of the Court's foregoing

---

[2] The Special Master is fully aware that the Plaintiffs' Second Amended Class Action Complaint, in Count I, relies upon the New Jersey Consumer Fraud Act, N.J.S.A. § 56.8 - 1, along with other similar state consumer fraud laws.

Order.

Among the events so-scheduled by the Order were the filing, on December 20, 2010, of Class Counsels' Motion for Attorneys' Fees and Costs, Docs. Nos. 174-175, the filing of any oppositions thereto on or before January 24, 2011,[3] the filing of Class Counsels' Reply on or before February 8, 2011, the scheduling of the hearing on Class Counsels' Motion, now set for February 14, 2011, and, ultimately, the submission by the Special Master to the Court, on or before February 18, 2011, of the conclusions reached after the February 14th hearing. Again, notably, no attorney or Settlement Class member has objected to any aspect of the recited scheduling of filings and the hearing.

Recent Filings and Issues

Since the issuance of the Court's Order on September 22, 2010, there have been a number of recent filings by Attorneys Mark Schlachet and Brian Ruschel, (designating themselves as "Ohio Counsel"), and by Attorney Thomas P. Sobran of Massachusetts, each seeking action by the Special Master or the Court relating to motions and applications for their attorneys' fees and costs said to have been incurred by them in certain aspects of this matter. See, e.g., Docs. Nos. 168 and 169, and their accompanying papers.[4] These latter motions and applications for fees and costs

---

[3] Including the filings on January 24, 2011, by the Defendants of their papers in opposition to Class Counsels' filings. See Docs. Nos. 204, 205 and 206.

[4] The Special Master is fully aware that Messrs. Schlachet, Ruschel and Sobran, as well as others, played roles in various aspects of these cases. Neither of Messrs. Schlachet, Ruschel nor Sobran, however, appear to have played any role in the negotiations and efforts that led to the proposed settlement presently before the Court and Special Master for consideration for class action approval. Indeed, Ohio Counsel complain, with some vigor, that Class Counsel have rejected any and all efforts by them to participate meaningfully in the Ohio action once it was filed in Federal Court and made a part of the multi-district cases. Declaration of Mark Schlachet, Doc. No. 190, p. 3. They assert that "[w]ith the exception of allowing . . . Ruschel to attend one

3

Case 1:07-md-01790-JLT Document 211 Filed 01/26/11 Page 4 of 8

claimed by Messrs. Schlachet, Ruschel and Sobran are not included within the process established by Judge Tauro in his Order leading up to the Final Fairness Hearing, nor are they mentioned in the Agreement of Settlement and the Notice served on the Settlement Class Members. Curiously, Ohio Counsel state that the "purpose of [their] filing is, hopefully, cautionary; but the filing could prove operative and contentious." Motion and Application for Attorneys' Fees, Costs and Expenses, Doc. No. 168, p.1.

It was, in part at least, to head-off whatever it is that is alluded to be "operative and contentious," as well as to give fair notice to all concerned, that the Special Master issued the December 22, 2010, Memorandum and Order, Doc. No. 178. The Special Master, apparently, has not been wholly successful in that attempt. See, e.g., Docs. Nos. 179, 183, 188, 190, 191, 193, 197 and 201, all recently filed by Ohio Counsel and Mr. Sobran; and the Special Master's responses to some of those filings in Docs. Nos. 182 and 186. Thus this supplemental explanatory memorandum.

<u>Messrs. Schlachet's, Ruschel's and Sobran's Demands</u>

Messrs. Schlachet and Ruschel, citing to *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 982 F.2d 603, 614-615 (1st Cir. 1995), request the following:

> "1 that no hearing occur on February 14, 2011 unless and until the Court has ruled on [their] concurrent Motion of Ohio Counsel to be Designated as Settlement Counsel Under Definition 3 of the Settlement Agreement, Docket No. 160.

---

[cont.] deposition held in Cleveland . . . in the three and one-half years since the Shero tag-a-long case was transferred to Boston, Ohio Counsel were assigned no other work." Memorandum of Points and Authorities, Doc. No. 191, p. 2. Both Ohio Counsel's and Mr. Sobran's proffered time sheets reflect the accuracy of these allegations that they performed little, if any, work on this case while in the Federal Court.

4

"2 that if at the hearing noticed for February 14, 2011 . . . the Court addresses any counsel's contribution to the case, it also address Ohio Counsel's contribution [and make certain findings].

"3 that the Court permit Ohio Counsel to be heard at the hearing of February 14, 2011.

"4 that the Court afford Ohio Counsel comparable means (to that afforded Lead Counsel) in describing their contribution to the litigation, contrasting their contribution with the Lead Counsel's contribution, and questioning the Lead Counsel or other presenters regarding their work.

"5 that the Court make findings and conclusions as to the respective contributions of Lead Counsel and Ohio Counsel to the Ohio Class and to the overall effort of this MDL.

"6 that any order to be signed by the Special Master, if prepared or submitted by or with input from any party or parties, be provided to Ohio Counsel for comment, upon three days notice.

"7 and that any funds paid by the VW defendants as an [sic] for fee allowance be held subject to disbursement only upon an order of the Special Master, following notice to all counsel and an opportunity to be heard."

