**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE VOLKSWAGEN and AUDI WARRANTY EXTENSION LITIGATION | : MDL DKT. NO. 07-md-01790-JLT |
| THIS DOCUMENT RELATES TO ALL CASES | : |

**OBJECTION TO MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT (DOC. NO. 172); REQUEST FOR RELIEF**

## INTRODUCTION: OBJECTORS' CONCERN

Ohio Class Representative Megan Shero and her counsel, Mark Schlachet and Brian Ruschel (at times "Ohio Counsel"), object to the fairness of the attorney-fee-related aspect of the settlement before this Court. Ohio Counsel have a property interest to protect which the First Circuit has long recognized as entitled to due process. *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation,* 982 F.2d 603, 614-615 (1st Cir. 1991) (sometimes "*Hotel I*").[1] The due process holding of *Hotel I* has never been criticized, modified or overruled to our knowledge. See *Mard v. Town of Amherst,* 350 F.3d 184, 189 (1st Cir. Mass. 2003)(cited approvingly). The Advisory Committee Notes to Rule 23(h) acknowledge the *Hotel I* property interest for

[1] *Hotel I* at p. 612: "*The Private Interest*. In this instance, the affected private interest is the monetary share of the funds due each IRPA. The district court necessarily deprived the appellants of money when it invaded the attorneys' fund to pay PSC fees. Not only do the appellants have a property interest in escrowed funds, see *Reed v. Commissioner,* 723 F.2d 138, 146 (1st Cir. 1983), but the amounts involved are substantial and the deprivation is complete." An IRPA in *Hotel I* was a Plaintiff's lawyer "relegated . . . to the sideline." *Id.* at 615.

which Ohio Counsel seek protection.[2]

Ohio Counsel have no dispute as to that portion of the settlement addressing class member benefits. We have serious concerns, however, as to the *fairness* of the fee-setting-allocation mechanism as crafted by Class Counsel.[3] With minor adjustments to maintain a level playing field as between Class Counsel and Non-Class Counsel, Ohio Counsel can be protected in their interests born of faithful service to the putative Ohio Class. [4] Neither this Objection nor the relief sought will adversely impact any class

---

[2] "In some situations, there may be a basis for making an award to other counsel [in addition to class counsel] whose work produced a beneficial result for the class, such as attorneys who acted for the class before certification but were not appointed class counsel, or attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of class counsel. Other situations in which fee awards are authorized by law or by agreement of the parties may exist." Notes of the Advisory Committee on 2003 Amendments to Rule 23.

[3] The procedural fabric of the fee-setting-allocation process in this case is uncertain, conjectural and laced with traps for the unwary. Schlachet and Ruschel have raised this issue in a number of filings since December 13, 2011 which, though initially rejected by the Special Master as premature, have recently prompted the Special Master to provide important specifics as to the process that will inform the proceedings of February 14, 2011. Until Judge van Gestel's Memorandum of January 26 2011 (Docket No. 211), Ohio Counsel had no way of anticipating what would happen--in terms of standing, evidence, oral argument, and bases of decision--at the February 14th hearing. We thank the Special Master for his patience and judiciousness.

[4] Class Counsel have made light of the gravity of Ohio Counsel's responsibility to protect the putative class in Ohio and in this Court prior to the Conditional Approval and even now. *See* Class Plaintiffs' Response . . . Document 213, p. 3 ("No 'Ohio Class' exists or has ever existed in this MDL action."). Controlling authority speaks differently: "[E]ven before certification or a formal attorney-client relationship, an attorney acting on behalf of a putative class must act in the best interests of the class as a whole." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.12 (2009) Case law is in accord with the Manual, *See Johnson v. Wentz Equipment Co*., 1977 U.S. Dist. LEXIS 12220 (D. Kan. Dec. 22, 1977) (" . . . the protection of the interests of putative class members in the pre-certification proceedings is an important priority. This is so largely because a cause is presumed to be a class action during the period between the allegation of a class action and the actual certification of a class action by the Court.") Je *Maintiendrai Club v. Trans International Airline*s, No. 76-2066 (10th Cir., 9/21/77, unpublished), citing *Pearson v. Ecological Science Corp*., 522 F.2d 171, 176-77 (5th Cir. 1975); *Kahan v. Rosentiel*, 424 F.2d 161, 169 (3rd Cir.), cert. denied, 398 U.S. 950 (1970); *Duncan v. Goodyear Tire & Rubber Co*., 66 F.R.D. 615, 616 (E.D. Wis. 1975); *Rotzenburg v. Neenah Joint School*

member's settlement benefit or the timing thereof.[5]

## CERTIFICATION OF SATISFACTION OF MEET AND CONFER REQUIREMENT[6]

Ohio Counsel requested to meet and confer on their Objection to the Settlement to be filed before Judge Tauro. Class Counsel advised Schlachet and Ruschel that they wished to meet and confer in Los Angeles on January 24, 2011, at 1:00P.M., in person. Mr. McNulty took affirmative action to create the impression that Class Counsel were interested in good faith discussion of all outstanding difficulties including, specifically at Class Counsel's suggestion, a resolution of the issues of fairness in the fee allocation processes to which this Objection to Judge Tauro is addressed. Ohio Counsel Schlachet traveled to Los Angeles for this meet and confer, which was not successful in resolving or narrowing the issues. (The parties agreed to maintain confidentiality as to the discussion had at the meeting.) Further efforts in earnest with Mr. Henkin have failed to yield a resolution.

