**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **IN RE VOLKSWAGEN and AUDI** | * | |
| **WARRANTY EXTENSION** | * | |
| **LITIGATION** | * | **MDL DKT. NO. 07-md-01790-JLT** |
| | * | |
| **ALL CASES** | | |

**DECLARATION OF MARK SCHLACHET, ESQ. IN SUPPORT OF OBJECTION TO MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT (DOC. NO. 172); REQUEST FOR RELIEF**

Mark Schlachet, of full age, hereby declares, pursuant to 28 U.S.C. §1746, as follows:

1. I am licensed to practice law in the State of Ohio and appear as counsel *pro hac vice* for Plaintiffs in this proceeding. I have personal knowledge of the factual statements contained within this declaration and am competent to testify concerning these facts that are admissible evidence.

2. Local Rule 7(b)(1) of this Court requires the filing, upon the submission of a motion, affidavits and other documents setting forth or evidencing facts on which the motion is based.

3. Brian Ruschel and I (at times "Ohio Counsel") are the attorneys who filed a case in the Cuyahoga County (State of Ohio) Common Pleas Court entitled Megan

Shero v. Volkswagen of America, CV-06-610948 (Cuy. Cty., Ohio filed 12/26/06) ("Ohio Litigation").

4. This Declaration is based on my personal knowledge of the events, which transpired in the course of the Ohio Litigation. Further, this Certification is based on my personal knowledge of the events that transpired in the course of the Ohio Litigation, before and after consolidation in this Court; and it is submitted in support of Ohio Counsel's Objection to Motion for Final Approval of Proposed Settlement (Docket No. 172).

5. As further stated in the Objection, Declarant has serious, non-pre-textual concerns with Class Counsel's handling of this matter on behalf of the Ohio Class and vis-à-vis Ohio Counsel.

6. **By way of disclosure only:** Mark Schlachet seeks compensation for 288.15 hours rendered in Cleveland, Ohio and which, multiplied by his hourly rate of $425 an hour, results in a lodestar fee of $122,463.75. His out-of-pocket expenses, advanced on behalf of Megan Shero, have been $276.65. Schlachet's hourly rates for many years have been $400 per hour for contingent class action work and $350 per hour for Chapter 11 bankruptcy work, which historically has been Schlachet's principal line of endeavor. Schlachet and Ruschel have invested more than 200 hours in the present phase of this litigation and, if our position is well taken, we will seek compensation for that time as well. **I understand that it will be some time before Ohio Counsel's entitlements to compensation will be addressed in this matter, and I do not, directly or indirectly, nor have I, directly or indirectly, sought compensation in advance of any other attorney in the case.**

**7.** The Docket sheet for the Ohio Litigation is annexed hereto as Exhibit 1.

**8** I am a former United States Bankruptcy Judge and Clerk of Court for the Northern District of Ohio (1974-1982). I believe I filed the first Federal consumer class action in the Northern District of Ohio, some three years after publishing a note in the Case Western Reserve Law Review in 1968, relating to the then-recently-adopted class action rule in Rule 23 of the Federal Rules of Civil Procedure. I have initiated and prosecuted MDL litigation starting in 1973 with *In re Refrigerant Gas Litigation*, MDL NO. 76 (N.D. Ohio 1973). I have served on the Executive Committee or been Class Counsel in MDL litigation including at the present time in *In re Whirlpool Front Loader Products Litigation,* MDL NO. 2001 (N.D. Ohio 2008)

(an Ohio Class which was certified under Ohio tort law theories). I have personally drafted complaint allegations under Ohio Tort Theories applicable to defective consumer products for which damage recovery for "Economic Loss" has been sought via such litigation, as well as material in opposition to Motions to Dismiss the operative allegations.

I have had to educate Class Counsel in other MDL matters about Ohio's peculiar exceptions to the Economic Loss Rule, which guidance they have readily accepted and thanked me for, in writing. In so doing, I have had to vigorously debate other counsel's predisposition to attempt to include theories of action under Ohio law

that are not viable, and in fact are risky to pursue in Ohio because of the interplay of Ohio's class certification principles, Ohio's Consumer Sales Practices Act, Ohio's Uniform Commercial Code, and Ohio's exception to the Economic Loss Rule.

In this case Class Counsel rejected any and all efforts by Brian Ruschel and myself to assist in drafting complaint allegations and provide effective arguments defending Megan Shero's primary right to recover under Ohio Tort Theories in this case; and Class Counsel were unable, or unwilling, to advance such primary right arguments. In particular, Class Counsel failed and refused to advance a theory of Tortious Breach of Warranty, which Class Counsel knew was the primary theory pled on Ms. Shero's behalf in Ohio, and which theory prevailed over an Ohio Civil Rule 12(B)(6) Motion filed byVolkswagen. Class Counsel have rejected our efforts to properly defend Ms. Shero's rights in opposition to the Federal Rule 12(b)(6) Motion to Dismiss filed January 30, 2008, with additional briefing through June 2, 2008.

