31-January, 2011

Reference: VW Oil "Sludge" Case # 1:07-MD-01790

Hon. Joseph L. Tauro
United States District Court
John Joseph Moakley United States Courthouse
1 Courthouse Way
Boston, MA 02210

Dear Hon. Joseph L. Tauro,

I am writing in regards to the settlement package I received recently from Volkswagen of America, dated 20-Dec/10. I would like to formally raise objections to the settlement.

Vehicle Make:   Volkswagon
Vehicle Model:  Passat
Vehicle Year:   2001.5
VIN:            WVWVD63B41E179531
Vehicle Owner:  Kevin and Melanie Prather
                4546 W 650 N
                Thorntown, IN 46071

My Background

I am a Program Manager responsible for aftermarket support on a Gas Turbine Engine Program between two large global aerospace companies. Our engine is on various military helicopter platforms. Many units are in theatre and in operation with numerous foreign military operators in some of the hottest environments in the world.

I hold an FAA Airframe & Powerplant license. I have an AAS & BS in Aeronautical Engineering Technology. Prior to this I was a diesel mechanic for John Deere for about ten years. I have seen plenty of Oil Sludge in farm tractors, combines etc. and Oil Coking in gas turbine engines. I know the difference between Oil Sludge and Oil Coking.

Part of my job is to set and agree special policy for warranty exceptions when SRDs arise. I know too then when a warranty exception scheme is being gamed.

The bullet points below detail my objections to the settlement with further detail and explanation herewith

- Volkswagen of America (VWA) knowingly and wittingly misrepresented the service revealed deficiency (SRD) by implication of poor customer maintenance in declaring the SRD as Oil "Sludge" in their extended warranty notification, dated August 2004. VWA continues to define the SRD as Oil "Sludge". Oil Coking is only briefly cited in the latest VWA letter (20-Dec/10). The implication is Oil Sludge (poor maintenance) and Oil Coking (design driven) is the same and caused by the customer not changing their oil. The objection therefore is misrepresentation of the SRD on behalf of VWA.

- Volkswagen of America knowingly and wittingly "gamed" the 2004 Warranty Extension by requiring records of all prior oil change receipts, after the fact, as a condition of warranty coverage. This presents an undue and unrealistic burden on the owner, thereby creating a compliance distribution in VWA's favor. VWA's intent appears to be exclusion of a large portion of the owner population from Extended Warranty consideration. The objection is VWA placed a new and unrealistic requirement upon the owners. This requirement required historical action. The objection is the settlement requires a newly defined action to have taken place in the past to determine any settlement and the amount in the present.

- Volkswagen of America does not allow for owners to perform their own maintenance in the August 2004 Warranty Extension or the proposed settlement (20-Dec/10). Effectively owners performing their own maintenance are either eliminated from the Extended Warranty coverage population or unduly restricted to satisfactory compensation, despite their qualifications. The objection is the settlement does to allow for customers to perform their own maintenance.

- Volkswagen of America has not introduced a design fix for Oil Coking. Engines that have been cleaned are likely to re-coke again due to shedding of bonded Coke Deposits (See Exxon definition below). VWA should correct all engines that have coked so as to ensure Coke Deposits are entirely removed, extend coverage for the at-risk engines, and introduce heat addressing design technologies to address the root-cause of insufficient heat management of the oil system. The objection is neither a remedy for the defective product nor risk coverage for the recurring condition is addressed in the settlement.

- Volkswagen of America continues to deny all the allegations in the settlement. Given the extent of the negligence and misrepresentation I object. There is no grounding of accountability in the settlement. I would expect some award of damages beyond cost reimbursement. The market value of cars covered under this settlement has suffered significantly. Additionally the inconvenience, opportunity costs, etc. imposed upon the owners are not considered nor compensated. The objection is the settlement does not ground accountability.

### Definitions

Oil Sludge: 1. **Oil Sludge** or **black sludge** is a solid or gel in motor oil caused by the oil gelling or solidifying, usually at temperatures lower than 100 degrees Celsius.

