UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLASS ACTION MASTER
FILE NO. 1:07-md-1790-JLT
(Relating to All Cases)

IN RE VOLKSWAGEN and AUDI
WARRANTY EXTENSION LITIGATION

FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATIONS
OF THE SPECIAL MASTER RELATING TO CLASS PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND COSTS

This matter came before the Special Master[1] on February 14, 2011, on Class Plaintiffs' "Motion for Attorneys' Fees and Costs," (the "Fees Motion"), [Doc. No. 174], all pursuant to Fed. R. Civ. P. 23(h), 52(a) and 54(d)(2)(D).

PROCEDURAL HISTORY

For the procedural history leading to these Findings, Conclusions and Recommendations, attention is directed to the Special Master's Findings of Fact, Conclusions of Law and Recommendations of the Special Master Relating to the Conditional Approval of the Class Settlement, issued on September 22, 2010, [Doc. No. 164].

On December 20, 2010, the Fees Motion was filed, followed by the Defendants' Opposition thereto, along with oppositions and comments by other counsel and individuals. Among other things, particularly the opposition by certain counsel, the Special Master, on January 26, 2011, issued a Supplemental Memorandum and Process for the Attorneys' Fees and Costs Hearing, [Doc. No. 211]. As a part of that Supplemental Memorandum, the process to be

---

[1] In these Findings, Conclusions and Recommendations, the "Court" refers to U.S. District Judge Joseph L. Tauro, and the "Special Master" refers to Hon. Allan van Gestel, (Ret.), duly appointed by the Court.

followed, and which was followed, at the proceeding on the Fees Motion was:

> "At the hearing on February 14, 2011, the Special Master will hear, by way of oral argument only, the positions of those in attendance who, by their prior filings are duly qualified to speak, in favor of or in opposition to Class Counsels' Motion for Attorneys' Fees and Costs, Doc. No. 174. The order of speaking will be: for Class Counsel to go first, in support of their motion; then Defendants' counsel may speak next, either in opposition, modification or support of the motion; Defendants' counsel will be followed by those qualified to speak who are in favor of the motion; and finally those qualified to speak who oppose the motion will be heard. It is not anticipated that a second round of speaking will be required."

All parties also were advised that at the hearing there would be no presentation of testimony or cross-examination from or of evidentiary witnesses. This was not a mini-trial.

Notice has been duly served on over 1.6 million Settlement Class Members. Included in that Notice is advice that an Informational Website has been established where Class Members can obtain an extensive amount of detail about these consolidated cases and the proposed settlement. That website may be found at www.OilSludgeSettlement.com. As reviewed by the Special Master, there is included in the Informational Website a section entitled "How will the lawyers get paid?" The answer provided reads, in material part:

> "Class Counsel will ask the Court for up to $37.5 Million for attorney's fees and up to approximately $1.75 Million for reimbursement of costs and expenses incurred in the prosecution of these actions. The Defendants do not dispute Class Counsels' entitlement to an appropriate fee and reimbursement for costs and expenses, but may oppose the amount requested by Class Counsel. The Defendants will pay whatever attorneys' fee and cost and expenses that the Court awards without reducing or limiting any of the benefits available to Settlement Class Members."

This notification comes very close to what is often referred to as a "clear sailing agreement," although it appears more like a "ceiling clause." It includes Class Counsels' promise not to seek a fee above an agreed-upon ceiling, rather than an agreement by the Defendants not to contest a fee application up to the amount of that ceiling. The Special Master

and the Court should carefully scrutinize the effect of such a clause or agreement to insure that in order to secure it, counsel have not bargained away something of value to the Settlement Class. *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991). Having done so, however, the Special Master in no way finds or suspects Class Counsel of any collusion or other untoward behavior in the negotiation of the Agreement of Settlement. On the contrary, their efforts on behalf of the Settlement Class are to be praised.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Special Master is of the belief that it will better assist the Court in reviewing the findings of fact in support of the recommendations that follow if the legal propositions that control and apply to this fees hearing are set forth first.[2]

### Conclusions of Law

In any assessment of a request for attorneys' fees in the District Court, the starting point should be the "American Rule." Generally, under that rule each of the parties to a civil action is required to pay his, her or its own attorneys' fees and costs in the absence of some statutory

---

[2] Before addressing either the conclusions of law or the findings of fact, the Special Master speaks briefly in this footnote about an issue that arose in the final days leading up to the February 14, 2011, hearing. Among the last-minute flurry of filings, there was attached to Plaintiffs' final Reply Brief, as Exhibit 3, an Affidavit of Prof. Arthur R. Miller in support. Defendants' counsel immediately moved to strike that affidavit, [Doc. No. 240], primarily arguing that it was nothing more than an unauthorized legal brief.

