THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | : | |
|---|---|---|
| **In re Volkswagen and Audi** | : | MDL Docket No. 1:07-md-01790 |
| **Warranty Extension Litigation** | : | |
| | : | |
| | : | |
| | : | |
| **This Document Relates to All Cases** | : | |
| | : | |

**DEFENDANTS' OBJECTIONS TO FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATIONS OF THE SPECIAL MASTER RELATING TO CLASS PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS (DKT. NO. 248)**

Defendants, pursuant to Rule 53, Fed.R.Civ.P., respectfully object to the referenced Findings of Fact, Conclusions of Law and Recommendations of the Special Master Relating to Class Plaintiffs' Motion for Attorney Fees and Costs (Dkt. No. 248) ("Report").[1]

For the reasons stated below and in the accompanying Memorandum of Law, defendants urge this Court to reject the report and recommendations and its "mix and match" fee award of $30,000,000 in favor of a proper "lodestar" award based on the Special Master's allowance of 15,468 compensable hours, which is not challenged, at a reasonable "blended rate" that properly accounts for the significant time spent by associates, paralegals and billing support personnel, without enhancement or multiplier. The recommended award not only grossly overcompensates partners, but would compensate associates and even paralegals and support staff, at an hourly rate of nearly $2,000 an hour.

---

[1] Defendants received the Supplemental Report dated March 4, 2011 ("Supplemental Report") today, which corrects some arithmetic errors in the original Report and otherwise adheres to that Report. These objections also apply to the Supplemental Report.

## OBJECTIONS

1.      In these actions, subject matter jurisdiction is premised upon diversity of citizenship. An award of attorney fees is a matter of substantive law. Under *Erie* and relevant statutes, the Special Master was bound to apply the governing substantive state fee-shifting statute in determining plaintiffs' counsel's request for attorney fees, here the New Jersey Consumer Fraud Act. The Special Master's disregard of the governing fee-shifting statute in favor of applying "federal law" violates the *Erie* doctrine, the Rules Enabling Act and the Rules of Decision Act.

2.      The Special Master erroneously concluded that because plaintiffs' counsels' application for attorney fees arose in the context of a settlement, rather than "a judgment after trial of the underlying cases," the "state law fee-shifting statutes do not come into play" (Report, p. 5). This conclusion contravenes the governing law under which the settling plaintiffs herein, as "prevailing parties," are entitled to an award of attorney fees pursuant to the applicable fee-shifting statute. As such, this Court is bound to apply that statute and its required use of the lodestar method to determine counsels' fee application.

3.      In addition to failing to apply the governing state fee-shifting statute, the Special Master applied "federal law" based on the erroneous conclusion that the fee award "is the result of the parties' private agreement"(Report, pp. 4-6). In doing so, he misconstrued the plain language of the Settlement Agreement which permitted plaintiffs' counsel to apply to the Court for fees under the express proviso that "the parties have not agreed to any choice, selection or waiver of state or federal law to be applied…" (Settlement Agreement, §§ VI.A.2 and VI.C.1 and 2). This was not an agreement for attorney fees; in fact, the Special Master acknowledged that

2

"the Agreement of Settlement was signed <u>before</u> discussions of the attorney fees even began" (Report at 16; emphasis in original). Thus , the Settlement Agreement did not establish any contractual right to attorney fees, and did not confer any right upon the Special Master to supplant the applicable state law that provided the substantive basis for the request.

4. The Special Master failed to use the legally required methodology for determining the appropriate request for attorney fees to be awarded. Instead, he devised and utilized a so-called "mix and match" approach which did not calculate a reasonable attorney fee by use of the lodestar method or even the percentage of the fund (POF) method. The Special Master's novel "mix and match" approach violates decades of established law by failing to determine the recommended attorney fee through the lodestar method, or even if this were a "common fund case" (it is not), through either the lodestar or the POF method. As such, the recommended fee of $30,000,000 is without basis in law or proper methodology and must be rejected.

5. The Special Master's creation of the "mix and match" approach violates defendants' constitutional due process rights. Defendants were not afforded any notice that such an unprecedented approach would be applied to the instant motion for attorney fees.

6. The Special Master's "mix and match" approach derives from a misinterpretation of a quote contained in *In re Thirteen Appeals*, 56 F.3d 295, 301-02 (1st Cir. 1995) which was taken out of context. Contrary to the Special Master's erroneous interpretation of *Thirteen Appeals,* the First Circuit made clear in *Thirteen Appeals* that (1) in cases involving a fee-shifting statute, the district court is required to use the lodestar method, and (2) in cases not involving fee-shifting statutes, where equity jurisdiction is invoked over a "common fund," as was present in that case,  the district court can use either the lodestar method, the POF method or a combination which uses one of those methods with the other as a cross-check.

