UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *In re*<br>VOLKSWAGEN AND AUDI EXTENDED WARRANTY LITIGATION | Master File No. 1:07-md-01790<br><br>CLASS ACTION |
| This document relates to:<br><br>**All Cases** | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF OBJECTIONS TO FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATIONS OF THE SPECIAL MASTER RELATING TO CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (DKT. NO. 248)**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................................. ii

**STANDARD OF REVIEW**...............................................................................1

**SUMMARY**...................................................................................................1

**ARGUMENT**...................................................................................................3

I.  **THE APPLICABLE STATE FEE-SHIFTING STATUTES REQUIRING A LODESTAR AWARD ARE SUBSTANTIVE LAW WHICH MUST BE APPLIED IN THIS DIVERSITY CASE UNDER *ERIE*, THE RULES ENABLING ACT AND THE RULES OF DECISION ACT.**...............................................................................3

II. **THE THE SPECIAL MASTER'S "MIX AND MATCH" METHOD FOR CALCULATING A REASONABLE ATTORNEYS' FEE CONTRAVENES EXISTING LAW..**............................................................10

III. **THE THE REPORT MISCONSTRUED AND MISAPPLIED THE SETTLEMENT AGREEMENT..**........................................................17

IV. **THIS IS NOT A "COMMON BENEFIT" SETTLEMENT.  EVEN IF IT WERE, THE LODESTAR METHOD IS TO BE APPLIED.**........................19

**CONCLUSION**...............................................................................................20

## TABLE OF AUTHORITIES

### Cases

*Alyeska Pipeline Serv. Co. v. Wilderness Society,*
   421 U.S. 240 (1975).............................................................................................. 6

*Aronov v. Napolitano,*
   562 F.3d 84 (1st Cir. 2009)................................................................................... 5

*Blanchette v. Cataldo,*
   734 F.2d 869 (1st Cir. 1984)................................................................................. 6

*Brytus v. Spang, & Co.,*
   203 F.3d 238 (3rd Cir. 2000) ................................................................................ 8

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.,*
   532 U.S. 598 (2001).............................................................................................. 5

*Bussie v. Allmerica Financial Corp.,*
   1999 U.S. Dist. LEXIS 7793 (D. Mass. 1999) ................................................... 13

*Clark v. State Street Trust Co.,*
   270 Mass. 140 (1930) .......................................................................................... 18

*Cohen v. Beneficial Finance Corp.,*
   337 U.S. 541 (1949).............................................................................................. 6

*Conley v. Sears, Roebuck & Co.,*
   222 B.R. 181 (D. Mass. 1998) ............................................................................. 11

*Crowe v. Bolduc,*
   365 F.3d 86 (1st Cir. 2004)................................................................................... 18

*Demers Bros. Trucking, Inc. v. Certain Underwriters at Lloyd's London,*
   600 F.Supp.2d 265 (D. Mass. 2009) .................................................................... 18

*Dewey v. Volkswagen of America, Inc.,*
   728 F.Supp.2d 546 (D.N.J.2010) ......................................................................... 13

*Diffenderfer v. Gomez-Colon,* 587 F.3d 445 (1st Cir. 2009); ....................................... 5

*Erie R. Co. v. Tompkins,*
   304 U.S. 64 (1938)................................................................................................ 6

*Ferris v. Marriott Family Restaurants, Inc.,*
   878 F. Supp. 273, 275-76 (D. Mass. 1994) ............................................................ 19

*Foley v. City of Lowell*,
   948 F.2d 10 (1st Cir. 1991) ...................................................................................... 10

*Furtado v. Bishop*,
   635 F.2d 918 (1st Cir. 1980) .................................................................................... 14

*Gasperini v. Center for Humanities, Inc.,*
   518 U.S. 415 (1996) ............................................................................................. 6, 8

*Godin v. Schenks,* 629 F.3d 79 (1st Cir. 2010) ............................................................... 6

*Grendel's Den, Inc. v. Larkin*,
   749 F.2d 945 (1st Cir. 1984) .................................................................................... 14

*Guaranty Trust Co. v. York*,
   326 U.S. 99 (1945) .................................................................................................... 9

*Hall v. Cole*,
   412 U.S. 1 (1973) .................................................................................................... 19

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................. 5

*Home Sav. Bank v. Gillam*,
   952 F.2d 1152 (9th Cir. 1991) ................................................................................. 20

*Hutchinson v. Commonwealth of Mass.,*
   2011 U.S. App. LEXIS 3139 (1st Cir., February 17, 2011) ................................... 4, 5

*In Re Compact Disc Minimum Advertised Price Antitrust Litigation, MDL Docket No.1361,*
   216 F.R.D. 197 (D. Me. 2003) ................................................................................. 13

*In re Fidelity/Micron Sec. Litigation,*
   1998 U.S. Dist. LEXIS 21698 (D. Mass. 1998) ...................................................... 11

*In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) .................................................................................... 14

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005), ................................................................................... 14

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation,*
   56 F.3d 295 (1st Cir. 1995), ..................................................................................... 10

*In re TJX Retail Security Breach Litigation*,
    584 F. Supp.2d 395 (D. Mass. 2008) ........................................................ 15, 16, 17

*In re: General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation*,
    55 F.3d 768 (3d Cir. 1995) ............................................................................. 10, 13

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) .................................................................................. 16

*Mathewson Corp. v. Allied Marine Indus., Inc.*,
    827 F.2d 850 (1st Cir. 1987) ............................................................................... 8, 9

*McGinty v. Beranger Volkswagen, Inc.*,
    633 F.2d 226 (1st Cir. 1980) .................................................................................. 6

*Mills v. Electric Auto-Lite, Co.*,
    396 U.S. 375 (1970) ............................................................................................... 19

*Mirarchi v. Porter*,
    355 F.Supp. 330 (D.Mass. 1973) ............................................................................ 3

*Nelson v. Hecker*,
    2010 U.S. Dist. LEXIS 50621 (D. Mass. 2010) ...................................................... 5

*Northern Heel Corp. v. Compo Industries, Inc.*,
    851 F.2d 456 (1988) ................................................................................................. 6

