## THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **In re Volkswagen and Audi** | : **MDL Docket No. 1:07-md-** |
| | : **01790** |
| **Warranty Extension Litigation** | : |
| | : |
| ——————————————— | : |
| | : |
| **This Document Relates to All Cases** | : |
| ——————————————— | : |

### PLAINTIFFS' RESPONSE TO CLASS MEMBER ASHLEY RILEY BIRKELAND'S OBJECTION TO FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION OF THE SPECIAL MASTER RELATING TO CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

## I.     INTRODUCTION

Attorney John J. Pentz[1], on behalf of Ashley Riley Birkeland, has filed an

Objection (Doc #251) (the "Objection") to Special Master Honorable Allan van Gestel's

Findings of Fact, Conclusions of Law and Recommendations of the Special Master

Relating to Class Plaintiffs' Motion for Attorneys' Fees and Costs (Doc #248) (the

"Special Master's Findings").[2]

Mr. Pentz is a "professional"/"serial" objector who has filed meritless objections

in class action after class action.  Mr. Pentz generally appears and files objections just

prior to the Final Fairness Hearing.  He then files a notice of appeal to hold up

---

[1] Mr. Pentz has previously filed an Objection to Motion for Attorneys' Fees (Doc #205) on behalf of Ms. Birkeland.  Plaintiffs discussed Mr. Pentz' status as an unsuccessful "professional objector" in Plaintiffs' Response to Class Member Objections to Motion for Attorneys' Fees and Costs (Doc #238) at 3-6.

[2] Pentz does not dispute that this is a common fund case or that the percentage of fund method for calculating fees is appropriate.  Pentz does claim that fees should be based on claims actually made rather than on the value of the benefit to the class created by the settlement.

implementation of an approved settlement or payment of attorneys' fees.  Mr. Pentz then

attempts to negotiate a "fee" in exchange for dismissal of his appeal (*see* 5/25/07 Letter

from Pentz to Lipuma Class Counsel offering to drop objection in exchange for

$50,500.00, attached at end of Exhibit 1).

Mr. Pentz has been routinely criticized by judges.  *See, e.g., In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 386 (D. Md. 2006) ("Pentz is a professional and generally unsuccessful objector . . . In summary, the Pentz/Tsai objection was not well reasoned and was not helpful."); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL 1361, 2003 WL 22417252, at *2 n.3 (D. Me. Oct. 7, 2003) (District Judge Brock Hornby called Pentz a "repeat objector" who filed a "groundless objection").  It is Class Counsel's position herein that Mr. Pentz's objections lack merit and should be overruled.  Mr. Pentz's typical modus operandi is more fully discussed in Exhibit 1; specifically pages 6-10.

In this case, Mr. Pentz incorrectly asserts that a Guide published by the Federal Judicial Center mandates that attorneys' fees should be based on claims actually made.  It does not.  In fact, the Guide is contrary to the clear weight of authority that, in a percentage of the fund ("POF") calculation, fees should be based upon the potential value or benefit of the fund and not on claims actually made by Class Members.  The United States Supreme Court recognized that fees should be based on the potential benefits to the class in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) (fees properly awarded from total amount of class action judgment, including unclaimed portion of the judgment).

The Second Circuit has followed the *Boeing* principle in a recent, persuasive opinion directly rejecting a claims-made approach in common fund cases. *Masters v.*

*Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007).  The very term

"percentage of the fund" properly refers to the fund created by the efforts of Class

Counsel and not to claims actually made by Class Members. *Id.*

The Ninth and Eleventh Circuits have reached the same conclusion (as have many

district court decisions). *Williams v. MGM-Pathe Communications Co.,* 129 F.3d 1026,

1027 (9th Cir. 1997); *Waters v. International Precious Metals Corp.,* 190 F.3d 1291,

1295-97 (11th Cir. 1999).  See Section IIA, *infra.*

The policy reason for basing a POF fee award on the potential benefit available to

Class Members – that is, the value created by Class Counsel – is clear.  The obligation of

Class Counsel is to negotiate a settlement which is substantively fair and in the best

interest of the Class and which satisfies procedural notice requirements.  Class Counsel

clearly has done so in this case.  Mr. Pentz does not challenge the substantive fairness of

the settlement or the procedure for notifying Class Members.

Further, a strong disincentive clearly exists in a POF common fund case if Class

Counsel is required to conduct expensive and labor-intensive class litigation without

knowing the number of claims that Class Members ultimately may submit.  Where a class

settlement is substantively and procedurally fair, Class Counsel should not be penalized

for their efforts based upon the vagaries of the number of claims that later are actually

made.  Inevitably, basing POF attorneys' fees on claims actually made would provide a

powerful disincentive to experienced class counsel who must be able to commit many

thousands of hours of time and incur expenses in the hundreds of thousands or millions of

dollars in the prosecution of complex common fund class action litigation without any

guarantee of a recovery.

