# Exhibit 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH SPINELLI,
Linda R. McCoy, Anthony Mitchell,
Elizabeth Silicato, Patricia Tinder,
Laverne Scruggs, Rose Carr,
Robin Deaver, Michael Blackie,
Trina Blackman, Alice Lewandowski
Harold Smith, Trudy Smith,
David Watlington, and Jeff Salazar
Individually and for all other persons similarly situated,

    Plaintiffs

v.                                                          Case No. 8:08-CV-132-VMC-EAJ

CAPITAL ONE BANK (US), N.A. and
CAPITAL ONE SERVICES, LLC.,

    Defendants
_____/

MEMORANDUM IN SUPPORT OF CLASS PLAINTIFFS'
REPLY IN OPPOSITION TO THE GRIFFIS AND ESTEP OBJECTORS

I.     INTRODUCTION.

Plaintiffs and Defendants Capital One, et al. have reached a settlement resolving all claims in this lawsuit. On August 16, 2010, the Court granted Preliminary Approval of the Settlement, and approved the proposed notice program. Doc. #147. The Notice program was implemented, and the deadline for objections to the settlement was set for November 3, 2010. On November 3, 2010, three objections to the settlement were received by Plaintiffs from two different "professional" or "serial" objector counsel. These "professional" objector counsel file objections to class action settlements in case after case, for the sole purpose of extracting a benefit for themselves via the threat of delaying the implementation of a settlement. Plaintiffs

1

also ask the Court to dismiss the objections.

## II. STATEMENT OF FACTS.

On November 3, 2010, objector Stephen Griffis ("Griffis" or "Objector Griffis") filed his Objection and Notice of Intention To Appear in this case, asserting various objections to the settlement preliminarily approved by the Court. See Doc. 198. That objection was filed by Florida attorney Xavier A. Franco of the Guiterrez, Zarraluqui and Franco LLP law firm. On November 9, 2010, Griffis (who is an attorney) sat for a deposition conducted by class counsel, and stated that he is represented by Massachusetts attorney John J. Pentz ("Pentz"). Exhibit 1, Griffis deposition excerpt Page 5, lines 10-17. Indeed, Pentz represented Griffis at his deposition. However, Griffis, an attorney, does not know what monetary benefit he will receive from Pentz if his objection is successful. Griffis testified that he had never signed a contract or spoken with Florida counsel Xavier Franco, the attorney that filed his objections and notified the Court of their intent to appear at the final hearing. Exhibit 1 page 7, lines 1-9.

Also on November 3, 2010, objectors Estep and Matt ("Estep Objectors") served their Objections to Proposed Class Action Settlement. They state in their pleadings that they do not intend to appear at the hearing for final approval. Doc. #202. Although this objection was filed by Florida attorney Daniel Aaronson, Plaintiffs are in receipt of information that these objectors are Ohio residents and are represented by Ohio attorney Edward Siegel, a "professional objector". Attorney Aaronson has so far refused to present his clients for depositions. Neither attorney Aaronson nor attorney Siegel have sought leave of the Court to appear in this case.

The Griffis and Estep objections are the only two objections in which the objector is represented by attorneys.

The objections of the Griffis and Estep objectors are essentially pro forma objections and

2

there is little or nothing of substance in the objections that could be construed as an effort to add any benefit to the settlement for the members of the class.

Attorneys Pentz and Siegel are "professional objectors", attorneys who routinely file objections to class action settlements. These two often appear in the same cases, quite frequently asserting the same boilerplate objections, with the goal of extracting a payment in exchange for dismissing their objections or the appeal that they routinely file. Typical of the cases that Pentz and Siegel object to a class settlement is the Wal-Mart wage and hour litigation, discussed below.

III.   THE OBJECTIONS FILED BY ATTORNEYS

    *a.*   *The Griffis objections.*

Stephen Griffis is an Oklahoma lawyer who is represented by John Pentz. Griffis has previously been "local counsel" for Pentz in two Oklahoma class actions. In neither of these cases did Pentz and Griffis represent the class; rather, in both, as is typical of Pentz, they represented the objector. Despite Griffis testimony that these cases occurred in 2008, he could not provide the names of the parties or other details of the litigation. Exhibit 1 pages 4,5 and 29-31.

