# THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| In re Volkswagen and Audi Warranty Extension Litigation | : | MDL Docket No. 1:07-md-01790 |
| | : | |
| | : | |
| _____ | : | |
| | : | |
| This Document Relates to All Cases | : | |
| _____ | : | |

### PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS' OBJECTIONS TO THE SPECIAL MASTER'S FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATIONS RELATING TO CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES…………………………………………………...ii

INTRODUCTION.............................................................................................1

LEGAL ARGUMENT.......................................................................................3

I.      THIS IS NOT A FEE-SHIFTING CASE ...........................................3

II.     THE SPECIAL MASTER PROPERLY APPLIED THE LAW OF THE FIRST
        CIRCUIT REGARDING THE AWARD OF ATTORNEYS' FEES ...........................8

        A. The Special Master Made Specific Findings of Fact Concerning the Value of the
           Settlement Which Are Amply Supported by the Evidence ............................8

        B. The Special Master Properly Applied the Percentage of the Fund Method .................9

III.    THE SPECIAL MASTER CORRECTLY DETERMINED THAT DEFENDANTS
        ARE PAYING ATTORNEYS' FEES PURSUANT TO THE NEGOTIATED
        SETTLEMENT AGREEMENT ......................................................................13

IV.     THIS IS A "COMMON BENEFIT" SETTLEMENT AND THE VALUE SHOULD
        BE BASED ON THE FULL VALUE  OF THE BENEFITS MADE AVAILABLE
        TO THE CLASS ...........................................................................13

        A. This Is a Common Benefit Settlement.......................................................13

        B. The Court Should Not Defer Ruling on Attorneys' Fees ...........................................16

        C. The Settlement Value Should Be Based on the Full Value of the Benefits Made
           Available to the Class .................................................................17

V.      CONCLUSION ...........................................................................19

## TABLE OF AUTHORITIES

Cases                                                                                    Page(s)

*Alleyne v. Time Moving & Storage, Inc.*,
264 F.R.D. 41 (E.D.N.Y. 2010)……………………………………………………….…18

*Aronov v. Napolitano*,
562 F.3d 84, 88-89 (1st Cir. 2009)…………….……………………………………..5, 7

*Blum v. Stenson*,
465 U.S. 886, 900 n.16 (1984)…………………………………………………………..10, 11

*Boeing Co. v. Van Gemert*,
444 U.S. 472, 478 (1980)………………………………………………………..9, 11, 14, 17, 19

*Buckhannon Bd. & Care Home v. West Virginia Dep't of Health & Human Resources*,
532 U.S. 598, 605 (2001)…………………………………………………………………..5, 7

*Bussie v. Allmerica Fin. Corp.*,
Civ. 97-40204-NMG, 1999 U.S. Dist. LEXIS 7793, at *5 (D. Mass. May 19, 1999)…………….....10

*Central R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885)……………………………………………………………………...9

*Conley v. Sears, Roebuck & Co.*,
222 B.R. 181, 182 (D. Mass. 1998)…………………………………………………….…12

*Dewey v. Volkswagen of Am.*,
728 F. Supp. 2d 546, 589 n.62 (D.N.J. 2010)…………………………………………4, 6, 13, 14, 15, 16

*Diffenderfer v. Gomez-Colon*,
587 F.3d 445 (1st Cir. 2009)…………………………………………………………..5

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
989 F. Supp. 375, 377 (D. Mass. 1997)…………………………………………………..10

*Florin v. NationsBank of Georgia, N.A.*,
34 F.3d 560 (7th Cir. 1994)………………………………………………………...5, 6

*Hensley v. Eckerhart*,
461 U.S. 424, 433 (1983)……………………………………………………………...5

*Hutchinson v. Patrick*,
2011 U.S. App. LEXIS 3139 (1st Cir. Feb. 17, 2011)…………………………………………..6, 7, 8

*In re Air Crash Disaster at Florida Everglades on December 19, 1972*,
549 F.2d 1006 (5th Cir. 1977)......................................................................................14, 15

*In re AT&T Corp.*,
455 F.3d 160, 169 n.6 (3d Cir. 2006)....................................................................................12

*In re Diet Drugs Prods. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009).............................................................................................4, 6

*In re General Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768, 820 n.39 (3d Cir. 1995), *cert. denied*, 535 U.S. 824 (1995)...............4, 9, 11, 14, 15, 16

*In re Lloyd's Am. Trust Fund Litig.*,
96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, at *74 (S.D.N.Y. Nov. 26, 2002)...........................10

*In Re Lupron Mktg. and Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005)...........................................................................................14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
148 F.3d 283, 334 (3d Cir. 1998)....................................................................................11, 12

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52, 79 (D. Mass. 2005).......................................................................................10

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294, 306 (3d Cir. 2005).........................................................................................12

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995)............................................................................................10, 11

*In re TJX Cos. Retail Sec. Breach Litig.*,
584 F. Supp. 2d 395, 402 (D. Mass 2008)................................................................................11

*Masters v. Wilhelmina Model Agency, Inc.*,
473 F.3d 423, 437 (2d Cir. 2007)........................................................................................17

*McGee v. Continental Tire North Am., Inc.*,
Civ. No. 06-6234, 2009 WL 539893, at *14 (D.N.J. Mar. 4, 2009)........................................6

*McKinnie v. JP Morgan Chase Bank, N.A.*,
678 F. Supp. 2d 806, 815 (E.D. Wis. 2009)............................................................................18

*Mills v. Elec. Auto-Lite Co.*,
396 &.S. 375 (1970)........................................................................................................9

