UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                      )
IN RE: VOLKSWAGEN AND AUDI            )   CIVIL ACTION
WARRANTY EXTENSION LITIGATION         )   NO. 07-md-01790-WGY
_____)


MEMORANDUM AND ORDER

YOUNG, D.J.                                    February 10, 2015

## I.    INTRODUCTION

Before the Court are numerous motions for attorneys' fees
and costs incurred in the course of a protracted multidistrict
class action litigation, undertaken on behalf of a class of
consumers (the "Class Plaintiffs") who owned or leased certain
Volkswagen Passat and Audi A4 vehicles.  After settling their
consolidated case against Volkswagen of America, Inc.,
Volkswagen AG, and Audi AG (collectively, the "Defendants"), the
Class Plaintiffs moved for attorneys' fees and expenses pursuant
to their settlement agreement, and this offshoot of the
underlying litigation ensued.  Judge Joseph L. Tauro ("Judge
Tauro"), then the presiding judge in this case, awarded
$30,000,000 in fees to lead counsel for the Class Plaintiffs
("Class Counsel"), but the judgment was vacated by the First
Circuit and remanded for further proceedings.

This Court's task is to determine the appropriate fees and
expenses (1) for Class Counsel's work undertaken before Judge

Tauro's award, (2) for Class Counsel's work undertaken after the
award, and (3) for the work of other counsel representing
subsets of the Class Plaintiffs ("Non-Class Counsel") since the
beginning of this litigation.

### A.    Procedural Posture

As the prior procedural history of this litigation has by
now been recounted in several opinions, it will be reviewed here
with a primary focus on the attorneys' fees motions pending
before this Court.  On August 29, 2006, the Judicial Panel on
Multidistrict Litigation ("JPML") ordered four statewide class
actions pending in separate districts to be consolidated and
transferred to the District of Massachusetts, pursuant to 28
U.S.C. § 1407.  In re Volkswagen & Audi Warranty Extension
Litig., 452 F. Supp. 2d. 1354, 1355 (J.P.M.L. 2006).  The case
was assigned to Judge Tauro, id. at 1356, who ably managed the
litigation and approved its settlement on March 24, 2011.  Mem.,
Mar. 24, 2011 ("Final Settlement Approval"), ECF No. 271.

On the same day, Judge Tauro granted the Class Plaintiffs'
motion for attorneys' fees and costs, Mot. Attys.' Fees & Costs
(Class Counsel Motion for Attorney Fees"), ECF No. 174, awarding
Class Counsel $30,000,000 in fees.  See In re Volkswagen & Audi
Warranty Extension Litig. ("In re VW (Original Award)"), 784 F.
Supp. 2d 35 (D. Mass. 2011).  On appeal, however, the First
Circuit vacated the award and remanded on July 27, 2012, so that

Class Counsel's fees could be calculated in accordance with Massachusetts, not federal, law.  See In re Volkswagen & Audi Warranty Extension Litig. ("In re VW (First Circuit)"), 692 F.3d 4 (1st Cir. 2012).  The remanded case was reassigned to this Court on October 10, 2012, pursuant to Local Rule 40.1(k)(2). Elec. Notice, Oct. 10, 2012, ECF No. 344.

In addition to Class Counsel's initial motion for attorneys' fees and costs, other fees-related motions are pending before the Court.  Class Counsel has filed a motion for additional attorneys' fees and costs incurred after Judge Tauro's original award.  Mot. Add'l Attys.' Fees & Costs, ECF No. 373; Class Counsel's Br. Supp. Mot. Add'l Attys.' Fees & Costs ("Class Counsel Add'l Fees Mem."), ECF No. 374.  Moreover, numerous motions for fees and costs from the beginning of this litigation have been filed by Non-Class Counsel:

(1)  Shapiro Haber & Urmy LLP seeks fees and expenses for work it performed as liaison counsel to Class Counsel.  Appl. Liaison Counsel Shapiro Haber & Urmy LLP Award Attorneys' Fees & Reimbursement Expenses, ECF No. 371; see also Aff. Thomas G. Shapiro Supp. Liaison Counsel Shapiro Haber & Urmy LLP's Appl. Award Attys.' Fees & Reimb. Exps. ("Shapiro Aff."), ECF No. 372.

(2)  Jonathan Waller, who worked as an attorney at Campbell, Waller and Poer, LLC, Waller Law Office, PC, and Haskell

Slaughter Young & Rediker, LLC during his involvement in this litigation, seeks fees and expenses for the work he and his colleagues undertook at the direction of Class Counsel. Mot. Waller Firms Award Attys.' Fees & Exps., ECF No. 378; see also Mem. Law Waller Firms Supp. Mot. Award Attys.' Fees & Exps. ("Waller Memorandum"), ECF No. 382.

(3) Chimicles & Tikellis LLP seeks fees and reimbursement of expenses for work they completed at the request of Class Counsel. Mot. Chimicles & Tikellis LLP Award Attys.' Fees & Reimb. Exps., ECF No. 361; see also Mem. Law Supp. Mot. Chimicles & Tikellis LLP Award Attys.' Fees & Reimb. Exps. ("Chimicles & Tikellis Memorandum"), ECF No. 362.

(4) Fox Rothschild LLP seeks fees and expenses for its work initiating and litigating a statewide class action in New Jersey, and for the work it undertook for Class Counsel after consolidation. Mot. Fox Rothschild LLP Award Attys.' Fees & Reimb. Exps., ECF No. 367; see also Mem. Law Supp. Mot. Fox Rothschild LLP Award Attys.' Fees & Reimb. Exps. ("Fox Rothschild Memorandum"), ECF No. 380.

(5) The four firms, Progressive Law, Reinhardt Wendorf & Blanchfield, Wayne, Richard & Hurwitz LLP, and Bock & Hatch, LLC, jointly seek fees and expenses for their work representing a member of the Class Plaintiffs in the Northern District of Illinois and assisting Class Counsel.

Mot. Yarkony's Counsel Award Attys.' Fees & Reimb. Exps. ("Yakorny Motion"), ECF No. 376; see also Mem. Law Supp. Yarkony Counsel's Mot. Attys.' Fees & Reimb. Exps. ("Yakorny Memorandum"), ECF No. 377.

(6) Resnick & Moss, P.C., a firm that served as co-counsel in an Illinois class action lawsuit which was eventually absorbed into this litigation, seeks fees and expenses for the work it undertook on behalf of its clients that benefited the entire Class. Resnick & Moss, P.C.'s Mot. Award Atty. Fees & Reimb. Exps. ("Resnick & Moss Motion"), ECF No. 385; see also Mem. Supp. Resnick & Moss, P.C.'s Mot. Award Atty. Fees & Reimb. Exps. ("Resnick & Moss Memorandum"), ECF No. 386.

(7) Jackson & Tucker, Sacks & Weston, and Vaughan Law Group (collectively, "Jackson Counsel"), firms that initiated statewide class actions in Florida, Pennsylvania, and Illinois which were eventually absorbed into the present litigation, jointly seek an award of fees and expenses incurred since the beginning of their separate lawsuits. Jackson & Tucker, Sacks & Weston, & Vaughan Law Group's Mot. Award Attys.' Fees & Reimb. Exps., ECF No. 365; see also Jackson & Tucker, Sacks & Weston, & Vaughan Law Group's Br. Supp. Mot. Award Attys.' Fees & Reimb. Exps. ("Jackson Counsel Supplemental Brief"), ECF No. 366.

(8)    Mark Schlachet and Brian Ruschel, attorneys who initiated a
       statewide class action in Ohio that was eventually absorbed
       into the present litigation, seek compensation for their
       efforts in Ohio and their contribution to this case's
       settlement.  Mot. & Appl. Attys.' Fees, Costs, & Exps. -- &
       Submission Time Rs. (& Req. Evidentiary Hr'g) ("Schlachet &
       Ruschel Original Request for Attorneys' Fees"), ECF No.
       168; Mot. Brian Ruschel Award Atty. Fees & Costs, ECF No.
       358; see also Mem. Supp. Ohio Counsel Mark Schlachet's Mot.
       Award Attys.' Fees & Costs ("Schlachet Memorandum"), ECF
       No. 357; Mem. Supp. Ohio Counsel Brian Ruschel's Mot. Award
       Attys.' Fees & Costs ("Ruschel Memorandum"), ECF No. 359;
       Am. Mot. Brian Ruschel Award Atty. Fees & Costs, ECF No.
       375.

(9)    Thomas Sobran, who is the counsel of record for two members
       of the Class Plaintiffs and who originally initiated a
       Massachusetts-based class action lawsuit, seeks fees and
       expenses for the work he performed for his clients and at
       the direction of Class Counsel after consolidation.  Mot.
       Thomas P. Sobran Award Attys.' Fees & Reimb. Exps., ECF No.
       370; see also Decl. Thomas P. Sobran Supp. Appl. Attys.'
       Fees & Reimb. Exps. ("Sobran Decl. Supp. Appl. Attys.'
       Fees"), ECF No. 353; Supp. Mot. Thomas P. Sobran Award
       Attys.' Fees & Reimb. Exps., ECF No. 398.

In addition to these motions, Jackson Counsel has jointly
filed a request, separate from their joint fees motion, for this
Court to establish a formal process for allocating fee awards
among Class Counsel and Non-Class Counsel. Jackson & Tucker,
Sacks & Weston, & Vaughan Law Group's Req. Joint Appl.
Attorneys' Fees & Establishment Process Distribution, ECF No.
356. Class Counsel has filed a brief in opposition to this
request. Resp. Class Counsel Req. Jackson & Tucker, Sacks &
Weston & Vaughan Law Group Joint Appl. Attys.' Fees & Est.
Process Dist., ECF No. 360. Jackson Counsel have filed a reply
and a number of supplemental briefs. Jackson & Tucker, Sacks &
Weston, & Vaughan Law Group's Reply Class Counsel's Resp. Req.
Joint Appl. Attys.' Fees & Est. Process Dist., ECF No. 364; see
also, e.g., Jackson & Tucker, Sacks & Weston, & Vaughan Law
Group's Supp. Req. Est. Process Dist., ("Jackson Fee Supplement
Request"), ECF No. 388; Jackson & Tucker, Sacks & Weston, &
Vaughan Law Group's Supp. Br. Supp. Mot. Award Attys.' Fees &
Reimb. Exps. ("Jackson Fee Supplement Brief"), ECF No. 389.

Class Counsel has submitted briefing commenting on all of
Non-Class Counsel's requests and their respective contributions
to the resolution of this consolidated litigation. Comments
Class Counsel Concerning Non-Class Counsel's Submissions Fees &
Costs ("Class Counsel Comments"), ECF No. 394. Some Non-Class
Counsel have disputed these comments in opposition briefing.

See Resp. Thomas P. Sobran Comments Class Counsel Concerning Non-Class Counsel's Submissions Fees & Costs ("Sobran Response to Class Counsel Comments"), ECF No. 399; Jackson & Tucker, Sacks & Weston, and Vaughan Law Group's Cons. Reply to Defs.' Opp'n Mot. Award Attys.' Fees & Reimb. Exps. & Class Counsels' "Comments" Concerning Non-Class Counsels' Submissions Fees & Costs, ECF No. 407.

On February 25, 2013, the Defendants submitted an omnibus opposition to all of Class Counsel and Non-Class Counsel's pending motions for attorneys' fees. Defs.' Opp'n Pls.' Class & Non-Class Counsel's Mots. Atty. Fees & Exps. ("Defs.' Opp'n"), ECF No. 395. Several replies from Class and Non-Class Counsel followed. E.g., Reply Mem. Law. Supp. Yarkony Counsel's Mot. Attys.' Fees & Reimb. Exps., ECF No. 402; Reply Br. Chimicles & Tikellis LLP Supp. Mot. Award Attys.' Fees & Reimb. Exps. ("Chimicles & Tikellis Reply"), ECF No. 403; Reply Mem. Further Support Fox Rothschild LLP's Mot. Award Attys.' Fees & Reimb. Exps. ("Fox Rothschild Reply"), ECF No. 404; Waller Firms' Reply Br. Supp. Appl. Attys.' Fees & Exps., ECF No. 405; Class Counsel's Reply Br. Supp. Mot. Add'l Attys.' Fees & Costs, ("Reply Additional Attorneys' Fees"), ECF No. 406; Jackson & Tucker, Sacks & Weston, and Vaughan Law Group's Cons. Reply to Defs.' Opp'n Mot. Award Attys.' Fees & Reimb. Exps. & Class

Counsels' "Comments" Concerning Non-Class Counsels' Submissions
Fees & Costs, ECF No. 407.

**B.   Facts**

**1.   The Lawsuit and Substantive Terms of Settlement**

This litigation, and the separate class action lawsuits
which gave rise to it, stemmed from allegations of defectively-
designed engines in certain Audi and Volkswagen automobiles.   In
re VW (First Circuit), 692 F.3d at 8.   Purportedly, the 1.8
liter turbo-charged engines in Audi vehicles from the 1997 to
2004 model years and Volkswagen Passat vehicles from the 1998 to
2004 model years were unusually prone to the formation of oil
sludge and coking deposits, even when maintained according to
the Defendants' recommendations.   Id. at 7-8; Class Counsel
Add'l Fees Mem. 1.   These substances allegedly cause engine
damage and failure, necessitating costly repairs or total engine
replacement.   Class Counsel Add'l Fees Mem. 1.