Mr. Sobran phrases his demand somewhat more simply. He says: "[r]ather than making any and all objections to Class Counsels' request for an overall attorneys' fee and expense award at the February 14, 2011 hearing (which could be interpreted as also setting a baseline for Class Counsels' fee and expense allocations from the overall award) Sobran requests that he be allowed to challenge Class Counsels' fee and expense allocation at a later date using the same procedure the court set out in its January 10, 2011 order." Doc. No. 201. Mr. Sobran also cites to *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 982 F.2d at 614-615.

Without addressing specifically each of Messrs. Schlachet's, Ruschel's and Sobran's

demands or requests at this time, the Special Master explains below how he intends to proceed at the February 14, 2011, hearing and thereafter, on issues relating to attorneys' fees and costs.

The Process for the February 14, 2011, Hearing

At the hearing on February 14, 2011, the Special Master will hear, by way of oral argument only, the positions of those in attendance who, by their prior filings are duly qualified to speak, in favor of or in opposition to Class Counsels' Motion for Attorneys' Fees and Costs, Doc. No. 174. The order of speaking will be: for Class Counsel to go first, in support of their motion; then Defendants' counsel may speak next, either in opposition, modification or support of the motion; Defendants' counsel will be followed by those qualified to speak who are in favor of the motion; and finally those qualified to speak who oppose the motion will be heard. It is not anticipated that a second round of speaking will be required.

At the hearing there will be no presentation of testimony or cross-examination from or of evidentiary witnesses. This will not be a mini-trial.

Thereafter, the Special Master will make his recommendations to the Court regarding Class Counsels' motion. The recommendations will be based upon the written filings, the oral arguments, the Special Master's own observation and involvement in the case and the settlement process, and any appropriate legal provisions as set out by the U.S. Supreme Court, the First Circuit Court of Appeals, Massachusetts Federal District Courts and other appropriate authorities.

All of the foregoing is intended to be consistent with the rulings of the First Circuit Court of Appeals in the more recent opinion in *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295 (1st Cir. 1995). Key among those rulings are the "use of the triangular construct of *Mathews* v. *Eldridge*, 424 U.S. 319 . . . (1976), to determine

whether [the Special Master affords all counsel] 'the opportunity to be heard "at a meaningful time and in a meaningful manner." ' *Id.* at 333." *Thirteen Appeals, supra,* 56 F.3d at 301.

Also, the Special Master

"is not obligated to convene an evidentiary hearing as a means of resolving every attorneys' fee dispute. . . . [F]lexibility is the watchword. . . . [F]lexibility implies substantial discretion. . . . Therefore, when the [Special Master] chooses among the available options, [he] can mix and match."

*Thirteen Appeals, supra,* 56 F.3d at 302.

The First Circuit favors

"a 'pragmatic approach' to the question of whether, in a given situation, an evidentiary hearing is required . . . . The key determinant is whether, 'given the nature and circumstances of the case . . . the parties [had] a fair opportunity to present relevant facts and arguments to the court, and to counter the opponents' submissions.'"

*Thirteen Appeals, supra,* 56 F.3d at 302.

"The controlling legal principle, then, is that parties to a fee dispute do not have the right to an evidentiary hearing on demand." *Thirteen Appeals, supra,* 56 F.3d. at 303. Further, "[t]he Due Process Clause does not require freewheeling adversarial discovery as standard equipment in fee contests." *Thirteen Appeals, supra,* 56 F.3d at 303.

Consistent with the process followed in *In re Indigo Securities Litigation,* 995 F.Supp. 233, 235 (D. Mass. 1998), at an appropriate time *after* the February 14, 2011, hearing, the Special Master will recommend to the Court an amount of attorneys' fees and costs to be paid by the Defendants to Class Counsel,[5] ultimately to be distributed by Class Counsel among the

---

[5] The Special Master is aware of the Defendants' Motion to Defer Ruling on Plaintiffs' Motion for Attorneys' Fees and Costs Until After June 27, 2011, Doc. No. 203. The Special Master will not act on this motion until Class Counsel, and any other counsel, have an [cont.] opportunity to respond to it, either before or at the February 14, 2011, hearing.

7

participating counsel, including themselves, based upon their respective contribution to the litigation and its resolution, according to the discretion of Class Counsel. Any attorney who is dissatisfied with the allocation made by Class Counsel to him or her may *then* apply to the Special Master for relief. Such application(s) will be dealt with by the Special Master in a fair and due process. That process, however, will be established *after* it is known whether the class action settlement has been approved, and the amount of any fees to be payable by the Defendants are determined by the Court, and all appeals therefrom are exhausted. It will not be until that time that the Special Master, in his discretion, will be able to craft a process appropriate for the next steps in the fee allocation distribution, for only then will the extent and nature of any concerns or complaints by non-class counsel be known. See Doc. No. 178; the Agreement of Settlement at § VI. C.; *In re Indigo Securities Litigation, supra*, 995 F. Supp. at 235; *In Re: Copley Pharmaceutical, Inc. Securities Litigation*, Civil Action No. 94-11897-WGY (D. Mass., Feb 8, 1996).

The Special Master does not presume, as of this writing, that Class Counsel will act inappropriately when, and if, there comes a time for these fee and cost allocations.

                                                                                                     /s/ Allan van Gestel
                                                                 Hon. Allan van Gestel, (Ret.)
                                                                 Special Master assigned by the
                                                                 Hon. Joseph L. Tauro, United States
                                                                District Judge

DATED: January 26, 2011

---

[cont.] opportunity to respond to it, either before or at the February 14, 2011, hearing.