On January 31, 2011 Ohio Counsel provided to Class Counsel Henkin a near-final draft of this Objection for his comment, specifically requesting that any inaccuracies be brought to our attention so that they might be corrected. No comments were forthcoming at the time of filing hereof.

---

*District*, 64 F.R.D. 181, 182 (E.D. Wis. 1974); *Held v. Missouri Pacific Railroad Co., 64 F.R.D. 346, 347 (S.D. Tex. 1974); Muntz v. Ohio Screw Prod.*, 61 F.R.D. 396, 398 (N.D. Ohio 1973); *Philadelphia Elec. Co. v. Anaconda American Brass Co.*, 42 F.R.D. 324, 326 (E.D. Pa. 1967*).*

[5] "The parties agree that the settlement is fair and adequate, and can present this issue fully to the Court independent of the attorney fee issue." Volkswagen Memorandum in Opposition, Docket No. 174 at p.11.

[6] On December 20, 2010 undersigned requested of Peter McNulty that he stipulate that "there is no possibility of [undersigned] being prejudiced in any way by the [February 14th] hearing or any procedure, finding or order to issue therefrom." If Mr. McNulty had said "yes," all of Ohio Counsel's time and effort since December 20, 2010, and the related time of the Court, may have been unnecessary. His refusal to do so called for heightened scrutiny.

**REQUEST FOR RELIEF:[7] TO BE DESIGNATED ADDITIONAL COUNSEL TO SETTLEMENT CLASS UNDER THE EXPRESS TERMS OF DEFINITION NO. 3 OF THE SETTLEMENT AGREEMENT[8]**

In *Hotel I* the First Circuit found that attorneys *not* appointed to the Plaintiffs' Steering Committee had a property interest in the aggregate award; and that this interest had not been properly protected by the District Judge. Class Counsel here, without prior disclosure, drafted around such a property interest for Non-Class Counsel in this case,[9] and seek the Court's Fairness Order ratifying their exclusive right to the aggregate fee. As indicated in n.1 *supra,* this is an important "taking." Ohio Counsel's most important request for relief is that any Order approving the Settlement or the Settlement Agreement

---

[7]From the outset of Ohio Counsel's attempted communications, filings and discussions, Class Counsel have failed and refused to acknowledge that Ohio Counsel seek only a measure of fairness . . . and not an instant payday. In their recent Response to the Motion to Designate, Doc. No. 213 at p. 1, Class Counsel mischaracterize Ohio Counsel's efforts as "a thinly disguised attempt to indirectly continue to pursue attorneys' fees and costs prematurely and contrary to explicit Orders of the Court." On that false premise Class Counsel have consistently failed to address *any* of the serious challenges to the discharge of their responsibilities to the Class. More than clever evasion is demanded of fiduciaries: "[t]he entire attitude of the defendants toward their fiduciary relationship is further shown by their refusal to give any information on actual inquiry on behalf of the debenture holders." Securities & Exchange Com. v. Aldred Inv. Trust, 58 F. Supp. 724, 732 (D. Mass. 1945).

[8] Any right of entitlement arising from an allowance of attorneys fees upon the Motion for Attorneys Fees of Class Counsel (Docket No. 174) is limited to "Class Counsel," i.e. McNulty, Tresemer and Henkin. Definition No. 3 of the Settlement Agreement (Docket No 160) defines "Class Counsel" as "those attorneys executing this Settlement Agreement [being McNulty, Tresemer and Henkin] . . . or such other attorneys as shall be approved by the Court as counsel to the Settlement Class." The Settlement Agreement was negotiated in absolute secrecy by Class Counsel and never shown to or approved by Ohio Counsel until after it was filed with the Court as part of the Conditional Approval Package on September 13, 2010. See Docket Nos. 155, 160. Class Counsel's Motion for Attorneys Fees was filed on December 20, 2010.

[9] *Hotel I*, p. 612-13: " . . . the IRPAs had only a few days to consider the ramifications of a possible switch to the lodestar method, reconstruct their own hours in order to protect their interest in the funds . . . ."

in this case contain the following or substantially similar language:

> "Ordered that Ohio Counsel Mark Schlachet and Brian Ruschel shall be, and are hereby, additional counsel to the Settlement Class pursuant to Definition No. 3 of the Settlement Agreement;" and
>
> "Ordered that any funds paid by the VW defendants as and for a fee allowance must be held subject to disbursement only upon an order of the Special Master, following appropriate notice to all counsel and an opportunity to be heard."