Class Counsel's technical legal ability vis-à-vis the Ohio Class in this matter was sub-standard and unacceptable. Although Class Counsel were free to accept an engagement

without the requisite competence in Ohio class tort practice to handle all facets of the engagement, it is a breach of professional responsibility to proceed without

acquiring such competence or the staffing to bring such competence to bear. It is a standard of professional responsibility in every jurisdiction I know of that counsel must make appropriate inquiry into and analysis of the factual and legal elements of the material elements of the engagement, and use methods and procedures meeting the standards of competent practitioners in the areas of endeavor that counsel has elected to undertake as his or her fiduciary charge. Class Counsel in this case did not satisfy the forgoing standard of professional responsibility.

10. In an effort to adduce an explanation for Counsel's apparent lack of professional standards as relates to the Ohio Class, I sent an email to all Class Counsel on January 12, 2011, asking five basic questions and requesting their explanations, if any, e.g., "Please state your reasons for not naming Megan Shero on the Second Amended Complaint, both (1) initially, and (2) your reasons for not naming her once VW sought a Rule 41(a)(1) dismissal as a result of her absence from the complaint." None of the three Class Counsel provided any explanation.

11. In an effort to determine whether Class Counsel had attempted to familiarize themselves with applicable Ohio Law, I briefly reviewed their time sheets submitted as exhibits to the Motion for Attorneys' Fees. I reviewed Mr. McNulty's and Mr. Tresemer's time sheets in particular, as they were the most active of the three Class Counsel. I noted that at the beginning of the McNulty firm's involvement in this matter, Messrs. McNulty and Rosenthal spent numerous

hours studying California law, which is the law of their home state. But as to Ohio, I was unable to find any entry indicating that they had attempted to familiarize themselves with the common law tort claims upon which the Ohio Class depended in this litigation. As to Mr. Tresemer, whose firm's time is much greater than all the others, the brief study I did revealed the same as the McNulty finding. Upon review of Messrs. Tresemer and Kelly's time, I was unable to identify a single entry indicating that they attempted to familiarize themselves with the common law tort claims upon the Ohio Class depended in this litigation. While my study was not scientific, I am confident, given the detailed nature of the subject time records, that it would have turned up any material effort by these two firms to satisfy their professional responsibility. In fact, Mr. Kelly shows that from January 7, 2007, when Mr. Henkin's predecessor Class Counsel (Ted Millstein) tried to convince Ohio counsel to consolidate, Class Counsel were already viewing Ohio as having only a "new breach of contract action." (I have asked Class Counsel to state the nature and authority for such an Ohio action, but they have not responded.) Finally, whatever was done or not done by Class Counsel as to Ohio, it was done with deliberation. See Randall Kelley timesheet for July 13, 2007: "Attend conference call re: Ohio state court action and strategy related thereto."

12. I am prepared to appear telephonically at the hearing in this Court set for March 11, 2011 before the Hon. Joseph L. Tauro and to present evidence and

argument as to every representation contained in today's Objection.

13. I have email correspondence, in large part from Class Counsel, to support and document the most important representations made in the Objection.

14. Many of the communications are privileged and contain statements which could prove needlessly embarrassing to certain others, if set forth on the public record.

15. Nevertheless, consistent with the intent of the Local Rules, i.e. to provide the Court with a qualified factual record upon which to decide the Objection, I will summarize below certain written communications which would be introduced were this Court to deem their production desirable, to wit:

> 7/19/07: Class counsel Russell D. Henkin (hereinafter "Henkin") sends a substantial "to do" list, upon prior express representation that there would be "assignments" to Ohio counsel.
>
> 7/19/07: Henkin provides complaint allegations to be used in an amended filing in Ohio slated for JPML.
>
> 7/20/07: Berger & Montague states: "we look forward to working with you."
>
> 7/20/07 - present: No assignments to Schlachet; and the only assignment to Brian Ruschel (hereinafter "Ruschel"): one local deposition appearance, sitting third chair.
>
> 8/03/07: Russ Henkin writes: "As I said, Brian and Mark, I'll get you involved in drafting."
>
> 6/02/08: Schlachet to Henkin: " I have been following the motion practice . . . Megan Shero actually prevailed on a Rule 12(b)(6) motion in State court before we got shifted to Federal court."

1/10/10: Russ Henkin (copies to McNulty and Tresemer); "Your work with Brian is acknowledged and appreciated. Your contributions were helpful."

1/14/10: Mr. Henkin wrote "We have engaged in serious negotiations; but the rule among the negotiators is that no substance can be revealed to anyone.

8/5/10: Henkin to Non-Class Counsel: "Please forward to my attention (and copy Kirk Tresemer and Peter McNulty) the following lodestar and cost breakdowns no later than Tuesday, August 10, 2010.