Oil Sludge can be a major contributor to internal combustion engine problems, and can require the engine to be replaced, if the damage is severe. Sludge is usually caused by the presence of water in the oil, and can accumulate with use. *Source: Wikopedia*

2. Sludge is a thickening and breakdown of the oil as it deteriorates, as moisture and contaminants build up. This causes the oil to gel, resulting in excess wear as friction increases or, in extreme cases, a stop-right-now failure. SOURCE: *NY Times, Engine Sludge: When Good Oil Goes Bad By CHRISTOPHER JENSEN Published: February 4, 2007*

3. Sludge in *gasoline* engines is usually black *emulsion* of water and other *combustion* by-products, and oil formed primarily during low-temperature engine operation. Sludge is typically soft, but can polymerize to very hard substance. It plugs oil lines and screens, and accelerates wear of engine parts. Sludge deposits can be controlled with a dispersant additive that keeps the sludge constituents finely suspended in the oil. *Source: http://www.synlube.com/sludge.htm*

Oil Coking: "Coke" is the solid residue remaining when oils undergo severe oxidative and thermal breakdown at extreme engine temperatures. The higher the temperature, the harder, blacker and more brittle the residue. The coking performance of individual oils varies with the oil formulation and with the engine environmental conditions in the coking zone. The environmental conditions influencing the physical condition of the oil in the coking zone also dictate the morphology of the coke deposit and the amount formed. *Source: Exon Mobile, Aviation Lubricants http://www.exxonmobil.com/lubes/exxonmobil/emal/files/TTopic6_OilCoking1.pdf*

Coke Deposits: Deposits are not desirable, but if they do form, you want them to stay where they are. Coke shedding can cause blockage of filters and engine oil system passageways. Shedding is influenced by engine thermal cycles and by absorption of moisture during prolonged shut down periods. Additionally, cracking, crazing or lifting of deposits from formation surfaces causes more oil to be trapped and greater amounts of coke to be formed. This also has an influence on the morphology of the coke. Classification of deposits in line with formation conditions and morphology has been suggested. Four important examples are suggested in the chart titled Coking Classification. It should be noted that some oils which are superior under one set of conditions can perform badly under others
*Source: Exon Mobile, Aviation Lubricants*
*http://www.exxonmobil.com/lubes/exxonmobil/emal/files/TTopic6_OilCoking1.pdf*

## Discussion

As one can see from the definitions above Oil Sludge and Oil Coking are not the same. There is misuse of the term Oil Sludge as witnessed in the different definitions. When Coked Oil deposits become suspended in the oil often times the resulting condition is incorrectly termed Oil Sludge.

As one can see from the definitions above and American Petroleum Institute publications, the common denominators with an Oil Sludge condition are water, dirt, and combustion contaminants due to repeated low temperature cycles. Basically the engine is not brought up to temperature sufficiently, over repeated cycles, to vaporize and remove water.

Repeated low temperature thermo cycles (short trips, etc) produce condensation within the engine sump. Engine combustion by-products, which are more acute in repeated short cold cycle operations, are captured by the engine oil. Frequent oil changes are necessary under these conditions.

It should not fall upon VWA to bear costs resulting from actual Oil Sludge as described above. This is clearly attributable to poor maintenance. True Oil Sludge is generally synonymous with poor maintenance by the owner.

Conversely engine Oil Coking cannot be readily controlled by the owner. This is especially true when the issue is misrepresented.

Oil Coking, as per the Exxon definition is a hard and brittle substance. It is very hard to remove. The aerospace industry has patented processes to remove coked oil. Removal requires strong chemicals often times machining processes are required. Some very highly advanced oils are utilized in aerospace in order to minimize Oil Coking.

The design phase is critical in properly calculating heat rejection rates of sumps and oil systems to minimize the potential for coking. Any oil will coke at a given temperature.

In the December, 20, 2010 letter, VWA are very clear of the new requirement for owners to use only oil complying with VW oil quality standard 502. The only oils that comply with VW 502 are synthetic oils. Per API data synthetic oil is much more resistant to Oil Coking than traditional petroleum based oils.

In VWA's Engine Oil Supplement provided with the letter referenced above the benefits of using VW 502 are discussed. Three of the six bullet points listed discuss improved protection related to heat. This is further evidence the SRD covered under this settlement is not Oil Sludge due to poor maintenance but is a latent design defect annunciating itself as Oil Coking.

### Regarding VIN: WVWVD63B41E179531

Had VWA been forthright in August 2004 and revealed they had a heat rejection issue and instructed the owners to use full synthetic oil and the larger oil capacity filter, much expense would have been saved on behalf of the customers and VWA themselves.

The 2004 letter declares the SRD as "Oil Sludge" stating: Engine Oil Sludge occurs when old, dirty engine oil thickens and cannot continue to provide adequate engine lubrication."

Had I been provided the factual information at that time I would have immediately changed my maintenance plan. Being very disciplined with my maintenance, and knowing I did not have a "sludge issue" from infrequent oil changes, I continued with the oil I had always used, Valvoline 5W30 API SJ or higher as specified in the Owner's Manual. I saw no justification to change to the expensive VW 502.00. The car had ~ 80K miles at this point.