The Special Master understands that it is his duty to decide what the law is that applies in this proceeding and then make his recommendations to the Court. "In our legal system, purely legal questions . . . [are] exclusively the domain of the judge." *Nieva-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997). See also *Gomez v. Rivera Rodriguez*, 344 F.3d 104, 114 (1st Cir. 2003). Thus, the Special Master has not relied upon Prof. Miller's presentation of his view of the applicable law as contained in his affidavit. Formally striking the affidavit, however, is not deemed necessary.

3

provision imposing a fee-shifting requirement. *Alyeska Pipeline Serv. Co.* v. *Wilderness Society*, 421 U.S. 240, 245 (1975).[3] In the context of a class action settlement in the First Circuit, however, fees may be awarded, as part of the Court's equitable powers over such settlement agreements, from a fund created to benefit the class. "A common fund award 'is an equitable award made at the discretion of the district court.' " *United States* v. *8.0 Acres of Land*, 197 F.3d 24, 33 (1st Cir. 1999).

The requests in issue in the Fees Motion must be assayed pursuant to the Agreement of Settlement that will be considered by the Court at the March 11, 2011, Fairness Hearing. Two aspects of the Agreement of Settlement are pertinent for these purposes.

First, Section VI. A. 2. provides: "It is expressly understood and confirmed that the parties have not agreed to any choice, selection or waiver of state or federal law to be applied to any aspect of the construction, preliminary or final approval, or application of any provision of this Agreement of Settlement, including but not limited to attorney fees and costs."

Thus, as is the case here, in the absence of an express choice of law clause, where a fee award is a result of the parties' private agreement, federal law governs the decision. *Dewey* v. *Volkswagen of Am.*, 728 F. Supp. 2d 546, 588-89 (D. N.J. 2010). The Special Master is fully aware that the Plaintiffs' Second Amended Class Action Complaint, [Doc. No. 57], in Count 1, relies upon the New Jersey Consumer Fraud Act, N.J.S.A. § 56.8 - 1 *et seq.*, along with other similar state consumer fraud laws which contain fee-shifting provisions.[4]

---

[3] For a detailed history of the application of the American Rule in the federal courts, see *Alyeska, id.* at 247-271.

[4] This MDL consists of seven consolidated federal actions that originally were filed in New Jersey, Florida, California, Massachusetts, Pennsylvania, Ohio and Illinois.

What is now before the Special Master and the Court, however, is an Agreement of Settlement, not a judgment after trial of the underlying cases. Consequently, the state law fee-shifting statutes do not come into play. It is clear in the First Circuit that where the fee award is sought pursuant to an agreement between the parties in a federal class action settlement, federal law governs the decision. *Weinberger, supra*, 925 F.2d at 522 n.5. See also *In re TJX Cos. Retail Security Breach Litigation*, 584 F. Supp. 2d 395, 399 (D. Mass. 2008). "Settlement of a case already in progress in the federal courts implicates matters of considerable federal concern, entirely apart from the substantive merits." *Mathewson Corp. v. Allied Marine Indus., Inc.*, 827 F.2d 850, 853 n.3 (1st Cir. 1987). "[T]he federal interest is sufficiently great that the proper rule of decision may well be a uniquely federal one." *Id.*

Fed. R. Civ. P. 23(h) provides that, in a certified class action, "the court may award reasonable attorney's fees and nontaxable costs that are authorized . . . by the parties' agreement."

Section VI. C. of the Agreement of Settlement deals with attorneys' fees and costs. Pertinent for these purposes are portions of subsections (1), (2) and (3).