7. The Special Master erroneously declined to determine the value of the settlement to the Class, in derogation of governing law. He stated: "on the Fees Motion the Special Master is not making a decision as to what the value of each benefit [of the settlement] should be; nor is he valuing the settlement" (Report at 12). This violates the governing law, as the determination of the precise value of the Settlement to the Class is an essential legal and factual prerequisite to the determination of attorney fees based on the use of a "common fund" or POF methodology.

    a. The Special Master's failure to determine the value of the settlement to the Class precludes the use of a POF approach and any "multiplier" when utilizing the lodestar method.

    b. While acknowledging that the parties' experts' valuations differ by hundreds of millions of dollars, the Special Master made no findings relative to the parties' experts' valuations or the validity, reliability and accuracy of the assumptions that underlie their vastly different valuation estimates. Instead, he declined to "attempt[] to settle a dispute between the two experts" by making factual determinations of the value of each component of the Settlement. The Special Master's failure to make the essential findings of fact needed to properly determine the value of the settlement to the Class precludes the use of any POF method and renders his recommended award invalid as a matter of law.

    c. The Special Master arbitrarily and improperly chose an "aggregate" of plaintiffs' expert's lower valuation estimates ($222,933,131)[2] as a figure for use as a benchmark against which to measure plaintiffs' counsel's $39,250,000 fee/expense request. There was no legal or factual basis for choosing this figure without performing a proper calculation of the value of the settlement. The Special Master also incorrectly concluded that the responsive report

---

[2] This was a mathematical error. The Supplemental Report corrected it to $222,932,831 but incorrectly stated that it was overstated by $300 rather than $700.

4

of defendants' expert, Dr. Ordover, "offered nothing new by way of his own estimates of value, preferring to stand on his January 21, 2011 proffer" (Report at 11-12). In fact, Dr. Ordover reviewed plaintiffs' expert's revised valuations and provided an additional alternative valuation of $49,463,688 (See, Dr. Ordover's rebuttal report dated February 8, 2011, Dkt. No. 239). The Special Master improperly overlooked and failed to adopt Dr. Ordover's alternative valuation.

8.   In refusing to utilize the lodestar method, the Special Master erred, factually and legally, in recommending a denial of defendants' motion to defer the determination regarding attorney fees until June 27, 2011 - - when all claims under the warranty reimbursement component of the Settlement will be filed and the actual amount of those claims can be determined with certainty.

   a.   The warranty reimbursement component comprised approximately 60% to 70% of plaintiffs' expert's total estimated value of the settlement. The estimated value of this component constitutes the largest difference between the respective parties' valuations, amounting to a difference alone of between $77,000,000 and $230,000,000 in the experts' estimates. The Special Master should have deferred his attorney fee recommendation until June 27, 2011 to enable the largest component of the settlement to be valued with certainty. This brief period of deferral would also permit a more accurate valuation of the other components of the settlement which relied upon the same "assumptions."

   b.   The Special Master erroneously concluded that the number of warranty reimbursement claims will not be known with certainty by June 27, 2011 "because the ten-year warranty will not run until 2014 (p.18). This incorrect conclusion confused the warranty reimbursement component of the settlement, all claims under which must be filed by June 27, 2011, with the enhanced ten-year/120,000 mile warranty extension which was not the basis for

the deferral motion. It is the warranty reimbursement component that mostly accounts for the gap in experts' valuations.

        c.        The Special Master, while citing *In re TJX Cos. Retail Security Breach Litigation*, 584 F. Supp.2d 395 (D.Mass. 2008), throughout his Report, erroneously concluded that it would be unfair to apply *TJX's* requirement that attorney fee requests be determined based upon the benefits actually received by the Settlement Class, to this action which was "commenced" in 2006 (p.14). There is no valid basis for refusing to apply *TJX* herein. *TJX* was decided two years before the settlement in this action was finalized.

        9.        The Special Master erroneously considered the Settlement a "common benefit" type settlement. The Settlement, however, does not meet the criteria for "common benefit" treatment since the defendants are not alter egos of the beneficiaries who would otherwise be unjustly enriched.

        10.        The Special Master, incorrectly using lodestar as a cross-check rather than the method of fee determination, made a significant mathematical error in his lodestar calculation in his original Report upon which the recommended fee was based. He calculated the lodestar based upon a correct reduction of counsel's billed time to a more legitimate 15,468 hours (which defendants do not contest), multiplied by an across-the-board hourly rate of $500, and arrived at a stated total of $11,595,000. However, the correct amount should have been $7,734,000. The Special Master's erroneous $3,861,000 overstatement of his own lodestar calculation was then doubled (to a $7,722,000 overstatement) by his use of a 2.0 multiplier. The mathematical error yielded an incorrect "multiplied" lodestar amount of $23,191,000 which should have been $15,468,000. The Special Master was advised of this approximate $8 million error and corrected it in his Supplemental Report. Nevertheless, he adhered to his original $30,000,000 fee

recommendation despite having now realized that his "multiplied" lodestar was approximately $8,000,000 less than originally calculated.