*Okmyansky v. Herbalife Int'l of America, Inc.*
    415 F.3d 154 (1st Cir. 2005) ................................................................................. 18

*OrbusNeich Medical Co., Ltd. v. Boston Scientific Corp.*,
    694 F. Supp. 2d 106 (D. Mass. 2010) ................................................................... 18

*Rendine v. Pantzer*,
    141 N.J. 292, 661 A.2d 1202 (1995) ....................................................................... 8

*Sanabria v. International Longshoremen's Assoc.*,
    597 F.2d 312 (1st Cir. 1979) ................................................................................... 6

*Schmoll v. J.S. Hovnainian & Sons, LLC.*, 394 N.J. Super. 415 (App. Div. 2007). ...................... 7

*Segal v. Gilbert Color Systems, Inc.*,
    746 F.2d 78 (1st Cir. 1984) ................................................................................... 14

*Shady Grove Orthopedic Assocs.*,
    ___U.S.___ 130 S.Ct. 1431 (2010), ......................................................................... 6

*Southerland v. Int'l Longshoremen's Union*,
   845 F.2d 796 (9th Cir. 1987) ............................................................. 20

*United States v. Metropolitan Dist. Comm'n*,
   847 F.2d 12 (1st Cir. 1988) ............................................................... 14

*Weber v. GEICO*,
   262 F.R.D. 431 (D.N.J. 2009) ............................................................. 8

*Weinberger v. Great Northern Nekoosa Corp.,* \25 F.2d 518 (1st Cir. 1991) ...................... 8, 9, 14

*Western Surety Co. v. Lums of Cranston, Inc.*,
   618 F.2d 854 (1st Cir. 1980) ............................................................... 6

## Statutes

28 U.S.C. §1652 (Rules of Decision Act) .................................................. 7, 9

28 U.S.C. §2072 (Rules Enabling Act) ...................................................... 7

N.J.S.A. § 56.8-1, *et seq.* (New Jersey Consumer Fraud Act) ............................ passim

## Rules

Rule 23(h), Fed.R.Civ.P. ................................................................ 7, 16

Rule 53, F.R.Civ.P. ....................................................................... 1

## Other Authorities

Advisory Committee  Notes, Rule 23(h), F.R.Civ.P. (2003 Amendments) ................. 15

*Managing Class Action; A Pocket Guide for Judges* (Fed. Jud. Ctr. 2009) ................ 2

Wright & Miller,
   *Fed. Prac. & Proc. Juris.* (2d ed.) ................................................ 9

## STANDARD OF REVIEW

As provided in Rule 53(f)(3) and (f)(4) , Fed.R.Civ.P., "the court must decide de novo" all challenged findings of fact and conclusions of law.  Purely procedural matters are reviewed for abuse of discretion.  Rule 53(f)(5), Fed.R.Civ.P.

## SUMMARY

The $30 million attorneys' fee award recommended in the Special Master's Findings of Fact, Conclusions of Law and Recommendations  (Dkt. 248)("Report") would have this Court bestow an average of $1,948.38 for every paralegal and attorney hour which the Report allows in this case.  This sum is not derived by applying the required lodestar methodology or any other judicially sanctioned process for the calculation of attorneys' fees, but instead invokes an *ad hoc* "mix and match" method never before seen in this Circuit, and not authorized by applicable authority.

In fact, the lodestar method is required by the applicable state fee-shifting statutes at the core of this litigation, which must be applied in diversity cases such as this one under fundamental *Erie* doctrines as implemented by the Rules of Decision Act.   Moreover, as the Report acknowledges, this is not a "common fund" settlement.   Though this conclusion automatically requires a lodestar approach, the Report appears to lean toward some undisclosed form of "percentage of fund" calculation.  Yet, it expressly refuses to value the settlement, stating only that "the best estimate of aggregate value appears somewhere between the extremes," – i.e., somewhere in a range over $300 million which divides the two sides' experts.  At the same time, the Report also rejects the simple and direct way to definitively value the settlement by waiting until after June 27, 2010, at which time the reimbursement claims, which plaintiffs anticipate will total $246 million and the defense expect will amount to approximately

$10 million, will all be submitted and this dispute (and most of the others in valuing the settlement) will disappear.   This approach has been endorsed by the Advisory Committee on the 2003 revisions of the Federal Rules, Judge Hornby's superb *Managing Class Action; A Pocket Guide for Judges* (Fed. Jud. Ctr. 2009), and numerous cases, including those surveyed by Judge Young in an opinion cited favorably throughout the Report but then expressly not applied on this key point for no justifiable reason.

The Report's refusal to wait for all the facts is particularly glaring in light of the claims picture.   We are nearly halfway through the claims period, yet claim forms received to date are less than 5% of the number required by plaintiffs' expert's predictions.   It is virtually impossible that plaintiffs' estimates will be achieved and all but certain that defendants' will be borne out.

Applicable decisions in this Circuit and other federal courts, which are seriously misapprehended throughout the Report, all require a lodestar analysis on the present facts. However, aside from the Report's allowance of 15,468 total hours, a proper lodestar analysis is never undertaken.   Even the perfunctory "lodestar crosscheck" set forth in the Report yields an inflated $15.5 million, one-half of which is an assumed multiplier of 2.0, leaving an unenhanced lodestar, even at an "assumed" $500 per hour across the board rate, of only $7,734,000. [1]   No support whatever for that extremely high "blended rate" covering the spectrum from paralegals to seasoned veterans is cited anywhere in the Report, nor is any justification provided for such a multiplier, which is inconsistent with applicable state law.   The only correct fee on the record before the Court is an unenhanced lodestar based on the Special Master's finding as to properly billable hours, without any multiplier, a number which will necessarily be below the "cross-check" of $7.7 million.

---

[1] On March 4, 2011 the Special Master issued a Supplemental Memorandum addressing one typographical and two arithmetic errors, but adhering in all other respects to the contents of the Report.  All comments and citations to the Report are understood to refer to the Report as thus modified.