Mr. Pentz incorrectly suggests that the Special Master's Findings improperly followed a "mix and match" approach which did not properly value the potential benefit available to Class Members.  However, this Circuit provides trial courts with broad discretion in determining which approach (POF or lodestar) best suits an individual case. Given such broad discretion, the trial court <u>may use a combination of both methods when appropriate</u>. *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig*,. 56 F.3d 295, 308 (1st Cir. 1995).

It is obvious that the Special Master carefully considered the valuation report of Plaintiffs' expert, Kirk Kleckner. (Special Master's Findings, Doc. #248, at 8-12 & n.10) ("In his Rebuttal, Kleckner revised his opinions in five different ways.  The Special Master focused primarily on those ways that produced lower estimates of value, and did not include the $39,250,000 for fees and costs.  This aggregates a value amount of $222,932,131.")  The Special Master fully considered all of the proffered evidence relating to valuation, including Defendants' and Plaintiffs' expert reports.  The Special Master also conducted a full hearing on February 14, 2011 giving all counsel and any objectors the opportunity to be heard.  This record fully supports a fee award of $30 million dollars.

Mr. Pentz also incorrectly asserts that *In re TJX Cos. Retail Security Breach Litig*., 584 F. Supp. 2d 395 (D. Mass. 2008) ("*TJX"*) should control the determination of attorneys' fees in this case.  Mr. Pentz focuses on only one aspect of the Special Master's discussion of *TJX* and does not persuasively challenge the Special Master's Finding that "the major concerns expressed in [*TJX*] . . . do not exist here." (Special Master's Findings, Doc. #248, at 14).  Mr. Pentz ignores the clear weight of authority, including the U.S.

4

Supreme Court and the Second, Ninth and Eleventh Circuits, which provide for POF calculation based upon benefit created and not claims made.  Mr. Pentz also ignores the strong policy considerations which support calculations of POF based upon the benefit created.

## II.     ARGUMENT

### A.     POF Fee Calculations Should Be Based Upon the Full Value of *Available* Class Settlement Benefits and Not Claims Actually Made.

The principle that percentage of the fund should be applied to the full class benefit was approved by the Supreme Court over thirty years ago. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) (holding district court properly awarded attorneys' fees from the total amount of a class action judgment, including the *unclaimed* portion of the judgment).

The Second Circuit recently has required calculating a POF award of attorneys' fees based on the entire fund available to the class. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007).  The Second Circuit rejected the "windfall" argument, appropriately reasoning that "the entire fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."  The Second Circuit stated:  "We side with the [11th and 9th] Circuits that take this approach." *Id*. (emphasis added).

The Eleventh Circuit has also held that POF fees should be based on the value of the fund -- not claims actually made. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291,1297 (11th Cir. 1999) ("In *Boeing Co. v. Van Gemert*, the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the

funds potentially available to be claimed, regardless of the amount actually claimed."). And the Ninth Circuit has reached the same result. *Williams v. MGM-PATHE Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion [fn] by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar.").

In *In re Air Crash Disaster at Florida Everglades on December 19, 1972*, 549 F.2d 1006 (5th Cir. 1977), the court determined a "fund-in-court" was not necessary for it to award attorneys' fees as a percentage of benefit.  The court simply employed "combination of traditional and pragmatic" concepts to determine a fund existed within the control of the court, notwithstanding whether it was actually in the hands of the court. *Id*. at 1018.  *See also In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995); *Dewey v. Volkswagen of America, Inc.*, 728 F. Supp. 2d 546, 591 (D.N.J. 2010).  Despite the settlement being difficult to value, the *General Motors* court found that case most resembled a "common fund" case. *In re General Motors,* 55 F.3d at 822.  In *Dewey*, under very similar circumstances to this case and with identical defendants and defense counsel, the court found that "[t]he percentage-of-recovery method applies where there is a common fund or where the economic reality of the settlement is akin to a common fund."  *Dewey,* 728 F.Supp.2d at 591.

Recent decisions which also support calculation of attorneys' fees based upon available benefits, rather than benefits actually claimed, include *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010) ("In choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that the entire fund, and not

some portion [of it], is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.'").  *See also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) ("The court finds that an award of attorneys' fees is appropriately based upon the total common fund and not on the amount claimed against it. . . . Therefore, an award of attorneys' fees should be calculated based upon the full benefit.").