Mr Griffis' objections are contained in a scant 6 page pleading and consist of "boilerplate" objections. Doc. 198. His objections may be reduced to these three points: 1) the settlement requires a written claim form and gives the Defendant the discretion to review the status of class members before paying the claim; 2) the settlement requires written claim forms instead of providing for automatic credits; 3) Attorney fees should be based on recovery to class members. Griffis does not object to the proposed award of attorney fees and costs if "valid claims in this case total at least $50 million". Doc 198 page 5. Griffis' pleadings do not indicate

that he or his counsel spent any time reading the pleadings in the case, the settlement documents or any other key pleadings, or analyzed the product and the costs to class members, the potential damages or problems with proof of damages, the legal theories in the case, the problems inherent in the litigation, and does not appear to have performed any analysis of the benefit or value to the class members.

### b. *The Estep objections*

The Estep brief in support of objection, with the exception of one paragraph on page 2, focuses on objections to class counsel's attorney fees. Doc. # 202 page 2. Pleadings filed by these objectors do not attach proof that the objectors are members of the class. The Estep objectors' complaints about the terms of the settlement agreement can be reduced to these four propositions: 1) there is no "fund" and monies for unpaid claims will revert to the Defendant; 2) there is no provision for a cy pres award; 3) there is no maximum or minimum pay-out; 4) any settlement check not cashed will be void in 90 days. Doc. #202 page 2.

The Estep objectors primarily raise objections to the proposed attorney fees and cost reimbursement. These objectors do not mention that the payment of these fees and costs was separately negotiated with Capital One, were only negotiated with Capital One after the relief for the class was fully negotiated, will be paid by Capital One, and the fees and costs do not diminish the funds available to class members.

The specific objections raised are these: 1) this is not a "common fund" case and the Court should wait two months and analyze claims history before awarding fees; 2) attorney fees should be based on claims; 3) the attorney billing rates are too high; and 4) the expenses are too high.

1. The "common fund" argument.

4

The Estep objectors cite two cases in support of this argument. *In e Compact disc Minimum Advertised Price Antitrrust Litig.*, 292 F. Supp 184, at 189-90 (D. Me. 2003) concerned a coupon settlement and therefore is not applicable to this case. This is not a coupon settlement, it is a cash payout settlement. Coupon settlements generally require the Plaintiffs to receive a credit on additional products or services to be provided by the settling Defendant and are subjected to a different analysis by the Courts when analyzing the value of a settlement.

The second case cited is *Yeagley v, Wells Fargo & Co.*, 2008 U.S. Dist. Lexis 5040 (N,D. Cal. 2008). This case is not precedential and it is not applicable to the facts in the instant case. The District Court in Yeagley appears to be highly critical of the terms of the settlement, the notice to class members, and the "actual results obtained".

2.   Attorney fee lodestar amounts are fair and reasonable for the quality of the work performed, the result achieved and the risks taken by class counsel. This legal theories supporting this case were developed by class counsel without benefit of any prior cases addressing credit protection products. This case began with many interviews of Capital One cardholders and it was those interviews that made counsel aware of the perceived problems with Payment Protection. Class counsel worked diligently to identify the specific legal theories applicable to the facts in the case, engaged in lengthy discovery and document review, and researched the regulatory environment and its impact on the claims in the case, the regulatory experience with this product in other countries, and the state regulatory impact on insurance claims vs. non-insurance claims.

At no point did these objectors perform any work or create any value for a single credit card holder. They took no risks. They have not entered the arena of litigation; they are sitting on the sidelines at the end of the game criticizing aspects of how the case was successfully

concluded and criticizing the value of the work and expense of the litigators that fought for these consumers.

3.  Billing rates and expenses are too high. The hourly rates utilized by all of the counsel for the Class are the standard rates utilized by such counsel in similar matters.

4.  The Estep objectors do not offer any method of improving the terms of the settlement or provide a proposal for bringing a greater benefit to class members. They do not intend to appear at the fairness hearing. Doc. #202 page 1.