*Missouri v. Jenkins*,
491 U.S. 274 (1989)……………………………………………………………….....12

*Nelson v. Hecker*,
2010 U.S. Dist. Lexis 50621 (Mass., Apr. 28, 2010)…………………………………………...5

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
2009 U.S. Dist. LEXIS 68419, at *8 (D. Mass. Aug. 30, 2009)…………………………….10, 12

*People Against Police Violence v. City of Pittsburgh*,
520 F.3d 226, 232 (3d Cir. 2008)…………………………………………………….........4

*Strougo v. Bassini*,
258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003)……………………………………………….....10

*United States v. 8.0 Acres of Land*,
197 F.3d 24 (1st Cir. 1999)………………………………………………………….........14

*Waters v. International Precious Metals Corp.*,
190 F.3d 1291,1297 (11th Cir. 1999)……………………………………………………..18

*Weinberger v. Great N. Nekoosa Corp.*,
925 F.2d 518, 522 & n.5 (1st Cir. 1991)……………………………………………...3, 13

*Williams v. MGM-PATHE Communications Co.*,
129 F.3d 1026, 1027 (9th Cir. 1997)……………………………………………….......18

Statutes

Americans with Disabilities Act ("ADA")…………………………………………1, 2, 6, 7

California Code § 17200………………………………………………………………..2

California Consumer Legal Remedies Act (1750)……………………………………………..2

New Jersey Consumer Fraud Act………………………………………………………....1, 2

N.J. Rev. Stat. § 56:8-1………………………………………………………………...3, 4

42 U.S.C. § 1988………………………………………………………………………...6

42 U.S.C. § 12205……………………………………………………………………….6

Rules

Fed. R. Civ. P. 23(h)………………………………………………………………...3, 7, 13

iv

## INTRODUCTION

The Special Master recommends an award of $30,000,000 for attorneys' fees and $1,195,234.43 for costs and expenses. (Findings of Fact, Conclusions of Law, and Recommendations, Doc #248, at 20.)  The Special Master's recommendations are amply supported by the evidence.  The settlement was valued by him at $222,933,831; which did not include the requested attorneys' fees and costs. *Id.* at 11.  This valuation is firmly based on a careful and detailed evaluation of all the evidence, including the "lower estimates of value" presented by Plaintiffs' valuation expert, Kirk D. Kleckner. *Id.*  The recommended attorneys' fees represent 13.46% of the settlement value, which is well below the benchmark (20% to 30%) in the First Circuit. *Id.* at 13.

As the Special Master correctly notes, attorneys' fees in this case are to be awarded pursuant to an <u>agreement</u> between the parties. (Settlement Agreement, Doc #160, at 20) ("Class Counsel fees and expenses shall be paid entirely and exclusively by Defendants . . .")  The Exhibits to the Settlement Agreement confirm Defendants' agreement to pay attorneys' fees: "[B]oth sides have agreed to a Settlement." (12/20/10 Class Notice, Doc #160-9, at 3.)  "The Defendants will pay whatever attorneys' fees and costs and expenses that the Court awards . . ." *Id.* at 7.

This is not a New Jersey fee-shifting case nor is it being settled pursuant to the New Jersey CFA, the ADA or any other federal or state statute which contains a fee-shifting provision.  This negotiated Settlement Agreement specifically confirms that the parties did <u>not</u> agree to apply New Jersey law. (Settlement Agreement, Doc #160, at 16-17.)  This MDL action included cases from Massachusetts, California, Pennsylvania, Florida, Ohio, Illinois, and New Jersey.  The causes of action pleaded include breach of contract; unjust enrichment; breach of the

implied warranty of merchantability; violation of the California Code § 17200; violation of the

California Consumer Legal Remedies Act (1750); a request for declaratory judgment; and the

New Jersey Consumer Fraud Act ("CFA").

It should also be evident that Plaintiffs cannot properly be considered "a prevailing party"

for purposes of the New Jersey CFA fee-shifting provision or any other fee-shifting provision.

Defendants' proffered case law regarding fee-shifting in ADA cases is simply inapplicable.

Herein, the Defendants continue to deny any liability or wrongdoing whatsoever. (Settlement

Agreement, Doc #160, at 4.)  The 12/20/10 Class Notice states "[t]he Defendants deny any

defect, wrongdoing, or any liability whatsoever . . ." (12/20/10 Class Notice, Doc #160-9, at 3.)

Furthermore, the Settlement Agreement (Doc #160 at 6-7) provides that: "NOW

THEREFORE, Defendants and the Settlement Class Representatives hereby agree . . . that the

*Settled Claims against Defendants* and the other Released Parties, as defined herein, *will be*

*settled, compromised, and released* in accordance with the following terms." (emphasis added)

(Settlement Agreement, Doc #160, at 4.)  The Settlement Agreement also provides in Section I

DEFINITIONS that:

> 20. "Released Claims or "Settled Claims" shall mean *any and all claims*,
> including assigned claims, whether known or unknown, asserted or unasserted,
> regardless of the legal theory, existing now or arising in the future by Plaintiffs
> and any or all members of the Settlement Class *arising out of or relating to*
> *Sludge-related engine problems in Settlement Class Vehicles*, and/or any and all
> claims that were or could have been asserted in the Action.  These "Released
> Claims" include, without limitation and by way of example, *all claims for*
> *damages or remedies of whatever kind or character*, known or unknown, that are
> now recognized by law or that may be created or recognized in the future by
> statute, regulation, judicial decision, or in any other manner.