The case settled pursuant to the terms of an agreement
first proposed to Judge Tauro on September 13, 2010, and which
he finally approved without changes on March 24, 2011.   See
Final Settlement Approval 1-2, ECF No. 271; see also Agrmt. Of
Settl. ("Settlement Agreement"), ECF No. 160.   The First Circuit
has aptly summarized the substantive terms of the agreement:

> The settlement stated it was "not an admission by
> Defendants of any liability or wrongdoing whatsoever."
> The settlement class consisted of all current and

former owners and lessees of model year 1997-2004 Audi
A4 vehicles or model year 1998-2004 Volkswagen Passat
vehicles equipped with 1.8 liter turbo engines,
comprising a total of 479,768 vehicles. The proposed
settlement offered several benefits to the class,
including (1) payment for engine repair or replacement
costs, (2) a warranty extension for a subset of the
vehicles, (3) a one-time $25 oil change discount for a
subset of the vehicles, and (4) an education and
information program designed to inform class members
of the risks to their engines and means to prevent
those risks. The proposed settlement did not place a
monetary value on these benefits.

The proposed settlement created an "Oil Sludge
Settlement Administrator" to oversee the claims
process for class members. The administrator was to
record every claim for reimbursement, to determine
whether the claim was to be allowed or denied, and to
explain the basis for any claim that was denied.

The proposed settlement contained a procedure for
providing notice to all settlement class members of
the certification and fairness hearing and the
settlement agreement. Notice of the proposed
settlement was to be prepared by defendants, reviewed
and approved by class counsel, and disseminated by the
settlement administrator.

The proposed settlement also "reserve[d] to the
[district] [c]ourt exclusive and continuing
jurisdiction over this action, the [p]arties, . . .
and this Settlement Agreement for purposes of
administering, supervising, construing, and enforcing
this Settlement Agreement."

In re VW (First Circuit), 692 F.3d at 9 (quoting Settlement

Agreement).

### 2. Attorneys' Fees

On February 7, 2007, early in the life of the consolidated

case, Judge Tauro entered a procedural pretrial order

organizing, among other things, primary roles for Plaintiffs'

counsel.  See Pretrial Order No. 1, ECF No. 4.  Merrill G.
Davidoff and Edward W. Millstein of Berger & Montague, P.C.
("Berger & Montague") were designated lead counsel.  Id. at 3.
Kirk D. Tresemer and Randal R. Kelly of Irwin & Boesen, P.C.
("Irwin & Boesen"), and Peter J. McNulty of McNulty Law Firm
("McNulty") were collectively designated as co-chairs of the
Plaintiffs' Executive Committee (collectively, with Berger &
Montague, "Class Counsel").  Id.  The Boston-based firm of
Shapiro Haber & Urmy LLP ("Shapiro") was designated liaison
counsel to the Plaintiffs.  Id.

        Understandably, due to the size and complex nature of this
case, Class Counsel have engaged the assistance of not only
Shapiro, but also a plethora of other law firms, most of which
became involved with this case because their individual class
action lawsuits were consolidated with this litigation.  At
least some of these firms allege that they were actively
persuaded by Class Counsel to absorb their lawsuits into this
one.

        A few other Non-Class Counsel firms indicate that they have
been involved with this specific case since well before its
transformation into a multidistrict action.  In March and April
2006, several months before the JPML's order, McNulty entered
into an agreement with four other firms pursuing similar

lawsuits against the Defendants: Campbell, Waller & Poer, LLC, Vaughan & Maxwell, Jackson & Tucker, P.C., and Sacks & Weston. See Jackson Fee Supplement Request, Ex. 1, Agreement Regarding Division Fees ("Pre-Consolidation Fee Agreement") 2, ECF No. 388-1. The agreement established a structure for the firms to coordinate litigation strategies and allocate responsibilities among them. See id. at 2-7. The agreement also provided for the division of fees. Each firm, for example, was allocated an equal interest in "up front" fees, comprising the first thirty percent of the contingency fees received by the parties. Id. at 3. The remaining seventy percent of fees, termed "hold-back" fees, were to be distributed according to the consensus of all five participating firms. Id. at 3-5. The parties further agreed to submit any dispute relating to the interpretation or application of the agreement to mediation and then binding arbitration, to take place in Atlanta, Georgia. Id. at 6.

Usually, the Court is not burdened to address the details of these kinds of arrangements between class and non-class counsel. But the attorneys' fees issue in this case only has become more unraveled over time. Early on in the fees portion of this case, Judge Tauro and Special Master Allan van Gestel, a distinguished former justice of the Massachusetts Superior Court, established a clear procedure for determining fees, providing that the Special Master would consider one attorneys'

fees petition from Class Counsel and then award a single fee
amount, to be allocated at Class Counsel's discretion. See Mem.
& Order Regarding Procedure Fees & Costs Appl. ("Fees Procedures
Order") 2-3, ECF No. 178; Supp. Mem. Process Attys.' Fees &
Costs Hr'g ("Supp. Fees Procedures Order") 7-8, ECF No. 211.
Judge Tauro and Special Master van Gestel further prescribed
that after the conclusion of this process and any appeals, Non-
Class Counsel would "have a right to a hearing and evaluation by
the Special Master should any of those firms disagree with the
amount of compensation allocated to them." Fees Procedures
Order 3; see also Supp. Fees Procedures Order 8 (emphasizing
that "the Special Master, in his discretion, will be able to
craft a process appropriate for the next steps in the fee
allocation distribution" only after the exhaustion of appeals,
"for only then will the extent and nature of any concerns or
complaints by non-class counsel be known").

    The parties never reached the final phase of this
procedure. On March 24, 2011, Judge Tauro issued his order
adopting the Special Master's recommendation to award
$30,000,000 in fees and $1,195,234.43 in costs and expenses to
Class Counsel. In re VW (Original Award), 784 F. Supp. 2d at
47. As is permitted by federal law, the award was based on a
percentage of fund method of calculating fees. See id. at 46-
47. A lodestar calculation was made, but perhaps because the

13

number was used simply as a cross-check against the percentage
of fund fee amount, id. at 47, the Special Master calculated
only the lodestar attributable to Class Counsel's hours in
determining the appropriateness of his recommended award, In re
VW (First Circuit), 692 F.3d at 22.  He recommended and Judge
Tauro adopted a base lodestar calculation of $7,734,000 and an
attendant multiplier of 2.5, yielding a $19,335,000 lodestar.
In re VW (Original Award), 784 F. Supp. 2d at 47.

     On appeal, however, the First Circuit rejected the use of a
percentage of fund method of calculating fees, holding that
Massachusetts, not federal, law ought govern the determination
of appropriate attorneys' fees in this matter.  In re Volkswagen
(First Circuit), 692 F.3d at 21.  It also noted that in
conducting a lodestar cross-check analysis, "[t]he district
court's choice of a multiplier figure was not based on
Massachusetts law nor justified by the record, and it is
therefore vacated."  Id. at 22.  Consequently, the First Circuit
remanded, directing that Special Master van Gestel's base
lodestar calculation ought "be the base figure used on remand as
to class counsel, save for an increase in extra work."  Id. at
22.  The Court of Appeals further instructed that "[b]ecause no
lodestar calculation was performed as to plaintiffs' attorneys
who were not class counsel, the district court will need to

perform a separate lodestar calculation as to those attorneys."
Id.

## II.  LEGAL FRAMEWORK

In accordance with the First Circuit's mandate, Diaz v.
Jiten Hotel Mgmt., Inc., 741 F.3d 170, 175 (1st Cir. 2013), this
Court will analyze the fee petitions before it under
Massachusetts law.  In Massachusetts, the "traditional approach
[is] to prohibit recovery of attorney's fees and expenses in a
civil case in the absence of either an agreement between the
parties, or a statute or rule to the contrary."  Preferred Mut.
Ins. Co. v. Gamache, 426 Mass. 93, 95 (1997).  Here, a
settlement agreement between the parties expressly provided for
an award of "reasonable attorneys' fees and expenses" to be
paid.  Settlement Agreement 20.  Although much of the state
jurisprudence on attorneys' fees concerns awards allocated by
statutory fee-shifting provisions, see, e.g., Pinto v. Aberthaw
Const. Co., 418 Mass. 494 (1994) (awarding fees for the
litigation of workers' compensation injuries pursuant to Mass.
Gen. Laws c. 152, § 15), the Court observes that the principles
distilled in these cases largely are applicable to the
determination of "reasonable" attorneys' fees allocated by
contractual agreement.  The First Circuit has identified two
available methods for calculating such fees under this body of

law: the multi-factor approach and the lodestar approach.  <u>In re</u>
<u>VW</u> (First Circuit), 692 F.3d at 21.

Under either approach, "[w]hat constitutes a reasonable fee
is a question that is committed to the sound discretion of the
judge."  <u>Berman</u> v. <u>Linnane</u>, 434 Mass. 301, 302-03 (2001).
Massachusetts law does not require the Court "to review and
allow or disallow each individual item in the bill," it is
permitted simply to "consider the bill as a whole."  <u>Id.</u> at 303.
In so doing, the Court ought consider "several factors,
including 'the nature of the case and the issues presented, the
time and labor required, the amount of damages involved, the
result obtained, the experience, reputation and ability of the
attorney, the usual price charged for similar services by other
attorneys in the same area, and the amount of awards in similar
cases."  <u>Id.</u> (quoting <u>Linthicum</u> v. <u>Archambault</u>, 379 Mass. 381,
388-389 (1979)).  This is the essence of the multi-factor
approach.  The Supreme Judicial Court has recognized, however,
that "[w]hen arranged as a simple checklist, . . . these
criteria do not lead with any certainty to a number of dollars."
<u>Stratos</u> v. <u>Dep't of Pub. Welfare</u>, 387 Mass. 312, 321 (1982).

Accordingly, in lieu of a "factor-by-factor analysis,"
<u>Berman</u>, 434 Mass. at 303, Massachusetts courts are permitted and
even encouraged to account for these elements by way of the
lodestar method of analysis, under which "an amount [is]

calculated by multiplying the number of hours reasonably spent on the case times a reasonable hourly rate." <u>Fontaine</u> v. <u>Ebtec Corp.</u>, 415 Mass. 309, 324 (1993). After the Court calculates a base lodestar amount, "[t]he lodestar is then adjusted upward or downward on the basis of those [factors] that are not subsumed within the lodestar itself." <u>Stratos</u>, 387 Mass. at 322. "The lodestar approach has the advantage of producing generally consistent results from case to case." <u>Fontaine</u>, 415 Mass. at 325.

The courts of the Commonwealth also employ the practice of enhancing lodestar amounts by applying a multiplier -- a multiplier of two, for example, doubles the amount of the lodestar to determine the final fee award. <u>E.g.</u>, <u>In re AMICAS, Inc. S'holder Litig.</u>, 27 Mass. L. Rptr. 568 (Mass. Super. Ct. Dec. 6, 2010) (Neel, J.) (applying a multiplier of five to fees incurred in a shareholder litigation); <u>Commonwealth Care Alliance</u> v. <u>AstraZeneca Pharms. L.P.</u>, No. No. 05-0269 BLS 2, 2013 WL 6268236, at *2 (Mass. Super. Ct. Aug. 5, 2013) (Sanders, J.) (applying a multiplier of two to fees incurred in a Chapter 93A class action). Multipliers are an accepted means of enhancing a lodestar appropriately to reflect, for example, the scale of the results achieved by prevailing counsel or the risks counsel took in pursuing contingent fees. <u>See, e.g.</u>, <u>Commonwealth Care Alliance</u>, 2013 WL 6268236 at *2; <u>see also</u>

Buston v. Zoll Med. Corp., No. 12-1190, 2013 WL 5612566, at *3
(Mass. Super. Ct. Mar. 15, 2013) (Kaplan, J.) (asserting that
"in shareholder litigation where the efforts of plaintiffs'
counsel generate [substantial benefits], that favorable result
should weigh heavily in determining the appropriate fee award,
including a significant lodestar multiplier" (internal quotation
marks omitted)).

       At the same time, the Supreme Judicial Court appears to
favor a conservative approach to multiplier enhancements.
"[F]air market rates for time reasonably spent should be the
basic measure of reasonable fees, and should govern unless there
are special reasons to depart from them." Stratos, 387 Mass. at
322. A case that does not "involve any novel issues of law" or
"implicate the public interest," for example, may be a poor
candidate for an attorneys' fees multiplier. Eldridge v.
Provident Cos., Inc., No. 971294, 2004 WL 1690382 at *9 (Mass.
Super. Ct. July 6, 2004) (Sanders, J.) (declining to apply a
multiplier in the absence of these factors, even though counsel
did risk nonpayment by taking the case).

       In the case at bar, the lodestar method has much to
recommend it, not least because a base lodestar amount for class
counsel's pre-award fees has already been calculated and
affirmed by the First Circuit, in "the absence of any direct
challenge to [the] figure." In re VW (First Circuit), 692 F.3d

at 22.  Determining the remaining contested fees and issues
using lodestar calculations would ensure consistency both with
Judge Tauro's previous determinations and the First Circuit's
instructions on remand.  Moreover, counsel for the Plaintiffs do
not oppose a lodestar approach to determining their fees, see,
e.g., Class Counsel Add'l Fees Mem. 3-5, the Defendants urge
this Court to adopt the method, see Defs.' Opp'n 9, and both
sides have submitted sufficient records and briefing for the
Court to apply a lodestar analysis to all disputed issues.
Given these controlling legal and practical considerations, the
Court will determine all disputed fees and expenses under the
lodestar approach and then consider what adjustments are
appropriate.

**III. CLASS COUNSEL'S AWARD**

    **A.    Pre-Award Fees and Expenses**

    This Court has a limited role to play in determining the
amount of reasonable attorneys' fees owed to Class Counsel for
pre-award work -- that is, the work undertaken before Judge
Tauro's original award.  Per the First Circuit's mandate, this
Court will not disturb the $7,734,000 lodestar calculated by the
Special Master and adopted by Judge Tauro.  In re VW (First
Circuit), 692 F.3d at 22.