Schlachet and Ruschel filed a cautionary motion before the Special Master to be designated as additional counsel to the settlement class, in accordance with Definition No. 3 of the Settlement Agreement, so as to avoid, in their view, the possibility of being disenfranchised of their unliquidated property interest in any aggregate fund to be set by the Special Master and approved by this Court.[10] (Docket No. 188) The Settlement Agreement does not recognize any counsel other than "Class Counsel" (as defined) as having an interest in the aggregate award; the Settlement Agreement expressly precludes any counsel from such an interest until and unless such counsel is designated to be additional counsel to the Settlement Class under Definition No. 3; and the Settlement Agreement provides a definitive mechanism for payment of an aggregate award, once final, to Class Counsel, without any reporting requirement or restriction on such Class Counsel's use of the proceeds of the aggregate award.

The process constructed by Class Counsel does not include an opportunity to challenge the fee requests of Messrs. McNulty, Tresemer and Henkin and their firms—

---

[10] Where and when this request for relief must be filed is not clear. Accordingly, we have filed this request for relief here, as well for similar relief before Judge van Gestel. Rule 23 (d)(1)(E), Fed. R. Civ. P. affords this Court broad authority to regulate these proceedings. We filed before Judge van Gestel because, although he has repeatedly stated what *will* be decided at the hearing of February 14, 2011 before him, it is impossible to know what *will not* be decided at that hearing. The Special Master did not rule on the merits of the Motion, but rather, denied the Motion (Docket No. 160) because His Honor deemed the Motion an effort of Ohio Counsel to "protect and advance their motion for attorney fees . . . " which, the ruling implies, is beyond the scope and "focus" of the February 14th hearing. We have objected to the said ruling, being Docket No. 215, out of an abundance of caution, once again, that not to do so could work a substantive prejudice. It is anticipated that the Objection we have filed to Docket No. 215 will merge into the Objection to the Motion to Approve Settlement to be heard on March 11, 2011.

aside from the instant opportunity to challenge their award *qua* Class Counsel. The structure thus requires or may require that an objecting non-Class Counsel hinder his or her own opportunity to get paid in order to see justice done overall. Such disincentives, particularly where Class Counsel's fee application is under serious challenge,[11] do not comport with the transparency needed in the class action practice.

The process constructed by Class Counsel does not provide "a viable means (comparable to the means afforded the PSC) of describing their contribution to the litigation." *Hotel I* at 614-15. Class Counsel's conduct to date, see notes 15 and 20 *infra,* demonstrates their antipathy to crediting Ohio Counsel with any beneficial effect on the proceedings. Ohio Counsel therefore gives notice of their preparedness to present to the District Court on March 11, 2011, in such form as the District Court shall permit, a showing of their contribution, as compared with Class Counsel's contribution, to this case and to the Ohio Class in particular. We request that the Court make the following finding:

> Found that by comparison with Class Counsel, Ohio Counsel's faithful and successful discharge of their litigational responsibilities to the putative Ohio Class, particularly prior to consolidation of the Ohio litigation in August 2008, is a contribution of equal or greater value and consequence.

---

[11] Class Counsel have posited a class settlement benefit of $414 million, while VW, purportedly with one of the world's leading economists in support, suggest a class benefit of $50 million at most. Among the contested numbers posited by Class Counsel is an alleged $243million to pay previously-denied class member claims filed within a six-month window for assertion. Class Counsel have not supported the alleged $243 million component of settlement benefits with data from similar class actions. This and other features of the alleged benefits to the Settlement Class evince a reckless abandon by Class Counsel, who will claim a lodestar amount of approximately $13 million and a prospective administrative cost for the settlement of over $6 million, with any unused portion to fall to Class Counsel. They seek to have a court treat their allegation of a $414 million settlement benefit as a "fund" against which they claim an allegedly reasonable fee of $37.5 million, plus expense reimbursement of $1.75 million to Class Counsel.

VW's objection raises serious issues of Class Counsel's honesty in fact. If the Court is persuaded that VW is substantially correct in this regard, then it would follow that Class Counsel would have to be relieved of their fee-related responsibilities, and the Special Master or other appointee installed to maintain and allocate the aggregate fee award. See discussion of "private matter," pp.15-16 *infra. Cf. Rodriguez De Quinonez v. Perez,* 596 F.2d 486 (1st Cir. 1979).

Ohio Counsel believe that the aggregate award is intended, through careful crafting by Class Counsel, to belong solely to Class Counsel, who anticipate, in addition to exclusive and unfettered possession of the aggregate award, a residual interest in any portion not paid to other counsel or for claims administration. This Court could not have contemplated, as the issue was not before this Court at any time, whether Class Counsel should have a property interest while all other counsel should be limited to an amorphous and unlikely claim to "fair treatment." Class Counsel's conflict of interest is plain.[12] The Special Master can and will assist in the ultimate resolution of disputed allocations—but there is no reason to burden the allocation process with a needless risk of abuse.[13]

By designating Ohio Counsel as additional counsel to the Settlement Class under Definition No. 3 of the Settlement Agreement, the aggregate fee award will be handled transparently, as opposed to secretly and harmfully. For these reasons, Ohio Counsel request that this Court designate Ohio Counsel as additional counsel to the Settlement Class pursuant to Definition No. 3 of the Settlement Agreement, and make clear that any funds paid by the defendants as a fee allowance must be held subject to disbursement only upon an order of the Special Master, following appropriate notice to all counsel and an opportunity to be heard.[14]

---

[12] *Hotel I*, p. 607: " The interests of the PSC members and the non-PSC IRPAs diverged even more starkly; after all, each dollar that went to the former was a full dollar less that would otherwise be divided among the latter." This is precisely the case in this MDL.