8/14/10: At Russ Henkin's direction, Ohio and other Non-Class Counsel were emailed by Class Counsel as follows:

*We have not negotiated fees.* Ethically, we owed it to the Class to negotiate the Agreement in settlement of the litigation first.

11/2/10: Peter J. McNulty, Esq. (hereinafter "McNulty") writes "it is for the court to evaluate applications and awards, but if possible we would like to make a joint proposal on behalf of all counsel;" requests all counsel's time by November 5, 2010.

12/11/10: Henkin to Schlachet and Ruschel: "please call me over the weekend or on Monday, so we can (hopefully) formalize an agreement on how and how much your Firm(s) would be paid in the case."

12/12/10: Henkin to Schlachet: confirms that he, with backing of McNulty / Kirk D. Tresemer (hereinafter "Tresemer") urged Schlachet and Ruschel to voluntarily move their "active" case through the JPML to Boston; Henkin intends to propose a "guaranteed figure" for Schlachet's and Ruschel's attorneys' fees; if there is no agreement, then Schlachet and Ruschel will have to submit their own fee application.

12/14/10: Henkin to Tresemer: confirms that an agreement with Schlachet and Ruschel is particularly significant because Schlachet and Ruschel "did a separate case, went through several stages of it; and did no 'follow and review' work [in Boston] . . . successfully started and were prosecuting an

Ohio case; they survived a motion to dismiss; fought the Rule 37 battles, met and conferred and got VW to the point of documents production, and had a motion for class certification pending for some time . . . they allowed the Cleveland case to fold into ours, at our encouragement . . . on the premise and promise that they would receive assignments . . . they have no 'monitoring' or 'read and review work' [in Boston] . . .They note, and I certainly don't deny, that I personally, with your knowledge, represented and acknowledged in writing to Brian and Mark some time ago that they did materially contribute to the effort . . . **they will nevertheless not object to our (the Class Firms') award, nor will they appeal."** (bold ours)

12/16/10: McNulty to All case Attorneys: "As required, please submit a suitable affidavit and/or brief verifying your time, hourly rate, expenses and justification for any claimed multiplier to Judge van Gestel at JAMS."

12/17/10: McNulty to All Case Attorneys, Defense Counsel, Special Master and Paul Gelinas:
"It is our intent, as contemplated by Judge Tauro's Order and Judge van Gestel's Findings and Recommendations, that Class Counsel will submit a joint application for fees and costs . . . We're fine with you and other counsel not submitting a multiplier request or justification at this juncture and, if a disagreement later arises, affording you a fair opportunity to be heard. **Some counsel have apparently, at great disservice to the class, chosen to "go their own way at their own peril."** (bold ours).

12/18/10: McNulty to All Case Attorneys: "Please review the 1998 decision from the United States District Court for the District of Massachusetts, authored by Judge Young (*In re Indigo Sec. Litig.*, 995 F. Supp. 233) which holds that a single petition for attorneys' fees and costs is to be prepared and authored by Class counsel. After an award is made, it will be 'distributed among the participating counsel based on their respective contributions to the litigation, according to the discretion of Class counsel.' Thereafter, any counsel who is dissatisfied with the allocation made by Class counsel may apply to the court for relief.

12/21/10: Schlachet to McNulty: "I invite Class Counsel-and the participation of any counsel receiving the attached--to join with us in presenting the attached or other order guaranteeing procedure soundness in the process to allocate what be many millions of dollars in compensation. Under the circumstances I would expect to hear from you or other Class

Counsel (authorized to bind) by tomorrow at noon, failing which we will finalize and file our motion to court, requesting the entry of the order."

12/21/10: McNulty to Schlachet relative to Schlachet's earlier written request to confer—

"Mark; we will consider your request when a settlement is awarded and a fee and cost award is confirmed. Please stop distracting us from those tasks by threatening to file premature/unnecessary papers to which we will have to inevitability respond."

12/21/10: Schlachet to McNulty: "[t]hat is not acceptable."

16. Class Counsel, at all times (before being forced to engage in a modicum of transparency), failed to advise other counsel that the "joint motion" they committed to file would essentially seek an award for the benefit of Class Counsel only—and that other counsel would not only have to come to terms with Class Counsel but, additionally, would have to be designated by the Court as additional "counsel to the Settlement Class" as a qualification for any entitlement to compensation whatsoever. Class Counsel have never alluded to the procedure whereby an involved attorney can later become an additional "counsel to the Settlement Class," although I queried Class Counsel on this but there was no response.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: February 2, 2011 /s/ Mark Schlachet

**CERTIFICATE OF SERVICE**

**I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and email copies will be sent to those indicated as non registered participants on February 2, 2011.**

/s/ Mark Schlachet

Mark Schlachet