In January 2008 at ~ 155k miles the engine oil pressure light illuminated. The car was taken to the VW dealer who diagnosed the problem as no oil pressure due to a plugged sump screen. A price of $675 was quoted to remove the oil pan and remove the clog from the sump screen.

Warranty was denied due to my having changed my own oil, despite providing detailed log book records confirming oil change time, mileage, and the standard of oil used since new. The dealer was not forthcoming with information when asked how they could know the sump screen was plugged.

Upon visiting another dealer and speaking with the service manager I began to understand the issue. The service manager provided me with a copy of VW Technical Bulletin 17 07 12 Aug 17, 2007 (Supersedes T.B. Group 17 number 07 09 dated Apr 11 2007). The service manager was astonished that an engine had gone this many miles without the oil pressure light illuminating.

His advice was to embody the bulletin, use the new larger oil filter, fill it with synthetic oil, and get rid of the car. He stated the condition will return even with use of synthetic oil and larger oil filter. Unfortunately he could not cover the repair due to the lack of VW or third party oil change receipts, despite my detailed log book records.

Upon reading the bulletin I began to understand the real issue with the engine. I went home and began the task of disassembling the engine.

I first noticed extensive quantities of coked oil crystals in the crankcase ventilation system. Upon removal of the oil pan I found the oil sump pick up screen plugged with coked oil crystals. The oil pump looked as though it had been smeared with grease and placed in a 500 degree oven (pictures attached). There were coked oil crystals throughout the engine, hard coked deposits bonded to internal engine surfaces, it was everywhere. I found myself observing Oil Coking like I have seen so many times on gas turbine engines but now on our family car. What a mess.

Upon reviewing the evidence, I formulated a theory that the heat rejection rate was not properly accounted at the design phase for the engine in this application. Basically there is not enough oil capacity or cooling given the horsepower output and the size of the car. The turbo return line dumps very hot oil into the relatively small sump of a near 200 BHP output engine in a comparatively large car.

On July 4, 2008 I set about writing a letter to VWA (Ref. 08-004kwp, attached) appealing for coverage under the 2004 warranty extension and seeking information on design changes that may be available to address the Oil Coking. A formal response dated 17 July, 2008 from VWA (Ref. Case 080255186, attached) was received denying my claim.

The letter states; " I regret that I am unable to provide financial assistance for your repairs as they are outside of the Powertrain Limited warranty period of ten years or 100,00 miles, whichever occurs first, for manufacturing shortcomings by mileage." It is interesting that VWA does not deny the latent design defect whilst changing positions on limited versus unlimited mileage per the 2004 extended warranty.

Upon receiving the notice I phoned VW Customer Care on 24-July, 2008, ~5:30 PM. My transcript of the conversations is:

VWA Representative: "Oil Coking is a different issue, it is not Oil Sludge. Your claim is rejected."

KP: "VWA have misrepresented the issue as Oil Sludge. The issue is heat rejection resulting in coking of the oil. This is not an Oil Sludge/poor maintenance issue. Why are you changing the terms of the 2004 letter with unlimited mileage and now citing 100k Powertrain Warranty?"

VWA Representative: "You cannot prove you used the right oil and did not use a VW or qualified mechanic to do the repair work. The issue was not diagnosed by the dealer and it was repaired by you. We will not cover the claim."

Note: A VW Dealer receipt for the low oil pressure diagnosis was provided with the claim.

– 5 –

My understanding of the settlement is I may get 50% at best for the parts. I could get nothing because I do my own maintenance.

Thank you for taking the time to consider my concerns and objections. Given the level of misrepresentation, that no technical remedy is proposed, that no compensation beyond the cost of the first fix, and the risk of Coke Deposit shedding being placed upon owners, I object to the settlement as written

Best regards,

Kevin W. Prather

4546 W. 650 N
Thorntown, IN 46071

Home:  765 436-7108
Office:  317 230-2047
Mobile: 317 809-1128
e-mail: kprather@frontiernet.net

Copies to:  Distribution list per page 11, item 16 of Legal Notification Docket No. 1:07-md-01790

Attachments:  Picture of the VIN, Vehicle Registration, claim letter to VWA (08-004kwp) including receipts numbered 1-8, Passat maintenance log, copy FAA Airframe & Powerplant License, picture of some removed parts, picture of engine, VWA 17-July/08 letter denying claim, VWA 2004 letter, additional pictures and detail attached below



VIN                                        Coked Oil in a Crankcase Vent tube