Subsection (1) permits "Class Counsel . . . [to] submit an application to the Court for an award of reasonable attorneys' fees and expenses. . . ." Also, "[e]ach Settling Party reserves all rights to appeal from a Class Counsel fees and expenses award. . . ." Further, the "Class Counsel fees and expenses award and the Final Judicial Approval shall be separate so that the appeal of one shall not constitute an appeal from the other."

Subsection (2) mandates that "Class Counsel fees and expenses shall be paid entirely and exclusively by Defendants and shall not diminish, invade, or reduce, or be derived from, benefits

5

afforded to Settlement Class Members under this Settlement Agreement."

Subsection (3), among other things, recites that "[a]ll matters pertaining to an award of Class Counsel fees and expenses, including, but not limited to, any dispute amongst class/plaintiffs' counsel as to their respective attorney's fees and expenses, have been referred to the Honorable Allan van Gestel, Special Master. Judge van Gestel's recommendation with respect to Class Counsel fees and expenses shall be made to the Court."

In making fee awards, the Court must function "as a quasi-fiduciary to safeguard the corpus of the [settlement] fund for the benefit of the plaintiff class." *In re Fidelity/Micron Securities Litigation*, 167 F.3d 735, 736 (1st Cir. 1999); see also *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-482 (1980).

There are two methods applied in the assessment of attorneys' fee applications: the lodestar method, see *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-168 (3d Cir. 1973), and the percentage-of-the fund ("POF") methodology. See *8.0 Acres of Land, supra*, 197 F.3d at 33.

Under the lodestar method, each attorney's reasonable hourly rate is multiplied by the number of hours reasonably expended on the litigation. This method often is used in the application of statutory fee-shifting provisions to "reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *In re Rite Aid Securities Litigation*, 396 F.3d 294, 300 (3d Cir. 2005).

The POF method is very much like a contingent fee approach. It "awards counsel a variable percentage of the amount recovered for the class." *In re General Motors Corp. Pick-Up*

*Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 786 (3d Cir. 1995). The POF method produces an "equitable award made at the discretion of the district court." *8.0 Acres of Land, supra,* 197 F.3d at 33. Under the POF method the Court has "extremely broad" discretion in determining an appropriate fee. *Mann & Co. PC v. C-Tech Industries, Inc.,* No. 08-11312-RGS, 2010 WL 457572 (D. Mass. 2010). The Court must shape the fee "based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 306 (1st Cir. 1995).

In the First Circuit, either the lodestar or the POF method can be used to evaluate fee petitions in complex litigation. In *In re Thirteen Appeals, supra,* 56 F.3d at 307, it is said that the POF method is the "prevailing praxis," due in part to the fact that it is less burdensome in its administration.

In applying the POF method, there should be "use of the triangular construct of *Mathews v. Eldridge,* 424 U.S. 319 . . . (1976), to determine whether the [Special Master afforded all counsel] 'the opportunity to be heard "at a meaningful time and in a meaningful manner." ' *Id.* at 333." *Thirteen Appeals, supra,* 56 F.3d at 301.

Also, the Special Master

"is not obligated to convene an evidentiary hearing as a means of resolving every attorneys' fee dispute. . . . [F]lexibility is the watchword. . . . [F]lexibility implies substantial discretion. Therefore, when the [Special Master] chooses among the available options, [he] *can mix and match.*"

(Emphasis added.) *Id.* at 301-302.

The hearing, held on February 14, 2011, was only a part of the process for the Court in

7

assessing and considering the approval of a multi-district class action settlement dictated by Fed. R. Civ. P. Rule 23 and the many cases that apply thereto. See, e.g., *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620-622 (1997).

"The difficulty for both fee-setting and fee-reviewing courts, in a field so susceptible to arbitrariness, is the achievement of decision making that is fair to the parties and understandable to the community at large yet not unnecessarily burdensome to the courts themselves." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984).

At the Final Fairness Hearing, scheduled for March 11, 2011, the Court must undertake a detailed assessment of the terms of the proposed settlement, the interests of the Settlement Class Members as well as any third parties that might be affected by the settlement, and the circumstances of the litigation. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F. 3d 1, 2, 7 (1st Cir. 1999).