11.     Despite recognizing that "[a] lodestar is 'a presumptively reasonable fee'," (p.17, citation omitted), the Special Master erroneously failed to properly apply a lodestar cross-check against his recommended $30,000,000 attorney fee. The recommended fee amount is grossly disproportionate to Special Master's $7,734,000 lodestar amount, and even to the Special Master's multiplied lodestar amount of $15,468,000.

12.     The Special Master erroneously used a $500 blended hourly rate for a lodestar cross-check that applied not only to partners but to associates, paralegals and other billing support personnel whose billings make up nearly half plaintiffs' counsels' total hours. The blended rate is plainly excessive and should be reduced.

13.     Even in a "common fund" or "common benefit" case, the Court has discretion to use the lodestar method under applicable law. In this case, the Special Master should have used the lodestar method in any event, in view of the complexities and difficulties associated with determining the valuation of the settlement needed for use of a POF method.

14.     The Special Master, while erroneously concluding that plaintiffs' counsel's right to attorney fees was based upon "agreement of the parties," ignored the express terms of the Settlement Agreement which stated that any award of attorney fees "shall not…be derived from, benefits afforded to settlement class members" (Settlement Agreement, §VI.C.2). This contractual provision precludes any treatment of the settlement as a "common fund."

15.     The Special Master erroneously suggested that defendants had agreed that Class Counsel will accept up to $37.5 million in attorney fees and up to approximately $1.75 million for reimbursement of costs and expenses. This reference in the Class Notice was neither a "clear

sailing agreement" nor a "ceiling clause." It was nothing more than Class Counsel's own statement to the Settlement Class of what they would be seeking for fees and costs. These figures were provided by Class Counsel for insertion into the Class Notice on November 16, 2010, well after the Settlement Agreement was executed on September 2, 2010. See e-mail of Peter J. McNulty dated November 16, 2010, attached as Exhibit "B" to Gsovski Declaration. The insertion by plaintiffs' counsel in the Class Notice did not represent any agreement between counsel and should not have been construed as such.

16. The Special Master erroneously failed to consider "awards in similar cases." In automotive consumer class actions, the percentage of fund awarded in common fund cases are significantly smaller than the 20%-30% sometimes awarded in securities and anti-trust cases. See Defendants' Memorandum of Points and Authorities In Support of Motion for Final Approval of Settlement and In Opposition to Plaintiffs' Motion for Attorney Fee and Costs and In Support of Application to Defer Ruling on Plaintiffs' Motion for Attorney Fees and Costs Until After June 27, 2011, Dkt. No. 209, Point IX, pp. 40-42.

17. The Special Master erroneously refused to strike the expert Affidavit of Prof. Arthur R. Miller, who plaintiffs' counsel failed to identify as an expert. Defendants were not given a report or opportunity to depose Prof. Miller and were deprived of an opportunity to provide an expert in response. In addition, as the Special Master observed, the Miller Affidavit proffered opinions on the law which are exclusively the domain of the Judge. Although the

Special Master indicated he did not rely on the affidavit, it should be stricken and not made a part of the record.

Dated: March 4, 2011

Respectfully submitted,

VOLKSWAGEN GROUP OF AMERICA, INC.
VOLKSWAGEN AG
AUDI AG
by their Attorneys

/s/ David A. Barry
David A. Barry, BBO No. 031520
Andrew R. Levin, BBO No. 631338
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA  02114-4737
(617) 227-3030
barry@srbc.com

Jeffrey L. Chase *(pro hac vice)*
Daniel V. Gsovski *(pro hac vice)*
Michael B. Gallub *(pro hac vice)*
Herzfeld & Rubin, P.C.
125 Broad Street
New York, NY  10004
 (212) 471-8500
(212) 344-3333 (fax)
jchase@herzfeld-rubin.com
dgsovski@herzfeld-rubin.com
mgallub@herzfeld-rubin.com

**CERTIFICATE OF SERVICE**

      I, Natalie Flores Campbell, hereby certify that this document, filed through the ECF system, will be sent electronically on March 4, 2011 to the registered participants as identified on the Notice of Electronic Filing (NEF) and to the following recipients:

Kirk D. Tresemer
IRWIN & BOESEN, P.C.
4100 E. Mississippi Ave., Ste. 1900
Denver, CO  80246
(303) 999-9999
(303) 320-1915 (fax)
Email: ktresemer@coloradolawyers.com

Peter J. McNulty
McNULTY LAW FIRM
827 Moraga Drive
Los Angeles, CA  90049
(310) 471-2707
(310) 472-7014 (fax)
Email: peter@mcnultylaw.com

Russell D. Henkin
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
(215) 875-3000
(215) 875-4604 (fax)
Email: rhenkin@bm.net

Hon. Allan van Gestel (via email attachment)
JAMS
One Beacon Street, Suite 2300
Boston, MA  02108
(617) 228-0200
(617) 228-0222 (fax)
Email: allanvangestel@aol.com
Email: pgelinas@jamsadr.com

                                              */s/ Natalie Flores Campbell*
                                              Natalie Flores Campbell