As set forth in the body of argument, and catalogued in the accompanying Objection, the Report is replete with errors of law and fact . Each is sufficient to warrant rejection of the recommendations of the Report.  In combination with others that pervade the Report, they preclude the adoption of the Report's recommended fee award.

## ARGUMENT

### I.   THE APPLICABLE STATE FEE-SHIFTING STATUTES REQUIRING A LODESTAR AWARD ARE SUBSTANTIVE LAW WHICH MUST BE APPLIED IN THIS DIVERSITY CASE UNDER *ERIE*, THE RULES ENABLING ACT AND THE RULES OF DECISION ACT.

The application for, and award of, attorneys' fees cannot be separated from the essence of plaintiffs' claims or the class action complaint.  This action is in federal court based solely on diversity jurisdiction, in most instances as a result of removal from state courts.  There is no claim based on federal law.  It is, as plaintiffs have repeatedly asserted in filings and oral advocacy, a Consumer Fraud Act claim.  Indeed, the centerpiece and essential gravamen of the Second Amended Class Action complaint is the New Jersey Consumer Fraud Act.  N.J.S.A. § 56.8-1, *et seq.*  It is not only plead as Count I of the complaint, it permeates the entire complaint, which includes allegations of "ascertainable loss," a term of art applicable only to consumer fraud claims, and a claim for "treble damages" as well as attorneys' fees which is based upon the applicable fee-shifting statute.[2]

It is this claim for attorneys' fees which was presented to the Special Master for adjudication.  The Report acknowledges this fact.  (Report at 4).  Nevertheless, the Report

---

[2] While other state law claims were asserted, they were never the focus of this litigation, which has continuously and repeatedly been referred to as a Consumer Fraud claim.  See, e.g., Dkt. No. 79, passim.  Similarly, while other consumer fraud statutes are cited in the complaint, they are not the essence of the claim.  *Brytus v. Spang, & Co.*, 203 F.3d 238 at 246, n.2 (3rd Cir. 2000) (case principally driven by ERISA claim, essence not altered by inclusion of additional causes of action); *Mirarchi v. Porter,* 355 F.Supp. 330 (D.Mass. 1973) (inclusion of patent claim does not provide federal subject matter jurisdiction where gravamen of complaint is claim of fraud).  In any event, the fee-shifting provisions set forth in the other statutes are virtually identical to the New Jersey Consumer Fraud Act provisions.

refuses to apply the Consumer Fraud Act on the ground that the application for attorneys' fees was the result of an "Agreement of Settlement not a judgment after trial of the underlying cases." (Id. at 5)  This was manifest error.  As the First Circuit reiterated just two weeks ago, a litigant who obtains significant relief through a court-approved class action settlement, rather than a verdict or formal consent decree, is a "prevailing party" eligible for an award of attorney fees under a typical federal fee-shifting statute.  *Hutchinson v. Commonwealth of Mass.*, 2011 U.S. App. LEXIS 3139 (1ˢᵗ Cir., February 17, 2011).

The issue in *Hutchinson* was set forth as follows: "This appeal also requires us to consider when, short of the entry of a final judgment, 'prevailing party' status may attach."  2011 U.S. App. LEXIS at *6.  The *Hutchinson* Court held that to qualify as a prevailing party, the (1) "litigant must show that a material alteration of the parties' legal relationship has taken place as a result of the litigation" and (2) "that the alteration possesses a 'judicial imprimatur.'"  2011 U.S. App. LEXIS 3139 at *9.

There is no question that the first prong of the test has been satisfied.  The Report discusses in great detail the relief provided and change in legal relationship resulting from the Settlement.  This includes "(1) certain required warranty reimbursement payments; (2) a ten-year/120,000 mile warranty extension; (3) a reduction of owner's future repair costs; and (4) a $25 oil change discount."  (Report at 9).

The second prong has been satisfied as well.  The First Circuit in *Hutchinson* delineated three indicia of the required "judicial imprimatur":  (1) Was the change in legal relationship between the parties "court-ordered"; (2) Was there "judicial approval of the relief vis-à-vis the merits of the case"; and (3) Does there exist continuing "judicial oversight and ability to enforce the obligations imposed on the parties."  2011 U.S. App. LEXIS 3139 at 10.  The answer in this

case to each question is an unequivocal "yes."  The first and second requirements are met since "under the Civil Rules, a Court must approve a settlement in a class action and is directed to do so only if it finds the terms of the settlement "fair, reasonable and adequate. Fed.R.Civ.P. 23(e)(2)."  2011 U.S. App. LEXIS 3199 at 10.  As for the third prong, the Settlement Agreement here requires that the "Final Order and Judgment shall reserve to the Court exclusive and continuing jurisdiction over this action, the Parties, the Settlement Class Members, the Special Master, the Oil Sludge Administrator, and this Settlement Agreement for purposes of administering, supervising, construing and enforcing the Settlement Agreement."  (Dkt No. 160, § V1.A.1)

*Hutchinson* is but the latest authority in the Supreme Court, this Circuit, and this Court, entitling class action plaintiffs to an award of attorneys' fees as "prevailing parties" within the meaning of the applicable fee-shift statutes based on a court-approved settlement and resulting judgment.  *See, Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 453 (1st Cir. 2009); *Aronov v. Napolitano*, 562 F.3d 84, 88-89 (1st Cir. 2009); *Nelson v. Hecker*, 2010 U.S. Dist. LEXIS 50621 (D. Mass. 2010) (Tauro, J.).  The refusal to apply the fee-shift provisions of the New Jersey Consumer Fraud Act, was not only a misapprehension of the "prevailing party" concept, but violated basic tenets of federalism, the *Erie* doctrine, the Rules Enabling Act and the Rules of Decision Act.

The Report holds without discussion that "where a fee award is a result of the parties' private agreement, federal law governs the decision" (Report at 4).  This is error.  Under *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 259, n. 31 (1975), state law governs the determination of attorneys' fees in a federal diversity case based on substantive state law claims.