> **B.**  **The Pocket Guide Does Not Constitute A "Clear Mandate" To Base POF Attorneys' Fees On the Value of Benefits Actually Claimed By Class Members.**

The Pocket Guide includes "*suggestions* for judicial review and administration of class settlements[.]"  Victor E. Schwartz, Patrick W. Lee, and Kathryn Kelly, Guide to Multistate Litigation § 2.1 n.1 (emphasis added).  The Pocket Guide, like other publications of the Federal Judicial Center, includes material "in the nature of practical *advice* and studies of . . . litigation."  Paul D. Rheingold, Litigating Mass Tort Cases § 2:6 (emphasis added).  The Pocket Guide is not, as asserted by Mr. Pentz, a "clear mandate" regarding the methodology for calculation of attorneys' fees in connection with every class action settlement.

In fact, only three reported federal decisions cite the 2009 edition of the Pocket Guide.  The federal judges in those cases did not rely upon the Pocket Guide's discussion of or methodology suggested for awarding class action attorneys' fees. *In re Zyprexa Prod. Liab. Litig.*, 2009 WL 1173069, at * 1 (E.D.N.Y. May 1, 2009) (citing Pocket Guide's discussion of coordination of state and federal litigations); *In re Zyprexa Prod. Liab. Litig.*, 260 F.R.D. 13, 15 (E.D.N.Y. 2009) (same); *Klugman v. American Capital,*

*Ltd.*, 2009 WL 2499521, at * 2 (D. Md. Aug. 13, 2009) (citing Pocket Guide's discussion of lead plaintiff's right to select and retain class counsel, subject to court approval, under the PSLRA).  If the Pocket Guide's discussion of the calculation of attorneys' fees constituted a "clear mandate", as Mr. Pentz argues, a federal court very likely would have cited the Pocket Guide for this purported proposition by now.  No federal court has even mentioned the Pocket Guide's discussion of attorneys' fees.[3]

### D.   The Special Master Correctly Determined That *TJX* Does Not Require This Court To Delay Its Award of Attorneys' Fees.

Contrary to Mr. Pentz's assertion, Judge Young's decision in *TJX* does not mandate that federal judges in this District calculate class action attorneys' fees based upon the value of benefits actually claimed, (which would be the only possible reason for delay).  As demonstrated above, POF attorneys' fees should <u>not</u> be based on claims actually made.  Notably, Judge Young did <u>not</u> defer ruling on the award of attorneys' fees until the Court could determine the number of claimants and the value of the benefits they claimed, but instead suggested possible prospective application of the Court's reasoning in future cases in *his* court.  *TJX,* 584 F. Supp. 2d at 410.

The Special Master explained why the concerns about class litigation articulated by Judge Young in *TJX*  "do not exist here." (Special Master's Findings, Doc. #248, at 14-16.)  For example, the Special Master carefully distinguished the value of the benefit in *TJX* from the benefit provided by this settlement, providing as follows:

> Further, what the Class Members here are entitled to, among other things, is either 100% or 50% of the costs of a full automobile engine repair if sludge damages occurs, or had occurred in the past and been denied.  Each

---

[3] There are eleven reported federal decisions citing the 2005 edition of the Pocket Guide.  While the 2005 edition's discussion of attorneys' fees is very different from the 2009 edition, it is noteworthy that none of these eleven cases cite the Pocket Guide regarding the award and calculation of attorneys' fees.

of these repairs alone has values in the hundreds, perhaps thousands, of dollars range for any engine so damaged.   The latter is vastly more attractive to a Class Member than the 'three years of credit monitoring' made available to qualifying customers in the *TJX Cos.* Settlement or the $10 gift card mentioned in the Bed, Bath & Beyond case cited by Judge Young in footnote 15 of *In re TJX Cos.*

(Special Master's Findings, Doc. #248, at 15.)

The Special Master also made a detailed factual finding regarding Class Counsel:

Class Counsel in this case have been observed closely by the Special Master in their interaction with Defendants' counsel.   On almost every issue, this has been a very hard-fought case, by very well-qualified counsel, on both sides.   There is no evidence whatsoever of Class Counsel "placing their interests before those of the [Settlement Class] or . . . failing to give adequate thought to matters such as how the [Class Members] may best be reached or what benefits may most be appreciated."

*Id.* at 16 (citing *TJX*, 584 F. Supp. 2d at 406).

Calculation of attorneys' fees based on claims actually submitted post-settlement by Class Members is contrary to the prevailing view of courts and strong policy considerations.   The courts' prevailing view and policy considerations indicate attorneys' fees in such cases should be based on the percentage of the fund method applied to the total value of the benefits created for the class; regardless of whether all available benefits are later claimed by Class Members.