Taking the Estep objectors at face value, the apparent intent of the objection is merely to remind the Court of its duty to the class to properly scrutinize the attorney fee and expense submissions of class counsel. There is no valid legal point to this sort of objection. This does not add value to this case.

So what is the purpose of the objection if it does not offer any suggestions for improving the settlement for the benefit of the class and why file it on the last day for objections? Given the past history of the Estep objectors' primary attorney, Edward Siegel, one may infer a motive for filing the objections, and that is to preserve the objectors' right of appeal of a final order. Such appeals are often filed by "professional objectors" including the two professional objectors in this case, with the aim of extorting a cash payment from the parties to the settlement in return for the objector's agreement to dismiss their objections or appeals.

IV.  THE "PROFESSIONAL OBJECTORS".

 a. *John Pentz, attorney.*

John Pentz has been the subject of a great deal of criticism by judges and litigation counsel in class actions. He has recently been the subject of sanctions in the Wal-Mart wage and hour litigation, discussed below. His *modus operandi*, as established by case law cited below, is

6

to appear and file objections on or about the last possible day, assert boilerplate objections, file a notice of appeal in order to delay the distribution of class funds and attorney fees, and then try to negotiate a "settlement" in return for dismissing his appeal.

An example of Pentz' employment of this tactic occurred in *Lipuma v. Am. Express Co.*, 406 F.Supp. 1298 (S.D. Fla. 2005). Attached as Exhibit 2 is a letter from John Pentz to Lipuma class counsel offering to drop his objections if he is paid the sum of $50,500, based upon 126.25 hours of work.

Although Pentz is not the only "professional objector" operating in the U.S. today, he is the most prolific. District Judge Brock Hornby characterized Pentz as a "repeat objector" who filed "a groundless objection" in his court. *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, MDL 1361, 2003 WL 22417252 at *2 fn.3 (D. Me. Oct. 7, 2003).

In the matter In re *Royal Ahold N. V.. Securities & Erisa Litigation*, 461 F. Supp. 2d 383, 386 (D.Md. 2006), the court stated as follows:

> "Pentz is a professional and generally unsuccessful objector who apparently attached himself to Tsai; Tsai was represented by different counsel at the early stages of this litigation. Her initial objections to the settlement, filed on March 29, 2006, complained that Ahold should pay more money to all class members, but did not mention the attorneys' fee request. The later objection, filed by Pentz on May 3, 2006, complained that U.S. investors should have received a greater share of the settlement and that the attorneys' fee should be limited to the greater of 7.5% or a 2.3 multiplier of the lodestar. Pentz did not challenge the lodestar figure calculated by plaintiffs' counsel and provided no coherent explanation for his contention that the fee is excessive. In summary, the Pentz/Tsai objection was not well reasoned and was not helpful." 461 F. Supp. at 386; footnotes omitted.

In 2010, in *In Re: Wal-Mart Wage and Hour Employment Practices Litigation*, 2008 U.S. Dist. Lexis 50928 (D. Nev March 8, 2010), the Court considered whether the "professional objectors" and their clients should be required to post supersedeas bond on appeal. The Court found that the appeal was "frivolous" and that the objectors were required to post a $500,000

appeal bond per objector:

> ...the Court finds that the issues before the Court are really quite simple. 1) Are the objections of Gaona, Swift, Andrews and Maddox to this Court's Order (Doc. # 491) without merit? ...the Court finds that the objections are not supported by law or the facts and are indeed meritless. 2) Are the attorneys representing Gaona, Swift, Andrews and Maddox, "professional objectors" who have a long record of extorting payment from class counsel by filing frivolous appeals in cases to delay the funding of class settlements? The Court will not adopt the pejorative characterization of counsel for Objectors advanced by Plaintiffs' co-lead class counsel, but does find on the basis of the briefs submitted that Objectors' counsel have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class. 3) Is there a risk that the four Appellant/Objectors would not be able to pay Appellee's costs if the four Objectors are unsuccessful on appeal? The record presented persuades the Court that collecting costs from the four Objectors would be extremely difficult if not unlikely.
>
> In sum, this Court finds that the Appeals taken by Objectors Gaona, Swift, Andrews and Maddox, are frivolous and are tantamount to a stay of the Judgment entered by this Court on November 2, 2009 approving the comprehensive class settlement in this case which provides fair compensation to millions of class members, as well as injunctive relief ensuring against further loss to persons similarly situated. The Court further finds that the four Objectors should be required to file an appeal bond sufficient to secure and ensure payment of costs on appeals which in the judgment of this Court are without merit and will almost certainly be rejected by the Ninth Circuit Court of Appeal. While it is difficult to calculate with mathematical precision the duration of Objectors' appeal, or the administrative costs and interest costs to the potentially more than 3 million class members, or other costs reasonably incurred under Rule 39 of the Federal Rules of Appellate Procedure, the Court finds the sum of $500,000 per Objector to be reasonable.