(emphasis added) (Settlement Agreement, Doc #160, at 6-7.)  Thus, it's clear that the Settlement

Agreement releases the Defendants from further liability for any and all claims arising out of or

relating to Sludge-related engine problems in the class vehicles and requires no long-term monitoring similar to what is necessary in the case of a consent decree.

## LEGAL ARGUMENT

### I.    THIS IS NOT A FEE-SHIFTING CASE:

FED. R. CIV. P. 23(h) empowers a court in a certified class action to "award reasonable attorneys' fees and nontaxable costs that are authorized by law **or by the parties' agreement**." (emphasis added).  These Defendants have agreed to pay attorneys' fees and expenses (Settlement Agreement, Doc. #160, § VI.C.2 at 20) ("Class Counsel fees and expenses shall be paid entirely and exclusively by Defendants . . .")  These Defendants acknowledge that the Settlement Agreement provides for an award of attorneys' fees and expenses. (Corrected Memorandum, Doc #209, at 14) ("The Settlement Agreement Authorizes an Award of Attorneys' Fees and Expenses[.]").  Where the fee award is sought pursuant to an agreement between the parties in a federal class action settlement, federal law governs the decision. *See, e.g., Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 522 & n.5 (1st Cir. 1991) (noting use of court's equity powers in evaluating fee petitions is a matter of federal common law).

However, Defendants now seemingly choose to ignore that their own agreement provides the basis for an award of fees pursuant to FED. R. CIV. P. 23(h).  Defendants inexplicably argue that the attorney fee award in this case must be made pursuant to a New Jersey fee-shifting statute, N.J. REV. STAT. § 56:8-1 et sequitur, which authorize awards of attorneys' fees to prevailing parties. (Defendants' Objection, Doc #253, at 2.)  Defendants further argue that Class Plaintiffs must be considered "prevailing parties" under N.J. REV. STAT. § 56:8-1 et sequitur. Defendants also argue that the First Circuit and other courts have applied the lodestar method, rather than the percentage of the fund method, in cases where there is a "prevailing party" under a fee-shifting statute (Defendants' Objection, Doc #253, at 2.)

3

Defendants are wrong.  The Class Members herein are to receive common benefits pursuant to a compromise/negotiated Settlement Agreement.  There has been no judicial adjudication that Defendants are liable, and, in fact, Defendants continue to deny all liability and even insisted that such denial be recited in the Settlement Agreement. *See Dewey v. Volkswagen of Am.,* 728 F. Supp. 2d 546, 589 n.62 (D.N.J. 2010) ("To be deemed a 'prevailing party' . . . the "party must achieve a court-ordered change in the legal relationship between the plaintiff and the defendant." "A party 'does not become a 'prevailing party' solely because his lawsuit causes a voluntary change in the defendant's conduct.'") (citing *People Against Police Violence v. City of Pittsburgh,* 520 F.3d 226, 232 (3d Cir. 2008)).  Clearly, there is no rational basis for these Defendants to insist that this Court use the lodestar method or that Class Plaintiffs must be considered "prevailing parties" pursuant to the attorneys' fee-shifting provisions of N.J. REV. STAT. § 56:8-1 et sequitur.

In *Dewey*, the U.S. District Court for the District of New Jersey recently rejected these same arguments that a class settlement of property damage claims was a "fee shifting" case. The *Dewey* Court properly chose to employ the percentage method to calculate attorneys' fees in a class action settlement with Volkswagen, even though underlying claims arose under a fee-shifting statute and the parties agreed that New Jersey law applied.  The *Dewey* Court also relied on *In re Diet Drugs Prods. Liab. Litig.*, 582 F.3d 524 (3d Cir. 2009).[1]  There, the Third Circuit held the District Court properly used the percentage method even though the case included claims under fee-shifting statutes.

---

[1] "In *In re Diet Drugs*, the appellate court rejected the argument that the lodestar method should have been used to calculate fees in a class action settlement simply because a statutory fee shifting claim was involved. *In re Diet Drugs*, 582 F.3d at 540.  Thus, *In re Diet Drugs* and *In re General Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995) teach that if a class action is resolved through a settlement, then the fees should be calculated based upon the percentage-of-recovery method if: (1) the benefits to the class can be valued; (2) the compensation to the class and counsel come from the same source; and (3) the source has voluntarily agreed to pay class counsel's fees." *Dewey,* 728 F. Supp. 2d at 591.

Notably, Defendants have not directed the Court to a single First Circuit class action settlement where a court held that it could not award attorneys' fees based upon percentage of the fund method because the class sought some relief pursuant to a fee-shifting statute.  Instead, Defendants rely upon cases which are properly distinguished because (among other reasons), unlike this case, none of the parties entered into a voluntary settlement agreement specifically authorizing an award of attorneys' fees.  *See, e.g., Buckhannon Bd. & Care Home v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Diffenderfer v. Gomez-Colon*, 587 F.3d 445 (1st Cir. 2009); *Aronov v. Napolitano*, 562 F.3d 84, 88-89 (1st Cir. 2009); *Nelson v. Hecker*, 2010 U.S. Dist. Lexis 50621 (Mass., Apr. 28, 2010) (Tauro, J.)).[2]

*Florin v. NationsBank of Georgia, N.A.*, 34 F.3d 560 (7th Cir. 1994) is instructive. Participants in an ESOP brought claims alleging that defendants violated their fiduciary responsibilities under ERISA. *Id.* at 562.  The case was <u>settled</u> and a settlement fund was created. *Id.*  Counsel sought attorneys' fees on the basis of a percentage of the fund or, alternatively, on the basis of a lodestar methodology. *Id.*  The district court applied the lodestar method and refused to award counsel a multiplier. *Id.*  Counsel appealed the failure to award a multiplier. *Id.* at 563.  The Seventh Circuit observed that it first had to determine "whether this case should be governed by common fund principles or by statutory fee-shifting principles, for 'when a case is initiated under a statute with a fee-shifting provision [but] is settled with the creation of a common fund, the question may arise whether statutory fee principles should govern in whole or in part the attorney fee award.'" *Id.* (citation omitted).  The Seventh Circuit held that the amount