    Judge Tauro's original award also provided for the payment
of $1,195,234.43 in costs and expenses to Class Counsel.  In re

VW (Original Award), 784 F. Supp. 2d at 47. Both Class Counsel
and Defendants recognize that these costs were not challenged on
appeal, suggesting that the Court ought leave intact this part
of Judge Tauro's award. See Class Counsel Add'l Fees Mem. 3;
Defs.' Opp'n 24. The Court is content to do so, as there
appears to be no reason to depart from Judge Tauro and the
Special Master's determination. The Court notes that this award
grants to Class Counsel the full amount of its request for pre-
award costs and expenses, and that it includes pre-award costs
and expenses claimed by Non-Class Counsel. Class Counsels'
Updated Statement Costs & Expenses ("Updated Statement of
Costs") 2, ECF No. 246 (requesting $1,195,234.43 for costs
incurred through February 15, 2011, including $112,454.96 in
expenses claimed by non-Class Counsel).

The Court's primary task is to determine whether, and by
how much, Class Counsel's pre-award base lodestar ought be
enhanced. In so doing, the Court must consider, among other
things, the risks counsel undertook in pursuing this contingency
fee litigation and the actual value obtained by class members as
a result of the settlement agreement. In re VW (First Circuit),
692 F.3d at 22. "As to this last question, the actual claims
data collected by the settlement administrator is relevant to
the enhancement question and in determining the appropriate
fee." Id. Class Counsel requests a multiplier of 2.5 to 3.5,

translating to a fee award ranging from $19,335,000 to $27,069,000. Class Counsel Add'l Fees Mem. 20. The Defendants counter that the base lodestar ought be reduced, in effect applying a negative multiplier, to yield an amount that is "proportionate" to the value of the benefits which have actually been collected by class members. Defs.' Opp'n 26, 29.

### 1. Nature of the Litigation

It is evident from the record that this was a complex, well-fought, and largely well-managed case. Class Counsel are skilled and experienced trial advocates and, through hard work, obtained a settlement that inured meaningful benefits to its class members. The alleged product defects addressed by this litigation were serious ones, with the potential to impose significant costs and burdens on Volkswagen and Audi consumers. What's more, the Defendants were alleged to have evaded accountability by offering minimal or misleading assistance to their customers. Class Counsel's Add'l Fees Mem. 1-2. When such claims are not frivolous -- and they were not frivolous in this case -- it is in the public interest for them to be tested by our adversarial judicial process. Although the case was settled before the end of the motion to dismiss stage, Plaintiffs' counsel "accomplish[ed] something of value to class members and society" by seeing this case through to its resolution. Deborah R. Hensler & Thomas D. Rowe, Jr., Beyond

"It Just Ain't Worth It": Alternative Strategies for Damage Class Action Reform, 64-SUM Law & Contemp Probs. 137, 150 (2001) (quoting Deborah Hensler et al., RAND, Class Action Dilemmas: Pursuing Public Goals for Private Gain -- Executive Summary 33 (1999)).

Further, by working on a contingency fee basis, Class Counsel expended thousands of hours of labor without the certainty of compensation. Any argument by Defendants that taking on this case was a low-risk proposition for Class Counsel because of the work accomplished by earlier, similar lawsuits, is belied by the years it took for the parties to reach settlement and by the additional time and effort Class Counsel has had to dedicate to attempting to collect the fees the Defendants agreed to pay. The Defendants, having ably and vigorously advocated for their interests throughout the life of this case, are in a poor position to suggest that this case was a predictable one for Class Counsel to litigate.

### 2. Value of the Benefits Collected by the Class

The Court must also give due consideration, however, to the actual value of the benefits which have been put in the hands of class members. The Court is obliged to do so not only by the First Circuit's mandate, but also because of this Court's own antipathy toward the practice of awarding class plaintiff attorneys' fees in excess of the value of benefits actually

obtained by the class.  See In re TJX Cos. Retail Sec. Breach

Litig. ("In re TJX"), 584 F. Supp. 2d 395, 401 (D. Mass. 2008);

In re Relafen Antitrust Litig., 231 F.R.D. 52, 79 (D. Mass.

2005).

The Settlement Agreement makes four types of benefits

available to class members: (1) reimbursement of claims which

should have been paid under warranty but which were denied by

the Defendants, (2) a free ten-year warranty extension, (3)

information and literature containing revised oil maintenance

recommendations, which will help owners avoid future repair

costs, and (4) a one-time oil change discount of $25.  In re VW

(Original Award), 784 F. Supp. 2d at 43; Class Counsel Add'l

Fees Mem. 13-15.  There is not a finite pot of money which has

been set aside to fund these benefits.  Each class member is

entitled to some combination of benefits, depending on her

individual circumstance, and the Defendants have agreed to cover

the costs for all claimed benefits.  As Judge Tauro has

observed, "only the one-time $25 discount for an oil change can

be seen as coming close to an arithmetically measurable fund."

In re VW (Original Award), 784 F. Supp. 2d at 43.

At the time of the original award, projected outcomes were

the only data available to guide Judge Tauro in assigning a

monetary value to this settlement.  On that basis, he gave

credence to the Special Master's proposed finding that the

settlement's aggregate value was $222,932,831, which fell in between the wildly divergent valuations proposed by Class Counsel and the Defendants. Id. at 44; see id. at 43 (citing Class Counsel's proposed valuation of $420,986,855, and the Defendants' proposed valuation of $50,093,787).

Two and a half years later, this Court is in a different position, as actual claims data documenting the extent of the benefits given to class members is now available.

### a. The Parties' Proposed Valuations

According to Defendants' calculations, approximately $11,500,000 in benefits were allocated to class members as of February 2013, with the total amount of benefits unlikely to exceed $12,700,000 before the expiration of all relevant claims periods. Defs.' Opp'n 6. These figures represent the sum of: (1) the amount of cash paid out in reimbursements for engine repairs and replacement claims that were originally denied by the Defendants, (2) the aggregate value of claimed $25 oil change discounts, and (3) the aggregate value of free repairs claimed under a warranty extension. Id.

Class Counsel contends that these figures do not properly account for the true value conferred on class members by the Settlement Agreement. First, they argue that the value of the warranty extension to consumers is not measured by the aggregate value of free repairs actually claimed under the warranty

extension, but rather by the aggregate price the consumers would have had to pay out of pocket to purchase such a warranty extension. Reply Additional Attorneys' Fees, Ex. 1, Decl. Kirk D. Kleckner, CPA, MBA, ABV, ASA, CFF ("Kleckner Supp. Decl.") 3-4, ECF No. 406-1. Class Counsel's proposed method of valuation dramatically increases the estimated value of the warranty extension; as 274,548 vehicles were eligible for the extension, which Class Counsel estimates would have cost $1,399 to $1,842 out of pocket for each vehicle, this benefit alone has been valued by the Plaintiffs' expert at $73,938,851. Id. at 5.

Second, Class Counsel argues that class members also benefited from the Settlement Agreement's provisions for a campaign to notify and educate class members as to proper maintenance of their vehicle. Reply Additional Attorneys' Fees 3-4. All class members, the collective owners of about 349,612 vehicles, received literature notifying them of the need to use synthetic oil in their engines, an engine sticker notifying maintenance personnel of same, and additional materials explaining the rights and benefits conferred on the class as a result of the Settlement Agreement. Id. These materials, Class Counsel says, benefited class members by giving them requisite knowledge to extend the life of their vehicle engines and avoid costly repairs. Id. at 4. The Plaintiffs' expert has valued this benefit at $56,249,605. Kleckner Supp. Decl. 5.

Third, Class Counsel asks the Court to take into account the value conferred on class members by the appointment of the Oil Sludge Settlement Administrator. Reply Additional Attorneys' Fees 2. The claims administrator has received approximately $3,000,000 in payment. Kleckner Supp. Decl. 4.

### b. The Court's Valuation

As is usually the case, the best valuation of benefits is somewhere between these two extremes.

### i. Reimbursements for Previously Denied Claims and Oil Change Discounts

On the one hand, Defendants are correct to seek reliance on the actual claims data collected by the Oil Sludge Settlement Administrator, with regard to <u>two</u> of the benefit categories: the reimbursements for previously-denied repair and replacement claims and the oil change discounts. Defs.' Opp'n 6. As these benefits were designed to be realized on a claims-made basis, they are the two categories for which actual claims data provides real aid in determining benefit value to consumers. Class members who did not make claims have derived no benefit from the inclusion of these benefits in the settlement, and determining the aggregate value conferred on class members who did claim these benefits requires only basic arithmetic. After consulting the supporting documentation in the record, the Court

is prepared to accept the Defendants' position that the value of these benefits totaled $8,489,859. Id.

### ii. Extended Warranties and Educational Campaign

On the other hand, Defendants construe far too narrowly the value of the other two categories of benefits obtained by class members -- the extended warranties and the education/information campaign coordinated by Plaintiffs' counsel.

### aa. Extended Warranties

The Court does not accept Defendants' argument that the value of the extended warranties is limited to the value of repairs provided gratis during the extended warranty period. Id. That valuation method reflects the costs the extended warranties imposed on the Defendants, but not the value the warranties conferred on class members. Warranties cost a manufacturer nothing unless repairs are claimed, but from a consumer's perspective, a warranty against repair has value even when no repairs are claimed during the period of coverage. The fact of coverage is its own benefit; for a price, a consumer can purchase certainty as to what repairs will cost if they are needed.

To achieve a result equivalent to this settlement agreement, each car owner in the class would have had to pay a certain price out-of-pocket for an extended warranty, and each

car owner would have been charged that price regardless whether
she ever actually needed repairs during the relevant time
period.  It follows that the retail value of the extensions --
assigned by Defendants themselves in the course of setting the
retail price of an extended warranty -- is a more sensible
measure of what the class members gained from free extended
coverage.

Moreover, valuing the extended warranties at their retail
price is consistent with the approach to valuation this Court
previously took in In re TJX.  In that case, class members were
provided with three years of credit monitoring for free, a
service which would have cost $177,000,000 in the aggregate if
each qualifying class member had paid for it out-of-pocket.  584
F. Supp. 2d at 409.  The Court accepted this figure as a measure
of the value conferred on class members by the In re TJX
settlement, and it is content to take a similar approach in this
case.  See id.  Although credit monitoring services are
different from extended warranties in that the former requires
some level of continuous service to be rendered during the
subscription period, the two benefits are similar from a
consumer's point of view in that the consumer derives benefit
from the fact of coverage even when nothing goes wrong.

For these reasons, the Court is comfortable accepting Class
Counsel's argument that the extended warranties are properly

valued by reference to the price a class member would have paid for such a service absent settlement.  Kleckner Supp. Decl. 5. Particularly as the Defendants have not offered a viable alternative based on these considerations, the Court accepts Class Counsel's proposed figure and holds that the provision of free extended warranties transferred $73,938,851 in value to the class members.  Id.

### bb.  Education/Information Campaign

The matter of the educational literature and other materials disseminated to the class presents a more difficult valuation challenge.  Defendants' current position appears to be that this element of the Settlement Agreement was of no cognizable value to class members.  Defs.' Opp'n 6.  This represents an unexplained departure from their previous position; in 2011, Defendants' expert prospectively estimated that the revised oil maintenance recommendations would confer benefits to class members valued at $18,719,788.  Mem. Points & Auth. Supp. Mot. Final App. Sett., Opp. Pls. Mot. Attys.' Fees & Costs Supp. Appl. Defer Ruling Pls. Mot. Attys.' Fees & Costs until After June 27, 2011. ("Defs.' Opposition to Pls.' Motion") 7, ECF No. 206.  In contrast, Class Counsel adheres to its original prospective estimate that the revised oil maintenance recommendations are worth over $56,000,000 in repair costs avoided by class members.  Kleckner Supp. Decl. 5.

Defendants' current valuation of this benefit strikes the
Court as untenable.  It is more than reasonable to assume that
at least some class members switched to synthetic oil as a
direct result of the instructions they received from the
campaign, and that at least some subset of this group avoided
damage to their engines that otherwise would have been
sustained.  To value the educational campaign at zero would
unfairly ignore the obvious value that these class members
received from the materials.

The Court is extremely wary, however, of adopting the
$56,000,000 valuation proffered by Class Counsel.  Unlike the
extended warranty benefit, the valuation of the educational
campaign is directly affected by the number of people who
actually changed their behavior as a result of the literature
they received.  The $56,000,000 estimate was introduced to this
litigation in Class Counsel's original fee petition before Judge
Tauro as part of Class Counsel's original estimate that the
value of benefits collected by the class would exceed
$420,000,000.  In re VW (Original Award), 784 F. Supp. 2d at 43.
Because the actual claims data for two of the benefit
categories, the claim reimbursements and oil change discounts,
show that Class Counsel's original estimates of how many class

members would claim these benefits was wildly optimistic,[1] it stands to reason that Class Counsel likely also overestimated how many class members actually avoided repair costs by paying attention to and heeding the Defendants' educational literature.

Unfortunately, there simply is no data available on what the actual value of avoided repairs has been, and calibrating an accurate figure would be difficult even had extensive information been collected from class members. In the absence of actionable data, the Court adopts the Defendants' original estimate valuing the educational campaign benefit at $18,719,788. Defs.' Opposition to Pls.' Motion 7. The Defendants' expert report supporting this figure is detailed, considered, and grounded in more conservative assumptions than those undergirding Class Counsel's $56,000,000 expert valuation. Decl. Opp. Pls.' Appl. Attys.' Fees & Exps., Ex. 1, Expert Report of Janusz A. Ordover ("Ordover Report") 8, 16-19, ECF No. 204-1. As there has been no suggestion by the Defendants that their expert's original estimates were flawed, it would appear that they continue to believe that reliance on his work is appropriate and reasonable.

---

[1] Class Counsel originally estimated that the combined value of benefits claimed in these two categories would be $250,484,955. In re VW (Original Award), 784 F. Supp. 2d at 43 n. 40 (estimating $3,362,263 in oil change discounts claimed and $247,122,692 in wrongly-denied warranty reimbursements claimed). As has been explained infra, the actual claims data shows that the aggregate value of benefits claimed in these two categories was $8,489,859.