[13] A single example can suffice, to wit: Class Counsel's expert has suggested a set aside of $6 million, estimated by Mr. Kleckner as the cost of administering the settlement. (Doc. No. 175. p. 9). Mr. Kleckner may have made fundamental errors leading to clearly erroneous conclusions; and his estimates may be skewed. Class Counsel provides no probative support for the $6 million number. Class Counsel's residual interest, if they obtain the Order they seek under the strict terms of the Settlement Agreement, is such that Class Counsel will fall heir to any unused portion of the purported $6 million earmark. Whatever the sum, if any, there must be transparency in fairness to counsel who will *not* be so situated, as is Class Counsel, to fall heir to the unused portion of this $6 million set aside. Ohio Counsel disclaims any interest in providing services to administer the settlement . . . but we have significant interest in monitoring those who do. The opportunities for mischief, should the Court enter the Order sought by Class Counsel, are boundless.

[14] The Court must not confuse Class Counsel's authority to initially recommend allocations from the aggregate fee awarded, with which Ohio Counsel takes no exception,

**BACKGROUND**

Ohio Counsel filed a class suit in the Court of Common Pleas for Cuyahoga County, Ohio on behalf of Megan Shero in December 2006, and defendants Volkswagen and Audi (collectively "VW" at times) inadvertently did not remove the case to Federal Court. In the litigation before the Ohio state court, the undersigned Ohio Counsel were "Lead Counsel," and litigated vigorously and successfully. They defeated the defendants' motion to dismiss, conducted extensive discovery, pursued Rule 37 relief, filed a motion for class certification, and there were millions of documents poised for turnover by the defendants.[15] Ohio Counsel's hours were all "core hours" benefitting the litigation.

Counsel (later "Lead Counsel") from Berger & Montague (reasonably thought to have binding authority on other Plaintiffs Steering Committee members) encouraged Ohio counsel to join the MDL as early as February 2007 and assured Ohio counsel that they would be fairly treated—defined in oral conversations (as recently confirmed in writings quoted *infra.*) as "getting our fair share of work." VW counsel made an extensive oral presentation during a meet-and-confer session in Cleveland, Ohio on July 7, 2007, urging that Ohio Counsel accede to amending the complaint so as to allow removal to the Northern District of Ohio, a ruling by the JPML, and transfer to this Court. Upon reliance of Class Counsel's "fair share" assurances, Ohio Counsel were persuaded to and agreed to this consolidation in July 2007. Class Counsel herein have recently

---

with the far more substantive advantage of being the only counsel *ordered entitled* to *enjoyment of the aggregate fee award*, which is the status of this matter in its present posture and absent relief from this Court

[15] Although Class Counsel provide lengthy and detailed accounts of *their* efforts in discovery and otherwise in the contentious litigation, they do not mention that the Ohio Class encountered the same contentiousness in Cleveland, Ohio. Class Counsel do not mention that Ohio Counsel prevailed on VW's motion to dismiss long before the instant case was at the dispositive motion stage. Class Counsel do not mention that Ohio Counsel fought for and successfully secured access to approximately two million documents from VW in July 2007—which was in fact done. The only reason we can think of for such omission is Class Counsel's desire that the Court *not* recognize Ohio Counsel's reasonable, necessary and beneficial services to the putative Ohio Class.

confirmed both (1) their promise in 2007 to include Ohio counsel for their "fair share" of work following consolidation in the District of Massachusetts, as well as (2) Ohio Counsel's material contribution to this overall effort.[16]

Upon removal and thereafter, Class Counsel Peter McNulty and Kirk Tresemer refused to assign work to Ohio counsel and, aside from allowing Ohio Counsel Brian Ruschel to attend one deposition held in Cleveland, assigned no work to Ohio Counsel for the three and one-half years that this case has been pending in Boston. Class Counsel Russ Henkin has stated on numerous occasions his disagreement with his Co-Class Counsel in their exclusion of Non-Class Counsel.[17] Ohio counsel thus spent substantially all of their pre-December 2010 hours in the Ohio phase of the litigation, where *they* were Ohio Class or Lead Counsel. Mark Schlachet, for example, booked only 13 hours

---

[16] On December 14, 2010, Class Counsel Russ Henkin wrote to Class Counsel Peter McNulty and Kirk Tresemer concerning Ohio Counsel's contribution to the Ohio Class and this MDL generally. Mr. Henkin stated in relevant part as follows:

> Dear Folks: I had a long and detailed conversation with Mark Schlachet. . . . Let me start with the BOTTOM LINE of where we are currently: I believe I can bring Mark and Brian into the fold, with their being treated as 'Russ's People,' with a caveat: Mark and Brian successfully started and were prosecuting an Ohio case; they survived a motion to dismiss, fought the Rule 37 battles, met and conferred and got VW to the point of documents production, and had a motion for class certification pending for some time. Dan Gsovski et al certainly know of their efforts and activities. They then allowed the Cleveland case to fold into ours, at our encouragement and apparently at Dan Gzovski's request, *on the premise and promise that they would receive assignments in ours*. The work they were assigned in the MDL did not meet their expectations. Nevertheless, they have claimed no 'monitoring' or 'read and review' work . . . They note, and I certainly don't deny, that *I personally, with your knowledge, represented and acknowledged in writing to Brian and Mark some time ago that they did materially contribute to the effort.* (Emphasis ours.)

[17] In fairness to Mr. Henkin, and his firm, Ohio Counsel we do not fault him for his co-Class Counsel's refusal to provide Ohio Counsel their "fair share." He has assured Ohio counsel us that in such matters he was "voted down." by Messrs. Tresemer and McNulty. We are reasonably certain about Mr. Tresemer's role in the matter, as aligned with Mr. McNulty. And we are quite certain that Mr. McNulty is primarily responsible for excluding Ohio and other counsel from their due opportunity to provide appropriate contributions to the effort.

between removal from Ohio and December 2010—most of which was for reading the MDL record and dealing with Class Counsel's indifference to Ohio Counsel's concerns.

**DISCUSSION AND ARGUMENT**

Ohio Counsel come to this Court now, in an effort "to insulate the decision-making process against the potentially pernicious effects of structural conflicts." *Jon N. v. Blue Cross Blue Shield of Massachusetts*, 684 F. Supp. 2d 190 (D. Mass. 2010). Two principles of conflicts administration must serve as a springboard for analysis: (1) a concern of conflicting interests grows in significance in direct proportion to the conflicted actor's history of bias in administration. *McGahey v. Harvard Univ. Flexible Benefits Plan,* 685 F. Supp. 2d 168, 177 (D. Mass 2009); and (2) injustice is too often the result of a lack of transparency in ADR proceedings. *Cf. Awuah v. Coverall N. Am., Inc.*, 563 F. Supp. 2d 312, 316 (D. Mass. 2008).

Class Counsel *did* harm the Ohio class,[18] as has been forth in detail in earlier papers,[19] (1) by not filing a claim for Megan Shero in the Second Amended Complaint,

---

[18] In their recent filing of Docket No. 213 at p.3, Class Counsel find it difficult to "square" Ohio Counsel's concerns of misconduct with the admitted benefit to the Settlement Class of their negotiations with VW. But this is not a difficulty at all. Notwithstanding the good result reached in this litigation, the court should address Class Counsel's failure to meet the professional standards demanded of every attorney—let alone the high standard applicable to the Court's appointed Class Counsel in a matter involving hundreds of millions of dollars in alleged settlement benefits. "An ethical violation may exist even where there is no evidence that the client has been harmed." *In re Shaughnessy*, 442 Mass. 1012, 1013 (Mass. 2004). *See also In re Moran*, 231 B.R. 290, 294 (Bankr. N.D Ill. 1998)(Expense reimbursement denied: "While the Court was impressed with the lengths to which the Coghlan Firm went to obtain a good result for its clients, its failure to comply with the RPC is a serious breach of its ethical obligations.")

[19] See Memorandum Of Points And Authorities In Support Of (1) Megan Shero's Objection To The Motion For Fees Of Class Counsel (Docket No. 174) and (2) Motion Of Ohio Counsel To Be Designated As Settlement Counsel Under Definition 3 Of The Settlement Agreement (Docket No. 160), Docket No. 191 at pp. 4-11; see also Memorandum In Support Of The Motion For Entry Of The Attached Procedural Order Governing Fee Allowances Among Class Counsel Inter Se, Docket No. 180, at ¶¶6-12.

and (2) by not defending Ms. Shero and the Ohio class appropriately.[20] When these

---

[20] See Memorandum of Points and Authorities . . . Docket No.191, textual portions of which are quoted at length herein for the Court's convenience:

Class Counsel never included Plaintiff Shero in the caption of the Complaint and did not, though instructed, defend Plaintiff Shero's rights under Ohio law in opposition to the VW defendants' Rule 12(b)(6) motion. In essence, substantially all services provided specifically for the benefit of the Ohio Class were performed by Ohio counsel, exclusively in Ohio. There is no question, and Ohio counsel readily concede, that Class Counsel benefitted the Ohio class vis-à-vis Ohio's tag along status in the consolidation. Notwithstanding that benefit, this Court must determine the relative contributions of Ohio Counsel and Class Counsel vis-à-vis the Ohio Class, giving due weight to Class Counsel's breach of (1) the Promise, and (2) fidelity as fiduciaries. No procedure at play in this case expressly permits a *timely* determination of the relative contributions to the case of the disputants.