This is the legal framework in which the Special Master will set forth the facts, discuss the situation and make his recommendations on attorneys' fees and costs.

Findings of Fact and Discussion

The Special Master is "cognizant not only of [his] responsibility to the class but also to the public to ensure that the fees awarded here are reasonable." *In re TJX Cos., supra*, 584 F. Supp. 2d at 399. See also *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 379 (D. Mass. 1997).

The Fees Motion and the papers and arguments supporting it, as presented by Class Counsel, seek attorneys' fees in the amount of $37.5 million plus costs and expenses of $1,195,234.43, as of February 15, 2011. See Doc. No. 246.

Class Counsel assert that they have created a "fund" benefitting the Settlement Class Members and seek an equitable approach to their fees, utilizing the POF methodology. The Defendants argue that no fund has been created and press for something closer to a lodestar methodology. Others just claim that $37.5 million is too much.[5] And then there are a few attorneys who are not Class Counsel but did represent some class members in some parts of these cases, who, while mouthing words of opposition, seem primarily concerned that any award be large enough such that there will be money available for a good payday for them when Class Counsel make their allocations in later proceedings *if* the Agreement of Settlement is approved by the Court.[6]

To determine whether there is a "fund" of the kind usually found in the POF methodology, the Special Master first needs to consider what it is that the Settlement Class Members will have available to them if the settlement is approved.

The Agreement of Settlement provides for four specifically described benefits: (1) certain required warranty reimbursement payments; (2) a ten-year warranty extension; (3) a reduction of owners' future repair costs; and (4) a $25 oil change discount. Additionally, of course, the Agreement of Settlement provides for claims administration by the Oil Sludge Settlement

---

[5] In this group are four *pro se* parties (Dwight E. Nolt [Doc. No. 226], Mark Powell [Doc. No. 208], Chris Pavlou [Doc. No. 199] and Paul R. Worsham [Doc. No. 200]), and one "professional and generally unsuccessful objector," see *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 386 (D. Md. 2006), the latter also called a "repeat objector," see *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL 1361, 2003 WL 22417252, at *2 n.3 (D. Me., Oct. 7, 2003), John J. Pentz [Doc. No. 205].

[6] It was telling to the Special Master that not a single attorney or class member appeared at the February 14, 2011, hearing and spoke against the Fees Motion. Only Class Counsel and the Defendants' attorneys took the opportunity to address the issues. The "triangular construct" of *Mathews, supra*, 424 U.S. at 333, was clearly met.

Administrator and payment of Plaintiffs' Counsels' fees and costs by the Defendants.

What is presented is not a single fund of money out of which the Settlement Class Members will have entitlement to portions, depending upon their presentation of appropriate claim forms. Rather, there is a composite of benefits, each depending upon the different circumstances of the claimants. Of the group of benefits, really only the single $25 discount for an oil change can be seen as a definitely measurable fund, although even it is not an amount of money set aside for the purpose. The other three benefits are valuable; however, they are not payable out of an established fund. Rather, they fit more into what is sometimes phrased as a "common benefit." See, e.g., *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393-394 (1970).

Class Counsel has presented expert evidence in an attempt to place a value on these settlement benefits. The Defendants, while readily conceding that there is real value to each of the benefits,[7] challenge what the value of those benefits amounts to. Class Counsel, relying upon their expert's November 30, 2010, report, suggested an aggregate value of the various benefits of $420,986,855. With similar reliance upon their own expert, on January 21, 2011, the Defendants pegged the aggregate value at $50,093,787. This spread was about $370,000,000.

In the foregoing is included an amount of $39,250,000, which Class Counsel suggests should be considered, and Defendants' counsel wholly opposes. The $39,250,000 represents Class Counsels' claim for costs and fees. Without this amount in the mix, the differences between the parties initially were $381,736,955 for the Class and $45,424,181 for the Defendants, or about $336,000,000.

---

[7] Indeed, the Defendants could not do otherwise while, at the same time, urging upon the Court that this is a valuable settlement for the Class which deserves approval.