In accord with *Alyeska*, the First Circuit has so held in numerous cases. *Godin v. Schenks,* 629 F.3d 79, nn. 10, 15 (1ˢᵗ Cir. 2010) (award of attorneys' fees is substantive for purposes of *Erie* analysis); *Northern Heel Corp. v. Compo Industries, Inc.,* 851 F.2d 456, 475 (1988) ("in diversity cases, 'state rather than federal law governs the issue of the awarding of attorneys' fees'"); *Blanchette v. Cataldo*, 734 F.2d 869, 878 (1st Cir. 1984) ("where an award of fees or costs rests on state law, state law also controls the method of calculating the size of the award"); *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 232 (1st Cir. 1980) (similar); *Western Surety Co. v. Lums of Cranston, Inc*., 618 F.2d 854, 855 (1st Cir. 1980) ("because jurisdiction in this case rested upon diversity of citizenship, state law would govern an award of attorney's fees"); *Sanabria v. International Longshoremen's Assoc*., 597 F.2d 312, 313 (1st Cir. 1979) ("The applicability of state statutes awarding attorney's fees and other expenses in diversity cases was established in *Cohen v. Beneficial Finance Corp*., 337 U.S. 541 (1949).")

The fact that the application before this Court was made pursuant to Fed.R.Civ.P. 23(h) does not warrant a different result.  As a federal court sitting in diversity, this Court is bound by the *Erie* doctrine, which requires that this Court "apply state substantive law and federal procedural law" to the issues presented. *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415 (1996); see *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Where a Federal Rule of Civil Procedure applies, the road map recently laid out by the Supreme Court in *Shady Grove Orthopedic Assocs.,*___U.S.___ 130 S.Ct. 1431 (2010), guides the determination of whether a particular issue is governed by federal or state law.  Under *Shady Grove, supra,* the inquiry must begin with an articulation of the issue presented, here "what is the substantive legal basis for an attorney fee award and the appropriate methodology for the calculation of a reasonable attorneys' fee?"  Even if the applicable Federal Rule answers the question, the federal court

sitting in diversity must nevertheless analyze the Rule to insure that it complies with the Federal

Enabling Act, *i.e.*, that it does not "abridge, enlarge or modify any substantive right." (28 U.S.C.

§2072).  At all times, the district court also remains subject to *Erie, supra* and the Rules of

Decision Act, 28 U.S.C. §1652, which prohibit federal courts from generating substantive law in

diversity actions.

Rule 23(h), Fed.R.Civ.P., prescribes the procedure that must be followed in order to

obtain a "reasonable attorneys' fee," but does not provide a methodology for the calculation of

the fee, and does not purport even to define what constitutes a "reasonable fee."  The Advisory

Committee Notes expressly state that the Rule "does not undertake to create new grounds for an

award of attorneys' fees," nor does it "attempt to resolve the question whether the lodestar or

percentage approach should be viewed as preferable."  It does not supplant state substantive law.

The New Jersey Consumer Fraud Act mandates "reasonable" attorneys' fees to a

prevailing party.  Under New Jersey law, settling plaintiffs in Consumer Fraud Act cases are

considered prevailing parties entitled to recover attorneys' fees.  *Schmoll v. J.S. Hovnanian &*

*Sons, LLC.*, 394 N.J. Super. 415, 927 A.2d 146 (App. Div. 2007).  The New Jersey Supreme

Court applying this provision has held that in order to be "reasonable" the award must be based

on the Court's determination of a reasonable number of hours expended by counsel at a

reasonable rate.  Had the claims here remained in New Jersey state court there is no doubt that

the award of attorneys' fees would have been guided by the lodestar analysis. *Rendine v.*

*Pantzer,* 141 N.J. 292, 661 A.2d 1202 (1995).

Federalism doctrines at the heart of the Constitution require that in a diversity case the

substantive result achieved by a party in federal court be the same as it would be if the case had

remained in state court.  *Gasperini, supra.*  For example, in *Weber v. GEICO*, 262 F.R.D. 431

(D.N.J. 2009), a class action strikingly similar to this one, the district court turned to the New

Jersey CFA to support its election to proceed according to the lodestar method. Judge

Simandle's reasoning applies with full force here:

> First, plaintiffs' claims are brought pursuant to, *inter alia*, New Jersey's Consumer
> Fraud Act, which contains a "statutory fee shifting provision." *Id.; see* N.J. Stat.
> Ann. 56:8-19 ("In all actions under this section . . . the Court shall also award
> reasonable attorneys' fees, filing fees and reasonable costs of suit") . . .
>
> Moreover, the settlement agreement at issue herein does not contemplate a
> common fund that would be depleted depending upon the size of the fee award.
> *See In re Cendant*, 264 F.3d at 256 . . . [The settlement] benefits are not readily
> subject to precise calculation such that a "percentage of the total recovery," *In re
> Cendant*, 264 F.3d at 256, could be discerned under the percentage-of-recovery
> approach . . . The lodestar method will be employed in reviewing the fee
> application herein.

262 F.R.D. at 449-50.

This Court, sitting in diversity, cannot simply ignore or push aside state substantive law,

particularly when dealing with a statute, which is in effect the voice of the legislature. Where, as

here, the underlying action is based on a state fee-shifting statute, the substantive matter of

attorneys' fees cannot be deemed a matter of "federal law." *Brytus v. Spang & Co., supra*, 203

F.3d at 247 (in a statutory fee-shift case, creation of a common fund does not entitle class

counsel to a percentage of fund award). The Report cites *Mathewson Corp. v. Allied Marine

Indus., Inc.,* 827 F.2d 850, 83, n.3 (1st Cir. 1987), and *Weinberger v. Great Northern Nekoosa

Corp.,* 925 F.2d 518, 525 (1st Cir. 1991), for the proposition that federal law governs the

calculation of attorneys' fees in the context of settlement a state-based claim. (Report at 5). The

citation is misplaced. *Mathewson* did not present the issue of attorneys' fees, and in *Weinberger*

the parties stipulated to application of federal law. In both cases the potential application of

federal law was raised as a question in a *dicta* discussion, but not resolved. Certainly neither one

of these cases held that in a diversity case federal common law can supplant a state statute.