There are also significant policy reasons why this Court should *not* delay ruling on the pending request for an award of attorneys' fees and costs.   Respectfully, *TJX* understates the importance of having experienced and competent lawyers available to handle complex class litigation and underemphasizes the importance of enforcing various public policies contained in the underlying causes of action in such cases.   Waiting for all claims to be made also requires continued and unnecessary Court supervision, wastes judicial resources and promotes further disputes.

Finally, in this case, the benefits provided by the Settlement Agreement will be available to the Class until the 10-Year/120,000-Mile Enhanced Oil Sludge Warranty Extension expires in 2014 (as applicable to 2004 model class vehicles).  Adopting a "wait and see" approach will further unnecessarily delay finality and require this Court to retain jurisdiction for several more years.

To preserve the viability and deterrent benefit of class actions as meaningful protection for consumers and the enforcement of a wide array of public policies, application of the percentage of fund method based upon the total benefits made available to the Class is essential.  Basing a percentage of the fund on claims actually made would create a significant disincentive to qualified Class Counsel to incur the time, risk, and expense of bringing class actions on behalf of consumers and those whose statutory and other rights have been violated.  Regardless of the benefits provided to the Class by an ultimate settlement, class counsel cannot know in advance the percentage of class members who will actually claim benefits.  Basing payment of attorneys' fees on the additional unknowable contingency of the percentage of class members who actually claim benefits would create an extremely strong disincentive to class counsel to invest their time and money in meritorious class action matters on the front end.

The public interest is also promoted by proper incentives for class counsel to file class actions in instances in which individual claims are small and prospects for recovery may be uncertain.  Awarding attorneys' fees based on claims actually made by the Class would actually encourage wrongful conduct having minor impacts on a large number of people, because the wrongdoer would know that lawyers would not routinely take on the burdens and risks of such litigation.

**E.** **The First Circuit Has Clearly Signaled Agreement With The Rule Adopted By The Second, Ninth and Eleventh Circuits That POF Should Be Based On The Value Of The Fund Created.**

In *In re Thirteen Appeals* (cited with approval by Judge van Gestel in his Findings and Recommendations), this Circuit carefully considered the lodestar and common fund approaches. *In re Thirteen Appeals,* 56 F.3d at 305-308.  The Court noted that "[c]ontrary to popular belief, it is the lodestar method, not the POF method, that breaks from precedent." *Id.* at 305.

The First Circuit specifically cited *Boeing* for the proposition that common fund cases encompass "cases in which 'a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Id.* at 305 (citing *Boeing*, 444 U.S. 472) (emphasis added).

The rationale of *Thirteen Appeals* fully supports calculation of POF fees based upon the value or benefits created, not claims made.  "The [POF] method functions exactly as the name implies:  the court shapes the counsel fee based upon what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation"). *Id.* (emphasis added)

## III.   CONCLUSION

For the foregoing reasons, the Court should overrule the Objection of Ashley Riley Birkeland.

Dated: 3/8/11                               Respectfully submitted,

                                             */s/ Peter J. McNulty*
                                            Peter J. McNulty
                                            McNULTY LAW FIRM
                                            827 Moraga Drive
                                            Los Angeles, CA 90049

11

(310) 471-2707
(310) 472-7014
Email: peter@mcnultylaw.com


Kirk D. Tresemer
IRWIN & BOESEN, P.C.
4100 E. Mississippi Ave., Ste. 1900
Denver, CO  80246
(303) 999-9999
(303) 320-1915 (fax)
Email: ktresemer@coloradolawyers.com

Russ Henkin
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA  19103
(215) 875-3000
(215) 875-4604 (fax)
rhenkin@bm.net

## <u>CERTIFICATE OF SERVICE</u>

I, Sean Roberts, hereby certify that this document, filed through the ECF system, will be sent electronically on March 8, 2011 to the registered participants as identified on the Notice of Electronic Filing (NEF) and to the following recipients:

Hon. Allan van Gestel (via email attachment)
JAMS
One Beacon Street, Suite 2300
Boston, MA  02108
(617) 228-0200
(617) 228-0222 (fax)
allanvangestel@aol.com

Jeffrey L. Chase
Daniel V. Gsovski
Herzfeld & Rubin, P.C.
125 Broad Street
New York, NY  10004
(212) 471-8500
(212) 344-3333 (fax)
jchase@herzfeld-rubin.com
dgsovski@herzfeld-rubin.com

and via U.S. mail to the following recipients:

John J. Pentz
2 Clock Tower Place, Ste. 440
Maynard, MA  01754

 _/s/ Sean Roberts_____
Sean Roberts