Id., at 16-18. Pentz represented all four of the objectors named in the Court's order and Edward Siegel was co-counsel of record for Maddox, Swift and Andrews.

In a later opinion in the Wal-Mart litigation, the District Court discusses the conduct of Pentz and Siegel's with this comment:: "The conduct of Objectors and their counsel is compounded by their prior demand of $ 800,000 to cease their appeals". *In Re: Wal-Mart Wage and Hour Employment Practices Litigation*, 2008 U.S. Dist. Lexis 50928 (D. Nev May 25, 2010).

8

In *Spark v. MBNA Corp.*, 289 F. Supp. 2d 510 (D. Del. 2003), Pentz represented three class members that objected to the approved class settlement. After the district court of Delaware approved the settlement, Pentz opposed the class fee and filed his own petition for attorneys' fees and an incentive award for his clients. Id. at 512. In denying any fee to Pentz, the district court found that there was no evidence of any contribution by Pentz in that he merely cited a Third Circuit case on the issue of fee awards. Id. at 514. In denying Pentz' opposition to the fees for Class Counsel, the district court held as follows: "The objector's 'opposition' to Class Counsel's fee petition appears to be nothing more than an attempt to receive attorneys' fees. The objector has done nothing more than propose an unsupported, alternative fee distribution scheme, apparently attempting to take advantage of the fact that defendants have not opposed Class Counsel's request." Id. at 514.1

Mr. Pentz uses his family members for clients to hold up settlements. See *In Re Serzone Product Liability*, 231 F.R.D. 221, n. 9 (S.D.W. Va., 2005) (John Pentz representing David Pentz); *Schwartz v CitiBank*, 50 Fed. Appx. 832 (9th. Cir. 2002) (Pentz' objection on behalf of his wife to attorneys fees of 20% from common fund overruled); *Tenuto v. TransWorld Sys.*, No. 99-4228, (E.D. Pa. 2002) (representing his father). In *In Re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 WL 22417252, at 3 (D. Me. 2003) the Court required Mr. Pentz' client /wife to post a bond because the appeal might be frivolous and because imposition of sanctions was "a real probability." In *Barnes v FleetBoston Financial Corp. et. al.*, C .A. No. 01-10395 (D Mass., 2006) Mr. Pentz objected for his mother-in-law. The Court labeled Mr. Pentz and his mother-in-law "professional objectors" and considered the history of using family members to object to class actions.

Mr. Pentz objected in *In Re Relafen Anti-Trust Litigation*, contending that an attorney's

9

fee under the "common fund" method could not exceed a lodestar figure. 231 F.R.D. 52, 77-79 (D. Mass. 2005). The Court dismissed that contention: "the suggestion that the Court may not award fees beyond the lodestar is not supported by the law." *Id.* at 79. The Court awarded a one-third contingency fee. *Id.* at 83.

In *In re Relafen*, case no. 01-12239 (D. Mass. 2006). The settlement was unchanged and the class received no additional benefit. The court labeled Mr. Pentz' other objections as "extraordinary" and assessed an appeal bond in the amount of $645,111.60.

In *Taubenfeld v Aon Corp.*, 415 F. 3rd 597, 600 (7th Cir. 2005), the Court held that Pentz' argument regarding expense reimbursement "barely warrants comment" and even if properly raised "would have been meritless . . . " The Court affirmed a thirty percent (30%) contingent fee for class counsel. Id.

Class counsel respectfully suggests this Court should join the growing number of Courts that sifted through Mr. Pentz' objections and viewed them with a grain of salt.