---

[2] Defendants have also cited a number of cases in which courts have taken the unremarkable action of awarding attorneys' fees to prevailing parties pursuant to fee-shifting statutes following adjudication of claims and where there was no settlement agreement providing for an award of attorneys' fees.  These cases do not discuss whether a court may award attorneys' fees pursuant to the percentage method in the context of a class action settlement agreement.

of the attorneys' fee award was not governed by ERISA's fee-shifting scheme and that "common fund principles control this case[.]"

In this case, like in *Florin* and *Dewey*, common fund principles control, irrespective of the fact that Plaintiffs' Second Amended Complaint sought some ancillary relief pursuant to a consumer fraud statute with a fee-shifting provision. The Settlement Agreement, as in *Florin*, authorizes an award of attorneys' fees. This authorization is not dependent upon any fee-shifting statute, and this Court may, and should, employ common fund principles and calculate attorneys' fees on the basis of a percentage of the fund methodology.

In this case, there is no fee-shifting, and federal law clearly applies to the award of attorneys' fees and expenses. *Dewey,* 728 F. Supp. 2d 546, 588-89 (citing *In re Diet Drugs*, 582 F.3d 524, 540 (3d Cir. 2009) and *McGee v. Continental Tire North Am., Inc.*, Civ. No. 06-6234, 2009 WL 539893, at *14 (D.N.J. Mar. 4, 2009)).

**Defendants' reliance on *Hutchinson* is also misplaced**. Defendants contend Plaintiffs in this case are prevailing parties and cite *Hutchinson v. Patrick*, 2011 U.S. App. LEXIS 3139 (1st Cir. Feb. 17, 2011). *Hutchinson* was an Americans with Disabilities Act ("ADA") case. *Hutchinson*, 2001 U.S. App. LEXIS 3139, at *3. In *Hutchinson*, the settlement agreement "memorialized a settlement and was not tendered as a consent decree." *Id.,* at *5. The Plaintiffs in *Hutchinson* moved for an award of attorneys' fees specifically pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205 (ADA fee-shifting provision), claiming to be prevailing parties. *Id.,* at *7-8 & n.1. The District Court found plaintiffs were prevailing parties and awarded the full amount of requested fees. *Id.,* at *8. The Defendant officials of the Commonwealth of Massachusetts (including Governor Deval Patrick) appealed. *Id.*

6

To qualify as a prevailing party under the ADA (or another federal statute) fee-shifting provision, "a litigant must show that a material alteration of the parties' legal relationship has taken place as a result of the litigation." *Id.,* at *10 (citations omitted).  The alteration must possess a "'judicial imprimatur.'" *Id.* (citing *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001)).  *Buckhannon* also dealt with the ADA's fee-shifting provision, and the *Buckhannon* Court identified only two situations that satisfy the judicial imprimatur requirement: judgment on the merits; and court-ordered consent decree. *Id.,* at *11.  The First Circuit stated that the function of the [Court's] order "carries the most weight in determining whether it may serve as the linchpin for 'prevailing party' status." *Id.* (citing *Aronov v. Napolitano*, 562 F.3d 84, 90 (1st Cir. 2009)).  "Thus, rather than look exclusively at the label attached to a particular order, an inquiring court must consider '*whether the order contains the sort of judicial involvement and actions inherent in a 'court ordered consent decree.*'" *Id.,* at *11-12 (emphasis added) (citing *Aronov v. Napolitano*, 562 F.3d 84, 90 (1st Cir. 2009)).

This case is <u>not</u> an ADA case like *Hutchinson*:  Plaintiffs herein moved for attorneys' fees pursuant to FED. R. CIV. P. 23(h) and the Settlement Agreement (Doc #160); <u>not</u> pursuant to any fee-shifting provision. (Plaintiffs' Motion for Attorneys' Fees and Costs, Doc #174, at 1.) This case does not involve a consent decree nor an order that in any way resembles a consent decree.  Unlike *Hutchinson*, there is no final order regarding settlement in this case.  In *Hutchinson*, the settlement agreement spelled out with specificity the Court's authority to enforce the agreement (equitable relief for non-compliance, then any appropriate equitable or remedial power for failure to comply with the Court's order). *Hutchinson*, 2001 U.S. App. LEXIS 3139, at *16-17.  The approval order in *Hutchinson* instructed that "'the case not be

7

closed and that *judgment not enter* pending compliance with the terms of" the Agreement." *Id.,* at

*16 (emphasis added).  There is <u>no</u> similar order or provision in the Settlement Agreement in this

case.  Any ongoing involvement by the Court in this case is de minimus and does not rise to a

level so as to qualify as a "judicial imprimatur" of the settlement.  The Court of Appeals in

*Hutchinson* also noted that "the mere fact that a settlement is subject to court approval does not

in itself supply the necessary ingredients for prevailing party status." *Id.,* at *18 & n.3.