### iii. Oil Sludge Claims Administrator

Finally, there are the fees which have been paid to the Oil Sludge Claims Administrator overseeing the claims process. The Court will not consider these costs to be part of the benefits conferred on the class. Although there is no doubt that funds to organize a professional and helpful claims process are essential in a case like this one, such costs are corollary to the actual benefits placed in the hands of class members. Counting administration fees as part of the settlement valuation for attorneys' fees purposes might also inadvertently incentivize the establishment of costly and inefficient administration procedures which would inflate the benefits valuation without increasing actual benefit for class members.

### iv. The Total Value of Benefits Conferred on the Class

Taking these rulings into account, the Court calculates the aggregate value of benefits conferred on the class as follows:

(1) Reimbursement of pre-settlement repair claims: $8,486,959

(2) Claimed oil-change discounts: $2,900

(3) Extended warranties given to all class members: $73,938,851

(4) Repairs avoided as a result of revised maintenance recommendations: $18,719,788

These components add up to a total settlement value of $101,148,498.

### c. The Appropriate Multiplier and Total Pre-Award Fees

This Court is convinced by this valuation and by a multi-factor assessment of the nature of this litigation that a multiplier of 2 is an appropriate enhancement to Class Counsel's pre-award base lodestar of $7,734,000.

The Defendants are therefore ordered to pay Class Counsel $15,468,000 in fees and $1,195,234.43 in costs and expenses, for work undertaken prior to Judge Tauro's original award.

### B. Post-Award Fees and Expenses

The Court now turns to the matter of the additional fees and expenses requested by Class Counsel. They have submitted a motion seeking a $1,705,693 lodestar, a multiplier enhancement of 1.5 to 2.0, and additional costs of $310,353.59. Class Counsel Add'l Fees Mem. 20. The Defendants oppose the motion, primarily arguing that Class Counsel's proposed lodestar contains a number of excesses that the Court ought disallow. Defs.' Opp'n 4-5.

### 1. Uncompensable Pre-Award Time

A portion of the additional fees sought by Class Counsel is attributable to work completed between December 13, 2010, and March 23, 2011. See, e.g., Class Counsel Add'l Fees Mem., Ex. 13, Berger Montague Time Summary for the Period 12/13/10-11/30/12 ("Montague Time Summary"), ECF No. 374-13. According

to their submitted billing records, they completed 1,326
collective hours of work during the time period beginning one
week before December 20, 2010, the date of Class Counsel's
original motion for attorney's fees to Judge Tauro, Class
Counsel Motion for Attorney Fees, and ending the day before the
publication of Judge Tauro's order awarding to Class Counsel
fees of $30,000,000. Mem. & Order, Mot. Attys.' Fees, ECF No.
272. The aggregate value of this time is $645,059.50. Defs.'
Opp'n 17.

Defendants oppose awarding Class Counsel these fees,
relying on a strict reading of the First Circuit's direction
that this Court is to increase Judge Tauro's base lodestar
calculation "only . . . to the extent that [the figure does] not
include additional work, undertaken after the district court's
award of fees." In re VW (First Circuit), 692 F.3d at 21-22
(emphasis added); see Defs.' Opp'n 17. According to Defendants,
this instruction means that this Court ought only award
additional fees to Class Counsel for work completed on or after
March 24, 2011, the day Judge Tauro published his opinion
establishing the original award. Defs.' Opp'n 17. Class
Counsel disagrees, pointing out that because Judge Tauro's base
lodestar calculation was based on billing records submitted on
December 20, 2010, his base lodestar does not account for nearly
three months of work completed between December 20 and March 24,

34

2011.  See Reply Additional Attorneys' Fees 11.  Class Counsel
posits that any work completed from December 2010 forward is
eligible for consideration by this Court, because "[t]he only
fair and reasonable interpretation of 'additional fees' [under
the First Circuit's analysis] is the fee for the time expended
after the period of time considered by [Judge Tauro] in the
3/24/11 award."  Id. at 13.

As a preliminary matter, the Court rules that Class Counsel
is not entitled to additional fees for work completed before
December 20, 2010.  Berger & Montague and Irwin & Boesen seek
additional fees for work completed from December 13 through
December 19 of that year, including work on the December 20
motion.  See Montague Time Summary 2 (containing entries, for
example, for work "[d]rafting and editing sections of the
Approval Brief and Fee Petition Brief" on December 15, 2010).
These fees ought have been submitted to Judge Tauro and Special
Master Van Gestel in the first place, and no suggestion has been
made that Class Counsel did not have a full opportunity to do so
in December 2010.  In fact, McNulty did manage to submit time
records to Judge Tauro for work completed through December 19,
2010.  See Pls. Br. Supp. Mot. Attys.' Fees Csts., Ex. 8, Peter
J. McNulty Time Record 50-51, ECF No. 175-8.  Even under the
Plaintiffs' approach, hours incurred in this time period cannot

be construed as work undertaken after Judge Tauro's award of
fees.

The issue of fees for work completed after December 20,
2010, and before March 23, 2011, merits further consideration.
On the one hand, the plain meaning of the phrase "after the
district court's award of fees" indicates that this Court ought
only consider fees incurred on or after March 24, 2011.  692
F.3d at 22.  In using this phrase, the First Circuit adopted
Class Counsel's own choice of words.  This Court also observes
that Class Counsel failed to mention their entitlement to fees
for post-December 20 work when they had the opportunity to do so
before Judge Tauro.  The Supreme Judicial Court has held that
when attorneys fail to press a claim for supplemental fees
incurred in the course of preparing and defending a fee petition
in the trial court, they waive their ability to seek those fees
later in the litigation.  See Twin Fires Inv., LLC v. Morgan
Stanley Dean Witter & Co., 445 Mass. 411, 432-33 (2005)
(declining to award additional fees incurred in the trial court
when counsel did not "bring their [additional fees] claim to the
attention of the [trial] judge" or refer to the issue of
additional fees in counsel's notice of appeal).  Accord Beal
Bank, SSB v. Eurich, 448 Mass. 9, 12-14 (2006) (denying
counsel's request for appellate fees and expenses when counsel
failed to state its request in its original appellate brief).

In the case at bar, Class Counsel had at least three clear opportunities to assert an entitlement for supplemental fees incurred before Judge Tauro's award was appealed. Class Counsel reserved objections to the lodestar calculation twice, and discussed the fee award at length with Judge Tauro at a fairness hearing two weeks before his order entered. There was no mention of additional fees.

On the other hand, even a cursory examination of this case's docket reveals that Class Counsel completed meaningful and substantive work during this time period. "As a general rule, time spent in establishing and defending a fee, or objecting to an unduly small award, should be included in the final calculation of the award. Exclusion of such services would dilute the value of the award, and so frustrate the purpose of [awarding attorneys' fees]." Stratos, 387 Mass. at 325 (ruling in the context of the fee-shifting provision of 42 U.S.C. § 1988). Among other things, Class Counsel prepared numerous briefs and other submissions to Judge Tauro regarding their fee petition, the negotiation of the settlement agreement, and the actions of Non-Class Counsel. E.g., Class Pls. Resp. Mot. Ohio Counsel Desig. Addt'l Settl. Counsel Under Def. 3 of Sett. Agrmt., ECF No. 213; Pls.' Reply Br. Supp. Mot. Attys.' Fees & Costs, ECF No. 237; Pls.' Resp. Class Member Ashley Riley Birkeland's Obj. Finds. Fact, Concl. Of Law and Rec. of Spec.

Master Relating to Class Pls.' Mot. Attys.' Fees & Costs, ECF
No. 260.  It is unreasonable to deny consideration of these
efforts based on a parsimonious reading of the First Circuit's
quotation of Class Counsel -- particularly when it is unlikely
that Class Counsel intended, by their choice of words, to
disclaim a full three months of meaningful work.  The Court
declines to rule that the First Circuit's opinion prevents it
from considering additional fees for work undertaken between
December 20, 2010 and March 24, 2011.  The work completed during
this period will be considered alongside the remainder of Class
Counsel's additional fees sought.

Accordingly, the Court only disallows 106.7 hours of work
from Class Counsel's post-award billings.  This corresponds to a
$34,047.50 reduction from Irwin & Boesen's lodestar, Class
Counsel Add'l Fees Mem., Ex. 8, Kirk D. Tresemer Time Summary
12/14/10 - 12/22/12 ("Tresemer Time Summary"), ECF No. 374-8;
Class Counsel Add'l Fees Mem., Ex. 9, Darren A. Natvig Time
Summary 12/15/10-12/7/12 ("Natvig Time Summary"), ECF No. 374-9;
Class Counsel Add'l Fees Mem., Ex. 10, Roxanna Torrez Time
Summary 12/17/10-12/13/12 ("Torrez Time Summary"), ECF No. 374-
10; and a $57,241 reduction from Berger & Montague's lodestar,
Montague Time Summary.

## 2.    Internal disputes and agreements

Second, Defendants argue that certain time spent on
disputes between counsel ought be struck.  Defs.' Opp'n 18.
They highlight two disputes: first, attorney Mark Schlachet
objected to certain fee allocation decisions made by Class
Counsel, and second, a dispute over a "side fee agreement" that
was later litigated in Alabama state courts.  Id.

The case law on intra-counsel fee disputes is not well-
developed.  There are, however, several principles in the
Commonwealth's attorney fee canon that inform this Court's
considerations.  On one hand, fees are not recoverable for "work
on unrelated issues." Crop Prod. Servs., Inc., v. Albert, 18
Mass. L. Rptr. 97, at *5 (Mass. Super. Ct. 2004) (Josephson,
J.).  To that end, "a court must be assured that the time
expended by counsel was actually in furtherance of the
underlying litigation." E.E.O.C. v. AutoZone, Inc., 934 F.
Supp. 2d 342, 353 (D. Mass. 2013); see also Specialty Retailers,
Inc. v. Main St. NA Parkade, LLC, 804 F. Supp. 2d 68, 74 (D.
Mass. 2011) (Neiman, M.J.) (excluding time spent by counsel on
the "resolution of potential conflicts of interest between his
two clients").  On the other hand, though, the time spent
preparing a fee application is recoverable under Massachusetts
law, at least with respect to statutory fees, although
unreasonable time spent on such an application is to be reduced.

See, e.g., Office One, Inc. v. Lopez, No. 962519, 1998 WL 1184117, at *2 (Mass. Super. Ct. Jan. 5, 1998) (Cowin, J.); see also Jacobs v. Mancuso, 825 F.2d 559, 563 (1st Cir. 1987).

Guided by these principles, this Court will not credit these fees to the extent that they are disputes among counsel about how fees will be divided among them, but will credit these fees to the extent that these hours are spent attempting to recover reasonable fees from the Defendants. Said differently, time spent trying to expand the pie will be credited; time spent quibbling over how to divide the pie will not.

The Court is satisfied by the Defendants' calculation that Class Counsel's records contain time entries reflecting 140.68 hours of work spent on addressing intra-counsel fee disputes and responding to the litigious actions of certain Non-Class Counsel. Defs.' Opp'n 18. This time will be disallowed from the additional fees award, resulting in a reduction of $7,870 from Irwin & Boesen's lodestar, $7,350 from McNulty's lodestar, and $60,315.14 from Berger & Montague's lodestar. Id.

### 3. Travel Time

The Defendants also challenge Plaintiffs billing of travel time at a full rate. Id. at 23. Under Massachusetts law, if an attorney works while she travels, she may bill a full rate; if she is traveling without working, she may only recover half of her rate for those hours (or, said differently, she may recover

40

half of her hours at her full rate).  See, e.g., Diaz v. Jiten

Hotel Mgmt., Inc., 822 F. Supp. 2d 74, 79 (D. Mass. 2011)

(collecting cases), aff'd in part, rev'd in part, on other

grounds, 704 F.3d 150 (1st Cir. 2012); see also Stratos, 387

Mass. at 323 ("Rates may differ according to the type of service

performed -- courtroom work, research, travel, or other

tasks.").

This Court thus adjusts accordingly.  From Irwin & Boesen's

billings, 43.25 hours valued at $23,787.50 are disallowed.  No

hours are disallowed from the McNulty billings.  From Berger &

Montague's billings, 7.5 hours valued at $4,500 are disallowed.

In calculating these reductions, the Court has taken special

care to exclude from consideration hours which were already

disallowed for other reasons.

### 4.  Appellate Fees and Costs

In their petition for additional fees, Class Counsel

includes $143,050 in fees and $151,217.36 in costs for time and

expense spent on defending the fee awarded by Judge Tauro on

appeal.  Reply Additional Attorneys' Fees 15.  The Defendants

object to the inclusion of these amounts in any award from this

Court.

As a procedural matter, it is not clear that this Court has

authority to decide this issue.  Massachusetts courts hold that

fee awards for time spent on an appeal are to be adjudicated by

the judges "who heard and decided the appeal." <u>Fabre</u> v. <u>Walton</u>,
441 Mass. 9, 10 (2004); <u>see</u> <u>Bonofiglio</u> v. <u>Commercial Union Ins.</u>
<u>Co.</u>, 412 Mass. 612, 613 (1992) ("The power to award [appellate]
counsel fees is discretionary in the appellate court."). This
rule has been preferred in the state courts since even before
the Supreme Judicial Court made it a mandatory one:

> An appellate court is in a far better position to
> evaluate the worth of the appellate work than the
> trial judge.  The Justice of the appellate court who
> writes the opinion for the court develops nothing
> short of an intimacy with the record on appeal and the
> briefs.  An appellate Justice on the quorum or panel
> which hears and decides the appeal develops a
> knowledge of the case and the value of the work of the
> attorney who seeks compensation.  A trial judge simply
> cannot bring to bear this familiarity with the
> appellate work.