A. Failure to File Ohio Class' Claim. Class Counsel failed and refused to include Plaintiff Megan Shero in the caption of the complaint. Essentially, without being named in the Second Amended Complaint, Ms. Shero and the Ohio class were needlessly subjected to attack on many fronts. Indeed, in the Motion to Dismiss context, VW defendants argued that Shero, among others, was subject to immediate Rule 41(a)(1) dismissal due to this non-inclusion. Class Counsel were undeterred and, rather than correct the case caption, never added Shero to the Complaint. The issue remains a cloud on the Ohio Class' right of action.

More importantly, Shero was the only Ohio class representative in the case. If Ohio had had multiple class representatives, then Class Counsel could argue that multiple class representatives were unnecessary. But in the absence of Shero, Ohio had no class representative named in the Consolidated Second Amended Complaint. Moreover, Shero was the first class representative in the U.S. to defeat the VW defendants on a Rule 12(b)(6) Motion. One would think that Class Counsel would name a class representative whose law of the case, though subject to reconsideration, would encourage the federal Court to allow the matter to proceed.

2. Failure to Defend the Ohio Class. During the briefing in opposition to the Motion to Dismiss, when Ohio counsel were completely excluded from participation until the point of filing the opposition brief, Class Counsel made significant errors in judgment. Specifically, the VW defendants made the following argument in its Motion to Dismiss the Second Amended Class Action Complaint filed January 30, 2008 (Docket No. 71): "Under the law of each Plaintiff's state of purchase, each named plaintiff's claims must be dismissed on numerous grounds."

Class Counsel defended by name the sufficiency of the claims of class representatives from Colorado, Connecticut, Massachusetts, Pennsylvania, Minnesota, and California, but they did not argue the sufficiency of Ms. Shero's complaint. Despite Ohio counsel's instructions, Class Counsel never told the Court—nor did it otherwise make a record—that Ms. Shero had already survived a Rule 12(b)(6) challenge under the law of Ohio.

events took place, the Ohio Class was in Massachusetts for coordinated pretrial proceedings only. The fact that the entire matter is now conditionally settled is of no consequence to the breaches of professional responsibility that occurred in 2007-2008.[21]

Class and Ohio Counsel never discussed fees in 2007—only work. The fee process and fee allocation issues did get discussed, however, beginning in January 2010. Class Counsel provided information, at the time and under the circumstances of their choosing, that was incomplete, misleading, and downright false.[22] Ohio Counsel were

---

More significant still, Ohio is the only transferor-state where economic loss—i.e., insufficiency of product value, is freely recoverable in tort under the state's mainstream and mature jurisprudence. Within a tiny minority of jurisdictions, Ohio is the leader in permitting recovery of economic loss alone, without damage to person or other property, from a remote manufacturer of a defective product. The only other states that freely embrace economic loss against a remote manufacturer are Michigan and Wisconsin. Class Counsel eschewed the benefit of arguing a definitive Ohio ruling favorable to the Ohio class. See *State Farm Mutual Automobile Insurance Co. v. Kia Motors America, Inc.*, 160 Ohio App.3d 727, 735, 828 N.E.2d 701 (Ohio Ct. App. 2005): "The counts essentially allege common law negligent design and failure to warn claims. As the Ohio Supreme Court explicitly held in *Beretta*, both types of claims survive enactment of the Product Liability Act." See also *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 684 F. Supp. 2d 942, 950-951 (N.D. Ohio 2009): "The Ohio Plaintiffs in this case assert precisely the same common-law claims. *Chemtrol*, *LaPuma, Beretta*, and *Kia Motors* indicate that in Ohio, 'ordinary consumers' who lack privity with a product's manufacturer may bring a claim for negligent design and failure to warn even though they plead only economic losses."

[20] Class Counsel went so far as to predicate all state claims, including Ohio's, on the VW Defendants' sales warranty when, in fact, such an approach is disdained by Ohio lawyers in product defect class actions. See *Nessle, et al. v. Whirlpool Corp*., 2008 U.S. Dist. LEXIS 56940*14 (N.D. OH): ("It is premature at this stage to determine whether any contractual arrangement Plaintiff may have had with Whirlpool will serve to bar Plaintiff's claim for implied warranty in tort.")

[21] Massachusetts Rules of Professional Conduct, Comment 2 to Rule 1:1 reads as follows: "[2] Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness." (Emphasis added)

[22] The failure of full disclosure is harmful to a class action. Cf. *Castaneda v. Burger King Corp*., 2009 U.S. Dist. LEXIS 69592 (N.D. Cal. July 31, 2009)(". . . they could be

totally reliant on Class Counsel and without the ability to protect their interests. On January 14, 2010 Mr. Henkin wrote

> We have engaged in serious negotiations; but the rule among the negotiators is that no substance can be revealed to anyone.

On July 2, 2010, the Special Master filed a letter where he advised Judge Tauro's staff that the Settlement Agreement was essentially final, requiring only the approval of VW's German management. (Docket No. 152) Accordingly, as of July 2, 2010 Class Counsel had a complete picture of the dynamics of the fee and fee allocation process. This included exclusion of all but Class Counsel from entitlement (to compensation) under Definition No. 3 of the Settlement Agreement.