Broken down by benefit or element, the following chart shows those differences.[8]

|  | Kleckner Estimates | Ordover Estimates |
|---|---|---|
| Required warranty reimbursement payments | $247,122,692 | $10,944,237 |
| Ten-year warranty extension | $56,615,996 | $12,012,438 |
| Reduction of owner future repair costs | $68,535,301 | $18,719,788 |
| Oil change discount | $3,362,263 | $3,362,263 |
| Claims administration | $6,100,703 | $385,455 |
| Professional costs | $39,250,000 | $4,669,606 |

Following Ordover's critique of Kleckner's first estimates of value, Kleckner, on February 4, 2011, submitted a Rebuttal Report. In his Rebuttal, Kleckner revised his opinions in five different ways. The Special Master focused primarily on those ways that produced lower estimates of value, and did not include the $39,250,000 for fees and costs. This aggregates a value amount at $222,933,131.[9] [10]

Ordover was permitted by the Special Master to file his own response to Kleckner's Rebuttal, and he did so on February 8, 2011. In that final response Ordover offered nothing new

---

[8] "Kleckner" is the Class Counsels' expert, and "Ordover" is the Defendants' expert.

[9] Much of this came from a request by Class Counsel, which produced numbers even lower than Kleckner himself feels are justified.

[10] The five amounts that make up this figure are: $87,056,149 for required warranty reimbursements; $73,938,851 for ten-year warranty extension; $56,249,605 for reduction of future repair costs; $3,362,263 for the oil change discount; and $2,325,963 for claims administration. See Kleckner's Rebuttal Report at pp. 4-6.

11

by way of his own estimates of value, preferring to stand on his January 21, 2011, proffer. Rather, Odover's response continued with his theme that Kleckner calculated his values using incorrect assumptions.

The Special Master has examined, in detail, all of the two experts' reports. In doing so, like any other fact finder facing a battle of experts, each of whom, as here, is well qualified for the task, the best estimate of aggregate value appears somewhere between the extremes. Each estimate, for each element, has been considered solely as a guide in this assessment of the reasonableness of the fees and costs that are recommended. After all, on the Fees Motion the Special Master is not making a decision as to what the value of each benefit should be; nor is he valuing the settlement. And, of course, he is not attempting to settle a dispute between the two experts. Rather, the Special Master is taking guidance from those experts in his overall effort to determine what a reasonable fee would be, considering the potential value of the benefits to the Settlement Class Members only as one among many other elements.

It is not just the value of the benefits provided by the Agreement of Settlement that must be considered by the Special Master on the Fees Motion. There are several other important and significant elements that have received consideration in the assessment of the fairness of the attorneys' fees sought here. Included among that mix are: the time and labor required; the novelty and difficulty of the questions and issues involved; the skill requisite to perform the legal services; customary rates for the services; the amounts involved and the results obtained; the experience, reputation, and ability of the attorneys; and awards in similar cases.[11] See Haig,

---

[11] To the extent not specifically recited in these Findings of Fact, attention is directed to the Special Master's September 22, 2010, Recommendations regarding the class settlement itself, [Doc. No.164], which is incorporated herein by reference.

12

*Business and Commercial Litigation in Federal Courts*, (Second Edition), § 48:37, pp. 950-952.

The Special Master observes, in passing, the statement in the Defendants' expert's first report, in Section F at pp. 21-22, that Class Counsels' fees and costs claims of $39,250,000 "represent[] 10.28% of the other five components of the valuation ($381,736,955)." Further, as noted above, the Special Master, using Kleckner's more recent lower estimates aggregating $222,933,131, observes that the $39,2500,000 fees and costs application amounts to about 18% thereof. "Those courts that have applied the percentage method have awarded counsel, on average, 20%-30% of the common fund." Haig, *supra*, § 16:79, p. 437; *In re Relefen*, 231 F.R.D. 52, 81 (D. Mass. 2005). Were this a lodestar approach,[12] there might be an added multiplier. See, e.g., *In re Tyco Int'l Multidistrict Litig.*, 535 F. Supp. 2d 249, 271 (D. N.H. 2007) (multiplier of 2.697); *In re Relafen, supra*, 231 F.R.D. at 82 (multiplier of 2.02).