This is particularly true because of the Report's reliance on the "equitable powers given to federal courts to award attorneys fees," as a substitute for a state statute.  The suggestion that equity can trump a state substantive law was soundly rejected by the Supreme Court in *Guaranty Trust Co. v. York*, 326 U.S. 99, 111 (1945) ("to make an exception to *Erie R. Co. v. Tompkins* on the equity side of a federal court is to reject the considerations of policy which, after long travail, led to that decision.")  See *Wright & Miller*, 19 *Fed. Prac. & Proc. Juris.* § 4513 (2d ed.) ("in the typical diversity of citizenship case, attorney's fees should be awarded under the equitable common-fund doctrine only if authorized under state law").  What is more, the exercise of the court's equitable powers was not warranted here because the Settlement Agreement did not create a fund out of which the attorneys' fees were to be paid or calculated, rendering inapplicable the rationale underlying the common-fund doctrine.  *Thirteen Appeals,* at 305.  To the contrary, the Settlement Agreement specifically provided that any award of attorneys' fees would not be "derived from the benefits afforded to the benefit class."

Because the award recommended in the Report fails to apply state law, and thus differs substantially from the award of attorney's fees authorized by statute, it violates the Constitution, the Rules of Decision Act and the *Erie* doctrine, all keystones in the edifice of federalism.  The Report's failure to apply, or even acknowledge, these fundamental precepts, cannot be sustained.

## II.  THE SPECIAL MASTER'S "MIX AND MATCH" METHOD FOR CALCULATING A REASONABLE ATTORNEYS' FEE CONTRAVENES EXISTING LAW.

The Report concludes that 15,468 hours of attorney and paralegal time were properly billable to this case, taking an exemplary and efficient approach squarely in accord with the governing authorities.  (Report at 17-18, citing *Foley v. City of Lowell*, 948 F.2d 10, 20 (1st Cir. 1991).  However, the recommended $30,000,000 attorney fee award thus equates to a "blended

rate" of $1,938.48 per hour across the board, including each of the associates, paralegals and support personnel whose billings make up nearly half plaintiffs' counsel's total hours. The award thus clearly fails a proper "lodestar crosscheck," which is intended "to assure that the precise percentage award does not create an unreasonable hourly rate." *In re: General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 822 (3d Cir. 1995).

The pervasive flaw in the Report's approach, from which numerous additional errors flow, is that the fee recommendation was not derived by use of the lodestar method required in this fee-shifting case, nor was it derived from the use of the percentage of the fund (POF) method, or indeed, by any established methodology or doctrine. It instead purports to embody what is termed a "mix and match" approach (Report at 17) which contravenes existing law, fails to identify exactly what elements are being "mixed and matched," and fails to justify how they are weighted to arrive at a $30 million fee under any applicable legal method.

The Report cites *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation,* 56 F.3d 295, 301-02 (1st Cir. 1995), as supporting its "mix and match" approach to fee award methods. (Report at 7). In fact, the phrase "mix and match" as used in *Thirteen Appeals* applies not to valuation methodologies but to available procedural mechanisms. Indeed, the language appears in a paragraph captioned "Lack of an evidentiary hearing."

Certainly, nothing in *Thirteen Appeals*, or any other decision of which we are aware, supports the use of the Special Master's "mix and match" fee methodology, which does not determine a reasonable attorneys' fee through one of the two judicially sanctioned methodologies – lodestar (mandated in this case) or POF. *In re Thirteen Appeals* held that (1) in cases involving fee-shifting statutes, "we have directed district courts, for the most part, to compute

-10-

fees by using the time-and-rate-based lodestar method," and (2) in cases involving a common

fund, "the district court . . . may calculate counsel fees **either** on a percentage of the fund basis

or by fashioning a lodestar."  56 F.3d at 305, 307, 308 (emphasis added).  *In re Thirteen Appeals*

permits district courts to use "a combination of both methods when appropriate" – i.e., utilizing

one as a cross-check against the other, to ensure that the fee calculated by the method used is

reasonable.  *Id.* at 308.  It does not, however, permit district courts to decline to utilize either of

these approaches as the principal approach, and calculate fees on an *ad hoc* "mix and match"

approach picking and choosing selective incomplete portions of each.  *See, e.g., In re*

*Fidelity/Micron Sec. Litigation,* 1998 U.S. Dist. LEXIS 21698 at *6-7 (D. Mass. 1998) ("[A]

court approving a fee award should determine what sort of action the court is adjudicating and

then primarily rely on the corresponding method of awarding fees, using the alternative method

to double check the reasonableness of the fee") (*quoting Conley v. Sears, Roebuck & Co.,* 222

B.R. 181, 187 (D. Mass. 1998).  The "mix and match" used in the Report is not authorized in this

Circuit and must be rejected.

  As discussed below, the Report specifically states that it is not valuing the Settlement or

resolving what it acknowledges is a more than $336 million disagreement as to that. (Report at

10)  Instead, the Report states that "[r]ather, the Special Master is taking guidance from those

experts in his overall effort to determine what a reasonable fee would be, considering the

potential value of the benefits to the Settlement Class Members only as one among many other

elements."  (*Id.* at 12)  In addition, according to the Report, other significant and important

ingredients in the "mix" are "the time and labor required; the novelty and difficulty of the

questions and issues involved; the skill requisite to perform the legal services; customary rates

for the services; the amounts involved and the results obtained; the experience, reputation, and

ability of the attorneys; and awards in similar cases" (*Ibid*.)  As to the "time and labor required," i.e. the hours reasonably expended on the case, the Report makes a clear finding, allowing 15,486 total hours as reasonably expended.  However, not one of the other five listed elements, which are referred to as "important and significant," is even mentioned again in the Report.  It is again impossible to determine, short of guessing, exactly how, if at all, the fee recommendation was influenced by any of these factors.  In any event, this Court can judicially notice that the "novelty and difficulty of the issues" in this case was ordinary at best, particularly by MDL standards.  Of the two dozen or so depositions, all but 11 were of named plaintiffs.  The case settled before determination of defendants' motion to dismiss, and before class certification was briefed or argued.  The only issue of law decided by the Court, the applicability of the Hague Evidence Convention, was neither novel nor difficult, as the decision rested on the Supremacy Clause of the U.S. Constitution and was so clear that the Court decided it from the bench and without written opinion.  Riding airplanes and employing translators are incidents of all significant international litigation.  None of these factors go beyond those subsumed in the lodestar.