2. Professional Objector Edward Siegel.

Although Edward Siegel has not yet entered an appearance on behalf of the Estep objectors, Plaintiffs have information that Mr. Siegel represents the two objectors. While Pentz is the most prolific objector, the pattern and practice of objecting to class action settlements by Edward Siegel is equally dubious, for instance in the Wal-Mart Wage and Hour litigation cited above.

As Exhibit 3 demonstrates, in other class actions in which Pentz has asserted objections, Edward Siegel has asserted objections as well. See, *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, 2007 WL 2589950, (D.N.J. Sept 4, 2007). As previously noted above, Pentz and Siegel filed objections in *In re: Wal-Mart Wage and Hour Employment*

10

*Practices Litigation*, No. 2:06-CV-00225-PMP-PAL, MDL 1735 (D. Nev. 2010) and were required to post a supersedeas bond due to the nature of the claims they asserted.

The Estep objectors refuse, through counsel, to appear for depositions and have indicated to the Court that they will not appear at the final approval hearing in this case.

The propensity of Pentz and Siegel to serially object to class action settlements in an effort to disrupt the settlement approval processes in class action settlements raises doubts about the veracity of the objections they have filed here.

III.  THE COURT'S ROLE IN CONSIDERING OBJECTIONS.

Well-intentioned objectors sometimes have the opportunity to add value to the results achieved for the benefit of the class and can offer ways to improve settlements that benefit class members. This is most likely to occur when the objections are filed by experienced litigation counsel who have experience representing plaintiffs in class actions, or when filed by organizations that represent consumers. That is not the case here.

Just as the Court is the "guardian" of the interests of the class it is also the "guardian" of the integrity of the judicial system. See *Shaw v. Toshiba et al.*, 91 F.Supp. 2d 942 (E.Dist Texas, 2000). The objections filed by attorneys for the Griffis and Estep objectors are so lacking in substance and so lacking in any reasonable effort to make suggestions that might benefit the class that the objections appear to be part of a strategy to misuse the court system for no purpose other than an attempt to extract money from the class or class counsel.

IV. ARGUMENT.

Courts often look disfavorably on professional objectors. See e.g., *O'Keefe v. Mercedes-Benz USA, LTC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003) ("Federal courts are increasingly weary of professional objectors."); *Spark v. MBNA Corp.*, 289 F. Supp. 2d 510, 512-15 (D. Del.

11

2003) (court denied Pentz's fee request because his objection did not result in any benefit to the class). See also *Rite Aid*, 269 F. Supp. 2d 603, 610 n.9 (E.D. Pa. 2003) (criticizing "a professional gadfly" who had "become a twelfth hour squeaky wheel" (vacated on other grounds, 396 F.3d 294 (3rd Cir. 2005)); *Shaw v. Toshiba America Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) ("[S]ome of the objections were obviously canned objections filed by professional objectors who seek out class actions to simply extract a fee"). As one district court recently observed:

> "Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Barnes v. Fleet Boston Financial Corp.*, 2006 U.S. Dist. LEXIS 71702, at *1-2. See generally Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges (2005) (explaining that courts should "[w]atch out...for 'canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests.").

If the objectors and their counsel have good faith bases for asserting the objections made, they should have no objection to appearing and explaining them. Questions the parties and Court may raise include the bases for the objector's objections; the extent of any other relationships between the objector and his or her counsel; the extent of the objector's or objector counsel's review of record materials in advance of filing the objections, if any; any agreement objector counsel may have with the objector to share any fees the counsel may earn; any agreements

objector counsel may have with any other objector or objector counsel who have appeared in this case; among other areas.

There is absolutely nothing wrong with a valid objection from a class member. However, too often objections are being created solely to extract payments from the class settlement and counsel. Plaintiffs believe that is what is afoot. This Court has a unique opportunity to question these professional objector counsel and the objectors themselves as to their issues with the settlement and motives. Accord *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 2132, 115 L.Ed. 2d 27 (1991) (A court has the power to conduct an independent investigation to determine whether it has been the victim of fraud). Plaintiffs urge this Court to take advantage of this opportunity to satisfy itself that this settlement approval process is not being used for improper motives by attorneys Pentz, Siegel, Franco and Aaronson and the objector clients.