## II.     THE SPECIAL MASTER PROPERLY APPLIED THE LAW OF THE FIRST CIRCUIT REGARDING THE AWARD OF ATTORNEYS' FEES:

### A.     The Special Master Made Specific Findings of Fact Concerning the Value of the Settlement Which Are Amply Supported by the Evidence

| SPECIAL MASTER'S "ESTIMATES OF VALUE" (DOC #248 AT 11) | | |
|---|---|---|
| 1 | Warranty Reimbursements | $87,056,149 |
| 2 | Ten Year Warranty Extension | $73,938,851 |
| 3 | Reduction of Future Repair Costs | $56,249,605 |
| 4 | Oil Change Discount | $3,362,263 |
| 5 | Claims Administration | $2,325,963 |
| | **Settlement Value** | **$222,932,831**[3] |

**Recommended Attorneys' Fees (Doc #248 at 20):       $30,000,000.00**
($222,932,831 x 13.45%)

In making these findings, the Special Master specifically cited the 2/4/11 Rebuttal Report

of Plaintiffs' valuation expert, Kirk D. Kleckner. (Findings of Fact, Conclusions of Law, and

Recommendations, Doc #248, at 11 & n.10.)  Defendants argue that the Special Master's

valuation of the Warranty Reimbursement component is too high ($87,056,149).  However, this

is only one component of the settlement and a conservative estimate based upon a 50% denial

rate.  So too, if one was to even value this component at zero dollars, the other four components

still total $135,876,682 ($222,932,831 - $87,056,159 = $135,876,682).   A 25% fee of

---

[3] Supplemental Memorandum on Findings of Fact, Conclusions of Law and Recommendations of the Special Master Relating to Class Plaintiffs' Motion for Attorneys' Fees and Costs (Doc #252 at 1).

$135,876,682 amounts to $33.9 million.  Clearly, any fair and reasonable evaluation of the evidence supports the Special Master's recommendation of $30 million for attorneys' fees in this case.[4]

Defendants contend that the Special Master failed to properly value the settlement so as to render an award of attorneys' fees.  This clearly is not the case.  The Special Master carefully reviewed all of the evidence, including each party's expert opinions, and then determined that the fair value of the settlement was $222,932,831.  The Special Master valued each component of the settlement separately, based upon the evidence presented.  The Special Master used the "lower estimates of value" contained in the 2/4/11 Rebuttal Report of Kirk D. Kleckner and did not include the $39,250,000 for fees and costs. (Findings of Fact, Conclusions of Law, and Recommendations, Doc #248, at 11.)  The factual basis for the Special Master's valuation of each component is set forth in Exhibit 1 attached hereto (a true and correct copy of pages 4-6 from the 2/4/11 Rebuttal Report of Kirk D. Kleckner, Doc #237-1).

**B.     The Special Master Properly Applied the Percentage of the Fund Method**

In cases involving the creation of a common fund of benefits to the class, attorney fees should be awarded pursuant to the "common fund doctrine." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 &.S. 375 (1970); *Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).  The doctrine provides that "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re General Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 820 n.39 (3d Cir. 1995), *cert. denied*, 535 U.S. 824 (1995).  The Supreme Court stated that in common fund cases

---

[4] It should further be noted that Plaintiffs originally requested $37.5 million in fees, which would have amounted to 16% of the $222,932,831 value assigned by the Special Master.

"a reasonable fee is based on a percentage of the fund bestowed on the class," *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  The First Circuit uses the percentage method. *See In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997).

In the First Circuit, courts have <u>discretion</u> to apply the percentage of the fund method in a common fund case. *In re Thirteen Appeals*, 56 F.3d at 307.  Courts favor the percentage method over the lodestar method.  The percentage method is less burdensome for courts to administer than the lodestar method, because it does not require the judge to meticulously review numerous attorneys' time records to determine the necessity and reasonableness of every hour expended. *Id*.  The percentage method also "lessens the possibility of collateral disputes that might transform the fee proceeding into a second major litigation." *Id*.  The percentage method more closely aligns the interests of plaintiffs' counsel with the interests of the class.  The percentage method takes away plaintiffs' counsel's incentive to delay settlement and the incentive to bill as many hours as possible. *Id*.  Because the percentage method is result-oriented and not process-oriented, it "better approximates the workings of the marketplace." *Id.  See also Bussie v. Allmerica Fin. Corp.,* Civ. 97-40204-NMG, 1999 U.S. Dist. LEXIS 7793, at *5 (D. Mass. May 19, 1999); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003); *In re Lloyd's Am. Trust Fund Litig.*, 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, at *74 (S.D.N.Y. Nov. 26, 2002). In the First Circuit, in cases such as this, the lodestar approach is simply not required. *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 U.S. Dist. LEXIS 68419, at *8 (D. Mass. Aug. 30, 2009) (Court awarded $70,000,000 in attorneys' fees, or 20 % of the $350,000,000 benefits, in conjunction with settlement of RICO claims).  The Court may

even use a **combination of methods** to arrive at a fair and just award. *In re Thirteen Appeals,* 56

F.3d at 308 ("Given the peculiarities of common fund cases and the fact that each method, in its

own way, offers particular advantages, we believe the approach of choice is to accord the district

court discretion to use whichever method, POF or lodestar, best fits the individual case. We so

hold, recognizing that the discretion we have described may, at times, involve using a

combination of both methods when appropriate.")

Applying these principles to this case, the Court should first make a reasonable estimate

of the value of the settlement. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d

283, 334 (3d Cir. 1998); *In re General Motors*, 55 F.3d at 822.  This is exactly what the Special

Master did.  As the benefits in this case are readily quantifiable and generate a true value for

Class Members, they qualify as a **"common fund."** *In re TJX Cos. Retail Sec. Breach Litig.*, 584

F. Supp. 2d 395, 402 (D. Mass 2008) (quoting *Boeing*, 44 U.S. at 479) (permitting application of

the percentage-of-fund methodology to a **"lump-sum judgment"** to which 'each member of a

certified class has an undisputed and mathematically ascertainable claim'").  Then the Court

should award a reasonable percentage of that value as attorneys' fees. *Blum*, 456 U.S. at 900.