<u>Yorke Mgmt.</u> v. <u>Castro</u>, 406 Mass. 17, 20 (1989).

Whether it is appropriate or prudent to hold the parties in
this case to the precise procedures for seeking attorneys' fees
in state court, in addition to the substantive state law of
attorneys' fees, is uncertain.  In any event, the First
Circuit's opinion in this case, indicates that the
responsibility lies fully with this Court to determine what
award is appropriate for Class Counsel's additional post-award
work.  <u>See</u> <u>In re VW (First Circuit)</u>, 692 F.3d at 22 ("That claim
of increase due to additional work is preserved for remand.").
In compliance with this directive and in the interests of

judicial efficiency, the Court will render a decision on the issue of appellate fees under Massachusetts law.

In the context of fee-shifting statutes which allocate reasonable attorneys' fees to the prevailing party – one of the better analogues in the state case law for the instant fee situation – Massachusetts law allows fees for work undertaken on appeal to be counted as part of an attorney's award.  Stratos, 387 Mass. at 325 ("As a general rule, time spent in establishing and defending a fee . . . should be included in the final calculation of the award.  Exclusion of such services would dilute the value of the award, and so frustrate the purpose of the act authorizing fees."); see id. ("In determining a final award, the judge should consider time spent on the appeal."). Appellate fees are usually awarded, however, only when the party seeking fees prevailed in his own appeal.  See also Twin Fires, 445 Mass. at 433 ("A prevailing plaintiff may recover for the successful claims of an appeal."); Kapp v. Arbella Mut. Ins. Co., 426 Mass. 683, 687 (1998) ("Because [the party seeking fees] did not prevail on his appeal, he is not entitled to costs and attorney's fees arising from that appeal."); Bonofiglio, 412 Mass. at 613 ("In general, a litigant must qualify as a 'prevailing party' in order to qualify for an award of [appellate] attorney's fees.").

There is some indication that Massachusetts courts relax their adherence to this principle when the party seeking fees was the respondent to an unsuccessful appeal initiated by the opposing side. Kapp, 426 Mass. at 687-88 (denying the plaintiff fees related to his unsuccessful appeal, but awarding the plaintiff fees related to the defendant's unsuccessful cross-appeal); Bonofiglio, 412 Mass. at 614 (same). There are equitable reasons to apply such logic to the instant case; since the Defendants were the ones to appeal Judge Tauro's original fees award, they left Class Counsel no choice but to spend time and money to defend Judge Tauro's decision.

Without clearer support for such an exception in the state law, however, this Court risks abusing its discretion were it to adopt this interpretation of the Supreme Judicial Court's precedents. Instead, this Court will stick to the more evident rule that only prevailing parties are entitled to fees and costs incurred on appeal. Under that framework, Class Counsel's appellate fees and costs ought be disallowed. It is unambiguous in the First Circuit's decision that Class Counsel did not succeed in convincing that appellate panel to preserve Judge Tauro's award or to apply federal law methods to the calculation of their reasonable attorneys' fees.

Accordingly, a total of $143,050 in fees are disallowed from Class Counsel's award. This corresponds to a $55,360

reduction from Irwin & Boesen's lodestar, a $50,730 reduction from McNulty's lodestar, and a $36,960 reduction from Berger & Montague's lodestar. Defs.' Opp'n, Ex. 6, Summ. Chall. Bill. Categ. Firm ("Summary Challenged Billings") 8, ECF No. 395-6. A further $151,217.36 in costs is disallowed from Class Counsel's additional expenses request. Reply Additional Attorneys' Fees 15.

### 5. Excessive Partner Monitoring

Next, Defendants challenge nearly 1000 hours of Class Counsel's billings on the grounds that excessive time was spent by lead attorneys performing tasks that ought have been performed by lower-billing associates and paralegals. Defs.' Opp'n 23. It is recognized practice in Massachusetts to adjust compensation rates when senior lawyers bill time for administrative or rote work that is more appropriately assigned to junior associates or paralegals. Autozone, 934 F. Supp. 2d at 353.

Upon examination of Class Counsel's records, the Court observes that lead attorneys on the Class Counsel team spent hundreds of post-award hours working with individual class members seeking benefits under the settlement. While it is understandable that the lawyers with the most experience and familiarity with this case spend time addressing tricky or unusual class member issues, these attorneys devoted an

unreasonable amount of time personally to administering and monitoring individual claims. A well-designed claims process ought not require the continuous intervention of senior partners, billing over $500 per hour, to run smoothly.

The challenged fees for monitoring the claims process will be reduced by one-third, to adjust for probable excesses in the amount of time partners spent on individual class members' claims. This results in a reduction of $105,779.30 from Irwin & Boesen's billings, $26,856.67 from McNulty's billings, and $44,395.19 from Berger & Montague's billings. Summary Challenged Billings 11.

### 6. Block Billing

Finally, the Defendants seek a reduction of Class Counsel's lodestar on the ground that significant portions of Class Counsel's records contain excessively vague descriptions as well as "block billing," which is "the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Defs.' Opp'n 17-18; AutoZone, 934 F. Supp. 2d. at 354 (quoting Conservation Law Found. Inc., v. Patrick, 767 F. Supp. 2d 244, 253 (D. Mass. 2011)); see also Ellis v. Varney, 19 Mass. L. Rptr. 260, at *3 n.6 (Mass. Super. Ct. 2005) (Fecteau, J.) (defining block billing as "either a large number of distinct events that are grouped together without distinction as to time

within a single, large block of time, or a single, large block
of time containing a single event, vaguely or oversimply
described, e.g., 'research,' 'trial preparation,' 'conference'
or 'document review,' to name a few."). "[T]his form of
documentation is disfavored" in Massachusetts. <u>Haddad</u> v. <u>Wal-
Mart Stores, Inc. (No. 2)</u>, 455 Mass. 1024, 1026 (2010) (citing
<u>Twin Fires Inv.</u>, 445 Mass. at 428-29)).

When confronted with block billing, courts will apply a
"global reduction to the lodestar hours," and this "reduction is
applied after the specific deductions." <u>Norkunas</u> v. <u>HPT
Cambridge, LLC</u>, 969 F. Supp. 2d 184, 196-97 (D. Mass. 2013).
This global deduction is generally in the order of fifteen to
twenty-percent. <u>See, e.g.</u>, <u>id.</u> at 197 (20% reduction);
<u>Autozone</u>, 934 F. Supp. 2d at 355 (20% reduction); <u>Conservation
Law Found.</u>, 767 F. Supp. 2d at 253 (20% reduction); <u>Evans</u> v.
<u>Lorillard Tobacco Co.</u>, 29 Mass. L. Rptr. 226, at *6 (Mass.
Super. Ct. 2011) (Fahey, J.)(25% reduction imposed for,
collectively, block billing and billing for hours spent on
unsuccessful claims); <u>Ellis</u>, 19 Mass. L. Rptr. 260, at *5-6 (33%
reduction imposed for, collectively, block-billing, vague, and
excessive entries); <u>Roberts</u> v. <u>Dep't of State Police for Com.</u>,
15 Mass. L. Rptr. 462, at *4 (Mass. Super. Ct. 2002) (Houston,
J.) (15% reduction). Courts will not, however, impose a global
penalty where block-billing is infrequent or relatively minor,

or where most of the entries were reasonably recorded.  E.g.,
Haddad, 455 Mass. at 1026-27.  Accordingly, this Court will
impose a twenty-percent global reduction on firms that have
significantly block-billed, but will impose no penalty when such
recordation is relatively minor.

The Court has reviewed the records of the three firms
comprising Class Counsel and concludes that some reduction for
block billing is appropriate.

The Defendants have identified 627 block-billed or
insufficiently detailed time entries attributed to Kirk Tresemer
of Irwin & Boesen, and the Court largely agrees that the
identified records are problematic.  Defs.' Opp'n, Ex. 8, Irwin
& Boesen Uncompensable Pre-Award Time ("Irwin & Boesen
Uncompensable") 15, ECF No. 395-8.  Many entries, for example,
allocate 5 to 9 hour blocks of undifferentiated time to drafting
dozens of e-mails.  These account for approximately a quarter of
the 2406.75 post-award hours requested by Irwin & Boesen.  This
is a sufficient portion of total hours requested to warrant a
twenty-percent global reduction of Irwin & Boesen's billed time.

The Defendants identify only 9 hours of time block-billed
by McNulty, out of the 633.3 total hours billed by the firm.
Defs.' Opp'n, Ex. 9, McNulty Law Firm Uncompensable Pre-Award
Time ("McNulty Uncompensable") 2, ECF No. 395-9.  This is a

48

marginal percentage and so the Court will not cut any of McNulty's hours on this basis.

The Defendants challenge 450.98 hours they say have been block-billed by Berger & Montague. Defs.' Opp'n, Ex. 7, Berger & Montague Uncompensable Pre-Award Time ("Berger & Montague Uncompensable") 7, ECF No. 395-7. The Court agrees. The time entries challenged here are classic examples of block billing and are accordingly the least insightful records of the three Class Counsel firms. On December 27, 2010, for example, one attorney recorded a single time entry of 9.7 hours and described four completely disparate kinds of work performed during that period. Id. at 3. Block-billed entries account for slightly less than half of the post-award hours requested by Berger & Montague, and so the Court will impose a twenty-percent global haircut.

### C. Total Post-Award Fees

Taking these adjustments into account, the Court's calculation of Class Counsel's post-award fees is as follows:

Irwin & Boesen

| Requested Fees | $778,037.50 |
|---|---|
| Uncompensable pre-award time | − $34,047.50 |
| Internal disputes and agreements | − $7,870 |
| Travel time | − $23,787.50 |
| Time spent on appeal | − $55,360 |
| Excessive partner monitoring | − $105,779.30 |
| Subtotal | $551,193.20 |

| Block billing reduction (20%) | - $109,048.64 |
|---|---|
| **Total Post-Award Fees** | **$442,144.56** |

McNulty Law Firm

| Requested Fees | $371,425.00 |
|---|---|
| Uncompensable pre-award time | **-** $0 |
| Internal disputes and agreements | - $7,350 |
| Travel time | - $0 |
| Time spent on appeal | - $50,730 |
| Excessive partner monitoring | - $26,856.67 |
| Subtotal | $286,488.33 |
| Block billing reduction (0%) | - $0 |
| **Total Post-Award Fees** | **$286,488.33** |

Berger & Montague

| Requested Fees | $556,230.50 |
|---|---|
| Uncompensable pre-award time | - $57,241 |
| Internal disputes and agreements | - $60,315.14 |
| Travel time | - $4,500 |
| Time spent on appeal | - $36,960 |
| Excessive partner monitoring | - $44,395.19 |
| Subtotal | $352,819.17 |
| Block billing reduction (20%) | - $70,563.83 |
| **Total Post-Award Fees** | **$282,255.34** |

These amounts work out to a total lodestar of

$1,010,888.23. Taking into consideration the type of work Class

Counsel undertook in the second, post-award phase of this

litigation, the results achieved, and the value their work

conferred on the class they represent, the Court concludes that

no multiplier is warranted.  The Defendants are ordered to pay $1,010,888.23 in additional fees for post-award work.

**D.    Post-Award Expenses**

In addition to challenging Class Counsel's post-award fees in several categories, Defendants challenge many of Class Counsel's expenses as excessive or improperly charged.  Defs.' Opp'n 24-25.  As was discussed earlier in this opinion, the Court will disallow $151,217.36 in expenses related to Class Counsel's unsuccessful appellate defense.  All other expenses will be allowed.  Judge Tauro's approach to Class Counsel's pre-award expenses was to allow them without reductions, and the Court adopts the same treatment of Class Counsel's post-award expenses in the interest of fairness and consistency.

The Defendants are ordered to pay $159,136.23 in expenses.

**IV.  NON-CLASS COUNSEL'S AWARDS**

The Court now turns to the matter of fees for Non-Class Counsel's work over the full duration of this litigation.  As Judge Tauro has recognized, many attorneys other than those at Irwin & Boesen, Berger & Montague, and McNulty have played a role in this case, and they deserve compensation for their efforts.  Here, the Court considers the fee petitions which all Non-Class Counsel entities submitted separately, the Defendants' time-specific challenges to these petitions, Class Counsel's

comments on the contributions of Non-Class Counsel to this case, and Non-Class Counsel's responses.

It is evident from these voluminous filings that considerable dissent and conflict has festered for years among Plaintiffs' counsel.  The consolidation of this case brought together attorneys who had been, in most cases, litigating their own product liability lawsuits against the Defendants in courts throughout the country.  Understandably, all were eager to continue performing substantive, closely involved work in the multidistrict class action litigation.  But the majority of Non-Class Counsel are disappointed at how little Class Counsel relied on them, despite their willingness to contribute.

This Court is simply dismayed to be addressing such matters.  See In re Indigo Secs. Litig., 995 F. Supp. 233, 235 (D. Mass. 1998).  A major purpose of appointing lead counsel is to designate responsibility for case management, a charge which includes management of the litigation team.  It reflects poorly on Class Counsel that their team's internal rancor has so affected these proceedings.  Class Counsel's failures in this regard ought militate against their ever again being appointed to serve in such a role.  All counsel named in this portion of the opinion ought be ashamed of their inability to work out these matters as professionals.

That being said, some resolution must be reached for the parties. The Court proceeds with considerable diffidence because it strongly disfavors taking sides in such conflicts, even more so because this Court's management of the case began at a late stage.

In determining Non-Class Counsel's fees, the Court is guided by the same principle it followed in determining Class Counsel's award -- a reasonable fee reflects work that resulted in benefits inuring to the class. Since the causal relationship between Non-Class Counsel's work and the class's benefits is often too attenuated to quantify with any certainty, the Court looks to their contributions to Class Counsel's efforts as a kind of proxy. Non-Class Counsel's lodestars, then, are calculated with an eye to ensuring that they primarily reflect hours spent on work that benefited the class, or at least the litigation strategy which Class Counsel was empowered centrally to manage.