On August 14, 2010, at Russ Henkin's direction, Ohio and other Non-Class Counsel were emailed by Class Counsel as follows:

> *We have not negotiated fees.* Ethically, we owed it to the Class to negotiate the Agreement in settlement of the litigation first.

That statement was substantially untrue and cannot pass muster under any standard of fair, let alone full, disclosure, because Class Counsel *had* negotiated fees as of August 14, 2010, albeit not precise dollar amounts. Using their authority as Class Counsel, *they had negotiated to file an application for fees that would benefit only Class Counsel* . . . and that is exactly what Class Counsel accomplished. The only other voice in the negotiation, by design, was VW, which had no obligation or inclination to protect any non-Class Counsel's position. This is self-dealing.[23]

---

deterred from participation in the lawsuit, thereby harming the class's interests and injuring both parties' and the Court's access to relevant information.")

[23] The law of boards of directors, commissions and all other decision-making bodies requires *non-interested* members to make decisions in which other members have a personal interest. That same concept must be acknowledged in this matter, i.e. three (3) interested (in their own exclusive *right* of possession of the aggregate award). Class Counsel should not be permitted to wrest undue advantage in the absence of any counterbalancing party(ies) in the decision-making process. If the Court approves of Class Counsel alone having a *right* in and to the aggregate award, it will be contravening what would never be permissible in any mature body of law affecting multiple claimants to a common fund. There are no safeguards in place to assure a fair and equal treatment to non-Class Counsel, who are entitled to equal treatment, i.e. due process, as to whatever their ultimate right to compensation may be.

At a time when all Non-Lead Counsel believed that fees had *not* been addressed, Mr. Henkin then requested as follows:

> Please forward to my attention (and copy Kirk Tresemer and Peter McNulty) the following lodestar and cost breakdowns no later than Tuesday, August 10, 2010.

Ohio Counsel thought, based on Mr. Henkin's request, that both Class and Non-Class Counsel were in this together, i.e. the former wanted the latter's hours in order to get the latter paid for their time and costs.

This cultivated misunderstanding (that Non-Class Counsel were beneficially interested) was confirmed when Class Counsel sent an email in November 2010 stating that they intended to file a joint motion. Ohio Counsel thought this meant a joint motion by all counsel and for all counsel . . . not a motion *by* all counsel and *for* just three lead counsel.

And then the last strategic maneuver was to cultivate the waiver of any objections. Russ Henkin emailed Ohio Counsel on December 11th to "resolve" Class Counsel's "guaranty" in consideration of an agreement not to object to Class Counsel's fee request. That conversation and what followed quickly led to an understanding by Ohio Counsel that something was amiss. Clearly, Messrs. McNulty and Tresemer had tasked Mr. Henkin with getting everyone to sit passively by while the purported "joint application" was adjudicated. As a result of their awakening as to the manifest risks of further reliance upon Class Counsel, Ohio Counsel felt the need to protect the Ohio Class and Ohio Counsel's own property interests, because it appeared that Class Counsel gave priority to their individual interests over (and to the exclusion of) the interests of those who, without any autonomy under Pretrial Order No. 1, had of necessity trusted and relied upon Class Counsel.

The principles of *Hotel I,* together with the intent of the revisions to Rule 23, require recognition and protection of Ohio Counsel's property interests in the compensation mechanism in this litigation. Ohio Counsel's interest is one which the First Circuit has long recognized as entitled to due process. *Hotel I*, cited *supra.* In that decision, the First Circuit there vacated a fee ruling despite unleashing years of wasteful

litigation. The Circuit Court of Appeals did so because there was at stake there, as in the instant situation, the integrity of the Court and its processes.

This Court should apply the close scrutiny called for when fiduciaries and similar trusted persons deal with their beneficiaries in structural—and in this case actual—conflicts of interest. No objector—and certainly not the undersigned Ohio Counsel—objects to a collaborative and *transparent* process whereby individual fee allocations will be discussed and agreed upon later—after finality of the award of an aggregate fee to *all counsel.* But that award should be to *all* counsel, and the undersigned request that the Court clarify that.

Clarifying and ordering that all Non-Class Counsel are beneficially interested in the fee award would place all counsel on some semblance of equal footing before, as well as during, deliberations vis-à-vis individual fee allocations from the aggregate award. That would help obviate Class Counsel's alleged conflicts and other irregularities referenced herein. Such designation is completely consistent with the terms of the Settlement Agreement, at Definition No. 3. No harm can come from this Court through its orders placing all counsel on a semblance of equal footing.[24]

*Not* to allow counsel to be on a semblance of equal footing, on the other hand, is to reward Class Counsel for self-dealing. In such a circumstance, with Non-Class Counsel in an inferior bargaining position when it comes time to discuss individual fee allocations, Class Counsel will be advantaged by being able to present Non-Class Counsel with the difficult reality that the latter might not even be "counsel to the Settlement Class" let alone entitled thereby to an allowance.[25] That will be a difficult,

---

[24] To allow piecemeal consideration of each allocation on *an ad hoc* basis, i.e. as disagreements over allocations arise, is not sufficient to assure due process. The process should be transparent . . . . one in which the various counsel have an opportunity to "describ[. . .] their contribution to the litigation, contrasting their contribution with the PSC's contribution . . . ." *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation,* 982 F.2d 603, 614-615 (1st Cir. 1991).