No assessment of an application for attorneys' fees in a case like this in the District of Massachusetts can avoid addressing Judge Young's "institutional" concerns expressed in *In re TJX Cos., supra,* 584 F. Supp. 2d at 406. Judge Young, bluntly, states that "[s]imply put, the class action vehicle is broken." *Id.* Despite his extensive discourse in *In re TJX Cos.*, however, Judge Young went on to award counsel there the full amount of attorneys' fees applied for. *Id.* at 408.

Before delving into the major concerns expressed in *In re TJX Cos.*, the Special Master observes that Judge Young took the opportunity to advise readers that because class action counsel "will adjust their methods and mindset to cope with the new fee regime" that he advocates, *id.* at 408, "in the future . . . plaintiffs' counsel can expect that [Judge Young, at least] . . . will award attorneys' fees *by reference to benefits actually put in the hands of the class*

---

[12] Which it is not.

13

*members.*" (Emphasis in text.) *Id.* at 410. Judge Young did not do so in *In re TJX Cos.*, however, because the views stated in his decision "did not give class counsel any indication prior to the Fairness Hearing that [the Court's] award of attorneys' fees might be made with reference" to the amount of value actually transferred to class members, rather than what was available to them, but not claimed. *Id.* at 409. To do otherwise "would be unfair to act – in this case – on [the Court's] institutional concerns to class counsel's detriment." *Id.*

The decision in *In re TJX Cos.* was issued on November 3, 2008. The cases under consideration here were commenced in early 2006, almost three years before Judge Young's warnings about the methodology he would apply in the future in class action fee applications. It would be equally unfair in this case to apply, retroactively, the concepts advocated in *In re TJX Cos.* to counsels' fee application in this matter. That said, it seems worthwhile to set forth the major concerns expressed in *In re TJX Cos.* and to explain why they do not exist here. In doing so, the Special Master observes that the benefits in *In re TJX Cos.* were, in material ways and effects, similar to the benefits here in that they did not create a fund out of which they were to be paid; rather, they were obligations of the defendant to be complied with that had value. See *id.* at 400-401.

Relatively early in Judge Young's opinion, he notes the red flag that "to grant the petition [for fees] would . . . put more money in the pockets of the attorneys than in those of the wronged clients in whose name the suit was brought." *Id.* at 402. That, however, is not the situation in the request before the Special Master, even when the Defendants' much lower original estimate of value of $45,424,181 is used as a guide. Here, even the Defendants acknowledge "Class Counsels' entitlement to an appropriate fee and reimbursement for costs and expenses." See

14

answer on Informational Website to question "How will the lawyers get paid?" quoted above on p. 2.

Another concern of Judge Young is that counsel may not design a settlement in a way that sufficiently reaches the Settlement Class Members and gives them incentive to participate in it. That, too, is not the case here. The Notice to the class conditionally certified here was unusually well designed to reach the Class Members. It was not just a fine-print publication in the back pages of a newspaper. Rather, it included first-class mail to each Class Member's home,[13] whose names and addresses were taken with the use of the respective Volkswagen and Audi automobiles' Vehicle Identification Numbers ("VIN") on record in each Registry of Motor Vehicles throughout the class area, the entire United States. In addition, the notification is extremely detailed in its explanation of the benefits available to the Class and how they may be obtained, including, as mentioned above, the Informational Website.

Further, what the Class Members here are entitled to, among other things, is either 100% or 50% of the costs of a full automobile engine repair if sludge damage occurs, or had occurred in the past and been denied. Each of these repairs alone has values in the hundreds, perhaps thousands, of dollars range for any engine so damaged.[14] The latter is vastly more attractive to a Class Member than the "three years of credit monitoring" made available to qualifying customers in the *TJX Cos.* settlement or the $10 gift card mentioned in the Bed, Bath & Beyond case cited by Judge Young in footnote 15 of *In re TJX Cos.*

---

[13] On December 20, 2010, the Oil Sludge Administrator, ("OSA"), mailed out 1,603,013 Notice packages to identified Class members. As of February 6, 2011, the OSA had received only 20 requests for exclusion from the Class and only 6 objection requests. See Doc. No. 244-1.

[14] At the February 14, 2011, hearing the amount was suggested to be $2,147 per claim.