Judge Hornby, commenting on a far less nebulous fee petition, recently observed that "it seems to me that lawyers are obliged first to explain to the court how they came up with the numbers in their fee request, *i.e.*, choose one method and follow it through, then if necessary show that the alternate method would support it. Choosing a number they are happy with, then justifying it on both approaches, is neither a logical method of determining fees nor a device that facilitates judicial review." *In Re Compact Disc Minimum Advertised Price Antitrust Litigation, MDL Docket No.1361,* 216 F.R.D. 197, 216 n. 44 (D. Me. 2003).  We respectfully submit that no less should be expected of courts.

The judicial obligation to explain and apply the correct methodology looms especially large on the present record, as the parties' valuation placed on the benefits conferred upon the class are so widely disparate.  Thus, the applicable findings and conclusions in the Report in fact all point to the use of a lodestar calculation.  Most basically, the Report disclaims any finding as to the value of the settlement – ". . . on the Fees Motion *the Special Master is not making a decision as to what the value of each benefit should be; nor is he valuing the settlement*." (*Id.* at 12) (Emphasis added).  However, without that finding, a percentage of fund valuation is by definition impossible.[3]  See, e.g., *In re: General Motors Corporation Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 822 (3d Cir.1995)(". . .[T]he district court on remand needs to make some reasonable assessment of the settlement's value and determine the precise percentage represented by the attorneys' fees");  *Bussie v. Allmerica Financial Corp.,* 1999 U.S. Dist. LEXIS 7793 (D. Mass. 1999) ("The first step under the POF method requires determining the actual monetary value conferred to the class by the settlement"); *Duhaime,* 989 F.Supp. at 377 (same); *Dewey v. Volkswagen of America, Inc.,* 728 F. Supp.2d  546, 589-90 (D.N.J. 2010) (the POF method "requires the Court to determine a precise valuation of the settlement on which to base its award").

Likewise, the "common benefit" doctrine which the Special Master's report finds analogous to the situation in this case, albeit erroneously, is generally implemented through a lodestar award.  Point IV, infra.

In fact, the First Circuit has held that the fundamental guiding principles espoused in the Special Master's report presumptively point to the lodestar approach:

> 'The difficulty for both fee-setting and fee-reviewing courts, in a field so
> susceptible to arbitrariness, is the achievement of decision-making that is fair to

---

[3] Not surprisingly, the Report does not even attempt to arrive at an appropriate percentage of the fund in determining its fee recommendation.

the parties and understandable to the community at large yet not unnecessarily burdensome to the courts themselves.' *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984); see also *United States v. Metropolitan Dist. Comm'n,* 847 F.2d 12, 15-16 (1st Cir. 1988). ***If an alternative method is not expressly dictated by applicable law, we have customarily found it best to calculate fees by means of the time-and-rate method known as the lodestar.*** See, e.g., *Metropolitan Dist. Comm'n,* 847 F.2d at 15; *Segal v. Gilbert Color Systems, Inc.,* 746 F.2d 78, 85-86 (1st Cir. 1984); [*Codex Corp. v.* ]*Milgo* [*Electronic Corp.,* 717 F.2d 622,] 632 [(1st Cir. 1983]; *Furtado*[*v. Bishop*], 635 F.2d [918,] 919-20 [(1st Cir. 1980)].

*Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d at 526 (emphasis added).

Unfortunately, the Report delves no deeper than *Larkin v. Grendel's Den*, (Report at 8), and thus

overlooks the unbroken line of First Circuit cases presumptively requiring lodestar analysis

where available, which effectively mandate this approach on the facts of this case.

       As logic would suggest, where the only alternative is ruled out, lodestar analysis is all

that is left, as explained in a key authority which is incompletely quoted in the Report:

       The lodestar method is more typically applied in statutory fee-shifting cases
       because it allows courts to 'reward counsel for undertaking socially beneficial
       litigation in cases where the expected relief has a small enough monetary value
       that a percentage-of-recovery method would provide inadequate compensation' ***or
       in cases where the nature of the recovery does not allow the determination of
       the settlement's value required for application of the percentage-of-recovery
       method***.

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005), citing *In Re Prudential Ins.*

*Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998). The Report's

incomplete quotation of the quoted sentence from *Rite-Aid* (Report at 6), omits the language,

emphasized above, which applies directly to this case. As with the Report's other incomplete

readings of the governing authority, this inevitably led to error.

       The Report's most overt misapplication (or in this case non-application) of authority

involves Judge Young's well-regarded survey of applicable doctrines, policies and procedures in

*In re TJX Retail Security Breach Litigation,* 584 F. Supp.2d 395 (D. Mass. 2008), which the

-14-

Report cites no fewer than eleven times – far more than any other authority.  (Report at  8, 13,

14, 15, 16, 18).  In fact, the Special Master alerted both sides to *TJX* in June 2010, months before

the Agreement of Settlement was signed.  Defendants heavily relied on *TJX* and related

precedents in this District in support of their request to defer the fee decision, and any valuation

of the settlement, until after the deadline for submission of reimbursement claims, June 27, 2011.

As Defendants noted, this would completely obviate more than $200 million of dispute between

the parties' experts on that component of the settlement and allow the remainder of the elements

of valuation to be more precisely recalculated even according to methodologies and formulas

developed by plaintiffs' expert.  (Report at 6-11 and Exhibits cited.)  The defense quoted Judge

Young's approving discussion of Judge O'Toole's adoption of exactly such a procedure in

*Duhaime, supra,* based upon the principle that settlements are to be evaluated wherever possible

not by expert projections, but as established facts, particularly where eligibility for a settlement

benefit depends upon a claims process.[4]  In this respect, *TJX* is in full accord with a wave of

developing jurisprudence in which Judge O'Toole's 1997 decision in *Duhaime* had a pioneering

role.  Indeed, the Advisory Committee Notes to the 2003 Federal Rule Amendments which

brought Rule 23(h) into being are fully in accord with valuing "claims made" settlement in terms

of claims actually made, and pointedly encourage courts to avoid speculation on this subject, no

matter how expert, in favor of waiting for facts:

> In many instances, the court may need to proceed with care in assessing the value
> conferred on class members. . . . In some cases, it may be appropriate to defer
> some portion of the fee award until actual payouts to class members are known.