III. CONCLUSION.

For all of the foregoing reasons, Plaintiffs request that the Court deny the relief requested by the Griffis and Estep objectors, along with all other just and proper relief to which they are entitled.

Dated: November 17, 2010.

        Respectfully submitted,

        /s/ Steven A. Owings
        Steven A. Owings
        OWINGS LAW FIRM
        1320 "D" Brookwood
        Little Rock, AR 72202
        (501) 661-9999
        sowings@owingslawfirm.com

        -and-

         T. Brent Walker
         WALKER LAW FIRM
         2171 West Main, Suite 200
         P.O. Box 628
         Cabot, AR 72023
         (501) 605-1346
         (501) 605-1348 (facsimile)
         bwalker@carterwalkerlaw.com

         -and-

         Curtis Bowman
         Allen Carney
         CARNEY WILLIAMS BATES
         BOZEMAN & PULLIAM, PLLC
         11311 Arcade Drive, Suite 200
         Little Rock, AR 72212
         (501) 312-8500
         (501) 312-8505 (facsimile)
         cbowman@carneywilliams.com
         -and-

         Kevin McLaughlin
         WAGNER, VAUGHAN,
         McLAUGHLIN & BRENNAN, P.A.
         601 Bayshore Blvd.
         Suite 910
         Tampa, FL 33606
         (813) 225-4000
         kevin@wagnerlaw.com

         **Attorneys for the Plaintiffs**

## CERTIFICATE OF SERVICE

  I, Steven A. Owings, certify that I have filed the above pleading via CM/ECF with the Clerk for the United States District Court for the Middle District of Florida this 17th day of November 2010. Notice of filing will be sent to the parties via electronic mail in the form of an electronic Notice of Filing issued by the Clerk of this Court.

James McCabe
Gregory P. Dresser
MORRISION & FOERSTER, LLP
425 Market Street
San Francisco, CA 94105

(415) 268-7000
(415) 268-7522 FAX
mccabe@mofo.com
gdresser@mofo.com
kkreuzkamp@mofo.com

Eric S. Adams
SHUTTS & BOWEN, LLP
100 S. Ashley Drive, Suite 1740
P.O. Box 2481 (ZIP 33601-2481)
Tampa, Florida 33602-5309
(813) 227-8122
(813) 227-8222 (facsimile)
eadams@shutts-law.com

Francis A. Zacheri
SHUTTS & BOWEN, LLP
1500 Miami Center, 201 S. Biscayne Blvd.
Miami, Florida 33131
(305) 358-6300
(305) 381-9982
fzacherl@shutts.com

John Pentz
2 Clock Tower Place
Suite 440
Maynard, MA 01754

Xavier A. Franco
Gutierrez Zarraluqui, & Franco LLP
Douglas Entrance, South Tower
806 Douglas Road, Suite 625
Coral Gables, FL 33134

Daniel Aaronson
Benjamin & Aaronson, P.A.
1 Financial Plaza #1615
Ft. Lauderdale, FL 33301


/s/ Steven A. Owings
Steven A. Owings

MAC
CBC
e-CSF
KEK

John J. Pentz, Esq.
2 Clock Tower Place, Suite 260G
Maynard, MA 01754
Ph: (978) 461-1548
Fax: (707) 276-2925
Clasaxn@earthlink.net

May 25, 2007

**Via facsimile**

Michael Caddell, Esq.
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010
Fax: (713) 751-0906

Re:   Lipuma v. American Express, 04-20314, Appeal No. 06-10563-DD

Dear Mike:

Dee Hutsler informed me that you are in the process of trying to negotiate a global settlement of all objections, including fee objections, in the Lipuma case. I filed a brief in this appeal on behalf of Intervenors Murray and Hawthorn, which was adopted by the Cochran/Rothstein group. In addition, Murray and Hawthorn objected to class counsel's fee request, which remains under advisement in the district court.

My time in this case to date is 126.25 hours for a lodestar of $50,500. I can provide supporting documentation if class counsel is interested. Please let me know whether class counsel is interested in resolving my clients' objections as part of the global settlement. Thanks.

Sincerely,

John Pentz