The components of the Settlement Agreement (Doc #160) are able to be easily valued to

determine the total value of the common fund of benefits.  In his 2/4/11 Rebuttal Report, Mr.

Kleckner provided a range of alternative estimates for the benefits provided by the settlement.

The Special Master then further refined that analysis to come up with his valuation figure of

$222,933,831.[5]

The Special Master's abbreviated lodestar cross-check was also appropriate.  As a cross-

check, the lodestar computation does not involve mathematical precision or bean-counting. *In re*

---

[5] It should be noted that this figure does not include either Plaintiffs' requested attorneys' fees of $37.5 million and costs of $1.75 million nor the Special Master's recommended fees of $30 million and costs of $1,195,234.43

*Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) (quoting *Prudential*, 148 F.3d at

333).  Class Counsel need only submit their summary of the hours expended. *In re Rite Aid*, 396

F.3d at 306-307; *In re AT&T Corp.*, 455 F.3d 160, 169 n.6 (3d Cir. 2006); *Prudential*, 148 F.3d

at 342.  The lodestar value is computed applying counsel's current billing rates to all the hours

expended on the prosecution of the case. *Missouri v. Jenkins*, 491 U.S. 274 (1989) ("[I]t is

acceptable to use counsel's current rates to compensate them for the lengthy delay in payment.")

     Class Counsel herein expended 23,191 hours in the prosecution of this case, and, in his

cross-check, the Special Master reduced the hours to 15,468 (a lodestar amount of $7,734,000).

His recommendation of $30 million as a fee award in this case amounts to a multiplier of 3.88,

which is on the conservative side of approved multipliers. (Plaintiffs' Brief in Support of Motion

for Attorneys' Fees and Costs, Doc #175, at 17-18.).  *See also New England Carpenters Health

Benefits Fund*, 2009 U.S. Dist. LEXIS 68419, at *10 ($70,000,000 attorneys' fees award

represented a lodestar multiplier of 8.3); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D.

Mass. 1998) (attorneys' fees awarded would amount to a multiplier of 8.9).

     Respectfully, given the value of the common fund of benefits, the complexity and

duration of the litigation, the risk of non-recovery faced by Class Counsel at the outset of this

litigation, and the tremendous amount of work performed, the fee award recommended by the

Special Master is reasonable, appropriate, and in no way excessive.  Defendants have pointed to

nothing substantive that would prohibit this Court from using its equitable powers to award Class

Counsel their fees using the percentage of the fund method.  This Court clearly has the discretion

to use the percentage of the fund method.

III.   **THE SPECIAL MASTER CORRECTLY DETERMINED THAT DEFENDANTS ARE PAYING ATTORNEYS' FEES PURSUANT TO THE NEGOTIATED SETTLEMENT AGREEMENT:**

FED. R. CIV. P. 23(h) empowers a court in a certified class action to "award reasonable attorneys' fees and nontaxable costs that are authorized by law **or by the parties' agreement**." (emphasis added).  The Settlement Agreement provides that Defendants shall pay an award of attorneys' fees and expenses (Settlement Agreement, Doc. #160, §§ VI.C.2 and VI.C.3 at 20: "Class Counsel fees and expenses shall be paid entirely and exclusively by Defendants . . ."; "Any Class Counsel fees and expenses awarded shall be paid by Defendants to Class Counsel . . .")  Defendants acknowledge that the Settlement Agreement authorizes an award of attorneys' fees and expenses. (Corrected Memorandum, Doc #209, at 14) ("The Settlement Agreement Authorizes an Award of Attorneys' Fees and Expenses[.]").  Where the fee award is sought pursuant to an agreement between the parties in a federal class action settlement, federal law governs the decision. *See, e.g., Weinberger,* 925 F.2d at 522 & n.5 (noting use of court's equity powers in evaluating fee petitions is a matter of federal common law).

IV.   **THIS IS A "COMMON BENEFIT" SETTLEMENT AND THE VALUE SHOULD BE BASED ON THE FULL VALUE OF THE BENEFITS MADE AVAILABLE TO THE CLASS:**

   A.   **This Is a Common Benefit Settlement**

Defendants' contention that the common fund doctrine is inapplicable to the award of attorneys' fees in this case is unpersuasive.  The Settlement Agreement that the Court has preliminarily approved provides multiple common benefits to class members.  The Special Master has already detailed the common benefits to class members (Findings of Fact, Conclusions of Law and Recommendations, Doc. #164.)  The *Dewey* Court recently rejected the

13

same plainly erroneous argument of these same VW Defendants that settlement of a property damage class action with common benefits to class members does not create a common fund.

It is precisely common benefits of this nature that the United States Supreme Court recognized as creating a common fund in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). "Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.* at 478.