## A.   General Principles for Evaluating Fee Petitions

As a matter of necessity, the Court's lodestar determinations for Non-Class Counsel are much more impressionistic than they were for Class Counsel. It would be a waste of judicial resources to attempt a granular analysis of the time records, given the nature of Class Counsel's comments, Non-Class Counsel's responses, and the Defendants' challenges,

and it would not be less arbitrary than the approach the Court has taken here.  Several broad issues which recur in the fee petitions, however, are worth addressing here, as the Court has handled them uniformly across petitions.

### 1.  Class Counsel's Comments

As part of its analysis, and with continued reluctance, the Court follows the approach of other courts and gives substantial deference to Class Counsel's comments on the contributions of Non-Class Counsel.  See Victor v. Argent Classic Convertible Arbitrage Fund L.P., 623 F.3d 82, 90 (2d Cir. 2010) ("Since lead counsel is typically well-positioned to weigh the relative merit of other counsel's contributions, it is neither unusual nor inappropriate for courts to consider lead counsel's proposed allocation of attorneys fees, particularly in the PSLRA context, where the district court retains the ultimate power to review applications and allocations and to adjust them where appropriate."); In re Initial Pub. Offering Secs. Litig., No. 21 MC 92(SAS), 2011 WL 2732563, at *7 (S.D.N.Y. July 8, 2011) ("Based on lead counsel's familiarity with the underlying litigation, fee allocation proposals are often afforded substantial deference."); In re Copley Pharm., Inc., Albuterol Prods. Liab. Litig., 50 F. Supp. 2d 1141, 1149 (D. Wyo. 1999) ("[The Court] necessarily gave substantial deference to Lead Counsel's proposed allocation. In a case of this magnitude, the

assistance of Lead Counsel on matters such as this is especially invaluable.") (internal citations omitted); see also In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig., 401 F.3d 143, 173 (3d Cir. 2005) ("Likely because of perceived practical necessity, courts have shown an eagerness to defer to counsel's views in allocating attorneys' fees."). These opinions do not, however, displace the Court's judgment. It remains the Court's responsibility meaningfully to review all of Non-Class Counsel's fee petitions and Class Counsel's comments and to make independent determinations as to what is fair and reasonable.

Two aspects of this case act as safeguards in this regard. First, Class Counsel have not presented a proposed fee allocation to the Court. Instead, they provided qualitative comments and analyzed Non-Class Counsel's billings by organizing their work time into categories. Class Counsel Comments. The categories reflect when work was completed, whether the work was requested or assigned by Class Counsel, and whether the work -- in Class Counsel's opinion -- directly benefited the class. This reserves to the Court the task of determining actual lodestar and multiplier amounts, requiring a greater use of discretion than is typically seen in cases where lodestars have already been calculated for the court. Second, the current posture of this case is such that Class Counsel's fees are being

55

determined separately from those of Non-Class Counsel; there is

no common pot of fees being divided among all of Plaintiffs'

counsel.  As a result, Class Counsel's comments on Non-Class

Counsel do not directly affect the amount Class Counsel

ultimately will be paid.  This ostensibly minimizes the type of

conflict of interest which can befall other fee-sharing cases.

See In re Diet Drugs, 401 F.3d at 173 ("[C]ounsel have inherent

conflicts.  They make recommendations on their own fees and thus

have a financial interest in the outcome.  How much deference is

due the fox who recommends how to divvy up the chickens?").

### 2.  Pre-Consolidation Work

A number of Non-Class Counsel firms seek compensation for

work completed before they joined the multidistrict class action

litigation.  Class Counsel Comments.  These firms expended time

and resources prosecuting their own contingent-fee cases against

the Defendants, before those efforts were folded into the

instant case.  In some cases, counsel accrued significant

litigation work hours that were of little direct benefit to the

multidistrict class, and then failed to receive meaningful

assignments from Class Counsel after consolidation.

For guidance on how pre-consolidation hours ought be

treated, this Court looks to the approach taken by the Third

Circuit in In re Cendant Corp. Secs. Litig., 404 F.3d 173 (3d

Cir. 2005), a Private Securities Litigation Reform Act case in

which lead counsel and non-lead counsel litigated the allocation of their fees for years.  In re Cendant called on the Third Circuit to consider the matter of work performed by non-lead counsel prior to the appointment of a lead plaintiff and the designation of lead counsel.  The Third Circuit concluded that when such work confers benefits on the class, it deserves to be compensated, and the court must play an active role in evaluating non-lead counsel's contributions in this preliminary period.  See id. at 194-95.  Moreover, "if the lead plaintiffs were to elect not to make further use of the services of [a non-lead counsel firm] . . . , it is expected that [that firm] will be fully compensated, whether out of any recovery or from plaintiffs collectively, for their services that antedated the designations of the lead plaintiffs and of class counsel."  Id. at 195 (quoting In re Bank One S'holders Class Actions, 96 F. Supp. 2d 780, 790 n. 13 (N.D Ill. 2000)).  On the other hand, fees incurred for the mere filing of a copycat complaint, or other duplicative action adding no new value to the recovery, ought be treated by a court with deep skepticism.  Id. at 195-96.

Building on these principles, this Court holds that work performed by Non-Class Counsel prior to consolidation is compensable if the work conferred benefits on the multidistrict

class.  The Court will construe the record generously in favor
of Non-Class Counsel, in consideration of several factors.

First, there is little evidence that any Non-Class Counsel
seek pre-consolidation fees for the kind of opportunistic or
copycat work which is undeserving of compensation.  Although the
Defendants seek to cast the coordinated efforts of some of the
firms prior to consolidation as a cynical fee-generating
enterprise, Defs.' Opp'n 19-20, the Court sees little
substantiation for the claim.  All of the Non-Class Counsel
firms seeking significant pre-consolidation fees have
sufficiently demonstrated that they were prosecuting actions in
their respective jurisdictions in good faith and in the
interests of their clients.

Second, the Court is sensitive to the fact that the
majority of Non-Class Counsel express serious dissatisfaction
with the amount of work they were assigned by Class Counsel
after joining the multidistrict class action litigation.  These
complaints suggest to the Court that Class Counsel made little
effort to draw on the full array of the resources made available
to them by Non-Class Counsel and, as a corollary, that little
was done to derive benefit for the class from Non-Class
Counsel's pre-consolidation work.  While the Court emphatically
will <u>not</u> sanction Class Counsel for handling the Plaintiffs'
counsel team in this way, as it was within their prerogative to

do so, the Court is sympathetic to the notion that Non-Class Counsel wanted and tried to have their work contribute more to this case. Their pre-consolidation contributions, then, ought receive the benefit of the doubt and deserve recognition unless it is clear that the work contributed nothing to, or actively detracted from, the class's interests.

Third, a stingy approach to recognizing Non-Class Counsel's pre-consolidation work creates poor incentives for future counsel similarly situated to join multidistrict litigation. A law firm which has expended significant time and resources prosecuting a case in a single jurisdiction will be loath to cooperate in a multidistrict action if it means forfeiting compensation for the work it has completed, with no guarantee that it will receive meaningful assignments from Class Counsel going forward. Recognizing the contributions of Non-Class Counsel for its prior work, when possible, is one way to encourage attorneys to participate in multidistrict litigation and improve judicial efficiency across our system.

### 3. Monitoring and Reviewing Developments

Other portions of Non-Class Counsel's billings are attributable to work performed after joining the multidistrict class action litigation that did not timely benefit the class; instead, many hours were spent on self-initiated activities related to monitoring developments, reviewing documents drafted

by other firms, conducting ancillary research, and corresponding
with other Plaintiffs' counsel about the progress of this large
and complex case.  These hours were not generated because of the
amount of work that needed to be done, but because of the number
of attorneys that had a stake in the case.

It is inevitable in a complex case that some amount of time
must be spent on this kind of miscellany.  As some Non-Class
Counsel have argued, it may have been sound practice to devote
significant time to these tasks even when such efforts did not
contribute directly to the end result.  See, e.g., Fox
Rothschild Reply 2-3.  But, when such work was not requested by
Class Counsel, did not benefit class members, and makes up a
significant portion of the requested lodestar, the Court must
view with skepticism any claims that the work was reasonable or
necessary.  See Edgerly v. Com., 379 Mass. 183, 186 (1979)
(holding, albeit in the context of appointed counsel in criminal
cases, that "compensation should be denied for work not
reasonably required for the efficient handling of a matter").

The purpose of multidistrict litigation is to promote
judicial efficiency, a goal which all too often is elusive.  See
DeLaventura v. Columbia Acorn Trust, 417 F. Supp. 2d 147, 150
(D. Mass. 2006).  In the interests of promoting efficiency in
complex litigation, the Court cannot uncritically award fees
which escalated purely as a result of the sheer number of

attorneys who had some involvement in the case.  Where Class Counsel reasonably identified hours in these categories, the Court made downward adjustments to the lodestar.

### 4.    The Joint Venture Agreement

The last general point of order for this Court to address concerns only a few Non-Class Counsel firms.  Jackson Counsel have drawn the Court's attention to the existence of a joint venture agreement, made prior to consolidation, among Jackson Counsel, McNulty, and Campbell, Waller & Poer, LLC, one of the Waller firms.  See Jackson Fee Supplement Request 1; Pre-Consolidation Fee Agreement.  In 2010, this joint venture agreement was the subject of a breach of contract action brought by Jackson Counsel against Peter McNulty, his law firm, and Jonathan Waller in Alabama state court, but the claims appear to have been dismissed in light of the fee motions pending in this Court.  See Class Couns. Mot. Strike/Alt. Resp. Opp. Jackson & Tucker, Sacks & Weston, and Vaughan Law Grp. Supp. Req. Est. Proc. Dist., Ex. 2, Order Pend. Motions ("State Court Order") 4, ECF No. 390-2.  Jackson Counsel now ask the Court to take into account the provisions of the joint venture agreement, particularly its fee-sharing clauses, in determining fee awards. Jackson Fee Supplement Request 3.

Having considered carefully the joint venture agreement and the circumstances under which it was made, the Court concludes

that it has no effect on the pending matters in this case.
Although the agreement's formal scope is worded broadly enough
to capture the issues which were litigated in this multidistrict
class action litigation, nothing else about the document
indicates that it was intended to apply to the situation we are
now in.  The agreement contemplates the prosecution of
individual state court actions organized under a leadership
structure spanning the five participating firms.  It is obvious
that this design was rendered moot by the consolidation of cases
-- only some of which were being tried by firms in the joint
venture -- into this multidistrict class action litigation, and
by the subsequent appointment of other, non-joint venture firms
to the Class Counsel team.  Jackson Counsel cannot reasonably
have expected the highly specific work assignment and fee
sharing provisions of their agreement to hold fast in this new
environment, and nothing was done to update the joint venture
arrangement in response to the evolution of the multidistrict
class action litigation.  The five firms did not even continue
to work as a combination distinct from the other Plaintiffs'
counsel firms.  Simply put, there is no way for this Court to
reconcile the agreement with what this case became.

Moreover, even if the joint venture agreement did more
neatly fit the circumstances of this litigation, the Court is
not inclined to defer to its strictures.  While fee sharing

agreements among counsel may be respected or treated as
presumptively reasonable in a district court's allocation of
attorneys' fees, persuasive authority convinces this Court that
it is not bound blindly to follow such private arrangements.
See, e.g., In re FPI/Agretech Sec. Litig., 105 F.3d 469, 473
(9th Cir. 1997) ("[A] court may reject a fee allocation
agreement where it finds that the agreement rewards an attorney
in disproportion to the benefits that attorney conferred upon
the class -- even if the allocation in fact has no impact on the
class."); In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 216,
223 (2d Cir. 1987) (rejecting authority that "allows counsel to
divide the award among themselves in any manner they deem
satisfactory under a private fee sharing agreement").  Cf. In re
Cendant Corp. Litig, 264 F.3d 201, 282-83 (3rd Cir. 2001)
(holding that although retainer agreements in class actions
enjoy a presumption of reasonableness at the fee award stage,
the presumption may "be abrogated entirely were the court to
find that the assumptions underlying the original retainer
agreement had been materially altered by" unforeseeable
developments).  More important than the terms of a private
agreement are the actual contributions each firm made to the
prosecution of this case and the interests of the plaintiff
class.

As a result, the awards allocated to Non-Class Counsel will
not be influenced by any provision in the joint venture
agreement.

**B.  Fee Determinations**

    **1.  Shapiro Haber & Urmy**

Shapiro requests a lodestar amount of $76,879.71 for 117.8
hours of work completed in its capacity as Liaison Counsel.
Shapiro Aff. 3.  The Defendants challenge portions of the firm's
billings which they say are attributable to block billing,
unsuccessful appellate efforts, excessive conferencing and e-
mails, and duplicative time spent on the complaint.  Defs.'
Opp'n, Ex. 18, Shapiro Haber & Urmy ("Defs.' Challenge to
Shapiro Billings"), ECF No. 395-18.  The Court has examined the
challenged hours and determines that even in the aggregate, they
comprise a small fraction of Shapiro's proposed lodestar.  The
Court will not make any item-specific deductions to the
lodestar.

Class Counsel's comments praise Shapiro's contributions.
Class Counsel Comments 3.  According to them, all of Shapiro's
work was completed at the request of Class Counsel and of
benefit to the class.  Id.  Accordingly, the Court holds that
the firm ought be awarded the full amount of their requested
lodestar.  To reflect the firm's performance in its special
capacity as Liaison Counsel and its success in working with

Class Counsel, the lodestar will be enhanced by a multiplier of 2, commensurate with Class Counsel's lodestar.  The award is $153,759.42.