[25] In the Special Master's conception of events, Class Counsel will have no downside at this point in the proceeding, because their award and residual interest will be final and non-appealable, while other involved counsel will have immense uncertainties. Such a "playing field" does not comport with the Supreme Court's and *Hotel I's* requirement of

risky, and unfair burden to overcome.

A second inequitable consequence of allowing Class Counsel to be the sole beneficiaries of the an aggregate fee allowance is their immediate access to the funds following finality—while Non-Class Counsel would be just beginning their difficult, uphill battle to be compensated by the determinations of Class Counsel who, effectively, will be viewing anything paid as money out of their own pockets. See n. 12 *supra.* The First Circuit specifically disapproved of this discriminatory treatment in *Hotel I, supra:*

> . . . the affected private interest is significant: each individual plaintiff has an independent pecuniary interest in the monies contained in the plaintiffs' fund; because the district court decreed that various expenses should be recouped by deductions from the plaintiffs' fund, the plaintiffs' loss of their property interest is complete; and the amount of the loss is substantial.

Indeed, given the definitions contained in the Settlement Agreement and the secondary manner of presenting the work of Ohio Counsel in the fee application, Article VI.C. (p.20) of the Settlement Agreement pertaining to Attorneys Fees and Expenses can be read to mean that *only* Class Counsel shall be awarded Class Counsel Fees. That is what the document seems to say. Without being included as Class Counsel, Ohio Counsel are technically a non-entity in the award-entitlement framework.

Those courts that have ruled that fee allocation is a "private matter" best handled by interested counsel amongst themselves, have done so expressly upon a finding that Class Counsel have not plied their structural conflicts of interest to the detriment of those whom they purportedly represent. *See In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 533 (3d Cir. Del. 2004) (*"Because* we find that the class was properly certified, *and the Executive Committee structure adequately represented the interests of all class members in the settlement negotiations . . . ."*). (Emphasis added) Also, courts will not allow Class Counsel to adversely affect the position of other counsel where the latter, as here, had no input into the process that would govern their prospective entitlements. *Id.* Indeed, where there is a structural conflict of interest, as here, courts have insisted that the fiduciaries acting for their own interests be subjected to heightened scrutiny. *In*

---

a "*meaningful time* and in a meaningful manner." 982 F.2d at 611, citing *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976).

*re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig*., 582 F.3d 524, 557 (3d Cir. Pa. 2009)(Ambro, J. in dissent) (". . . presented with a proposal that benefited a group that was a party to the proposal (the downstream opt-out plaintiffs) at the expense of group that was not a party to it (the initial opt-out and PPH plaintiffs), the District Court was required to subject that proposal to extra scrutiny.") The majority in *Diet Drugs*, confronted with a *fait accompli*, chose not to intervene in light of the passage of time and events which would have to be undone. In this case, the Court has the chance to get it right the first time.

**RELIEF REQUESTED**

For the foregoing reasons Megan Shero and Ohio Counsel Mark Schlachet and Brian Ruschel request all relief that shall appear appropriate to the Court to order including, but not limited to, the following rulings on Ohio Counsel's Objection:

> "Ordered that Ohio Counsel Mark Schlachet and Brian Ruschel shall be, and are hereby, additional counsel to the Settlement Class pursuant to Definition No. 3 of the Settlement Agreement;"
>
> "Ordered that any funds paid by the VW defendants as and for a fee allowance must be held subject to disbursement only upon an order of the Special Master, following appropriate notice to all counsel and an opportunity to be heard;" and
>
> "Found that by comparison with Class Counsel, Ohio Counsel's faithful and successful discharge of their litigational responsibilities to the putative Ohio Class, particularly prior to consolidation of the Ohio litigation in August 2008, is a contribution of equal or greater value and consequence."

Respectfully submitted on behalf of
Megan Shero and the Ohio Class

/s/ Mark Schlachet
Mark Schlachet (Ohio Bar No. 0009881)
3637 South Green Road
Beachwood OH 44122
Telephone: (216) 896-0714
Facsimile: (216) 514-6406
E-mail: mschlachet@gmail.com

/s/ Brian Ruschel
Brian Ruschel (Ohio Bar No. 0046631)
925 Euclid Ave., Suite 660
Cleveland OH 44115-1405
Telephone: (216) 621-3370
Facsimile: (216) 621-3370
E-mail: bruschel@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document and the accompanying memorandum were docketed through the ECF system to all identified participants on the Notice of Electronic Filing (ECF) on February 2, 2011. Electronic copies were sent via e-mail to all entities indicated as non-registered participants.

/s/ Mark Schlachet

MARK SCHLACHET (Ohio Bar No. 0009881)
One of the Counsel for Megan Shero