Still further, there are no complicated barriers to relief for Settlement Class Members here. They either can prove their last two oil changes were proper and receive a 100% reimbursement for a sludge-damaged engine or, without any proof, still receive a 50% reimbursement. Both the needs of the Settlement Class and their incentive to participate are well attended to.

The time within which a Settlement Class Member here must make a claim, or the claim procedure in order to recover, is not narrow or burdensome either. Additionally, there is the sophisticated Oil Sludge Settlement Administrator in place to assist in the process, a kind of service that Judge Young found appropriate when considering the assessment of the value of settlement benefits in *In re TJX Co.* See *id.* at 402, n.13.

Again, unlike the fear alluded to in *id.* at 405, there is no evidence here of any efforts by Class Counsel pushing for high payout caps or fund amounts in order to expand the basis for their fee petition. The benefits here are, for the most part, without caps and were all negotiated, and the Agreement of Settlement was signed, *before* discussions of the attorneys' fees even began.

Class Counsel in this case have been observed closely by the Special Master in their interaction with Defendants' counsel. On almost every issue, this has been a very hard-fought case, by very well-qualified counsel, on both sides. There is no evidence whatsoever of Class Counsel "placing their interests before those of the [Settlement Class] or . . . failing to give adequate thought to matters such as how the [Class Members] may best be reached or what benefits may most be appreciated." See *id.* at 406.

Nor has this Special Master complacently abided "an institution that fails efficiently and effectively to deliver relief into the hands of those in whose name it was established – the class." *Id.*

Indeed, that there is significant value to Settlement Class Members is poignantly set out in a recent conditional objection to the settlement by a man who feels that he should have been included in the Class. See Objection to Settlement as Currently Set Forth, by Daniel M. Gregory, of Lexington, SC, dated January 27, 2011, [Doc. No. 216].

> "No one expects a lawyer to give his services at bargain rates in a civil matter on behalf of a client who is not impecunious. No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended. Yet unless time spent and skill displayed be used as a constant check on applications for fees there is a grave danger that the bar and bench will be brought into disrepute, and that there will be prejudice to those whose substantive interests are at stake and who are unrepresented except by the very lawyers who are seeking compensation."

*Cherner* v. *Transitron Electronic Corp.*, 221 F. Supp. 55, 61 (D. Mass. 1963).

Thus, although the Special Master has applied a "mix and match" approach towards assessing whether the fees and costs applied for are fair and reasonable under the circumstances, see *Thirteen Appeals, supra,* 56 F.3d at 301, he also has had the opportunity to consider Class Counsels' lodestar presentation as a cross-check. See, *In re Tyco, supra,* 535 F. Supp. 2d at 270; *In re Relefen, supra,* 231 F.R.D. at 79, 81. A lodestar is "a presumptively reasonable fee." See, e.g., *Lipsett* v. *Blanco*, 975 F.2d 934, 937 (1st Cir. 1992). Class Counsel say they spent a total of 23,191 attorney and staff hours in the prosecution of these cases. Making a 1/3 reduction for what may be unnecessary hours, thereby reducing the number to 15,468 hours, then multiplying those hours by $500 per hour, produces a lodestar, before any multiplier, of $11,595,500. "In this Circuit, a Court reviewing a fee petition under the lodestar method is not required to wade through every billed hour, every claimed service, and charged expense, effectively conducting an audit of

17

plaintiffs' fee petition and then issue a telephone book of minute findings." Defendants' Memorandum of Points and Authorities, [Doc. No. 206], at p. 29. See also, *Foley v. City of Lowell*, 948 F.2d 10, 20 (1st Cir. 1991) (affirming a blanket 1/3 reduction of plaintiffs' counsel's lodestar).

Assuming a multiplier of 2.00, see, e.g., *In re Tyco supra*, 535 F. Supp. 2d at 271 (multiplier of 2.697); *In re Relafen, supra,* 231 F.R.D. at 82 (multiplier of 2.02), the Special Master observes a lodestar amount, with that multiplier, of $23,191,000. See also, *In re TJX Cos., supra*, 584 F. Supp. 2d at 408.