---

[4] The case for deferral is far stronger in this case than in *TJX* – while in *TJX* there was no dispute as to the amount of benefits that were eligible to be claimed, and the issue was one of how many class members would submit a claim. Here, the magnitude of potential benefits (*i.e.,* eligible warranty reimbursement claims) is hotly disputed and accounts for the majority of the difference in the parties' respective experts' valuation of the settlement.

Here, as of February 6, 2011, less than 6,330 reimbursement claim forms had been received by the Settlement Administrator.  (Dkt. No. 244-1) As of this week, nearly halfway through the claims period, the total has reached 7,902.  (Declaration of Daniel V. Gsovski, Esq. "Gsovski Dec.", Exh. A) Even if every one were valid, these forms constitute less than one-tenth the number needed to validate plaintiffs' estimates, which would require the submission of nearly 150,000 valid claims by June 27, 2011.

Yet, the Report flatly refuses to apply *TJX* for Judge Young's central proposition that settlement value must depend upon actual benefits paid, from which the need to wait "to proceed with care" arises, noting that Judge Young announced but did not apply it in *TJX* because this possibility had not been disclosed prior to the Fairness Hearing.  (Report at 10)  The Report, inexplicably, finds it "equally unfair" to apply *TJX* to this 2011 fee proceeding, notwithstanding the presence of *TJX* on the books since 2008, because it came down after this litigation was commenced in 2006.  In effect, the Report stands for the insupportable notion that the law applicable to any case is frozen in time as of the date that the complaint is filed.

On this basis, the Report proclaims that the settlement is to be valued by its "potential" rather than "actual" benefits to class members, citing *Masters v. Wilhelmina Model Agency, Inc*., 473 F.3d 423, 437 (2d Cir. 2007) (Report at 12) in ostensible support of this proposition.  In the first place *Wilhelmina*, like TJX, was handed down after this litigation commenced, thus rendering it inapplicable under the Report's "TJX rule."  More fundamentally, *Wilhelmina*  is completely distinguishable from this case.  As Judge Young pointed out in *TJX,* in *Wilhelmina* "there was an actual common fund - whether created by settlement or judgment of the court - to which the percentage-of-fund method of determining attorneys' fees was applied."  *TJX*, 584 F. Supp. 2d at 403.

-16-

The short of the matter is that *TJX* is compellingly persuasive both on the valuation and deferral issues, as are the 2003 Advisory Committee Notes, and Judge O'Toole's 1997 decision in *Duhaime*. The Report offers no valid reason for casting it aside. The applicable federal cases, prominent among them those misapplied in the Report, compel a lodestar valuation, and mandate that even if the POF method was appropriate (in this case, it is not), then this Court must determine the precise value of the settlement to the Class.  The governing authorities further dictate that if a POF method is used and the Court cannot determine the value of the settlement now, given the unverifiable and unreliable assumptions proffered by plaintiffs' expert, which are now proving to be wrong based upon the claims filed to date, the Court should await the receipt of claims in late June in order to proceed.  The determination of the value of the settlement to the Class is an essential prerequisite to the use of any calculation method other than lodestar.[5]

As the foregoing precedents declare, district courts not using lodestar as the primary calculation method cannot simply refrain from determining the value of the settlement, avoid making critical fact findings because of a "battle of the experts," and pick and choose an aggregate of plaintiffs' experts' "lower" (albeit still grossly inflated and unreliable) alternative values as a "guide."  (Report at 12).

### III. THE REPORT MISCONSTRUED AND MISAPPLIED THE SETTLEMENT AGREEMENT.

The Report finds that state fee-shifting statutes, and their lodestar methodology, are inapplicable because authority to award fees is provided in the Settlement Agreement. (Report at 5).  In doing so, it misconstrued the plain language of the Settlement Agreement which permitted

---

[5] While we submit that a lodestar multiplier would be inappropriate, a precise determination of the settlement value is also needed to evaluate the propriety of any multiplier of a lodestar amount.

plaintiffs' counsel to apply to the Court for fees under the express proviso that "the parties have not agreed to any choice, selection or waiver of state or federal law to be applied…" (Dkt. No. 160 at §§ VI.A.2 and VI.C.1 and 2).  The Settlement Agreement did not establish any contractual right to attorney fees, and did not confer any right upon the Special Master to supplant the applicable state law that provided the substantive basis for the request.

The Report compounds the erroneous construction of the agreement by ignoring a material provision, that "Class Counsel fees and expenses . . . shall not . . . be derived from benefits afforded to settlement Class Members"  (p. 5-6)  (Dkt. No. 160 at VI.C.2 at 20), which precludes a percentage of fund calculation.  This is flatly contrary to the firmly established doctrine that "a contract must be read as a whole." *Okmyansky v. Herbalife Int'l of America, Inc.,* 415 F.3d 154, 160 (1st Cir. 2005). *See also Crowe v. Bolduc,* 365 F.3d 86, 97 (1st Cir. 2004) ("A contract ordinarily should be interpreted so as to give force to all of its provisions.")  This Court has often applied this cardinal principle. E.g., *OrbusNeich Medical Co., Ltd. v. Boston Scientific Corp.,* 694 F. Supp. 2d 106, 114 (D. Mass. 2010) (Tauro, J.) ("It is a canon in the interpretation of contracts that every word and phrase must be presumed to have been employed with a purpose, and must be given a meaning and effect whenever reasonably possible.") quoting *Clark v. State Street Trust Co.*, 270 Mass. 140, 155 (1930).  *See also Demers Bros. Trucking, Inc. v. Certain Underwriters at Lloyd's London,* 600 F.Supp. 2d 265, 278 (D. Mass. 2009) (Tauro, J.); *Ferris v. Marriott Family Restaurants, Inc.,* 878 F. Supp. 273, 275-76 (D. Mass. 1994) (Tauro, J.).