Following *Boeing*, Courts have repeatedly held that there need not be an actual cash fund created by a class settlement for a court to apply a percentage of the fund method in calculating attorneys' fees. *See In re Air Crash Disaster at Florida Everglades on December 19, 1972*, 549 F.2d 1006 (5th Cir. 1977) (no fund-in-court necessary for attorneys' fees awarded as percentage of benefit); *In re General Motors, Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1994), *cert. denied*, 516 U.S. 824 (1995) (on remand, district court "should probably use the percentage-of-recovery rather than the lodestar method" in awarding attorneys' fees in non-cash settlement); *Dewey*, 728 F. Supp. 2d at 591 (applying common fund principles despite the fact that no separate fund was established by the settlement).[6]  In *General Motors*, the Third Circuit explained that a court may employ a percentage of the fund methodology where, as here, attorneys' fees are paid by a defendant pursuant to a separate agreement and the amount of

---

[6] Defendants contend that a number of cases cited by Plaintiffs in support of their Motion for Attorneys' Fees are inapplicable because the settlement does not establish a finite monetary fund. (Corrected Memorandum, Doc #209, at 18) (discussing *In Re Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75 (D. Mass. 2005); *In Re Lloyd's Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. 2002); *United States v. 8.0 Acres of Land*, 197 F.3d 24 (1st Cir. 1999)).  However, as recognized in *Dewey* and other decisions discussed herein, the absence of a finite monetary fund does not preclude a court from treating a settlement as a common fund settlement and applying a percentage of the fund methodology to calculate attorneys' fees.

attorneys' fees paid does not reduce the total benefit available to class members.[7]
Notwithstanding the fact that "the fee award was 'to be paid by General Motors Corporation and
will in no way reduce the recovery to any of the settlement class members[,]'" *In re General
Motors,* 55 F.3d at 819 (quoting order of court below), the Third Circuit concluded that "the fee
agreement clearly does impact [objecting class members'] interests, as it is, for practical
purposes, a constructive common fund." *Id.* at 820.

Defendants argue that *General Motors* is distinguishable because the value of the
settlement and the amount of attorneys' fees to be awarded were not in dispute. (Corrected
Memorandum, Doc #209, at 19.)  "The absence of such disputes permitted the Court[] to easily
compare counsels' uncontested fee requests to the value of the settlements.  Here, the parties are
vigorously disputing both the value of settlement and counsels' fee request." *Id.*

In *In re Air Crash Disaster at Florida Everglades on December 19, 1972*, 549 F.2d 1006
(5th Cir. 1977) is instructive.  There, the Court determined a "fund-in-court" was not necessary
for it to award attorneys' fees as a percentage of benefit.  The court simply employed
"combination of traditional and pragmatic" concepts to determine a fund existed within the
control of the court, notwithstanding whether it was actually in the hands of the court.  *Id*. at
1018.  *See also In re General Motors*, 55 F.3d at 821; *Dewey*, 728 F. Supp. 2d at 591.  So too,
despite the settlement being difficult to value, the *General Motors* court found that case most
resembled a "common fund" case. *In re General Motors,* 55 F.3d at 822.

In *Dewey*, under very similar circumstances to this case and with identical defendants and
defense counsel, the court found that "[t]he percentage-of-recovery method applies where there
is a common fund or where the economic reality of the settlement is akin to a common fund."

---

[7] "The rationale behind the percentage of recovery method also applies in situations where, although the parties
claim that the fee and settlement are independent, they actually come from the same source." *In re General Motors*,
55 F.3d at 821.

*Dewey,* 728 F. Supp. 2d at 591.  *Dewey* used "common fund" principles and percentage of the

fund to calculate attorneys' fees in a settled class action, even though the settlement did not

establish an actual fund from which settlement benefits and attorneys' fees were drawn and even

though Volkswagen disputed the amount of attorneys' fees.  The *Dewey* Court correctly

observed: "The Court can apply the 'common fund' principles when the fees and settlement are

paid by the same source even though the fees are not drawn from a fund established for the

class." *Dewey*, 728 F. Supp. 2d at 591 (citing *In re General Motors*, 55 F.3d at 821).

Defendants' reliance on the fact that the attorneys' fees will not be drawn from a fund

established for the benefit of the class and will not diminish the benefits available to the class is a

meaningless distinction without case law or policy support because the fees and the settlement

benefits for the class are paid from the same source: the Volkswagen Defendants.  As recognized

in *General Motors* and *Dewey*, Defendants' formalistic and tortured distinction ignores economic

reality and seeks to elevate form over substance.  The fact that Class Counsel have secured

significant benefits for Class Members that by agreement <u>will not be reduced</u> by an award of

attorneys' fees in and of itself is a <u>substantial benefit to Class Members</u>.

**B.     The Court Should Not Defer Ruling on Attorneys' Fees**

Defendants also suggest a burdensome approach to fee valuation based on an uncertain

"claims made" approach, thereby requiring this Court to undertake a continuing role for an

indeterminate period of time. (Defendants' Objection, Doc #253, at 5.)  Defendants argue that

the most "efficient" approach is to wait until the claim submission deadline of June 27, 2011, and

then have the Court base its fee calculation on claims actually made. (Defendants' Objection,

Doc #253, at 5.)  Defendants erroneously suggest that once the number and value of

reimbursement claims are known, the "disputed components of the settlement valuation can be

calculated with better precision, using the claims number and value as inputs." This is wrong for two reasons.  First, claims which may be submitted by June 27, 2011 have no bearing on the proper calculation of attorney's fees.  Second, claims actually made <u>have nothing to do with denial rates</u>.

Attorneys' fees should be calculated by applying the percentage of the fund method to the full value of benefits available to class members, not to actual claims.[8]  Further delay would unnecessarily burden the Court and provide <u>no</u> additional relevant information.  Defendants' approach requires continued and unnecessary Court supervision, wastes judicial resources and promotes further disputes should either side challenge the figures reported in June.  Additionally, the Ten-Year Enhanced Oil Sludge Warranty Extension benefit does not expire until 2014 (not June, 2011) , further delaying finality and requiring this Court to wait for several more years to value this benefit should it choose the Defendants' "claims made"/"wait and see" approach.