### 2.  Waller Law Firms

The Waller law firms, for which Jonathan Waller ("Waller") worked at various times throughout this litigation, collectively request a lodestar amount of $471,601.75 for 1,389.65 hours of work completed.  Waller Memorandum 8.  The Defendants challenge portions of the Waller billings purportedly attributable to block billing, internal disputes and agreements, travel time billed at full rates, excessive conferencing and e-mails, duplicative time spent on the complaint, and duplicative time spent on the Defendants' motion to dismiss.  Summary Challenged Billings 1; id., Ex. 21, Waller ("Defs.' Challenge to Waller Billings"), ECF No. 395-21.  Of these categories, the Court determines that several challenges have merit.  The Waller records are largely block billed, include 70 hours of travel at full rates, and nearly twenty percent of the time claimed was spent on conferences and correspondence with other counsel. Defs.' Challenge to Waller Billings.

Class Counsel's comments note that Waller and his firms completed "substantial, high-quality work throughout this litigation," and they specify key areas in which Waller played a leading role.  Class Counsel Comments 4.  Their calculations

identify approximately 1112.5 hours of work, or 80 percent of
the proposed lodestar, spent on assignments at the request of
Class Counsel and of benefit to the class.  Id.

To adjust for these factors, the Court will disallow 25
percent of the Waller lodestar, yielding an adjusted base
lodestar of $353,701.31.  Because Class Counsel's comments
indicate that Waller worked closely with them throughout the
litigation and played an integral role, the Waller lodestar is
to be enhanced by a multiplier of 2, commensurate with Class
Counsel's lodestar.  The award is $707,402.62.

### 3.  Fox Rothschild, LLP

Fox Rothschild, LLP ("Fox Rothschild") requests a
$219,472.50 lodestar amount for 515.50 hours of work.  Fox
Rothschild Memorandum, Ex. 1, For Prof. Servs. Rendered Through
11/30/12 ("Fox Rothschild Bill") 91, ECF No. 380-1.  The
Defendants challenge portions of Fox Rothschild's billings
attributable to block billing, unsuccessful appellate work,
travel time billed at full rates, excessive conferencing and e-
mails, and duplicative work on the complaint and the motion to
dismiss.  Defs.' Opp'n, Ex. 13, Fox Rothschild ("Defs.'
Challenge to Fox Rothschild Billings"), ECF No. 395-13.  Some of
these categories challenge a de minimis amount of billings, but
the Court takes note that the challenged time Fox Rothschild
spent on conferencing and emails (72.80 hours), the complaint

(15.90 hours), and the motion to dismiss (63.40 hours) totals

nearly 30 percent of the proposed lodestar.

Determining whether this work was actually excessive

requires some closer examination of the fees briefing submitted

by Fox Rothschild and Class Counsel.  In petitioning for fees,

Fox Rothschild explains that it was most directly involved in

this multidistrict class action litigation in the early going,

contributing "research, drafting pleadings, and motion practice,

at the request of co-lead counsel."  Fox Rothschild Memorandum

1.  "[A]s the case progressed, Fox Rothschild was no longer

being assigned substantial work."  Id.

This description is consistent with the comments provided

by Class Counsel, which suggest that only 192.4 hours billed by

Fox Rothschild represent work that was of direct benefit to the

class.  Class Counsel Comments 5.  An additional 114.2 hours

were spent on work specifically for the benefit of Fox

Rothschild's clients, which Class Counsel concedes was

"presumably of some peripheral benefit to [the multidistrict]

class."  Id.  This represents approximately 60 percent of the

proposed lodestar, and according to Class Counsel, the remaining

40 percent of Fox Rothschild's time was spent on self-assigned

work and monitoring of the litigation which was of little or no

benefit to the class.  In response, Fox Rothschild maintains

that it was necessary, as matter of ethical and professional

obligation, to stay up to date on the litigation and to provide useful "case law updates and related information" to Class Counsel. Fox Rothschild Reply 2.

Fox Rothschild's arguments have merit, but they do not sway the Court's judgment that the Defendants ought not be ordered to pay fees for work which is duplicative and confers little actual benefit on the class. The Court will reduce Fox Rothschild's lodestar by one-third to account for excess hours billed. This lodestar will not be enhanced, however, by a multiplier. This is commensurate with Class Counsel's observations and with Fox Rothschild's request that it be awarded half of Class Counsel's multiplier enhancement. Fox Rothschild Memorandum 12. Fox Rothschild's fee award is $146,315.00.

### 4. Yarkony Counsel

One fee petition has been jointly filed by four Non-Class Counsel firms that worked together to prosecute actions on behalf of the plaintiff, Judith Yarkony, before consolidation: (1) Progressive Law Group, formerly Chorowsky Law Group ("Progressive"), (2) Reinhardt Wendorf & Blanchfield ("Reinhardt"), (3) Bock & Hatch, LLC ("Bock & Harch"), and (4) Wayne, Richard & Hurwitz, LLP ("Wayne") (collectively, "Yarkony Counsel"). Yakorny Motion. The joint nature of their efforts recommends uniform treatment, so the Court will determine a single fee award to be divided among them. Together, Yarkony

Counsel request a $158,819.00 lodestar for 461.45 hours of work. Yakorny Memorandum 1; Class Counsel Comments 6-9.

The Defendants have leveled item-specific challenges against the hours submitted by Bock & Hatch and Progressive. Defs.' Opp'n, Ex. 10, Bock & Hatch ("Defs.' Challenge to Bock & Hatch Billings"), ECF No. 395-10; id., Ex. 12, Chorowsky ("Defs.' Challenge to Progressive Billings"), ECF No. 395-12. The Defendants have not challenged the hours submitted by Reinhardt or Wayne because their contemporaneous time records were not made available until after the Defendants had submitted their opposition. Defs.' Opp'n 25. The Defendants posit that all hours attributable to them ought be disallowed on this basis, which strikes the Court as excessive. It would be unfair, however, to treat Reinhardt and Wayne's records as though they were completely unchallenged, while at the same time considering all of the Defendants' challenges to the hours which were timely submitted by other Non-Class Counsel. In the absence of other guidance and in the interest of uniform treatment, the Court tentatively will impute challenges to Bock & Hatch and Progressive's billings to their fellow Yarkony Counsel, as may be appropriate.

The Defendants challenge portions of Yarkony Counsel's billings purportedly attributable to block billing, excessive conferencing and e-mails, and duplicative work spent on the

complaint and the motion to dismiss.  Defs.' Challenge to Bock

Billings; Defs.' Challenge to Progressive Billings.  Upon

preliminary examination, particularly of Progressive's records,

the Court is inclined to adjust for block billing and to

disallow at least some of the hours allegedly incurred by

duplicative work.  The Court does not deem Yarkony Counsel's

time spent conferencing and e-mailing to have been excessive.

The Court looks to Class Counsel's comments for further

guidance.  Those comments suggest that most of Yarkony Counsel's

billed hours were not spent on work that significantly benefited

the class.  Class Counsel identifies only 106 hours,

approximately 23 percent of Yarkony Counsel's total hours, which

were of direct benefit to the class.  Class Counsel Comments 6-9

(identifying 33.7 hours from Progressive, 44.6 hours from

Reinhardt, 27.7 hours from Bock & Hatch, and 0 hours from

Wayne).  An additional 87.1 hours, taking up 19 percent of the

proposed lodestar, were spent on pre-consolidation work for

Yarkony Counsel clients which conferred only a "peripheral

benefit" on the class.  Id.

Adjusting for excessive or duplicative work and for block

billing, the Court will reduce Yarkony Counsel's lodestar by 50

percent, and no multiplier enhancement will be awarded.  Their

collective fee award is $79,409.50.

### 5.   Resnick & Moss, P.C.

Resnick & Moss, P.C. ("Resnick & Moss") requests a $6,087.50 lodestar amount for 13.50 hours of work.  Resnick & Moss Memorandum, Ex. A, Aff. Nathan Resnick ("Resnick Aff.") 3, ECF No. 386-1.  Although Resnick & Moss appears to have worked closely with Yarkony Counsel since before the consolidation of the Yarkony case with this action, it has admirably limited its fee request to hours spent on work for the benefit of the multidistrict class action litigation.  Resnick Aff. 2.  The Defendants challenge some of Resnick and Moss's billings on the basis of excessive conferencing and duplicative work on the complaint, but they are de minimis and the Court will disregard them.  Defs.' Opp'n, Ex. 16, Resnick & Moss ("Defs.' Challenge to Resnick & Moss Billings"), ECF No. 395-16.  Given Class Counsel's comments that the bulk of Resnick and Moss's work was, at the least, authorized and approved by Class Counsel, Class Counsel Comments 10, the Court is content to award the full amount of its fee request, with no multiplier enhancement.  Its fee award is $6,087.50.

### 6.   Jackson & Tucker, P.C.

Jackson & Tucker, P.C. ("Jackson & Tucker") requests a $114,134.00 lodestar for 362.13 hours of work.  Class Counsel Comments 10.  The Defendants challenge portions of these hours purportedly attributable to block billing, internal disputes and

disagreements, travel time billed at full rates, excessive conferencing and e-mails, and duplicative work on the complaint and the motion to dismiss.  Defs.' Opp'n, Ex. 14, Jackson & Tucker ("Defs.' Challenge to Jackson & Tucker Billings"), ECF No. 395-14.  Of particular note are the 162.45 hours Jackson & Tucker spent on conferencing and e-mails, id. at 38, comprising nearly 45 percent of all its hours billed, and the 77.95 hours it spent on allegedly duplicative work, id. at 40-41, comprising 21.5 percent of its hours billed.

According to Class Counsel, only 70.53 of Jackson & Tucker's hours were spent on work authorized by Class Counsel and of direct benefit to the class.  Class Counsel Comments 11, 13.  This represents just under 20 percent of the firm's total hours billed.  An additional 145.7 hours, 40 percent of the lodestar, was spent on pre-consolidation work for the benefit of Jackson & Tucker's own clients.  Id. at 11-13.

On these data points, the Court will reduce Jackson & Tucker's lodestar by one-third, with no multiplier enhancement. Their fee award is $76,089.33.

### 7. Sacks & Weston

Sacks & Weston requests a $228,017.00 lodestar for 610.15 hours of work.  Jackson Counsel Supplemental Brief, Ex. B, Decl. John Weston Supp. App. Attys.' Fees Reimb. Exp., Filed on Behalf of Sacks & Weston ("Weston Aff.") 3, ECF No. 366-2.  The

Defendants challenge a small portion of these hours for block billing, time spent on internal disputes and disagreements, and travel time billed at full rates. Defs.' Opp'n, Ex. 17, Sacks & Weston ("Defs.' Challenge to Sacks & Weston Billings") 2, 3, 19, ECF No. 395-17. They also challenge more significant portions of time purportedly attributable to excessive conferencing and e-mails (132.11 hours, approximately 21 percent of total hours), id. at 14, and duplicative work on the complaint and motion to dismiss (103.5 hours, approximately 17 percent of total hours), id. at 17-18.

Class Counsel's comments indicate that 213.77 hours, approximately 35 percent of Sacks & Weston's total time billed, are attributable to work assigned by Class Counsel and of direct benefit to the class. Class Counsel Comments 17. A huge portion of Sacks & Weston's remaining hours is attributed to work done for the benefit of Sacks & Weston's own clients before Judge Tauro's pretrial order, but Class Counsel particularly notes that this work was "of some general benefit to the Class," id. at 16, an observation that Class Counsel did not make regarding any other counsel's work in this time period.

Sacks & Weston's billings appear to contain excesses, but their records also reflect a greater percentage of work directly benefiting the class than the billings of other Non-Class Counsel. The Court therefore disallows only one-third of Sacks

& Weston's lodestar, with no multiplier enhancement to be awarded. Its fee award is $152,011.33.

### 8. Vaughan Law Group

Vaughan Law Group ("Vaughan") requests a $162,128.00 lodestar for 520.06 hours of work. Class Counsel Comments 17. Just over one-third of Vaughan's hours are attributed by Class Counsel to work done for the benefit of Vaughan's own clients and of peripheral benefit to the multidistrict class. Id. Another thirty percent of the lodestar, totaling 153.66 hours, represents work authorized and approved by Class Counsel but which had "little or no direct benefit to the class." Id. at 18. The remaining approximate third of Vaughan's hours were, according to Class Counsel, spent on self-assigned and duplicative work conferring no direct benefit on the class. Id. at 19.

The Defendants challenge 66.90 hours, or approximately 13 percent, of Vaughan's time for block billing. Defs.' Opp'n, Ex. 20, Vaughan Law Group ("Defs.' Challenge to Vaughan Billings") 6, ECF No. 395-20.

Given the extent of Vaughan's contributions relative to other Non-Class Counsel, the Court disallows 50 percent of Vaughan's lodestar and awards no multiplier enhancement. Its fee award is $81,064.00.

### 9. Mark Schlachet

Mark Schlachet ("Schlachet") requests a $331,077.50 lodestar for 509.35 hours of work. Class Counsel Comments 20. The Defendants challenge significant portions of these billings on the basis that they were block billed, spent on excessive conferencing and e-mails, and attributable to duplicative work on the complaint. Defs.' Opp'n, Ex. 15, Mark Schlachet ("Defs.' Challenge to Mark Schlachet Billings"), ECF No. 395-15. Of these, the Court finds most merit in the block billing challenge, which implicates 133.40 hours, approximately 26 percent of Schlachet's total hours. Id. at 2.

Class Counsel's comments regarding Schlachet's contributions to this litigation are troubling. According to them, Schlachet contributed only 1.75 hours of work of direct benefit to the class. Class Counsel Comments 20.