Defendants' attorneys ask the Special Master to defer ruling on the Fees Motion until June 27, 2011, the date they say is when it can be known with certainty how many claims there are and, therefore, know with certainty the value of that segment of the benefits to the class. This seems inaccurate because the ten-year warranty will not run out until 2014. Further, as observed above, the measurement should not be what benefits were claimed by the class but rather what benefits were made available by counsel to be claimed. See, e.g., *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007). The decision on fees should not be delayed.

One final comment on the process. The motion under consideration was filed by Class Counsel pursuant to the Agreement of Settlement. Attorneys' services were rendered, fees were generated and costs were incurred, however, by more that just Class Counsel. Some of the Settlement Class Representatives[15] had counsel of their own who participated, in part at least, in

---

[15] The "Settlement Class Representatives" are defined in the Agreement of Settlement. They are: James Craig, Laura Cole-Breit, Scott Ryder, Eric Emanueson and Margaret Moreau, Matthew Leonetti and Stacy Leonetti, David and Carrie Marks, Marie Montag, Carol Carter, Judith Yarkony, Megan Shero, Eugenia Diveroli, and Ken Winokur. See Definition #23 on p. 7.

elements of what are, or became, part of the Plaintiffs' side of the cases. Still further, counsel other than those who may have represented Settlement Class Representatives, such as local counsel, also have played roles. Consequently, the fees and costs awarded ultimately will need to be allocated by Class Counsel to any such other attorneys, based upon their respective contributions to the litigation or any agreements or arrangements made among them. Thus, if the settlement is approved, fees are awarded, and all appellate rights are exhausted, the Special Master will, if necessary, then establish a process to address those allocations similar to that followed by Judge Young in *In re Indigo Securities Litigation*, 995 F. Supp. 233, 235 (D. Mass. 1998). All parties have been alerted to this possibility by the Special Master. See Doc. No. 211, pp. 7-8. Additionally, in any such follow-on process, the Special Master will consider prompt partial payments, where appropriate, so as to not hold up the entire award if it is not necessary to do so.

## RECOMMENDATIONS

The Special Master, pursuant to the Court's prior Order of Reference dated October 23, 2008, [Doc. No. 129] – and after review of: the Fees Motion, [Doc. No. 174]; Plaintiffs' Brief in Support of Motion for Attorneys' Fees and Costs, [Doc. No. 175]; the Certification of Peter J. McNulty, Kirk D. Tresemer, and Russell D. Henkin in Support of Plaintiffs'/Class Counsels' Petition for Fees and Costs; the detailed Valuation of Class Member Benefits of Kirk D. Kleckner, dated December 22, 2010 and his Rebuttal; the Declaration of Opposition to Plaintiffs' Application for Attorney Fees and Expenses, [Doc. No. 204]; the Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs, [Doc. No. 206]; the Declaration in Opposition to Plaintiffs' Application for Attorney Fees and Costs, including the attached Expert Report of Janusz A. Ordover and his rebuttal; and the various other

documents submitted in support of or in opposition to the Fees Motion – on February 14, 2011, conducted a pre-approval hearing with Class Counsel and Defendants' counsel. No other counsel or individuals qualified to object chose to appear. Thereafter, the Special Master considered all of the arguments and submissions related to the Fees Motion, the circumstances leading to the execution of the Agreement of Settlement and the Fees Motion itself, all of which he is otherwise fully knowledgeable about because of his personal participation therein.

For all of the foregoing reasons the Special Master recommends that an award be made on the Motion for Attorneys' Fees and Costs, [Doc. No. 174], of $30,000,000 for attorneys' fees and $1,195,234.43 for costs and expenses, all aggregating $31,195,234.43.

Additionally, the Special Master recommends that the Court issue an Order to the effect that any funds to be paid by the Defendants as attorneys' fees or costs be held, subject to a specific Order by the Special Master, either after the conclusion of any process established by him as referred to above and in Doc. No. 211, or for such partial payments as may be deemed by him to be appropriate.

The Defendants' request to defer the determination of attorneys' fees and costs should be denied.

Finally, the Special Master recommends that all other objections to the fees and costs application be denied, consistent with the recommendations urged herein.

_____
Hon. Allan van Gestel, (Ret.)
Special Master

DATED: February 18, 2011