## IV. THIS IS NOT A "COMMON BENEFIT" SETTLEMENT.  EVEN IF IT WERE, THE LODESTAR METHOD MUST BE APPLIED.

The Report correctly finds that the settlement did not create any "fund" (Report at 9-10), but then describes the bulk of the settlement benefits as fitting "more into what is sometimes

phrased as a 'common benefit.' *Mills v. Electric Auto-Lite, Co.,* 396 U.S. 375, 393-394 (1970)."

(Report at 10).  The apparent conclusion is that this forecloses application of lodestar

methodology.  This profoundly misreads *Mills* and the common benefit doctrine, which are

clearly inapplicable on the facts of this case.  In any event, its implicit assumption that

percentage method applies to "common benefit" cases is in error.

   *Mills v. Electric Auto-Lite* and its progeny are inapposite, as this case does not resemble

the "common benefit" or "substantial benefit" model.  *Mills* was a derivative suit by minority

shareholders to set aside a merger.  Finding that the merger violated securities laws, the Supreme

Court remanded and specified that the plaintiffs should be awarded attorneys' fees, even absent

statutory authority, because the litigation conferred "a substantial benefit on the members of an

ascertainable class, and … the court's jurisdiction of the subject matter of the suit makes possible

an award that will operate to spread the costs proportionately among them." *Id*. at 393–94.  This

allowed a fee award against the defendant corporation as the *alter ego* of the class of

shareholders benefited by the litigation.  The facts in *Mills* thus reflect a situation poles apart

from that presented here.  *Hall v. Cole*, 412 U.S. 1 (1973), applied the *Mills* principles in a

"union democracy" context and assessed fees against a labor union that expelled the plaintiff for

violating an unconstitutional union rule.  The Court held that the plaintiff "necessarily rendered a

substantial service to his union . . ." *Id*. at 8.  Extracting fees from the union treasury "simply

shifts the costs of litigation to 'the class that has benefited from them and that would have had to

pay them had it brought the suit.'" *Id*. at 9 (quoting *Mills*, 396 U.S. at 397).

   The key component of the "common benefit" doctrine is that the defendant is the *alter

ego* of the judgment or settlement beneficiaries.  Accordingly, where "the party ordered to pay

fees is not a beneficiary of the court's judgment, the common benefit exception does not apply."

-19-

*Home Sav. Bank v. Gillam*, 952 F.2d 1152, 1163 (9th Cir. 1991). Accord, *Johnson v. HUD*, 939

F.2d 586, 590 (8th Cir. 1991) (denying award – "defendants are neither the alter ego nor the

representative of the benefited class"); *Oster v. Bowen*, 682 F. Supp. 853, 857 (E.D. Va.)

("Plaintiff has demonstrated no financial relationship whatsoever between [defendant] and the

physicians who may benefit from the new procedures."), *appeal dismissed*, 859 F.2d 150 (4th

Cir. 1988).

Finally, even where a "common benefit" fee can be awarded against a defendant, the

percentage of fund method is disfavored and a lodestar style analysis is preferred. *Rosenbaum v.*

*MacAllister*, 64 F.3d 1439, 1447 (10th Cir. 1995) (holding that a "percentage of the fund"

approach is not appropriate in substantial benefit cases, and that the *Johnson* factors must be

considered); *Southerland v. Int'l Longshoremen's Union*, 845 F.2d 796, 800–01 (9th Cir. 1987).

## CONCLUSION

For the reasons stated, the objections to the Report should be allowed, and the Report

rejected, except with respect to the finding as to allowable lodestar hours.  The Court should

make an appropriate lodestar award, based on the Special Master's allowance of 15,468

compensable hours, which is not challenged, at a reasonable "blended rate," without multiplier.

Dated: March 4, 2011                    Respectfully submitted,

                                        VOLKSWAGEN GROUP OF AMERICA, INC.
                                        VOLKSWAGEN AG
                                        AUDI AG
                                        by their Attorneys

                                        /s/ David A. Barry
                                        David A. Barry, BBO No. 031520
                                        Andrew R. Levin, BBO No. 631338
                                        Sugarman, Rogers, Barshak & Cohen, P.C.
                                        101 Merrimac Street, 9th Floor
                                        Boston, MA  02114-4737
                                        (617) 227-3030
                                        barry@srbc.com

Jeffrey L. Chase *(pro hac vice)*
Daniel V. Gsovski *(pro hac vice)*
Michael B. Gallub *(pro hac vice)*
Herzfeld & Rubin, P.C.
125 Broad Street
New York, NY  10004
 (212) 471-8500
(212) 344-3333 (fax)
jchase@herzfeld-rubin.com
dgsovski@herzfeld-rubin.com
mgallub@herzfeld-rubin.com

## CERTIFICATE OF SERVICE

I, Natalie Flores Campbell, hereby certify that this document, filed through the ECF system, will be sent electronically on March 4, 2011 to the registered participants as identified on the Notice of Electronic Filing (NEF) and to the following recipients:

Kirk D. Tresemer
IRWIN & BOESEN, P.C.
4100 E. Mississippi Ave., Ste. 1900
Denver, CO 80246
(303) 999-9999
(303) 320-1915 (fax)
Email: ktresemer@coloradolawyers.com

Peter J. McNulty
McNULTY LAW FIRM
827 Moraga Drive
Los Angeles, CA 90049
(310) 471-2707
(310) 472-7014 (fax)
Email: peter@mcnultylaw.com

Russell D. Henkin
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000
(215) 875-4604 (fax)
Email: rhenkin@bm.net

Hon. Allan van Gestel (via email attachment)
JAMS
One Beacon Street, Suite 2300
Boston, MA 02108
(617) 228-0200
(617) 228-0222 (fax)
Email: allanvangestel@aol.com
Email: pgelinas@jamsadr.com


  _/s/ Natalie Flores Campbell_____
Natalie Flores Campbell