### C.    The Settlement Value Should Be Based on the Full Value of the Benefits Made Available to the Class

The principle that percentage of the fund should be applied to the full class benefit is not new.  It was approved by the Supreme Court over thirty years ago.  *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) (holding district court properly awarded attorneys' fees from the total amount of a class action judgment, including the *unclaimed* portion of the judgment) (emphasis added).  The Second Circuit has held that a district court erred in calculating an award of attorneys' fees based on claims made against the fund, rather than the entire fund available to the class. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007).  The Second Circuit rejected the "windfall" argument, appropriately reasoning that "the entire fund,

---

[8] Defendants' "claims made" approach ignores the well-settled precedent that proper valuation is based upon a percentage of the full value of the settlement.  This principle was first recognized by the Supreme Court in *Boeing v. Van Gemert*, 444 U.S. 472 (1980), and more recently by *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007), along with numerous other cases.

and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class." "[A]n allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, <u>whether claimed or not</u>." *Id*. (emphasis added).  The Second Circuit also stated:  "We side with the [11th and 9th] Circuits that take this approach." *Id*. (emphasis added).

The Eleventh Circuit has also held that POF fees should be based on the value of the fund -- not claims actually made. *See Waters v. International Precious Metals Corp.*, 190 F.3d 1291,1297 (11th Cir. 1999) ("In *Boeing Co. v. Van Gemert*, the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.").  And the Ninth Circuit has reached the same result. *Williams v. MGM-PATHE Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion [fn] by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar.").

Recent decisions which also support calculation of attorneys' fees based upon available benefits, rather than benefits actually claimed, include *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010) ("In choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.'"); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 815 (E.D. Wis. 2009) ("The court finds that an award of attorneys' fees is appropriately based upon the total common

fund and not on the amount claimed against it. . . . Therefore, an award of attorneys' fees should be calculated based upon the full benefit.").

## V.    CONCLUSION:

This M.D.L. case was first assigned to this Court on August 29, 2006.  On October 23, 2008, the Court assigned the ongoing management to the Honorable Allan van Gestel, Judge Retired as Special Master.  Judge van Gestel has shepherded this case though extremely contentious, labor-intensive, hard-fought litigation for the past 2 years and 4 months.  Through his good offices, perseverance and persistence, the subject settlement agreement was finally hammered out.  Thereafter, he reviewed voluminous evidence including briefs, documents, deposition testimony and expert reports proffered by each side with respect to an award of fees and costs.  He, thereafter, conducted a full and complete hearing on February 14, 2011, when both sides were given unlimited time to make whatever presentation they chose in arguing as to the fair amount of fees and costs to be recommended.

Thereafter, on February 22, 2011, the Special Master issued a carefully-reasoned and crafted recommendation of fees in the amount of $30,000,000 and costs in the amount of $1,195,234.43.  Later, after reviewing his findings and recommendations to clear up several minor mathematical anomalies, he reaffirmed his recommendation of fees and costs.

As shown herein, Defendants' Objections to the Special Master's Findings of Facts, Conclusions of Law and Recommendations are non-persuasive and unmeritorious.

It is respectfully requested that this Court, in conducting its Rule 53(f) de novo review, affirm and adopt the Special Master's valuation of this settlement ($222,932,131), recommendation of attorneys fees of $30,000,000 (13.4% of $222,932,131) and award of costs of $1,195,234.43.

For the foregoing reasons, Plaintiffs respectfully request that the Court adopt the Special

Master's Findings of Fact, Conclusions of Law and Recommendations Relating to Class

Plaintiffs' Motion for Attorneys' Fees and Costs and overrule Defendants' Objections thereto.


Dated:  3/9/11                                              Respectfully submitted,

                                                            _/s/ Peter J. McNulty_____
                                                            Peter J. McNulty
                                                            McNULTY LAW FIRM
                                                            827 Moraga Drive
                                                            Los Angeles, CA  90049
                                                            (310) 471-2707
                                                            (310) 472-7014 (fax)
                                                            Email: peter@mcnultylaw.com

                                                            Kirk D. Tresemer
                                                            IRWIN & BOESEN, P.C.
                                                            4100 E. Mississippi Ave., Ste. 1900
                                                            Denver, CO  80246
                                                            (303) 999-9999
                                                            (303) 320-1915 (fax)
                                                            Email: ktresemer@coloradolawyers.com

                                                            Russell D. Henkin
                                                            BERGER & MONTAGUE, P.C.
                                                            1622 Locust Street
                                                            Philadelphia, PA  19103
                                                            (215) 875-3000
                                                            (215) 875-4604 (fax)
                                                            Email: rhenkin@bm.net

## CERTIFICATE OF SERVICE

I, Sean T. Roberts, hereby certify that this document, filed through the ECF system, will be sent electronically on March 9, 2011 to the registered participants as identified on the Notice of Electronic Filing (NEF) and to the following recipients:

Hon. Allan van Gestel (via email attachment)
JAMS
One Beacon Street, Suite 2300
Boston, MA  02108
(617) 228-0200
(617) 228-0222 (fax)
Email: allanvangestel@aol.com
Email: pgelinas@jamsadr.com

Jeffrey L. Chase
Daniel V. Gsovski
Herzfeld & Rubin, P.C.
125 Broad Street
New York, NY  10004
 (212) 471-8500
 (212) 344-3333 (fax)
jchase@herzfeld-rubin.com
dgsovski@herzfeld-rubin.com

  _/s/ Sean T. Roberts_____
Sean T. Roberts