The record indicates that Schlachet and his co-counsel, Brian Ruschel ("Ruschel"), originally became involved in this litigation as the lead attorneys in a case against the Defendants in the Ohio state courts. Schlachet Memorandum 4-5. Schlachet and Ruschel removed their case to federal court in 2007 so that it could be absorbed into this multidistrict class action litigation. Id. at 5-6. Consolidation quickly fell short of Schlachet and Ruschel's expectations, however, and they

made their dissatisfaction known to Class Counsel and to Judge
Tauro.  Schlachet & Ruschel Original Request for Attorneys' Fees
2-3.  Schlachet has maintained an active presence on the docket
through his own filings, nearly all of which concern fees, and
he was among the first to petition to have his award considered
separately from Class Counsel.  Schlachet & Ruschel Original
Request for Attorneys' Fees.

This background explains why nearly all of Schlachet's
billings fall into one of two categories: (1) work incurred
before Schlachet consolidated his Ohio-based case with this
multidistrict class action litigation, and (2) work dedicated to
recovering fees for this action in opposition to Class Counsel.
In the first category, the Court is inclined to grant to
Schlachet much of what he seeks.  The Court is satisfied that he
and Ruschel undertook meaningful and independent work in their
Ohio case, which did not merely duplicate the efforts of others
and which deserves compensation.  Moreover, it has been
suggested that the Defendants actively persuaded Schlachet and
Ruschel to merge their case with the multidistrict class action
litigation.  See Ruschel Memorandum 12.

All hours in the second category, however, pertaining to
Schlachet's attempts to recover fees and his conflicts with
Class Counsel, are completely disallowed, consistent with this
Court's determination that no fees attributable to internal

conflict among plaintiffs' counsel ought be paid out by the
Defendants.  This disallowed time amounts to 227.2 hours.
Schlachet Memorandum, Ex. 3, Mark Schlachet Time and Expense
Records ("Schlachet Records") 6-10, ECF No. 357-3; Class Counsel
Comments 20.

To the 282.15 remaining hours in Schlachet's fees request,
the Court will apply a 20 percent reduction for block billing,
yielding 225.72 hours. This result represents approximately 44
percent of his total proposed hours lodestar.  Accordingly,
Schlachet's financial lodestar is $146,718.00.  No multiplier
will be applied.

### 10.  Brian Ruschel

Brian Ruschel requests a $155,250.00 lodestar for 310.20
hours of work. Class Counsel Comments 20.  The Defendants
challenge billings they say were block billed, spent on
excessive conferencing and e-mails, and attributable to
duplicative work on the multidistrict class action litigation
complaint.  Defs.' Opp'n, Ex. 11, Brian Ruschel ("Defs.'
Challenge to Brian Ruschel Billings"), ECF No. 395-11.  The
Court agrees as to the issue of block billing, as 174 hours,
over half the total lodestar, of Ruschel's submissions suffer
from the problem.  Id. at 2.

As to Class Counsel's comments, Ruschel is similarly
situated to Schlachet.  Class Counsel recognizes only a modest

amount of Ruschel's hours as having been spent on work of direct benefit to the class. Class Counsel Comments 21. The rest, they say, were either spent on Ruschel's own clients prior to consolidation or were spent on self-assigned work of no benefit to the class. Id. To Ruschel's great credit, he does not appear to have submitted a request for fees attributable to time he spent attempting to recover fees.

The issues raised by this fees petition are essentially the same as those that were raised by Schlachet's. The Court is inclined to grant much of Ruschel's fees request for work performed in the Ohio case, in addition to fees for work he performed well for Class Counsel. Ruschel's time records and Class Counsel's comments, however, do not clearly delineate between Ruschel's Ohio-and multidistrict class action-specific work.[2] The Court's best estimation, after closely reviewing the records, is that approximately 274.5 hours are attributable to Ruschel's Ohio-specific work. See Schlachet & Ruschel Original Request for Attorneys' Fees, Ex. 2, Brian Ruschel Time and

_____

[2] Class Counsel's comments attribute 46.5 hours of Ruschel's time sheets to the Ohio case, Class Counsel Comments 20, but even a cursory review of the record indicates that this number underestimates Ruschel's work on that case. Class Counsel's calculation only includes hours incurred through February 7, 2007, the date of Judge Tauro's first pre-trial order in the multidistrict class action litigation. Id. But because Ruschel and Schlachet did not join the multidistrict class action litigation until much later in 2007, see Ruschel Memorandum 12, this is too stingy.

78

Expense Records Notice of Unbilled/Uncompensated Time ("Notice of Unbilled/Uncompensated Time"), ECF No. 168-2 (counting hours up through October 26, 2007). Class Counsel has identified an additional 11 hours of work undertaken by Ruschel which was of direct benefit to the class. Class Counsel Comments 21. Together, these hours total 285.5 hours, or approximately 92 percent of Ruschel's lodestar.

Because the remaining time to be accounted for is de minimis, the Court is prepared to accept all of Ruschel's requested lodestar hours. The only adjustment it will make is a twenty percent reduction for block billing, and there will be no multiplier adjustment. Accordingly, Ruschel's award is $124,200.

### 11. Thomas Sobran

Thomas Sobran ("Sobran") requests a $248,675.00 lodestar for 730 hours of work. Class Counsel Comments 21. The Defendants seek reductions to his lodestar on the basis that his time sheets contain block billing, excessive hours billed for conferencing and e-mails, and duplicative or monitoring-type work related to the complaint and the motion to dismiss. Defs.' Opp'n, Ex. 19, Thomas Sobran ("Defs.' Challenge to Sobran Billings"), ECF No. 395-19. The Court observes that 311.80 hours, approximately 43 percent of Sobran's total hours, suffer from block billing. Id. at 5.

Class Counsel, for their part, offer that only 29.5 hours of Sobran's work represented direct benefits to the class, and that an additional 15.1 hours represent work assigned by Class Counsel that ultimately was of little benefit to the class. Class Counsel Comments 22. Class Counsel's comments indicate that 576.3 hours, or nearly 79 percent of Sobran's hours, are attributable to self-assigned work and monitoring which conferred no direct benefit on the class. Id.

Like others involved in this litigation, Sobran is at odds with Class Counsel. His submissions to this Court indicate that since almost the beginning of his involvement in this multidistrict class action litigation, he has been deeply dissatisfied with Class Counsel's handling of work assignments and behavior towards Non-Class Counsel in general. See, e.g., Sobran Response to Class Counsel Comments; Resp. Thomas Sobran So-Called "Decl./Cert. Russell Henkin Resp Defs.' Obj. Portions Bill./Exp. Berger & Montague PC Law Firm" ("Sobran Response"), ECF No. 411. He accuses Class Counsel of violating oral and written promises, objects to their characterization of his contributions, and urges the Court to treat their comments with skepticism. Sobran Response to Class Counsel Comments.

Having reviewed Sobran's documents and time records, the Court concludes that much of the lodestar Sobran requests ought be disallowed. To start, as the Defendants have pointed out,

the hours he has documented correspond to an award of $216,491,

an amount which is more than $30,000 less than the award Sobran

seeks.  Sobran Decl. Supp. Appl. Attys.' Fees 1 (breaking down

the number of hours billed by hourly billing rate); Defs.'

Challenge to Thomas Sobran Billings 5.  Second, it is apparent

from the submissions of both Class Counsel and Sobran that

Sobran's contributions to this litigation warrant a more modest

award than the one he requests.  By emphasizing the lengths to

which Class Counsel went to exclude Sobran and other Non-Class

Counsel from productive work assignments, Sobran only reinforces

the idea that his active work on this case was limited.  The

substantive work he describes in his written submissions is, in

this Court's view, consistent with the hours Class Counsel

credits to him in their comments.

On this basis, the Court disallows from Sobran's lodestar

576.3 hours for duplicative or monitoring-type work.  The

remaining 153.7 hours are further reduced by 20 percent for

block billing, yielding a final hours lodestar of 122.96 hours.

This represents approximately 17 percent of the total hours

billed, which the Court will round to 20 percent for purposes of

calculating Sobran's fee award. Twenty percent of Sobran's total

$216,491 request yields a final award amount of $43,298.20.  No

multiplier will be applied.

## 12. Chimicles & Tikellis, LLP

Chimicles & Tikellis, LLP ("Chimicles & Tikellis") requests a $320,951.25 lodestar for 939.25 hours of work. Chimicles & Tikellis Memorandum 3-4. More than for other Non-Class Counsel, their fee petition resists scrutiny because Chimicles & Tikellis has declined to submit contemporaneous billing records alongside its award request. Class Counsel appears to have had the opportunity to examine and comment on the firm's time sheets documenting 925 hours worked through November 2010, Class Counsel Comments 4, but those records are not available to the Court or to the Defendants. Further, it appears that no party outside Chimicles & Tikellis has had the chance to see time records from the firm for work undertaken after November 2010, although the firm seeks fees for 14.25 hours it has completed in that time. Id.

Although the Defendants contend that Chimicles & Tikellis's award ought be disallowed entirely for failure to submit contemporaneous billing records, Defs.' Opp'n 25, this Court prefers to take a less extreme approach. In light of the careful attention other firms' petitions and proposed lodestars have received, however, it would be unfair to leave Chimicles & Tikellis's lodestar request intact solely because Chimicles & Tikellis only submitted an overview of its billing records. The Court will address this issue, then, in two steps. First, the

Court disallows the 14.25 hours the firm says were spent on work undertaken after November 2010, because the firm has provided no information to any party explaining what work was accomplished, and because the amount is de minimis in light of the firm's overall proposed lodestar. Proportionally, the adjusted proposed lodestar for the firm's 925 hours of work is $316,072.50. Second, the Court will impose a global reduction on Chimicles & Tikellis's award, consistent with the block billing haircut other firms have received for submitting billing records which are insufficiently detailed.

Class Counsel's comments indicate that although Chimicles & Tikellis spent many productive hours working on this case, the firm spent almost as many hours performing self-assigned and duplicative work. Class Counsel Comments 4-5. Class Counsel identifies 431.75 hours, or 46.6 percent of a 925-hour lodestar, which were spent on redundant work conferring no direct benefit to the class. Id. at 5. Chimicles & Tikellis protests, arguing that all of the work it performed was done at the request of Class Counsel. Chimicles & Tikellis Reply 1.

Taking all these factors into account, the Court reduces Chimicles & Tikellis's lodestar by 50 percent and applies no multiplier to the result. Accordingly, Chimickles & Tikellis's award is $158,036.25.

C.    **Expenses**

In addition to fees, Non-Class Counsel seek the payment of expenses they have incurred in the course of this litigation. A large portion of these expenses have already been awarded, as Judge Tauro granted in full Non-Class Counsel's requests for costs incurred through December 2010 in his original award order. See In re VW (Original Award), 784 F. Supp. 2d at 47 (awarding $1,195.234.43 in costs and expenses); Updated Statement of Costs 2 (requesting the same amount for costs and expenses incurred by all Plaintiffs' counsel, including $112,454.96 in expenses submitted by Non-Class Counsel). Since Judge Tauro's costs determination was not appealed by the Defendants, his order as to costs incurred through December 2010 stands. Consistent with his order, $112,454.96 of Non-Class Counsel's expenses are to be paid by Class Counsel, out of the latter's pre-award costs and expenses.

Non-Class Counsel requests, in the aggregate, an additional $26,270.24 in expenses incurred since December 2010. Defs.' Opp'n 25. The Defendants seek reductions to this amount on the basis that Massachusetts law prohibits the recovery of expenses attributable to the overhead of running a law firm, as well as expenses which are documented in insufficient detail. Id. at 24-25. The Defendants also concede, however, that many of Non-Class Counsel's submissions related to expenses are organized in

a way that makes it difficult to determine whether expenses were incurred before or after December 2010.  Id.

Were this Court to attempt to determine, on the basis of such opaque records, which of Non-Class Counsel's post-2010 costs are and are not reimbursable, it would risk abusing its discretion.  Moreover, the Court prefers to take an approach to the post-2010 expenses which is as consistent as possible with Judge Tauro's approach, since his judgment in that area has not been challenged by any party.  As such, the Court orders that the full amount of Non-Class Counsel's additional requested expenses be paid by the Defendants.  The combined effect of Judge Tauro's order and this Court's ruling means that Non-Class Counsel will collectively receive reimbursement for $138,693.20 in expenses incurred over the entire life of this litigation.

**V.    CONCLUSION**

For the foregoing reasons, the Defendants are hereby ordered to pay reasonable attorneys' fees to Class Counsel and Non-Class Counsel in the following amounts:

(1) Class Counsel as a whole: $15,468,000, for work undertaken prior to Judge Tauro's original award

(2) Irwin & Boesen: $442,144.56, for work undertaken after Judge Tauro's original award

(3) McNulty Law Firm: $286,488.33, for work undertaken after Judge Tauro's original award

(4) Berger & Montague: $282,255.34, for work undertaken after Judge Tauro's original award

(5) Shapiro, Haber & Urmy: $153,759.42

(6) Waller Law Firms: $707,402.62

(7) Fox Rothschild, LLP: $146,315.00

(8) Yarkony Counsel: $79,409.50

(9) Resnick & Moss, P.C.: $6,087.50

(10) Jackson & Tucker, P.C.: $76,089.33

(11) Sacks & Weston: $152,011.33

(12) Vaughan Law Group: $81,064.00

(13) Mark Schlachet: $146,718.00

(14) Brian Ruschel: $124,200.00

(15) Thomas Sobran: $43,298.20

(16) Chimicles & Tikellis, LLP: $158,036.25

In addition to these fees, the Defendants are hereby ordered to reimburse Class Counsel and Non-Class Counsel for costs and expenses in the following amounts:

(1) Plaintiffs' counsel as a whole: $1,195,234.43, for costs and expenses incurred by all Class Counsel and Non-Class Counsel firms prior to Judge Tauro's original award;

(2) Class Counsel as a whole: $159,136.23, for costs and expenses incurred after Judge Tauro's original award

(3) Non-Class Counsel as a whole: $26,270.24, for costs and expenses incurred after Judge Tauro's original award

SO ORDERED.

/s/ William G. Young__
William G. Young
District Judge